

**RECEIVED DEC 14 2012**
HAROLD BAER
U.S. DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEVERLY ADKINS, CHARMAINE WILLIAMS, REBECCA PETTWAY, RUBBIE McCOY, WILLIAM YOUNG and MICHIGAN LEGAL SERVICES, on behalf of themselves and all others similar situated,<br><br>Plaintiffs,<br><br>-against-<br><br>MORGAN STANLEY, MORGAN STANLEY & CO. LLC, MORGAN STANLEY ABS CAPITAL I INC., MORGAN STANLEY MORTGAGE CAPITAL INC., and MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC,<br><br>Defendants. | CASE NO. 12-cv-7667 (HB)<br><br>**JOINT PROPOSED ORDER REGARDING PROTOCOL FOR ELECTRONICALLY STORED INFORMATION AND OTHER DISCOVERY**<br><br>Hon. Harold Baer |



USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-18-12

    This Joint Proposed Order Regarding Protocol for Electronically Stored Information and Other Discovery shall be the governing document(s) by which the parties and the Court manage the discovery process in this action. The parties and the Court recognize that this Proposed Order is based on facts and circumstances as they are currently known to each party, that the electronic discovery process is iterative, and that additions and modifications to this Proposed Order may become necessary as more information becomes known to the parties.

    The parties have agreed that the most efficient course is to proceed with only limited discovery between the parties and certain third-party discovery pending resolution of a motion to dismiss to be filed by Defendants on December 21, 2012. Certain of the steps outlined in this order will not need to occur unless and until discovery proceeds in full in event the Court denies

-2-

Defendants' motion to dismiss. The parties thus propose that certain deadlines set forth in the Proposed Order run from an order denying the motion to dismiss, if such an order is entered.

1. **DEFINITIONS**

    a. "Document" is defined to be synonymous and equal in scope to usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure. A copy or duplicate of a document which has any non-conforming notes, marginal annotations or other markings, and any preliminary version, draft or revision of the foregoing is a separate document within the meaning of this term.

    b. "Electronically stored information" or "ESI" means any Document that is stored in electronic form on a server, tape, electronic media such as an internal or external hard drive or any media whereby the document can be saved and be available for retrieval using any retrieval device, including but not limited to a Computer or Server.

    c. "Computer" or "Server" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers.

2. **IDENTIFICATION PROTOCOL**

    a. **Custodians:** Within twenty-five (25) days of entry of an order denying Defendants' motion to dismiss, the parties will exchange lists of document custodians from whom they propose to collect potentially responsive documents. Counsel for the parties will meet and confer within twenty-five (25) days of entry of an order denying Defendants' motion to dismiss. During this meet and confer, the parties will (i) explain how they identified the

individuals on its list and (ii) describe each individual's current or former job title and the individual's dates of employment.

  b. **Information Systems:** To facilitate the production of ESI and to provide the parties with an understanding of how reasonably accessible electronic information is stored and how it can be retrieved, within twenty-five (25) days of entry of an order denying Defendants' motion to dismiss, the parties agree to meet and confer regarding the parties' computer information systems that may contain relevant ESI. The parties further agree to discuss where potentially discoverable reasonably accessible ESI may reside, the dates for which active ESI and information is available, and the methods available to search these sources. The parties also agree to discuss backup, legacy, historic, archived, or retired systems (e.g., separate server, CD-ROMs, tapes, optical disks, etc.), including categories of files deemed, "not reasonably accessible" which may contain discoverable ESI, the form in which the ESI is maintained on these systems, why any such documents are not reasonably accessible, and the methods available for accessing the ESI on these systems.

  c. **Keyword Search Terms:** Within twenty-five (25) days of entry of an order denying Defendants' motion to dismiss, the parties agree to meet and confer to discuss the use of agreed-upon keyword search terms as well as the potential use of other advanced culling techniques and/or technology assisted review processes as a means of limiting the volume of documents and ESI to be reviewed for responsiveness to any discovery request propounded by the parties.

    i. Prior to this meet and confer, within five (5) days of entry of an order denying Defendants' motion to dismiss, the parties shall exchange lists of the categories of documents they intend to seek through requests for production.

        ii.      Within fifteen (15) days of entry of an order denying Defendants' motion to dismiss, the parties shall exchange lists of keyword search terms they propose to use that include wildcards, commonly used business terms, abbreviations, alternate spellings, alternative or previous names used to refer to particular groups, processes, categories, procedures, and databases reasonably known to the parties that are likely to yield relevant and responsive information relevant to the claims and defenses in this litigation. The parties must also provide each other with information regarding the document hosting platform that will be used to conduct the searches.

        iii.      Within twenty (20) days of entry of an order denying Defendants' motion to dismiss, the parties shall exchange any edits and/or additions to the proposed lists of search terms.

        iv.      The parties shall endeavor to come to an agreement regarding proposed keyword search terms during the meet and confer. If the parties are unable to do so, they may present to the issue for resolution by the Court.

        v.      After the production of ESI has commenced, the parties may propose modifications to the keyword search terms. The parties must attempt to resolve any disputes regarding proposed modifications through a meet and confer process. If the parties are unable to resolve a dispute, the parties will present the issue to the Court for resolution.

    d.    **Document Requests:** The parties' obligation to conduct a reasonable search for documents in response to propounded discovery requests shall be deemed to be satisfied by producing responsive, non-privileged documents that are captured by using the agreed-upon keyword search terms, as well as any agreed-upon use of other advanced culling techniques and/or technology assisted review processes, applied to agreed-upon custodians and agreed-upon

computer systems and/or servers provided, however, that nothing in this Order shall be construed to waive the parties' right to object to the scope of particular discovery requests or review documents for responsiveness or privilege, or to relieve the parties of their obligation to produce responsive documents of which they are or become aware but which are not captured by the search terms.

### 3. **PRODUCTION PROTOCOL**

Responsive, non-privileged documents and ESI shall be produced as follows:

    a.    **Hard Copy Documents**:

        i.    Responsive hard copy documents shall be scanned and produced in single-page Group IV TIFF images. For each document, an Extracted Text or Optical Character Recognition ("OCR") document-level text file will be provided along with a Summation standard image load file and a CSV (Comma Separated Value) file containing at least the following fields, populated to the extent information is available:

      1.    Custodian (Name of Custodian from which the file is being produced);

      2.    Bates Begin (Beginning Production Number);

      3.    Bates End (Ending Production Number);

      4.    Attach Begin (Beginning Attachment Range Number); and

      5.    Attach End (Ending Attachment Range Number, *i.e.*, parentage is maintained).

    ii.    Originals of Hard Copy documents produced will be maintained by the producing party.

  b.    **E-Mails:**

Responsive emails will be produced as single-page Group IV TIFF images. The native format or original electronic form of all responsive electronic mail shall be maintained by the responding party. For each document, a document-level extracted text file will be provided along with a Summation standard image load file and a CSV (Comma Separated Value) file containing at least the following fields, populated to the extent information is available:

      1.    Custodian (name of custodian from which file is being produced);

      2.    Author (FROM field);

      3.    CC;

      4.    BCC;

      5.    Recipient (TO field);

      6.    MD5 Hash Value or Equivalent (including SHA-1);

      7.    Date Sent (date the email was sent);

      8.    File Ext (extension for the file);

9. Email Folder (The folder within the mailbox where the message resided in);

10. Bates Begin (beginning production number);

11. Bates End (ending production number);

12. ParentID (field contains the Beginning Docid for the parent document (usually an email) and is populated for all attachments within the family group);

13. AttachID (field contains the Beginning Docids for each attachment within the family group and is populated for the parent document within a family group);

14. Page count (for documents that are TIFFed); and

15. Subject.

ii. All date fields will be produced in either YYYYMMDD or MM/DD/YYYY format.

iii. Electronic mail shall be produced along with attachments to the extent the message or any attachment is responsive, relevant, and not privileged. As a general matter, subject to specific review, a message and its attachments shall not be withheld from production based on the fact that one or more attachments are privileged, irrelevant, or non-responsive. To the extent the message of one or more attachments is privileged, irrelevant, or non-responsive, the responsive, non-privileged documents shall be produced and the documents shall, at the producing party's option, either: (A) be Bates numbered in order in sequence with the attachments and the removed privileged documents shown on a privilege log with corresponding Bates numbers; or (B) include placeholders indicating the privileged documents were withheld

and the removed privileged documents shown on a privilege log with control numbers assigned by the producing party.

   iv. The parties will honor reasonable and specific requests for the production of color images/files.

  c. **Attachments To E-Mails:**

   i. To the extent an e-mail has an attachment, the original parent-child information will be maintained in the production and all metadata associated with documents attached to e-mails will be captured. Attachments to emails will be produced as single-page Group IV TIFF images. For each document, a document-level extracted text file will be provided along with a Summation standard image load file and a CSV (Comma Separated Value) file containing at least the following fields, populated to the extent information is available:

    1. Custodian (Name of Custodian from which file is being produced);

    2. Author (Author of file from properties);

    3. Doc Title (Title of file from properties);

    4. Doc Subject (Subject of file from properties);

    5. Created Date (Date the file was created);

    6. Last Modified Date (Date the file was last modified);

    7. Last Saved By (Name of user who last saved the file);

    8. Doc Type (Email, Attachment or Loose File);

    9. File Type (Microsoft Word, Microsoft Excel, etc.);

    10. File Name (Name of the file);

    11. Full Path (Full path location to where the file resided);

    12. File Ext (Extension for the file);

       13.    MD5 Hash (or equivalent, including SHA-1);

       14.    Bates Begin (Beginning Production Number);

       15.    Bates End (Ending Production Number);

       16.    ParentID (field contains the Beginning Docid for the parent document (usually an email) and is populated for all attachments within the family group);

       17.    AttachID (field contains the Beginning Docids for each attachment within the family group and is populated for the parent document within a family group);

       18.    Page count (for documents that are TIFFed); and

       19.    For Excel files only, Native link (path to the native file as included in the production e.g., d:\PROD001\natives\ABC00015.xls or d:\PROD001\natives\ABC00025.ppt).

    ii.    All date fields will be produced in either YYYYMMDD or MM/DD/YYYY format.

    iii.    The parties will honor reasonable and specific requests for the production of color images/files.

    d.    **Excel Files**:

       i.    In all cases, Excel files shall be produced in native format or original electronic form.

       ii.    A TIFF placeholder with a link to the native file may be used.

       iii.    For any file that exists in encrypted format or is password-protected, the

1068459.2

producing party will provide the propounding party a means to gain access to those native files (for example, by supplying passwords.).

    e.    **Data and Databases**: Data extracted from databases and databases shall be produced in their native format or original electronic form. To the extent this is not practical, the parties will meet and confer to obtain a resolution that results in the best manner of production of data from the databases in electronic form, such as generating reports from the databases in electronic form and providing them as Excel or other spreadsheets.

    f.    **Other ESI**:

        i.    To the extent it appears that other ESI will be produced by the parties, the parties will meet and confer to discuss the protocol for such productions. To the extent other ESI is produced in TIFF format, it is anticipated that such documents will be produced as single-page Group IV TIFF images. It is anticipated that for each document, a document-level extracted text file will be provided along with a Summation standard image load file and a CSV (Comma Separated Value) file containing at least the following fields, populated to the extent information is available:

        1.    Custodian (Name of Custodian from which file is being produced);

        2.    Author (Author of file from properties);

        3.    Doc Title (Title of file from properties);

        4.    Doc Subject (Subject of file from properties);

        5.    Created Date (Date the file was created);

        6.    Last Modified Date (Date the file was last modified);

        7.    Last Saved By (Name of user who last saved the file);

        8.    Doc Type (Email, Attachment or Loose File);

1068459.2

      9.     File Type (Microsoft Word, Microsoft Excel, etc.);

      10.    File Name (Name of the file);

      11.    Full Path (Full path location to where the file resided);

      12.    File Ext (Extension for the file);

      13.    MD5 Hash (or equivalent, including SHA-1);

      14.    Bates Begin (Beginning Production Number);

      15.    Bates End (Ending Production Number);

      16.    ParentID (field contains the Beginning Docid for the parent document (usually an email) and is populated for all attachments within the family group);

      17.    AttachID (field contains the Beginning Docids for each attachment within the family group and is populated for the parent document within a family group);

      18.    Page count (for documents that are TIFFed); and

      19.    For Excel files only, Native link (path to the native file as included in the production e.g., d:\PROD001\natives\ABC00015.xls or d:\PROD001\natives\ABC00025.ppt).

    ii.    All date fields will be produced in either YYYYMMDD or MM/DD/YYYY format.

    iii.    The parties will honor reasonable and specific requests for the production of color images.

    iv.    Video and audio files will be produced only on request.

1068459.2

g.  **ESI that is Impractical to Produce:**

i.  The parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to production as native format or original electronic form documents with links to a litigation database. For example, in some instances renaming and/or linking a native document comprised of subparts will render the document unusable.

ii.  After meet and confer, the parties may agree to produce these types of documents in native form, accompanied with a Bates number and MD-5 hash value, but separate from a litigation support database. In those instances, if a propounding party or its experts lack access to proprietary software needed to review the producing party's ESI in native format, the parties will meet and confer to obtain a resolution which allows that party to view the affected documents to the extent practicable.

4.  **AVOIDANCE OF DUPLICATE PRODUCTION**

a.  The parties will use reasonable, good faith efforts to avoid the production of duplicate documents and ESI.

b.  The parties shall meet and confer to disclose and discuss the methodology and technologies being employed by each party to de-duplicate review of potentially responsive ESI and documents in accordance with this Order. The parties may de-duplicate identical ESI vertically (*i.e.*, by custodian) and horizontally (*i.e.*, globally across custodians).

5.  **REDACTION OF IMAGES**

If the parties redact images on grounds of privilege or work product, these redactions will be listed on a privilege log. In the event a document is redacted, the redaction will be marked by either a black box or the term "Redacted." The extracted text described above will not be

delivered for that document and in place of extracted text, OCR output will be delivered based on the redacted images, to the extent reasonably feasible.

6. **PRIVILEGE LOGS**

The parties agree that isolation, review, redaction and logging of privileged communications can be costly and time-consuming. To limit the cost of a privilege review and make document production more efficient, the parties may, but are not required to, use the protocols described below with respect to handling responsive documents that may include privileged information.

To the extent documents are not identified and logged pursuant to the procedures below, yet contain privileged materials or information, the parties agree to provide privilege logs in accordance with the provisions of Fed. R. Civ. P. 26(b)(5).

    a.    **In-House Counsel:** The parties may use the following protocol to isolate and log ESI involving in-house counsel, provided that each party (1) takes reasonable efforts to ensure that automatically-generated language in in-house counsel communications (such as disclaimers automatically inserted as email footers) will not cause the filter to screen communications on the basis that the search terms listed at 5(a)(ii) appear only in the automatically-generated language, and (2) discloses in advance to the receiving party the efforts to be used, including disclosing any additional search terms to be applied in order to identify in-house counsel communications containing automatically-generated language that includes one or more of the terms listed at 5(A)(ii):

        i.    Parties wishing to use the protocol will disclose to each other the names and full business titles of in-house counsel employed by the parties during the relevant time period.

   ii.  Within twenty-five (25) days after entry of an order denying Defendants' motion to dismiss, the parties will endeavor to agree to specific search terms that will include at least the following terms that will be applied to ESI in which one or more names of a party's in-house counsel appears anywhere in the document, including associated metadata, to isolate potentially privileged communications:

    1. "defense strategy"

    2. "joint defense"

    3. "work product"

    4. "work-product"

    5. attorney near5 client

    6. advice near3 (counsel or lawyer* or attorney*)

    7. affidavit*

   iii.  A log of the documents resulting from the electronic privilege search will be generated from the following corresponding metadata fields to the extent they exist as electronic metadata associated with the original electronic documents, and the producing party shall provide such logs to the receiving party(ies):

    1. Author

    2. Subject/Title

    3. Sender

    4. Recipient

    5. CC

    6. BCC

    7. Sent Date/Time

1068459.2

iv. With respect to the Subject/Title field, the parties may substitute a description of the communication where the content of these fields may reveal privileged information. The producing party shall identify each instance in which it has modified the content of the Subject/Title field.

v. The documents identified from the above-described search need not be reviewed before being logged and withheld from production.

vi. Should a receiving party in good faith have reason to believe a particular entry on the metadata-generated log does not reflect a privileged document, the receiving party may request and the producing party will generate a privilege log for that entry in compliance with Fed. R. Civ. P. 26(b)(5).

b. **Outside Counsel:** The parties may use the following protocol to isolate and log ESI involving outside counsel:

i. Each party may search the text of electronic documents and any associated metadata fields for names of outside counsel who were retained by the party to provide legal services during the relevant time period.

ii. The parties will not be required to disclose the names of outside counsel to be included in the search, except to the extent any of the names appear in the log for those documents captured by the search.

iii. A log of the documents resulting from the electronic privilege search will be generated from the following corresponding metadata fields to the extent they exist as electronic metadata associated with the original electronic documents, and the producing party shall provide such logs to the receiving party(ies):

1. Author

-15-

      2.     Subject/Title

      3.     Sender

      4.     Recipient

      5.     CC

      6.     BCC

      7.     Sent Date/Time

      iv.     With respect to the Subject/Title field, the parties may substitute a description of the communication where the content of these fields may reveal privileged information. The producing party shall identify each instance in which it has modified the content of the Subject/Title field.

      v.     The documents identified from the above-described search need not be reviewed before being logged and withheld from production.

      vi.     Should a party in good faith have reason to believe a particular entry on the metadata-generated privilege log does not reflect a privileged document, the receiving party may request and the producing party will generate a privilege log for that entry in compliance with Fed. R. Civ. P. 26(b)(5).

## 7. LIMITATIONS

      a.     Within twenty-five (25) days of entry of an order denying Defendants' motion to dismiss, the parties will meet and confer regarding the following:

      i.     Whether to limit the scope of production of certain categories of documents to documents created between certain time periods;

      ii.     The identity of individual custodian's hard drives or portions of shared

drives that a party reasonably believes are not reasonably likely to contain documents associated with relevant custodians, the reasons for such belief, and whether to limit or exclude production of documents from such hard drives or shard drives; and

        iii.        Whether to impose any limitations on discovery of Bloomberg messages.

    b.    Consistent with F.R.C.P. 26(b)(2)(B) a party shall not provide discovery of ESI from sources that the party identifies as not reasonably accessible because of undue burden or costs. On a motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of F.R.C.P. 26(b)(2)(C). The Court may specify conditions for the discovery.

    c.    Notwithstanding anything to the contrary, recorded telephone or voicemail messages are not discoverable except upon a showing of good cause.

    d.    Consistent with F.R.C.P. 37(e), the parties shall not be obligated under this Order to produce any ESI that is no longer within their possession, custody or control (i.e. lost or deleted) as a result of the routine, good-faith operation of an electronic information system.

//

//

//

//

//

//

//

1068459.2

## 8. PRESERVATION OF RIGHTS AND PRIVILEGES

Nothing contained in this Order shall affect the right, if any, of any party or witness to make any type of objection, claim, or other response to discovery requests, including, without limitation, interrogatories, requests for admissions, requests for production of documents or questions at a deposition. Nor shall this Order be construed as a waiver by any party of any legally cognizable privilege to withhold any information protected by such privilege, or of any right which any party may have to assert such privilege at any stage of this litigation.

**IT IS SO ORDERED:**

_____  12/18/12
The Honorable Harold Baer, Jr.
United States District Judge

Dated: December 12, 2012                    Respectfully submitted,


By: _____

Dennis D. Parker
Laurence M. Schwartztol
Rachel E. Goodman
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
Facsimile: (212) 549-2651

Stuart T. Rossman
Charles M. Delbaum
Arielle Cohen
The National Consumer Law Center
7 Winthrop Square, 4th Floor
Boston, MA 02210
Telephone: (617) 542-8010

-18-

1068459.2

Facsimile: (617) 542-8028

Michael J. Steinberg
Kary L. Moss
Sarah L. Mehta
American Civil Liberties Union Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
Telephone: (313) 578-6814
Facsimile: (313) 578-6811

Elizabeth J. Cabraser
Michael W. Sobol
Lieff Cabraser Heimann and Bernstein LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Rachel J. Geman
Lieff Cabraser Heimann and Bernstein LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
*Counsel for Plaintiffs*

By: /s/ Noah Levine / with permission by NDR

Noah A. Levine
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

David W. Ogden
Brian M. Boynton
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6440
Facsimile: (202) 663 6363
*Counsel for Defendants*

-19-

1068459.2