**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BEVERLY ADKINS, CHARMAINE WILLIAMS,
REBECCA PETTWAY, RUBBIE McCOY,
WILLIAM YOUNG, on behalf of themselves and all
others similarly situated, and MICHIGAN LEGAL
SERVICES,

Plaintiffs,

    v.

MORGAN STANLEY, MORGAN STANLEY &
CO. LLC, MORGAN STANLEY ABS CAPITAL I
INC., MORGAN STANLEY MORTGAGE
CAPITAL INC., and MORGAN STANLEY
MORTGAGE CAPITAL HOLDINGS LLC,

Defendants.

1:12-cv-7667-HB

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ii

INTRODUCTION ........................................................................................................1

BACKGROUND ..........................................................................................................4

ARGUMENT ................................................................................................................7

I.     PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS ..............................................................................................7

     A.     Plaintiffs' Claims Are Outside Of The Relevant Limitation Periods ....................7

     B.     There Is No Basis For Tolling The Applicable Limitation Periods......................9

          1.     A Discovery Rule Does Not Apply ................................................9

          2.     The Continuing Violation Doctrine Does Not Apply ..............................11

          3.     Plaintiffs Have Not Adequately Pled Fraudulent Concealment Or Breach Of A Duty To Disclose..................................................12

II.     MORGAN STANLEY CANNOT BE HELD LIABLE FOR THE ALLEGED IMPACTS OF NEW CENTURY'S LENDING PRACTICES .........................................13

     A.     The Fair Housing Act Rejects Plaintiffs' Theory of Liability ..............................14

     B.     The Equal Credit Opportunity Act Also Rejects Plaintiffs' Liability Theory ....................................................................................17

     C.     ELCRA Also Rejects Plaintiffs' Liability Theory................................................19

III.     THE COMPLAINT FAILS TO ALLEGE A VALID DISPARATE IMPACT CLAIM AGAINST MORGAN STANLEY ........................................................19

     A.     Plaintiffs Do Not Allege That They Qualified For Better Loans..........................20

     B.     Plaintiffs Fail Adequately To Allege That Morgan Stanley Discriminated Against African-American Borrowers..................................................21

          1.     The Disparate Impact Allegations Address The Wrong Borrowers .........21

          2.     The Disparate Impact Allegations Address The Wrong Type Of Loans.......................................................................................23

          3.     Plaintiffs Fail Adequately To Allege That Morgan Stanley Policies Or Practices Caused The Asserted Disparate Impact ..............................24

IV.     PLAINTIFFS DO NOT HAVE STANDING................................................26

V.     PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE OR DECLARATORY RELIEF ....................................................................................29

CONCLUSION............................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adelphia Recovery Trust v. Bank of America*,
  2010 WL 2077214 (S.D.N.Y 2010)........................................................................28

*Amidax Trading Group v. S.W.I.F.T. SCRL*,
  671 F.3d 140 (2d Cir. 2011)................................................................................26

*Archer v. Nissan Motor Acceptance Corp.*,
  550 F.3d 506 (5th Cir. 2008) ................................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................7

*Banchieri v. City of New York*,
  2001 WL 1018351 (S.D.N.Y. 2001)....................................................................29

*Barkley v. Olympia Mortgage Co.*,
  2007 WL 2437810 (E.D.N.Y. 2007)....................................................................20

*Barkley v. Olympia Mortgage Co.*,
  2010 WL 3709278 (E.D.N.Y. 2010)................................................................ 19-20

*Bennett v. Spear*,
  520 U.S. 154 (1997)..............................................................................................28

*Betsey v. Turtle Creek Associates*,
  736 F.2d 983 (4th Cir. 1984) ..............................................................................22

*Boucher v. Syracuse University*,
  164 F.3d 113 (2d Cir. 1999)................................................................................27

*Brown v. Coach Stores, Inc.*,
  163 F.3d 706 (2d Cir. 1998)................................................................................26

*Byrnie v. Town of Cromwell*,
  243 F.3d 93 (2d Cir. 2001)..................................................................................26

*Cacchillo v. Insmed, Inc.*,
  638 F.3d 401 (2d Cir. 2011)................................................................................29

*Cada v. Baxter Healthcare Corp.*,
  920 F.2d 447 (7th Cir. 1990) ..............................................................................13

*Carver v. City of New York*,
 621 F.3d 221 (2d Cir. 2010)..................................................................27

*Cervantes v. Countrywide Home Loans, Inc.*,
 2009 WL 3157160 (D. Az. 2009) ..........................................................12

*Citgo Petroleum Corp. v. Bulk Petroleum Corp.*,
 2010 WL 3212751 (N.D. Okla. 2010) ......................................................8

*City of Cleveland v. Ameriquest Mortgage Securities, Inc.*,
 615 F.3d 496 (6th Cir. 2010) .................................................................24

*City of Los Angeles v. Lyons*,
 461 U.S. 95 (1983)..................................................................................30

*Claybrooks v. Primus Automotive Financial Services., Inc.*,
 363 F. Supp. 2d 969 (M.D. Tenn. 2005)...............................................9, 10

*Clement-Rowe v. Michigan Health Care Corp.*,
 538 N.W.2d 20 (Mich. Ct. App. 1995) ..................................................13

*Colaianni v. Stuart Frankel Development Corp., Inc.*,
 2009 WL 1717388 (Mich. Ct. App. 2009)..............................................10

*Darensburg v. Metropolitan Transportation Commission*,
 636 F.3d 511 (9th Cir. 2011) .................................................................22

*Delaware State College v. Ricks*,
 449 U.S. 250 (1980)................................................................................11

*Deshawn E. v. Safir*,
 156 F.3d 340 (2d Cir. 1998)...................................................................29

*Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*,
 692 N.W.2d 398 (Mich. Ct. App. 2004) ................................................13

*Fort v. Am. Federation of State, County & Municipal Employees*,
 375 F. App'x 109 (2d Cir. 2010) ...........................................................30

*Franklin Building Corp. v. City of Ocean City*,
 946 F. Supp. 1161 (D.N.J. 1996) ...........................................................30

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services. (TOC), Inc.*,
 528 U.S. 167 (2000)................................................................................29

*Gallagher v. Magner*,
 636 F.3d 380 (8th Cir. 2010) .................................................................19

*Garcia v. Brockway*,
   526 F.3d 456 (9th Cir. 2008) ...................................................................9, 11, 12

*Garcia v. Johanns*,
   444 F.3d 625 (D.C. Cir. 2006) ............................................................................19

*Garg v. Macomb County Community Mental Health Services.*,
   696 N.W.2d 646 (Mich. 2005)...........................................................................8, 12

*Golden v. City of Columbus*,
   404 F.3d 950 (6th Cir. 2005) ..............................................................................19

*Graoch Associates #33, L.P. v. Louisville/Jefferson County Metro Human Relations
   Commission*, 508 F.3d 366 (6th Cir. 2007)........................................................22

*Great Plains Trust Co. v. Union Pacific Railroad Co.*,
   492 F.3d 986 (8th Cir. 2007) ..............................................................................12

*Greater New Orleans Fair Housing Action Center v. U.S. Department of Housing &
   Urban Development*, 639 F.3d 1078 (D.C. Cir. 2011) ....................................22, 23

*Grimes v. Fremont General Corp.*,
   785 F. Supp. 2d 269 (S.D.N.Y. 2011)...............................................................12, 20

*Hallmark Developers, Inc. v. Fulton County*,
   466 F.3d 1276 (11th Cir. 2006) ..........................................................................22

*Harris v. City of New York*,
   186 F.3d 243 (2d Cir. 1999)................................................................................12

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982)............................................................................................11

*Hawecker v. Sorensen*,
   2011 WL 98757 (E.D. Cal. 2011).........................................................................30

*Hernandez v. Sutter West Capital*,
   2010 WL 3385046 (N.D. Cal. 2010) ....................................................................12

*Hinds County v. Wachovia Bank N.A.*,
   620 F. Supp. 2d 499 (S.D.N.Y. 2009)..................................................................13

*Huntington Branch, NAACP v. Town of Huntington*,
   844 F.2d 926 (2d Cir. 1988), *aff'd in part*, 488 U.S. 15 (1988) ..........................19

*In re Bank of America Corp. Securities Litigation*,
   756 F. Supp. 2d. 330 (S.D.N.Y. 2010)..................................................................13

*In re Enterprise Mortgage Acceptance Co., LLC, Securities Litigation,*
   391 F.3d 401 (2d Cir. 2004)..................................................................8

*In re Merrill Lynch Ltd. Partnerships Litigation,*
   154 F.3d 56 (2d Cir. 1998)..................................................................13

*In re Taxable Municipal Bond Securities Litigation,*
   51 F.3d 518 (5th Cir. 1995) ...............................................................27

*JSG Trading Corp. v. Tray-Wrap, Inc.,*
   917 F.2d 75 (2d Cir. 1990)..................................................................30

*King v. Ameriquest Mortgage Co.,*
   2009 WL 3681688 (D. Md. 2009) ......................................................12

*Koch v. Christie's International PLC,*
   699 F.3d 141 (2d Cir. 2012)................................................................12

*Kronisch v. United States,*
   150 F.3d 112 (2d Cir. 1998)................................................................10

*Kuchmas v. Towson University,*
   2007 WL 2694186 (D. Md. 2007) ......................................................10

*LeBlanc-Sternberg v. Fletcher,*
   67 F.3d 412 (2d Cir. 1995)..................................................................19

*Lee v. Board of Governors of Federal Reserve Systems,*
   118 F.3d 905 (2d Cir. 1997)................................................................27

*Levey v. CitiMortgage, Inc.,*
   2009 WL 2475222 (N.D. Ill. 2009) ..............................................15, 18

*M & T Mortgage Corp. v. White,*
   736 F. Supp. 2d 538 (E.D.N.Y. 2010) ...............................................20

*Malave v. Potter,*
   320 F.3d 321 (2d Cir. 2003)..........................................................21, 26

*Masters v. Wilhelmina Model Agency, Inc.,*
   2003 WL 1990262 (S.D.N.Y. 2003)...................................................13

*Matthews v. New Century Mortgage Corp.,*
   185 F. Supp. 2d 874 (S.D. Ohio 2002) ..............................................20

*Melendez v. Illinois Bell Telephone Co.,*
   79 F.3d 661 (7th Cir. 1996) ...............................................................27

v

*Mencer v. Princeton Square Apartments*,
    228 F.3d 631 (6th Cir. 2000) ........................................................................19, 20

*Mitan v. Campbell*,
    706 N.W.2d 420 (Mich. 2005)................................................................................8

*Moseke v. Miller & Smith, Inc.*,
    202 F. Supp. 2d 492 (E.D. Va. 2001) ..................................................................10

*Mountain Side Mobile Estates Partnership v. Secretary of Housing & Urban*
    *Development*, 56 F.3d 1243 (10th Cir. 1995) ......................................................21

*Naional Council of La Raza v. Mukasey*,
    283 F. App'x 848 (2d Cir. 2008) .........................................................................28

*Ng v. HSBC Mortgage Corp.*,
    2010 WL 889256 (E.D.N.Y. 2010).....................................................................26

*Ohio Civil Rights Commission v. Wells Fargo Bank*,
    2012 WL 1288489 (N.D. Ohio 2012)..................................................................12

*Pacific Capital Bank, N.A. v. Connecticut*,
    542 F.3d 341 (2d Cir. 2008)................................................................................27

*Palmieri v. Town of Babylon*,
    2006 WL 1155162 (E.D.N.Y. 2006)....................................................................27

*Pettineo v. GE Money Bank*,
    2011 WL 93065 (E.D. Pa. 2011) .........................................................................30

*Powell v. American General Financial, Inc.*,
    310 F. Supp. 2d 481 (N.D.N.Y. 2004).................................................................26

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)................................................................................29

*S.E.C. v. Gabelli*,
    653 F.3d 49 (2d Cir. 2011), *cert. granted*, 133 S. Ct. 97 (2012) ...........................13

*Singh v. Wells*,
    445 F. App'x 373 (2d Cir. 2011) .........................................................................13

*Smith v. Chrysler Financial Co.*,
    2004 WL 3201002 (D.N.J. 2004) ........................................................................30

*Smith v. City of Jackson*,
    544 U.S. 228 (2005)........................................................................................21, 26

*Smith v. Xerox Corp.*,
   196 F.3d 358 (2d Cir. 1999)................................................................21

*Starr v. Sony BMG Music Entertainment*,
   592 F.3d 314 (2d Cir. 2010)..................................................................7

*Steel Co. v. Citizens for a Better Environment*,
   523 U.S. 83 (1998)................................................................................29

*Stewart v. Bank of New York Mellon*,
   2011 WL 3267321 (D. Ariz. 2011)......................................................16

*Stokes v. JPMorgan Chase Bank, NA*,
   2012 WL 527600 (D. Md. 2012) ...........................................................8

*Thiel v. Veneman*,
   859 F. Supp. 2d 1182 (D. Mont. 2012)............................................9, 12

*Thompson v. Mountain Peak Assocs., LLC*,
   2006 WL 1582126 (D. Nev. 2006) ........................................................9

*Ticor Title Insurance Co. v. Cohen*,
   173 F.3d 63 (2d Cir. 1999)...................................................................30

*Trentadue v. Buckler Automatic Lawn Sprinkler Co.*,
   738 N.W.2d 664 (Mich. 2007)..............................................................10

*TRW, Inc. v. Andrews*,
   534 U.S. 19 (2001)...........................................................................9, 10

*Tsombanidis v. West Haven Fire Department*,
   352 F.3d 565 (2d Cir. 2003).................................................................21

*United Air Lines, Inc. v. Evans*,
   431 U.S. 553 (1977).............................................................................12

*United States v. Brockamp*,
   519 U.S. 347 (1997).............................................................................10

*Vaughn v. Consumer Home Mortgage Co.*,
   297 F. App'x 23 (2d Cir. 2008) ...........................................................30

*Wards Cove Packaging Co. v. Atonio*,
   490 U.S. 642 (1989).............................................................................26

*Williams v. 2000 Homes Inc.*,
   2009 WL 2252528 (E.D.N.Y. 2009).....................................................20

vii

*Wright v. Castle Point Mortgage*,
  2006 WL 1468678 (D.N.J. 2006) ......................................................................16

**STATUTES**

15 U.S.C. § 1691(a) ............................................................................................17

15 U.S.C. § 1691a(e) ..........................................................................................17

15 U.S.C. § 1691e(f) ...................................................................................8, 9, 10

42 U.S.C. § 2000e–2(k) ......................................................................................26

42 U.S.C. § 3605(a) ..............................................................................14, 15, 16

42 U.S.C. § 3605(b) ............................................................................................14

42 U.S.C. § 3613(a) ......................................................................................7, 10

Mich. Comp. Laws § 37.2502 .............................................................................19

Mich. Comp. Laws § 37.2504 .............................................................................19

Mich. Comp. Laws § 600.5805 .............................................................................8

Mich. Comp. Laws § 600.5827 .............................................................................8

Pub. L. No. 111-203, § 1085(7), 124 Stat. 1376 (2010) ......................................8

**REGULATIONS**

12 C.F.R. § 202.2(*l*) ...............................................................................17, 18, 19

24 C.F.R. § 100.125 ...............................................................................15, 16, 17

68 Fed. Reg. 13,144 (Mar. 18, 2003) ..................................................................17

75 Fed. Reg. 57,252 (Sept. 20, 2010) ...................................................................8

**RULES**

Federal Rule of Civil Procedure 9(b) ..................................................................12

**OTHER**

Final Report of Michael J. Missal, Bankruptcy Court Examiner, 1 (Feb. 29, 2008),
  *available at* http://pdfserver.amlaw.com/ca/newcentury01_0327.pdf................8, 11

Assurance of Discontinuance (June 10, 2010), *available at*
   http://www.mass.gov/ago/docs/press/2010/2010-06-24-ms-settlement-
   attachment3.pdf.................................................................................................................11

Patricia Lindsay testimony to Congressional Financial Inquiry Commission, *available at*
   http://fcic-static.law.stanford.edu/cdn_media/fcic-testimony/2010-0407-Lindsay.pdf..... 10-11

## INTRODUCTION

Morgan Stanley opposes race discrimination in any form and takes very seriously any suggestion that Morgan Stanley's conduct could have adversely affected members of a protected class. The claims against Morgan Stanley here are entirely without foundation—a misguided effort to hold it liable for the purported impacts of the actions of another, unaffiliated company that ceased operating more than five years ago. Plaintiffs concede that Morgan Stanley did not originate the loans at issue and do not claim that Morgan Stanley intentionally discriminated against anyone. Their notion is that Morgan Stanley can nevertheless be held liable for an alleged pattern of discrimination caused by the acts of a lender that sold some of its loans to Morgan Stanley. This theory finds no support in the antidiscrimination laws as written and interpreted, is riddled with fundamental legal defects, and should be rejected.

In 70 pages of factual claims, Plaintiffs do *not* allege that Morgan Stanley targeted borrowers based on their race, treated borrowers differently based on their race, or took race into account in any respect when it purchased residential mortgages in the secondary mortgage market. Nor do Plaintiffs allege that Morgan Stanley's activities had any direct adverse impact on a protected group. Plaintiffs' core accusation is that *New Century Mortgage Company* ("New Century")—an entirely unaffiliated entity—targeted African-American borrowers and communities in Detroit, Michigan, to originate what Plaintiffs call "Combined-Risk Loans," a New Century practice they allege had a "disparate impact" on African-American borrowers. But New Century is now bankrupt, and so instead of suing the lender, Plaintiffs attempt to break new ground by claiming that Morgan Stanley—a mortgage purchaser that in most cases did not even purchase the loans at issue—should be held legally responsible for New Century's alleged discriminatory lending practices. In the end, Plaintiffs' unprecedented theory rests on a claim

1

that Morgan Stanley's racially neutral criteria for purchasing New Century's mortgages somehow incentivized New Century to adopt the allegedly discriminatory practices that, in turn, purportedly caused a disparate impact among New Century's customers.   The federal antidiscrimination laws do not countenance such an overreach.

Plaintiffs' complaint should be dismissed for several reasons:   They sued the wrong defendant, on the wrong theory, and far out of time.   The conduct alleged in the complaint dates back to the subprime mortgage boom between 2004 and 2007.   New Century has not been in business since that time.   But the statutes of limitations for Plaintiffs' claims under the Fair Housing Act ("FHA") and the Equal Credit Opportunity Act ("ECOA") are just two years, and the statute of limitations under the Michigan Elliott-Larsen Civil Rights Act ("ELCRA") is only three years.   Recognizing that their claims are obviously well out of time, Plaintiffs seek to invoke tolling.   But tolling is neither applicable nor appropriate in this case.   (Argument I.)

More fundamentally, there is no support for Plaintiffs' attempt to hold one company liable for the alleged disparate impacts of lending by another company on the basis that it purchased some of the allegedly offending company's loans.   The FHA prohibits discrimination in the purchase of mortgages, but it does not make a loan purchaser liable for a lender's alleged discrimination.   ECOA prohibits discrimination by a loan purchaser that participates in the decision to extend credit to a borrower, but it does not impose liability on a purchaser that simply sets forth general, neutral criteria for its purchases.   No case of which we are aware supports extending these statutes to secondary actors like Morgan Stanley in circumstances like those alleged here, and the case law directly rejects Plaintiffs' theory.   (Argument II.)

Nor do Plaintiffs' factual allegations support their claims.   To bring a "reverse redlining" claim, Plaintiffs must allege that they were qualified for loans on more favorable terms than

2

those they obtained.   The complaint is devoid of any such allegations with respect to any Plaintiff.   Further, in pursuing "disparate impact" claims, Plaintiffs may neither "cherry pick" one subset of the population affected by the challenged conduct nor improperly expand the relevant cohort to include persons with no connection to that conduct.   The complaint here does both:   It improperly seeks to establish an alleged disparate impact by limiting the analysis to borrowers in Detroit, despite the facts that New Century originated mortgage loans throughout the nation and that Morgan Stanley is not alleged to have restricted its challenged practices by geography.   The selected cohort is far too narrow in this respect.   Moreover, the complaint accuses Morgan Stanley of disparate impact discrimination based on an improper analysis of *all* New Century borrowers in the Detroit area, *including the many borrowers whose mortgages Morgan Stanley did not purchase*.   In this way, the cohort is far too broad.   There is another fundamental disconnect in Plaintiffs' disparate impact allegations:   Their *claim* is that African-American borrowers in Detroit received "Combined-Risk Loans" more frequently than white borrowers, but *the statistical allegations* in the complaint are about "high cost" loans.   Finally, Plaintiffs cannot plausibly allege that any disparate impact was caused by Morgan Stanley.   It was decisions by New Century, not Morgan Stanley, that produced any disparate impact. Indeed, Plaintiffs' own allegations make clear that the purported Morgan Stanley "policies" they challenge did not *require* New Century to issue the loans it did.  (Argument III.)

Plaintiffs' allegations are also insufficient to establish their standing to bring this suit. Plaintiffs have not alleged that they were qualified for loans on more favorable terms, and they have not pled facts showing that Morgan Stanley was responsible for any alleged injury.   Indeed, the complaint does not even allege that Morgan Stanley purchased four of the five Plaintiffs' mortgages.   The complaint thus fails adequately to allege that Plaintiffs suffered any injury in

fact or that any such injury is traceable to Morgan Stanley.  (Argument IV.)

Finally, Plaintiffs are not entitled to injunctive relief.  The case focuses exclusively on the practices of a lender that has been defunct for more than five years and thus presents no live case or controversy or likelihood of irreparable injury.  (Argument V.)

## BACKGROUND

Five African-American residents in the Detroit area and one Michigan non-profit legal services corporation filed this putative class action on October 15, 2012.  The individual plaintiffs (hereinafter "Plaintiffs") obtained mortgages from the subprime lender New Century between 2003 and 2006.  *See* Compl. ¶¶ 123-204.  Plaintiffs allege that they obtained "Combined-Risk Loans," a term they have coined and elaborately defined for purposes of this case.  *See id.* ¶¶ 129, 152, 164, 180, 196.  The complaint defines a "Combined-Risk Loan" as one that constitutes a "high-cost" loan under the Home Mortgage Disclosure Act ("HMDA"), because the interest rate (on a first-lien loan) exceeds the rate for comparable Treasuries by 3%, *see id.* ¶ 31, and in addition "contain[s] two or more of the following high-risk terms":

> (a) the loan was issued based upon the "stated income," rather than the verified income, of the borrower; (b) the debt-to-income ratio exceeds 55%; (c) the loan-to-value ratio is at least 90%; (d) the loan has an adjustable interest rate; (e) the loan has "interest only" payment features; (f) the loan has negative loan amortization features; (g) the loan has "balloon" payment features; and/or (h) the loan imposes prepayment penalties.

*Id.* ¶ 34.  Plaintiffs allege that a "Combined-Risk Loan" is "predatory" because it "place[s] the borrower at an excessive risk of default or foreclosure."  *Id.* ¶ 33.  Plaintiffs do not allege that they were qualified to receive mortgages on more favorable terms.

According to the complaint, Plaintiffs' mortgage loans were originated by New Century, *see id.* ¶¶ 129, 145, 152, 164, 179, 196, which allegedly "was among the most aggressive subprime lenders in the industry between 2004 and 2007," *id.* ¶ 37.  Starting as early as 2003,

Plaintiffs claim, New Century trained its employees to originate Combined-Risk Loans through methods that included fraud. *Id.* ¶¶ 84-85.   The complaint alleges that New Century also originated these loans, in part, through what it labels "reverse redlining," *id.* ¶¶ 99-104:   New Century allegedly "aggressively targeted African-American borrowers" and "specifically targeted certain metropolitan areas." *Id.* ¶ 81.   Plaintiffs do not allege that Morgan Stanley was at any time aware of the purported fraud, "redlining," or "targeting."

Based on these allegations, and based on HMDA data dating back to before 2007, Plaintiffs further assert that New Century's lending had a disparate impact on African-American borrowers in one metropolitan area—Detroit—which the complaint says was one of New Century's "primary targets." *Id.* ¶ 81.   The complaint's disparate impact allegations are based on statistics purporting to show that *New Century's* African-American borrowers in the Detroit area were more likely to obtain *high-cost* loans than white borrowers there; but it does not assert any statistics showing a disparate impact among borrowers who received so-called "Combined-Risk Loans." *See id.* ¶¶ 117-22.   There is thus an important disconnect in Plaintiffs' allegations: Although the rest of the complaint focuses on "Combined-Risk Loans," the statistics that allegedly show a disparate impact concern only "high-cost" loans.

Rather than sue New Century, which ceased operations in 2007 (*id.* ¶ 37), Plaintiffs seek to hold Morgan Stanley responsible on the theory that its desire to purchase mortgages allegedly caused New Century to break the law. *See id.* ¶ 4 ("In order to satisfy Morgan Stanley's demand for loans it could pool and securitize, New Century targeted African-American communities and borrowers in the Detroit area.").   But the complaint does not allege that Morgan Stanley *directed* New Century to target African-Americans or African-American neighborhoods, or even that Morgan Stanley was *aware* of any such targeting by New Century.   Nor does it allege that

5

Morgan Stanley had *any* input into New Century's decisions about the particular people to whom, or communities in which, New Century would lend.  Although the complaint asserts in conclusory terms that every New Century loan (and its terms) was no more than a response to Morgan Stanley's alleged demand for loans, according to Plaintiffs' own allegations, Morgan Stanley purchased fewer than half of the loans that New Century sold.  *See id.* ¶ 38.  Notably, the complaint alleges that Morgan Stanley purchased and securitized only *one* of the five Plaintiffs' mortgages.  *See id.* ¶ 174.

Plaintiffs' allegations about Morgan Stanley's policies and practices are conclusory. Plaintiffs maintain that those policies and practices—although facially neutral—"caused" and "led" New Century to originate Combined-Risk Loans and to target minorities.  *Id.* ¶¶ 5, 241, 255.  But Plaintiffs' specific allegations fail to support that claim.  The alleged Morgan Stanley "policies and practices" were: (1) allegedly purchasing New Century loans notwithstanding that some borrowers had high debt-to-income ratios and some loans were "stated income" loans, *see id.* ¶ 44; (2) allegedly purchasing New Century loans notwithstanding that some had high loan-to-value ratios, *see id.* ¶ 51; (3) allegedly requiring that a specified portion of the New Century loans in a particular 2005 transaction have adjustable interest rates and that another portion of loans in that transaction have prepayment penalties, *see id.* ¶ 56-57; (4) allegedly providing financing to New Century, *see id.* ¶ 18; and (5) allegedly purchasing loans from New Century even though some did not comply with "sound underwriting practices," *id.* ¶ 70-71.  At most, all that is pled is that in connection with one particular agreement to purchase mortgage loans from New Century, Morgan Stanley "required" that the pool it would purchase contain a certain percentage of loans with either of two of the eight characteristics Plaintiffs have included in their definition of "Combined-Risk Loans"—adjustable rates and prepayment penalties.

6

Plaintiffs assert claims under the FHA, ECOA, and Michigan's ELCRA. *See id.* ¶¶ 236-73. They seek monetary damages on their own behalf, but—somewhat incongruously—not for the class they seek to represent. *See id.* at p. 69. Plaintiffs seek "equitable monetary relief in the nature of disgorgement" for that class. *See id.* Finally, Plaintiffs seek injunctive relief even though New Century has been out of business for more than five years. *See id.*

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint with only "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). No effect is given to "legal conclusions couched as factual allegations." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (internal quotation marks omitted).

## I.      PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

The complaint should be dismissed because it was filed more than five years after the date of the last violation pled, well outside the two and three-year statutes of limitations applicable to Plaintiffs' claims, and there is no basis for tolling.

### A.      Plaintiffs' Claims Are Outside Of The Relevant Limitation Periods

Both the FHA and ECOA have a two-year statute of limitations. The FHA period runs from "the occurrence or the termination of an alleged discriminatory housing practice," 42 U.S.C. § 3613(a)(1)(A), and the ECOA period runs from "the date of the occurrence of the

violation," 15 U.S.C. § 1691e(f) (2006).[1]   It is not clear precisely what acts Plaintiffs claim constituted the FHA and ECOA violations, but regardless, because the complaint confines its allegations to loans originated by New Century, the latest any such violations could have occurred was the spring of 2007, when New Century declared bankruptcy and ceased making mortgage loans.  *See* Compl. ¶¶ 2, 37, 38.[2]  The last of Plaintiffs' mortgages is dated even earlier, in July 2006.  *See id.* ¶ 179.  Thus, by any measure, Plaintiffs' claims were filed too late.

The statute of limitations on an ELCRA claim is three years.  *See Garg v. Macomb Cnty. Cmty. Mental Health Servs.*, 696 N.W.2d 646, 659 (Mich. 2005) (citing Mich. Comp. Laws § 600.5805(10)).  The limitations period begins to run when the ELCRA claim "first accrue[s]." Mich. Comp. Laws § 600.5805(1); *Mitan v. Campbell*, 706 N.W.2d 420, 422 (Mich. 2005).  An ELCRA claim "accrues at the time the wrong upon which the claim is based was done."  Mich. Comp. Laws § 600.5827.  Here, the alleged "wrong" was first "done" when New Century originated the Plaintiffs' mortgages between 2003 and 2006.  *See* Compl. ¶¶ 129, 145, 151, 164, 179, 196.  The complaint is thus well outside the ELCRA limitations period as well.

---

[1]  The Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") amended ECOA to provide for a five-year statute of limitations effective July 21, 2011.  *See* Pub. L. No. 111-203, § 1085(7), 124 Stat. 1376 (2010); *see id.* § 1100H; 75 Fed. Reg. 57,252 (Sept. 20, 2010) (setting July 21, 2011 date).  Because Dodd-Frank does not indicate a clear intent to apply the new period retroactively, it cannot be read to resurrect previously time-barred claims.  *See In re Enter. Mortg. Acceptance Co., LLC, Sec. Litig.*, 391 F.3d 401, 410 (2d Cir. 2004) (clear statement requirement); *Stokes v. JPMorgan Chase Bank, NA*, 2012 WL 527600, at *7 n.4 (D. Md. 2012); *Citgo Petroleum Corp. v. Bulk Petroleum Corp.*, 2010 WL 3212751, at *3 n.4 (N.D. Okla. 2010).  In any event, Plaintiffs' claims here would still be time-barred under the new period because the complaint was filed five-and-a-half years after New Century's bankruptcy, when it ceased to do business.

[2]  New Century filed for bankruptcy on April 2, 2007.  *See* Final Report of Michael J. Missal, Bankruptcy Court Examiner, 1 (Feb. 29, 2008), *available at* http://pdfserver.amlaw.com/ca/newcentury01_0327.pdf.  *Compare* Compl. ¶ 37 (March 2007).

B.      **There Is No Basis For Tolling The Applicable Limitation Periods**

Plaintiffs' three asserted bases for tolling (Compl. ¶¶ 221-24) all fail.

1.      **A Discovery Rule Does Not Apply**

No discovery rule applies to Plaintiffs' claims.  Courts of appeals have held that FHA and ECOA claims are not subject to a discovery rule.  *See Garcia v. Brockway*, 526 F.3d 456, 465 (9th Cir. 2008) (en banc) ("Holding that each individual plaintiff has a claim until two years after he discovers [an FHA violation] would contradict the text of the FHA, as the statute of limitations for private civil actions begins to run when the discriminatory act occurs—not when it's encountered or discovered."); *Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 508 (5th Cir. 2008) (rejecting discovery rule under ECOA, noting that it "provides in sweeping and direct language that '[n]o action shall be brought later than two years from the date of the occurrence of the violation'" (quoting 15 U.S.C. § 1691e(f))).

These circuit court decisions are grounded in well-established Supreme Court precedent. When a federal statute does not explicitly reference a discovery rule, such a rule should be implied only if doing so is consistent with the statute's "text and structure."  *TRW, Inc. v. Andrews*, 534 U.S. 19, 28 (2001).  The Supreme Court in *TRW* explained that a statute of limitations running from the "date of the occurrence of the violation" does not support a discovery rule.  *See id.* at 32 (considering language of prior version of statute).  Because the language of ECOA's statute of limitations is materially identical, the Fifth Circuit and several district courts have held that *TRW* forecloses implying a discovery rule into ECOA.  *See Archer*, 550 F.3d at 509; *Thiel v. Veneman*, 859 F. Supp. 2d 1182, 1187 (D. Mont. 2012); *Claybrooks v. Primus Auto. Fin. Servs., Inc.*, 363 F. Supp. 2d 969, 976 (M.D. Tenn. 2005).  Since *TRW*, courts have similarly refused to apply a discovery rule under the FHA, which uses materially similar

language ("the occurrence or the termination of an alleged discriminatory housing practice"). *See Thompson v. Mountain Peak Assocs., LLC*, 2006 WL 1582126, at *3 (D. Nev. 2006); *Kuchmas v. Towson Univ.*, 2007 WL 2694186, at *4 n.4 (D. Md. 2007); *Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 509 (E.D. Va. 2001).[3]

No discovery rule applies to Plaintiffs' ELCRA claim either. The Michigan Supreme Court has abolished the discovery rule, except where a statute explicitly provides for it. *See Trentadue v. Buckler Automatic Lawn Sprinkler Co.*, 738 N.W.2d 664, 670 (Mich. 2007) (statutory exceptions[ ] permitting discovery rule are "exclusive" and "preclude[ ] th[e] common-law practice of tolling accrual based on discovery"); *Colaianni v. Stuart Frankel Dev. Corp., Inc.*, 2009 WL 1717388, at *3 (Mich. Ct. App. 2009) (*Trentadue* "completely eliminated the common law discovery rule in Michigan"). ELCRA does not contain an explicit discovery rule.

Plaintiffs' claims would be late even if a discovery rule applied. All the key facts alleged in the complaint are based on public record sources that have been available for years. *See, e.g., Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998) (discovery rule delays claim's accrual only until "plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause"). These sources discuss the phenomenon of "reverse redlining" nationwide and in Detroit;[4] the use of allegedly predatory practices by subprime

---

[3] The structure of both the FHA and ECOA further demonstrates Congress's intent that no discovery rule apply. "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *TRW*, 534 U.S. at 28 (internal quotation marks omitted); *see also United States v. Brockamp*, 519 U.S. 347, 352 (1997). Both the FHA and ECOA contain specific narrow grounds for tolling or delaying the accrual of a claim, but neither includes a discovery rule. *See* 42 U.S.C. § 3613(a)(1)(B); 15 U.S.C. § 1691e(f); *see also Claybrooks*, 363 F. Supp. 2d at 976 (holding that ECOA's narrow express exception indicates that no discovery rule applies).

[4] *See* Compl. ¶¶ 101-04, 106, 113-14 (reports and academic articles from 1998 to 2010 on reverse redlining nationally and in Detroit).

lenders, including New Century;[5] alleged racial disparities in New Century's lending in the

Detroit area;[6] Morgan Stanley disclosures regarding New Century's underwriting standards;[7] and

Morgan Stanley's role as purchaser of subprime loans, including New Century loans.[8]

## 2.    The Continuing Violation Doctrine Does Not Apply

Plaintiffs' "continuing violations" argument (Compl. ¶ 224) is also meritless.   It

"confuse[s] a continuing violation with the continuing effects of a past violation." *Garcia*, 526

F.3d at 462.  Under the continuing violation doctrine, a complaint challenging a series of acts "is

timely when it is filed within [the limitations period] of the last asserted occurrence of that

practice." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381 (1982).  Here, the challenged

acts are either New Century's origination, or Morgan Stanley's purchase, of the loans at issue.

Either way, the acts occurred prior to the spring of 2007, when New Century ceased operations.

Neither Plaintiffs' continuing obligations to make mortgage payments nor their alleged

risk of foreclosure constitute continuing violations.  *See* Compl. ¶¶ 247, 261, 272.  The alleged

discriminatory act occurred when New Century made the loans to Plaintiffs; payment obligations

and the risk of foreclosure are effects of that earlier act.  "The proper focus is upon the time of

---

[5]   *See id.* ¶ 32 (2007 *Wall Street Journal* article); *id.* ¶ 50 (April 2008 NPR story, *available at* http://m.npr.org/news/front/89505982); *id.* ¶¶ 76, 85 (April 2010 testimony by former New Century underwriter Patricia Lindsay to Congressional Financial Inquiry Commission, *available at* http://fcic-static.law.stanford.edu/cdn_media/fcic-testimony/2010-0407-Lindsay.pdf); *id.* ¶¶ 78-79 (New Century bankruptcy examiner's report from February 2008, *available at* http://pdfserver.amlaw.com/ca/newcentury 01_0327.pdf); *id.* ¶¶ 82-84 (New Century pre-bankruptcy securities disclosures and 2003 training sessions regarding subprime loans).

[6]   *See* Compl. ¶¶ 37, 90-91, 113-22 (relying on data disclosed by New Century under HMDA from 2004 to 2006 to allege racial disparities in New Century lending patterns); *id.* ¶¶ 88-96 (relying on loan-level data for Morgan Stanley ABS Capital I Inc. loan pools 2007-NC2 and 2007-NC4 available in July 2008 Columbia Collateral File, http://www.ctslink.com).

[7] *See id.* ¶ 72 (2007 securities prospectus).

[8]   *See id.* ¶ 41 (2004 Annual Report and 2007 *New York Times* article); *id.* ¶¶ 48, 52, 62 (June 10, 2010 Assurance of Discontinuance, *available at* http://www.mass.gov/ago/docs/press/ 2010/2010-06-24-ms-settlement-attachment3.pdf); *id.* ¶ 49 (2008 radio broadcast).

the [alleged] discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980).  Even where past actions may "have a continuing impact," "the critical question is whether any present *violation* exists." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977).  "A continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred discriminatory act." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999); *see also Garcia*, 526 F.3d at 462.  Courts thus regularly and correctly reject the argument that the obligation to make payments on an allegedly discriminatory mortgage is a continuing violation.[9]

Finally, under clear Michigan authority, the continuing violation doctrine does not apply to an ELCRA claim.  *See Garg*, 696 N.W.2d at 658 (holding that "[n]othing" in ELCRA's statute of limitations "permits a plaintiff to recover for injuries outside the limitations period when they are susceptible to being characterized as 'continuing violations,'" overruling *Sumner v. Goodyear Tire & Rubber Co.*, 398 N.W.2d 368 (Mich. 1986)).

### 3.    Plaintiffs Have Not Adequately Pled Fraudulent Concealment Or Breach Of A Duty To Disclose

Plaintiffs' "concealment" and "duty to disclose" arguments (Compl. ¶¶ 222-23) also fail. Plaintiffs have not met their burden of pleading fraudulent concealment with particularity, as is required under Federal Rule of Civil Procedure 9(b).  *See Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007); *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 291 (S.D.N.Y. 2011).  To invoke fraudulent concealment, Plaintiffs must demonstrate (among other things) that "the defendant wrongfully concealed material facts relating to

---

[9]   *See Thiel*, 859 F. Supp. 2d at 1198; *Hernandez v. Sutter West Capital*, 2010 WL 3385046, at *3 (N.D. Cal. 2010); *King v. Ameriquest Mortg. Co.*, 2009 WL 3681688, at *3 (D. Md. 2009); *Cervantes v. Countrywide Home Loans*, 2009 WL 3157160, at *7 (D. Az. 2009); *Ohio Civil Rights Comm'n v. Wells Fargo Bank*, 2012 WL 1288489, at *5 (N.D. Ohio 2012).

defendant's wrongdoing."  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (internal quotation marks omitted).  To satisfy this element, Plaintiffs must show that Defendants "took affirmative steps beyond the allegedly wrongful activity itself to conceal [their] activity from the plaintiff."  *S.E.C. v. Gabelli*, 653 F.3d 49, 59-60 (2d Cir. 2011), *cert. granted*, 133 S. Ct. 97 (2012); *see also Cada v. Baxter Healthcare Corp.*, 920 F.2d 447, 451 (7th Cir. 1990); *Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*, 692 N.W.2d 398, 405 (Mich. Ct. App. 2004).  Here, Plaintiffs do not allege any affirmative acts of concealment.  Plaintiffs' "conclusory allegations of fraudulent concealment are insufficient to toll a statute of limitations." *Singh v. Wells*, 445 F. App'x 373, 378 (2d Cir. 2011) (citing *Armstrong v. McAlpin*, 699 F.2d 79, 90 (2d Cir. 1983)).  Nor do Plaintiffs allege any fact or law supporting their assertion that Morgan Stanley had a "duty to disclose to the Plaintiffs and the Class the true character, quality, and nature of its policies, practices and conduct."  Compl. ¶ 223.  That failure is also fatal.  *See In re Bank of America Corp. Sec. Litig.*, 756 F. Supp. 2d 330, 358-59 (S.D.N.Y. 2010) (plaintiff must plausibly plead breach of duty to disclose); *Clement-Rowe v. Mich. Health Care Corp.*, 538 N.W.2d 20, 23 (Mich. Ct. App. 1995).[10]

## II.  MORGAN STANLEY CANNOT BE HELD LIABLE FOR THE ALLEGED IMPACTS OF NEW CENTURY'S LENDING PRACTICES

There is no precedent in antidiscrimination law for the theory under which Plaintiffs seek to implicate Morgan Stanley in the alleged disparate impacts of New Century's policies and

---

[10]  Plaintiffs also fail adequately to allege that they exercised "reasonable diligence."  *See Koch*, 699 F.3d at 157 (plaintiff must show "due diligence"); *Hinds Cnty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 522 (S.D.N.Y. 2009) (holding that "a brief reference to 'reasonable diligence,' coupled with general allegations of secrecy and deception" fail to satisfy plaintiffs' "burden under Rule 9(b) to plead the third prong of fraudulent concealment with particularity"); *see also In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998); *Masters v. Wilhelmina Model Agency, Inc.*, 2003 WL 1990262, at *2 (S.D.N.Y. 2003) (Baer, J.).  Nor could they, given that the complaint is explicitly based on information that has been public for years.  *See supra* at 10-11 & nn. 4-8.

practices.  Plaintiffs allege that *New Century* discriminated against African-American borrowers in its lending transactions—*i.e.*, in the terms of the loans that *New Century* made to its borrowers.  Plaintiffs claim that *New Century* "targeted African-American communities" (Compl. ¶¶ 4, 241) and that, in doing so, *New Century* made more high-cost loans to African-Americans than whites (*id.* ¶¶ 117-21).  Plaintiffs seek to impose liability on Morgan Stanley for the impacts of New Century's allegedly discriminatory lending decisions because, they claim, Morgan Stanley's purchasing of New Century mortgages "enabled" or "led" New Century to act as it did.  *Id.* ¶¶ 1, 241, 255.  No case has ever adopted this highly attenuated third-party liability theory.  The statutes definitively reject it.

**A.    The Fair Housing Act Rejects Plaintiffs' Theory of Liability**

Both the FHA's text and the cases interpreting it reject Plaintiffs' third-party liability theory.  Plaintiffs assert (Compl. ¶¶ 237, 239) that Morgan Stanley violated the FHA based on the statute's application to entities "engaging in" the "purchasing of loans … secured by residential real-estate."  42 U.S.C. § 3605(a), (b)(1)(B).[11]  But the FHA is specific about the antidiscrimination rule it applies to such purchasers, and it does *not* cover the theory of so-called "enabling" or "leading" advanced by Plaintiffs here.  The statute makes it unlawful for an entity engaged in the purchase of mortgage loans "to discriminate against any person in making available *such a transaction*" or to discriminate "in the terms or conditions of *such a transaction*."  *Id.* § 3605(a) (emphasis added).  The phrase "such a transaction" in the statute refers to the mortgage loan *purchase* transaction, not the origination of the mortgage.  The text is unambiguous.  Section 3605 reaches the secondary mortgage market by prohibiting purchasers of mortgage loans from discriminating in making purchases available, as would be the case if a

---

[11]   For the Court's convenience, Defendants submit an Appendix containing the full text of the relevant statutes and regulations.

purchaser of mortgages refuses to purchase loans based on the borrower's race.  The required analysis would look at the purchaser's—in this case, *Morgan Stanley's*—transactions, not the lender's transactions.  Section 3605 also reaches the secondary mortgage market by prohibiting purchasers from discriminating in the terms of *its* loan purchases, for example, if the purchaser imposes unfavorable purchase terms based on the borrower's race.  But the FHA's text notably does *not* say that a purchaser can be liable for a lender's discrimination in its transactions with borrowers.  To the contrary, § 3605(a) is clear that an entity engaged in a mortgage purchase transaction is liable only for discrimination in "such a transaction," not in the underlying mortgage origination transaction.  Again, the statute requires a focus on *Morgan Stanley's* transactions, not those of another entity.

The implementing regulation confirms what the statutory text already makes plain.  Title 24 C.F.R. § 100.125, states that it is unlawful for an "entity engaged in the purchasing of loans … secured by residential real estate[] *to refuse to purchase* such loans … or to impose different terms or conditions *for such purchases*, because of race."  *Id.* § 100.125(a) (emphasis added).  Like the statute it implements, therefore, § 100.125(a) focuses its antidiscrimination rule on the purchase transactions.  The examples of unlawful conduct listed in the regulation confirm that focus.  The regulation states that it is unlawful to "*[p]urchas[e] loans* … secured by dwellings in certain communities or neighborhoods but not in others because of" race, and to "*[p]ool[] or packag[e] loans* … differently because of race."  *Id.* §§ 100.125(b)(1), (2) (emphasis added).  Thus, in both examples, the purchaser is prohibited from discriminating in *its own purchase transactions*.  Third-party liability based on the actions of unaffiliated lenders in their mortgage transactions is simply outside the scope of the regulation.

Cases applying the FHA and its implementing regulation further confirm the specific

scope of the statute's application to purchasers.  For example, in *Levey v. CitiMortgage, Inc.*, 2009 WL 2475222 (N.D. Ill. 2009), the court dismissed the plaintiffs' FHA claim against the assignees of their mortgage loans because, "[w]hile FHA regulations prohibit purchasers of loans from refusing 'to purchase loans … or … impos[ing] different terms or conditions for such purchases' based on race," the plaintiffs "failed to allege that CitiMortgage imposed different terms or conditions on the 'purchase' of" their mortgages based on their race.  *Id.* at *2 (alterations in original).  As another court explained:  "Fundamentally, FHA claims are based upon discriminatory activity by the Defendant," and § 100.125(a) "only provides FHA liability for assignees who themselves engage in unlawful conduct."  *Stewart v. Bank of New York Mellon*, 2011 WL 3267321, at *4 (D. Ariz. 2011) (internal quotation marks omitted).  Where, as here, the alleged discrimination was instead by the lender based on the loan terms themselves, FHA liability cannot reach a purchaser who was not involved in the lender's transaction with the borrower.  *See Wright v. Castle Point Mortg.*, 2006 WL 1468678, at *4 (D.N.J. 2006) ("Because Plaintiff alleges discrimination in the terms of the loan contract, and Wells Fargo did not originate the loan, Plaintiff has failed to state a cause of action against Wells Fargo.").

Plaintiffs' FHA claim thus fails because it does not allege that Morgan Stanley discriminated in its own purchases of New Century mortgages.  Plaintiffs do not allege that Morgan Stanley purchased loans based on the race of the borrowers.  *See* 42 U.S.C. § 3605(a); 24 C.F.R. § 100.125(b)(2).  They do not allege that the terms or conditions of Morgan Stanley's mortgage purchases varied based on the race of the borrower.  *See* 42 U.S.C. § 3605(a).  They do not allege that Morgan Stanley purchased loans only from certain communities or neighborhoods, but not others, based on race.  *See* § 100.125(b)(1).  Nor do they contend that Morgan Stanley was involved in New Century's specific lending decisions.  Plaintiffs' theory

16

instead is that *New Century* discriminated in the terms of the loans it made to borrowers and that

Morgan Stanley somehow should be held responsible for that alleged discrimination under a

vague enablement or incentivization theory.  There is no such cause of action under the FHA.

### B.      The Equal Credit Opportunity Act Also Rejects Plaintiffs' Liability Theory

Like the FHA, ECOA assigns liability to a defendant for its own discriminatory conduct

or transactions, not for alleged discrimination by another party.   The statute applies to

"creditors," making it "unlawful for any *creditor* to discriminate" against an "applicant, with

respect to any aspect of a credit transaction," on the basis of race.   15 U.S.C. § 1691(a)

(emphasis added).  Although the statute defines "creditor" to include an "assignee of an original

creditor," that is true only if the assignee itself "participates in the decision to extend, renew, or

continue credit."  *Id.* § 1691a(e).  The implementing regulation, Regulation B, clarifies that this

"participation" must specifically include "setting the terms of credit."  12 C.F.R. § 202.2(*l*).  The

participation must also be in the credit decisions on specific, individual loans.   The Federal

Reserve Board explained this when amending the rule in 2003:

> [C]ommenters asked that the Board clarify that a potential assignee that
> establishes terms of general applicability for credit extensions that it may acquire,
> but does not otherwise participate in setting the terms of individual loans, is not a
> creditor for purposes of the regulation.  The final rule clarifies that the definition
> of creditor includes those who make the decision to deny or extend credit, as well
> as those who negotiate and set the terms of the credit with the consumer.  *But a
> potential assignee who establishes underwriting guidelines for its purchases but
> does not influence individual credit decisions is not a creditor.*

68 Fed. Reg. 13,144, 13,145 (Mar. 18, 2003) (emphasis added).  Thus, a purchaser of mortgage

loans who announces in advance guidelines for loans it will purchase, but that does not

participate in setting the credit terms of individual loans, is not a "creditor."  Finally, Regulation

B provides that even if a party could otherwise be deemed a "creditor," it is not a "creditor" for

purposes of any and all violations committed by others.  To the contrary, "[a] person is not a

creditor regarding any violation of the Act or this regulation *committed by another creditor* unless the person knew or had reasonable notice of the act, policy, or practice that constituted the violation before becoming involved in the credit transaction."   12 C.F.R. § 202.2(*l*) (emphasis added).  The complaint is devoid of any such allegations.

Morgan Stanley is not a creditor for purposes of ECOA as to Plaintiffs' loans.  Plaintiffs do not—and cannot—allege that Morgan Stanley participated in any way in New Century's individual credit decisions about their mortgages.  The most that Plaintiffs allege is that in the "Bid Terms" for the purchase of a pool of closed loans in 2005, Morgan Stanley allegedly specified that some portion of the loans have adjustable rates and that another portion have prepayment penalties.  *See* Compl. ¶¶ 56-57.  Even that one allegation does not suggest that Morgan Stanley participated in setting the terms of credit on any individual loan, even in that one pool.   The allegation relates to the composition of *a pool of loans* that Morgan Stanley purchased; it is not a credit rule that requires a particular outcome as to any individual New Century mortgage application.  Plaintiffs do not, in any event, allege that these Bid Terms had any effect on New Century's particular credit decisions *as to them*.[12]  Because Morgan Stanley merely purchased New Century loans and did not participate in the setting of the credit terms on any of Plaintiffs' loans, it cannot be a creditor for purposes of Plaintiffs' ECOA claim.  *See, e.g.*, *Levey*, 2009 WL 2475222, at *3 (dismissing ECOA claim against assignee of mortgage because plaintiffs "failed to allege any facts accusing CitiMortgage of any involvement whatsoever in the origination" of plaintiffs' mortgages).  Finally, even if Morgan Stanley were a creditor, it could not be liable for any ECOA violation by New Century because there is no allegation that Morgan

---

[12]   Indeed, only one Plaintiff is alleged to have had her loan assigned to a Morgan Stanley securitization and that Plaintiff obtained her New Century loan in 2004 (*see* Compl. ¶¶ 164, 174), the year before the alleged 2005 Bid Terms referred to in the complaint (*see id.* ¶¶ 56-57).

Stanley "knew" or "had reasonable notice of" New Century's alleged discrimination. *See* 12 C.F.R. § 202.2(*l*); *Levey*, 2009 WL 2475222, at *3 (dismissing claim because complaint alleged no "facts consistent with CitiMortgage having reasonable notice of an ECOA violation").

### C.   ELCRA Also Rejects Plaintiffs' Liability Theory

Michigan courts construe ELCRA to be consistent with the FHA. *See Mencer v. Princeton Square Apartments*, 228 F.3d 631, 634 (6th Cir. 2000). Like the FHA, ELCRA applies to purchasers of mortgage loans through a specific provision that prohibits discrimination in the purchase transaction itself. It does not purport to hold purchasers liable for discrimination in the original lending transaction. The statute prohibits "[a] person whose business includes engaging in real estate transactions" from discriminating on the basis of race "*in the purchasing of loans* for acquiring a dwelling … or *purchasing of loans* … secured by residential real estate." Mich. Comp. Laws § 37.2504(2) (emphasis added). The statute is thus unambiguous that its prohibition applies only to the purchase transaction itself.[13]

## III.   THE COMPLAINT FAILS TO ALLEGE A VALID DISPARATE IMPACT CLAIM AGAINST MORGAN STANLEY

Plaintiffs assert disparate impact claims based on alleged "reverse redlining." Compl. ¶¶ 241, 255, 266. Defendants dispute that the FHA, ECOA or ELCRA provide for liability on a disparate impact theory,[14] but even if they do, Plaintiffs have not adequately pled such claims.

---

[13]   There is no indication that the second Michigan statute pled by Plaintiffs—§ 37.2502—is meant to apply to purchasers at all, given that ELCRA already has a separate provision that specifically applies to such purchasers.

[14]   The Supreme Court has not decided whether the FHA or ECOA permits recovery based on a disparate impact theory. *See Gallagher v. Magner*, 636 F.3d 380, 382 (8th Cir. 2010) (Colloton, J., dissenting from denial of reh'g en banc); *Garcia v. Johanns*, 444 F.3d 625, 633 & n.9 (D.C. Cir. 2006); *Golden v. City of Columbus*, 404 F.3d 950, 963 n.11 (6th Cir. 2005). Defendants acknowledge that the Second Circuit has recognized disparate impact claims under the FHA, *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 934-35 (2d Cir. 1988), *aff'd in part*, 488 U.S. 15 (1988); *see also LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir.

The Second Circuit has not addressed reverse redlining claims, *see Barkley v. Olympia Mortg. Co.*, 2010 WL 3709278, at *18 (E.D.N.Y. 2010), but courts in this circuit and elsewhere that have considered such claims generally require the following elements: "(1) plaintiff is a member of a protected class; (2) plaintiff applied for and was qualified for loans; (3) the loans were made on grossly unfavorable terms; and (4) the transaction was discriminatory," which may be satisfied by evidence of intentional targeting, disparate treatment, or disparate impact. *Williams v. 2000 Homes Inc.*, 2009 WL 2252528, at *5 (E.D.N.Y. 2009) (citing cases). Plaintiffs fail to plead the second and fourth elements.[15]

### A. Plaintiffs Do Not Allege That They Qualified For Better Loans

Perhaps the most obvious shortcoming in Plaintiffs' complaint is their failure to allege that they were qualified for mortgages on more favorable terms than they received. Most courts recognizing reverse-redlining claims require the plaintiffs to "allege … that 'they applied for and were qualified for fairly administered loans.'" *Grimes*, 785 F. Supp. 2d at 292 n.33 (quoting *Barkley v. Olympia Mortg. Co.*, 2007 WL 2437810, at *15 (E.D.N.Y. 2007)); *see also, e.g., M & T Mortg. Corp. v. White*, 736 F. Supp. 2d 538, 574-75 (E.D.N.Y. 2010); *Matthews v. New Century Mortg. Corp.*, 185 F. Supp. 2d 874, 886 (S.D. Ohio 2002). The reason is basic to an antidiscrimination claim. If the plaintiffs were not qualified for loans with better terms, then discrimination cannot have caused them to receive unfavorable terms. Plaintiffs fail this elementary requirement. They do not allege that they applied for, qualified for, and would have received loans on better terms but for the alleged race discrimination. *See* Compl. ¶¶ 123-204.

---

1995), and that this Court is bound by Second Circuit precedent in this regard. Defendants note their disagreement with that precedent here in order to preserve the issue.

[15]  Morgan Stanley is unaware of any decision considering a disparate impact reverse-redlining claim under the ELCRA, but courts generally construe the ELCRA's housing discrimination provisions consistently with the FHA. *See, e.g., Mencer*, 228 F.3d at 634.

This alone requires dismissal of the complaint.

**B.**     **Plaintiffs Fail Adequately To Allege That Morgan Stanley Discriminated Against African-American Borrowers**

Plaintiffs' allegations also fail as a matter of law to satisfy the fourth element of a "reverse redlining" claim—discrimination.  Plaintiffs do not allege intentional discrimination or disparate treatment.  Instead, they advance a "disparate impact" claim.  But to state a claim that a facially neutral policy or practice has a disparate impact, Plaintiffs must identify a substantial disparate impact and plausibly allege that it was caused by the specific policy or practice challenged.  *See Malave v. Potter*, 320 F.3d 321, 325-26 (2d Cir. 2003); *see also Smith v. City of Jackson*, 544 U.S. 228, 241 (2005).  The complaint does not satisfy this requirement.  Plaintiffs' theory is that *Morgan Stanley's* policies and practices (*i.e.*, the alleged "policy of orchestrating the sale of Combined-Risk Loans for securitization," Compl. ¶ 241) caused a disparate impact on New Century's African-American borrowers in the Detroit area.  *See* Compl. ¶¶ 241, 255, 261.  The allegations of disparate impact, however, are legally deficient because the asserted impact bears no relation to *Morgan Stanley's* alleged policies and practices.

**1.**     **The Disparate Impact Allegations Address The Wrong Borrowers**

To show a disparate impact, a plaintiff must analyze the impact *of the challenged policies and practices* on "appropriate comparison groups."  *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 576 (2d Cir. 2003); *see also Mountain Side Mobile Estates P'ship v. Sec'y of Hous. & Urban Dev.*, 56 F.3d 1243, 1253 (10th Cir. 1995).  A comparison is "improper" if it includes only a subset of the affected group and thereby "fails to include" all groups "affected by the policy."  *Tsombanidis*, 352 F.3d at 577.  A plaintiff may not "cherry-pick" particular subgroups because, as the Second Circuit has explained, "a subset can be chosen that will make it appear as though the complained of practice produced a disparate impact."  *Smith v. Xerox Corp.*, 196 F.3d

358, 369 (2d Cir. 1999), *overruled on other grounds by Meacham v. Knolls Atomic Power Lab.*, 461 F.3d 134 (2d Cir. 2006).   The correct inquiry "is whether the policy in question had a disproportionate impact on the minorities in *the total group to which the policy was applied*." *Betsey v. Turtle Creek Associates*, 736 F.2d 983, 987 (4th Cir. 1984) (emphasis added).[16]

Thus, Plaintiffs must plead and prove a disparate impact based on an analysis of the full scope of persons affected by the alleged Morgan Stanley policies and practices that Plaintiffs challenge.   They cannot state a valid disparate impact claim by pleading only a disparate impact on a smaller subset of affected persons.   Nor may Plaintiffs conjure up a disparate impact by sweeping in people outside the reach of Morgan Stanley's alleged policies and practices. Plaintiffs' complaint is deficient in both respects.

*First*, although the alleged Morgan Stanley policies and practices are nationwide in scope, Plaintiffs seek to cherry-pick Detroit alone to measure disparate impact.   *See* Compl. ¶¶ 115-22.   This approach is improper for the reason explained by the Second Circuit in *Smith*. The complaint does not allege that an analysis of all loans purchased by Morgan Stanley pursuant to the alleged policies and practices would yield any evidence of a disparate impact. Yet, absent such an allegation, there can be no basis for claiming that the purported Morgan Stanley policies and practices had any disparate impact.

The D.C. Circuit's decision in *Greater New Orleans Fair Housing Action Center v. U.S. Department of Housing and Urban Development*, 639 F.3d 1078 (D.C. Cir. 2011), is directly on point.   In that case, the court rejected an attempt to assert a disparate impact claim challenging a

---

[16]   *See also Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 639 F.3d 1078, 1086 (D.C. Cir. 2011); *Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 520 (9th Cir. 2011); *Graoch Associates #33, L.P. v. Louisville/Jefferson Cnty. Metro Human Relations Comm'n*, 508 F.3d 366, 378 (6th Cir. 2007); *Hallmark Developers, Inc. v. Fulton Cnty.*, 466 F.3d 1276, 1286 (11th Cir. 2006).

statewide program based on a single parish in Louisiana:  "Although plaintiffs focus much of their case on Orleans Parish, we must consider the impact on Louisiana as a whole."  *Id.* at 1086. "To allow plaintiffs to pick a special subset of the affected localities to test for disparate impact would … expose almost any grant formula to litigation."  *Id.*  Plaintiffs' selectivity here is even more problematic, given that they assert a disparate impact based on data about just one city in the whole nation.

*Second*, although Plaintiffs challenge purported Morgan Stanley policies and practices,[17] their disparate impact allegations analyze *all* New Century loans in Detroit, including the many New Century loans that were not purchased by Morgan Stanley and to which Morgan Stanley has no connection.  *See* Compl. ¶¶ 115-122.  The complaint acknowledges that Morgan Stanley purchased fewer than half of the loans that New Century sold.  *See id.* ¶ 38.  The alleged disparate impact on the total pool of New Century borrowers therefore cannot support a disparate impact case against Morgan Stanley.

## 2.   The Disparate Impact Allegations Address The Wrong Type Of Loans

Plaintiffs' disparate impact allegations also fail due to a second logical disconnect between the asserted Morgan Stanley policies and practices and the pleaded disparate impact. Plaintiffs sue Morgan Stanley based on its alleged "policy of orchestrating the sale of *Combined-Risk Loans* for securitization."  Compl. ¶ 241 (emphasis added).  Yet the complaint contains no allegation or claimed statistical showing that African-American borrowers were more likely to receive *Combined-Risk Loans* than white borrowers.  Rather, the disparate impact allegations concern *high-cost* loans, a distinct concept and broader group of loans.  *See id.* ¶¶ 115-122. Under Plaintiffs' definition, Combined-Risk Loans are a subset of high-cost loans having any

---

[17]  The complaint does not identify particular policies and practices of New Century.

two of eight characteristics. *Compare* Compl. ¶ 31 (HMDA definition of high-cost loan) *with id.* ¶ 34 (Plaintiffs' definition of "Combined-Risk Loan").   Plaintiffs' allegations regarding high-cost loans cannot support their claims relating to alleged Combined-Risk Loan practices.

> **3.    Plaintiffs Fail Adequately To Allege That Morgan Stanley Policies Or Practices Caused The Asserted Disparate Impact**

Plaintiffs' allegations that Morgan Stanley policies and practices caused the alleged disparate impact are insufficient in at least three further respects.

*First*, any disparate impact from New Century's loans was the result of the independent actions of New Century.   The complaint is clear on this point, alleging that New Century made an intentional decision to target African-American borrowers and neighborhoods.   *See* Compl. ¶¶ 4, 119-20, 241, 255.   The complaint does not allege—nor could it—that Morgan Stanley told New Century to do this or dictated to New Century to whom to lend, where to lend, or what credit terms should be used for different categories of borrowers.   The most the complaint alleges is that the "Bid Terms" of a single 2005 transaction required the pool of loans Morgan Stanley was purchasing to have a certain percentage of loans with either of two of the eight characteristics that when present in a "high cost" loan satisfy Plaintiffs' definition of a "Combined-Risk Loan."   *Id.* ¶ 56.   But even if that allegation could plausibly be construed as some sort of a *direction* to New Century to make loans with such features (and for the reasons set forth below, it cannot), the complaint lacks any allegation that New Century's decisions about to whom to sell such loans and in what neighborhoods were anything but New Century's decisions alone.   As a matter of law, Morgan Stanley cannot be considered the legal cause of New Century's independent "who" and "where" decisions.   *See, e.g., City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 615 F.3d 496, 504-05 (6th Cir. 2010) ("Companies that sold mortgages to home buyers decided which loans should be made and on what conditions.").

*Second*, the facts that Plaintiffs allege do not support even their conclusory assertion that Morgan Stanley "caused" New Century to originate "Combined-Risk Loans." *E.g.*, Compl. ¶ 5. The complaint alleges that Morgan Stanley engaged in "five interrelated and centralized policies and practices" in purchasing and securitizing mortgage loans, *id.* ¶¶ 36, 44-75, but none of the supposed policies or practices required or encouraged New Century to originate Combined-Risk Loans, as Plaintiffs have chosen to define that term. Except for the allegations about one 2005 transaction, *see id.* ¶¶ 56-57, Plaintiffs allege merely that Morgan Stanley tolerated or did not object to risky terms that *New Century* itself included in its mortgages. *See id.* ¶¶ 45-54. There is not one other allegation that Morgan Stanley encouraged or directed New Century to use such terms. Even as to the 2005 "Bid Terms," the complaint contains not a single non-conclusory allegation that Morgan Stanley required New Century to do anything whatsoever. To be sure, the complaint uses the word "required," but the facts alleged do not support that conclusory characterization. The allegations are about the "Bid Terms" for a certain pool of loans that Morgan Stanley purchased. *See id.* ¶¶ 56-57. New Century was under no constraint (*i.e.*, it was not in fact "required") to agree to sell loans meeting those terms or indeed to originate any mortgages at all. *See also supra* n.12. Moreover, the allegation about the 2005 transaction concerns just two of the eight factors that—when combined with a "high cost" loan—can give rise to a so-called Combined-Risk Loan. *See id.* ¶ 34. There is no allegation that the Bid Terms called for the purchase of "high cost" loans or loans with the other six characteristics Plaintiffs use to define a Combined-Risk Loan. Accordingly, even if one could ignore the difference between Morgan Stanley simply agreeing to purchase certain kinds of loans and Morgan Stanley requiring New Century to issue loans of that type*,* the complaint could at most be read to allege that Morgan Stanley's bid "required" New Century to make one limited type of loan (one with

25

both an adjustable rate and a prepayment penalty) that *might* constitute a Combined-Risk Loan if it was also a "high cost" loan. But the complaint never alleges that African-American borrowers more frequently received that kind of loan than white borrowers.

*Third*, even apart from the causation flaws detailed above, Plaintiffs have not identified any *particular* Morgan Stanley policy as the purported cause of the alleged disparate impact. It is well established that a plaintiff is "responsible for isolating and identifying the *specific* … practices that are allegedly responsible for any observed statistical disparities." *Smith*, 544 U.S. at 241 (internal quotation marks omitted).[18] The complaint fails this test. It rests on the alleged interaction of a number of vague (alleged) policies and practices. Compl. ¶ 36; *see also id.* ¶¶ 44-75. Plaintiffs "cannot attack an overall decision making process in the disparate impact context, but must instead identify the particular element or practice within the process that causes an adverse impact." *Malave*, 320 F.3d at 327 (internal quotation marks omitted); *see also Byrnie v. Town of Cromwell*, 243 F.3d 93, 111 (2d Cir. 2001) ("Simply gesturing toward the … process as a whole will not satisfy the requirement that the plaintiff identify a 'specific … practice' that is the cause of the statistical disparities." (quoting *Wards Cove*, 490 U.S. at 656)).

## IV.    PLAINTIFFS DO NOT HAVE STANDING

Plaintiffs also have not demonstrated that they have standing. To survive a "motion to dismiss, [a plaintiff] must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145-46 (2d Cir. 2011). To establish Article III standing, a plaintiff must show that (1) he has suffered an injury-in-fact that

---

[18]   *See also Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656-57 (1989), *superseded by statute on other grounds*, 42 U.S.C. § 2000e–2(k) ("[A] plaintiff must demonstrate that it is the application of a specific or particular … practice that has created the disparate impact under attack."); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998); *Powell v. Am. Gen. Fin., Inc.*, 310 F. Supp. 2d 481, 488 (N.D.N.Y. 2004); *Ng v. HSBC Mortg. Corp.*, 2010 WL 889256, at *12 (E.D.N.Y. 2010).

is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is "fairly traceable" to the defendant's actions; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision.  *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 350 (2d Cir. 2008); *see also Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010).  Plaintiffs fail the first and second requirements.

*First*, Plaintiffs have not properly pled an injury-in-fact because they have not alleged that absent the alleged discrimination, they would have qualified for and received better loan terms.  A plaintiff advancing a disparate impact theory must allege specific facts to show that the challenged policy directly disadvantaged him in some fashion.  *See Lee v. Bd. of Governors of Fed. Reserve Sys.,* 118 F.3d 905, 912, 916 (2d Cir. 1997) (establishing injury in fact in ECOA disparate impact claim "requires that the party seeking review be himself among the injured" (internal quotation marks omitted); *Palmieri v. Town of Babylon*, 2006 WL 1155162, at *12 (E.D.N.Y. 2006) (FHA disparate impact claim failed because plaintiff "offer[ed] no specific or concrete facts" demonstrating injury-in-fact).  A disparate impact plaintiff therefore must plead that he qualified for the benefit sought.  *See Boucher v. Syracuse Univ.*, 164 F.3d 113, 116 (2d Cir. 1999) (affirming district court's opinion that female athletes challenging allocation of benefits among male varsity athletes could not demonstrate an injury, and thus lacked standing, because they were not members of any varsity team); *see also Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 668 (7th Cir. 1996) (noting that a Title VII plaintiff alleging disparate impact who did not establish he was qualified for the position sought would not have standing to sue).

Plaintiffs never allege that they were qualified to receive loans on terms more favorable than those they received.  This deficiency is fatal not only to Plaintiffs' claims on the merits (*see* Section III.A, *supra*), but also to the jurisdiction of this Court.  *See In re Taxable Mun. Bond Sec.*

*Litig.*, 51 F.3d 518, 522 (5th Cir. 1995) (plaintiff lacked standing to challenge improper implementation of loan program because he failed to allege that "even if there had been no fraud" he would have met eligibility requirements to receive loan under program).

*Second*, none of the Plaintiffs has pled—and none can plead—that the alleged injury are fairly traceable to Morgan Stanley's alleged conduct.  Injuries flowing from the independent actions of New Century—*e.g.*, allegedly targeting minorities and committing fraud in so doing— are not directly traceable to Morgan Stanley as a matter of law.  It is well established that a plaintiff's alleged injury-in-fact "has to be fairly trace[able] to the challenged action of the defendant, and not … the[e] result [of] *the independent action of some third party* not before the court."  *Lujan*, 504 U.S. at 560 (internal quotation marks omitted) (emphasis added).  Although Plaintiffs need not allege that the defendants' actions were "the very last step" in the chain of events leading to their purported injuries, *Bennett v. Spear*, 520 U.S. 154, 169 (1997), they must plead specific facts "to support a reasonable inference that defendants' actions had a 'determinative or coercive effect upon the action of someone else' who directly caused the alleged injury."  *Nat'l Council of La Raza v. Mukasey*, 283 F. App'x 848, 851 (2d Cir. 2008) (quoting *Bennett*, 520 U.S. at 169).  In the context of Plaintiffs' specific factual allegations, their conclusory assertion that Morgan Stanley "caused" New Century to originate Combined-Risk Loans, Compl. ¶ 5, does not "support a reasonable inference" that Morgan Stanley's alleged conduct had a determinative or coercive effect on New Century's alleged decision to engage in discriminatory lending practices.  *Nat'l Council of La Raza*, 283 F. App'x at 851.[19]

---

[19]   *See also Adelphia Recovery Trust v. Bank of America*, 2010 WL 2077214, at *7 (S.D.N.Y 2010) (plaintiff failed to demonstrate that actions that allegedly led to plaintiff's injuries "were a product of determinative or coercive effect caused by the actions of the [defendants], as opposed to independent actions of third parties").

## V.  PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE OR DECLARATORY RELIEF

Because this case concerns the practices of New Century, which ceased doing business in 2007, Plaintiffs are not entitled to injunctive or declaratory relief for at least two reasons.

*First*, Plaintiffs lack standing to seek such relief.  "[A] plaintiff must demonstrate standing separately for each form of relief sought."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *see also Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011).[20]  Standing requires "redressability—a likelihood that the requested relief will redress the alleged injury."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).  To establish standing "to request injunctive or declaratory relief, the injury alleged must be capable of being redressed through injunctive relief 'at th[e] moment'" the complaint is filed.  *Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993) (quoting *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991)).  "A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future."  *Deshawn E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998); *Banchieri v. City of New York*, 2001 WL 1018351, at *3 (S.D.N.Y. 2001) (Baer, J.).

Here, Plaintiffs cannot show any likelihood that the practices they challenge in this action are likely to injure them in the future.  New Century ceased operations in 2007.  Anything that the company allegedly did or that Morgan Stanley allegedly "caused" it to do cannot be a future source of injury to Plaintiffs.  Moreover, Plaintiffs do not allege that they intend to obtain new mortgages in the future or that there is any likelihood that any such mortgages would be

---

[20]  New Century's cessation of operations, which occurred prior to the commencement of this action, is properly conceived of as creating a problem of standing, rather than mootness.  *See Friends of the Earth*, 528 U.S. at 190-91 (noting that a pre-litigation change of circumstances creates a problem of standing).

purchased by Morgan Stanley.  In analogous circumstances, courts consistently have held that housing or credit discrimination plaintiffs lack standing to seek injunctive relief.  *See Vaughn v. Consumer Home Mortg. Co.*, 297 F. App'x 23, 26 (2d Cir. 2008) ("Absent allegations that *these* plaintiffs have concrete plans to enter the housing market, they have no standing to complain merely because other members of their racial group might be injured ….").[21]

*Second*, the complaint fails to plead the requirements for injunctive relief.  "The basic requirements to obtain injunctive relief have always been a showing of irreparable injury and the inadequacy of legal remedies." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999). The complaint alleges neither.  Because Plaintiffs do not allege any future injury, they cannot argue that an injunction is needed to prevent irreparable injury.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *Fort v. Am. Fed'n of State, Cnty. & Mun. Emps.*, 375 F. App'x 109, 112 (2d Cir. 2010).  Plaintiffs also nowhere allege that monetary damages (which Plaintiffs seek) are inadequate relief.  *See JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).

Thus, Plaintiffs' claims for injunctive and declaratory relief must be dismissed.  Because Plaintiff Michigan Legal Services seeks only injunctive relief, it lacks standing to sue.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that Plaintiffs' Complaint be dismissed with prejudice.

---

[21] *See also Franklin Bldg. Corp. v. City of Ocean City*, 946 F. Supp. 1161, 1167 (D.N.J. 1996) (FHA plaintiff lacked standing to seek injunctive relief); *Hawecker v. Sorensen*, 2011 WL 98757, at *3 (E.D. Cal. 2011) (same); *Pettineo v. GE Money Bank*, 2011 WL 93065, at *3 (E.D. Pa. 2011) (ECOA plaintiff lacked standing to seek injunctive relief); *Smith v. Chrysler Fin. Co.*, 2004 WL 3201002, at *3-4 (D.N.J. 2004) (same).

Dated: December 21, 2012             Respectfully submitted,


/s/ Noah A. Levine
_____
Noah A. Levine
Colin T. Reardon
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888
noah.levine@wilmerhale.com,
colin.reardon@wilmerhale.com

David W. Ogden (*admitted pro hac vice*)
Brian M. Boynton (*admitted pro hac vice*)
Danielle Y. Conley (*admitted pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
david.ogden@wilmerhale.com,
brian.boynton@wilmerhale.com,
danielle.conley@wilmerhale.com

*Counsel for Defendants*