**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BEVERLY ADKINS, CHARMAINE WILLIAMS, REBECCA PETTWAY, RUBBIE McCOY, WILLIAM YOUNG, on behalf of themselves and all others similarly situated, and MICHIGAN LEGAL SERVICES,<br><br>       Plaintiffs,<br><br>  v.<br><br>MORGAN STANLEY, MORGAN STANLEY & CO. LLC, MORGAN STANLEY ABS CAPITAL I INC., MORGAN STANLEY MORTGAGE CAPITAL INC., and MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC,<br><br>       Defendants. | 1:12-cv-7667-HB<br><br>**Oral Argument Scheduled for March 13, 2013, 10:30 a.m.** |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

I.      PLAINTIFFS' CLAIMS ARE TIME BARRED ...................................................................1

II.     MORGAN STANLEY CANNOT BE HELD LIABLE FOR THE ALLEGED
        DISCRIMINATORY EFFECTS OF NEW CENTURY'S LENDING PRACTICES ........5

        A.      Plaintiffs' Fair Housing Act Allegations Are Plainly Defective ............................5

        B.      Plaintiffs' ECOA Allegations Are Equally Meritless................................................7

III.    PLAINTIFFS' DISPARATE-IMPACT ALLEGATIONS ARE INSUFFICIENT............9

IV.     PLAINTIFFS LACK STANDING ...................................................................................14

V.      PLAINTIFFS ARE NOT ENTITLED TO PROSPECTIVE RELIEF ............................15

CONCLUSION.............................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.Q.C. ex rel. Castillo v. United States*,
  656 F.3d 135 (2d Cir. 2011)...........................................................................................2

*Amron v. Morgan Stanley Investment Advisors, Inc.*,
  464 F.3d 338 (2d Cir. 2006)..........................................................................................12

*Archer v. Nissan Motor Acceptance Corp.*,
  550 F.3d 506 (5th Cir. 2008) ...........................................................................................1

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................................9

*Auscape International v. National Geographic Society*,
  409 F. Supp. 2d 235 (S.D.N.Y. 2004)..............................................................................1

*Barkley v. Olympia Mortgage Co.*,
  2007 WL 2437810 (E.D.N.Y. 2007)...............................................................................14

*Betsey v. Turtle Creek Assocs.*,
  736 F.2d 983 (4th Cir. 1984) .........................................................................................10

*Boykin v. KeyCorp*,
  521 F.3d 202 (2d Cir. 2008).............................................................................................2

*Brown v. Coach Stores, Inc.*,
  163 F.3d 706 (2d Cir. 1998)...........................................................................................12

*Byrnie v. Town of Cromwell*,
  243 F.3d 93 (2d Cir. 2001).............................................................................................13

*Carver v. City of New York*,
  621 F.3d 221 (2d Cir. 2010)...........................................................................................15

*Chastain v. N.S.S. Acquisition Corp.*,
  2009 WL 1971621 (S.D. Fla. 2009), *aff'd*, 378 F. App'x 983 (11th Cir. 2010).......................9

*City of Cleveland v. Ameriquest Mortgage Securities, Inc.*,
  615 F.3d 496 (6th Cir. 2010) .........................................................................................13

*Clement v. United Homes, LLC*,
  2012 WL 6720701 (E.D.N.Y. 2012).................................................................................1

*Cloer v. Secretary of Health & Human Services*,
  654 F.3d 1322 (Fed. Cir. 2011).......................................................................................2

*Coleman v. General Motors Acceptance Corp.*,
    220 F.R.D. 64 (M.D. Tenn. 2004) ...................................................................9

*Corcoran v. New York Power Authority*,
    202 F.3d 530 (2d Cir. 1999)...........................................................................3

*Flowers v. S. W. Motor Sales, Inc.*,
    2008 WL 4614307 (N.D. Ill. 2008) ................................................................9

*Fowler v. UPMC Shadyside*,
    578 F.2d 203 (3d Cir. 2009)...........................................................................9

*Garcia v. Brockway*,
    526 F.3d 456 (9th Cir. 2008) .........................................................................1

*Greater New Orleans Fair Housing Action Center v. U.S. Department of
    Housing & Urban Development*,
    639 F.3d 1078 (D.C. Cir. 2011)................................................................10, 11

*Hargraves v. Capital City Mortgage Corp.*,
    140 F. Supp. 2d 7 (D.D.C. 2000)..............................................................10, 11

*Hedges v. Town of Madison*,
    456 F. App'x 22 (2d Cir. 2012) ......................................................................9

*Hines v. Cal. Pub. Utilities Comm'n*,
    467 F. App'x 639 (9th Cir. 2012) .................................................................12

*Hunter v. Bev Smith Ford*,
    LLC, 2008 WL 1925265 (S.D. Fla. 2008), *aff'd*, 353 F. App'x 218 (11th Cir. 2009).............9

*In re Estate of Henderson v. Meritage Mortgage Corp.*,
    293 F. Supp. 2d 830 (N.D. Ill. 2003) ............................................................1

*In re Simmerman*,
    463 B.R. 47 (Bankr. S.D. Ohio 2011) ............................................................9

*Jackson v. Novastar Mortgage, Inc.*,
    645 F. Supp. 2d 636 (W.D. Tenn. 2007).........................................................4

*Jenkins v. Greene*,
    630 F.3d 298 (2d Cir. 2010)...........................................................................3

*John R. Sand & Gravel Co. v. United States*,
    552 U.S. 130 (2008).......................................................................................4

*Jones v. Countrywide Home Loans, Inc.*,
    2010 WL 551418 (N.D. Ill. 2010) ..................................................................9

*Jones v. Ford Motor Credit Co.*,
  2002 WL 88431 (S.D.N.Y. 2002) ................................................................................1

*Lewis v. City of Chicago*,
  130 S. Ct. 2191 (2010) .........................................................................................4, 5

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...............................................................................................14

*McReynolds v. Merrill Lynch*,
  672 F.3d 482 (7th Cir. 2012) .................................................................................13

*Melendez v. Illinois Bell Tel. Co.*,
  79 F.3d 661 (7th Cir. 1996) .............................................................................14, 15

*Miller v. Countrywide Bank, N.A.*,
  571 F. Supp. 2d 251 (D. Mass. 2008) ...................................................................11

*National Council of La Raza v. Mukasey*,
  283 F. App'x 848 (2d Cir. 2008) ...........................................................................15

*Pearl v. City of Long Beach*,
  296 F.3d 76 (2d Cir. 2002) ......................................................................................2

*Powell v. Am. Gen. Fin.*,
  310 F. Supp. 2d 481 (N.D.N.Y. 2004) ...................................................................12

*Ramirez v. GreenPoint Mortgage Funding, Inc.*,
  633 F. Supp. 2d 922 (N.D. Cal. 2008) ...................................................................11

*Reyes v. Fairfield Properties*,
  661 F. Supp. 2d 249 (E.D.N.Y. 2009) ...................................................................12

*Schwab v. Smalls*,
  435 F. App'x 37 (2d Cir. 2011) ................................................................................9

*Shallow v. Scofield*,
  2012 WL 4327388 (S.D.N.Y. 2012) .........................................................................9

*Smith v. Xerox Corp.*,
  196 F.3d 358 (2d Cir. 1999), *overruled on other grounds by Meacham v. Knolls
  Atomic Power Lab.*, 461 F.3d 134 (2d Cir. 2006) ................................................10

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002) .................................................................................................9

*Taylor v. Accredited Home Lenders, Inc.*,
  580 F. Supp. 2d 1062 (S.D. Cal. 2008) .............................................................4, 11

*Thompson v. Metro Life Ins. Co.*,
    149 F. Supp. 2d 38 (S.D.N.Y. 2001)........................................................................1

*Treadway v. Gateway Chevrolet Oldsmobile Inc.*,
    362 F.3d 971 (7th Cir. 2004) ...................................................................................9

*Trentadue v. Buckler Lawn Sprinkler*,
    738 N.W.2d 664 (Mich. 2007)..................................................................................5

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001) ..............................................................................................1, 2

*Williams v. New York City Housing Authority*,
    2009 WL 804137 (S.D.N.Y. 2009), *aff'd*, 408 F. App'x 389 (2d Cir. 2010)........12

*Wilson v. Glenwood Intermountain Properties*,
    98 F.3d 590 (10th Cir. 1996) .................................................................................15

*Wise v. Union Acceptance Corp.*,
    2002 WL 31730920 (S.D. Ind. 2002) ...............................................................1, 2, 9

*Zerilli-Edelglass v. NewYork City Transit Authority*,
    333 F.3d 74 (2d Cir. 2003).......................................................................................2


**STATUTES**

15 U.S.C. § 1691a(e)...................................................................................................7

42 U.S.C. § 3605(b)(1)(B) ..........................................................................................6

Mich. Comp. Laws § 600.5855....................................................................................5


**REGULATIONS**

12 C.F.R. § 202.2(*l*) ....................................................................................................7

68 Fed. Reg. 13,144 (Mar. 18, 2003) ......................................................................7, 8


**RULES**

Rule 9(b) .................................................................................................................2, 5

Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss ("Opp.") confirms that there is no basis in the Fair Housing Act ("FHA"), the Equal Credit Opportunity Act ("ECOA"), or governing case law for their unprecedented attempt to hold Morgan Stanley liable on stale claims of alleged discriminatory lending by an entirely different and now defunct entity. Because Plaintiffs have elected to stand on the defective allegations of their complaint rather than amend, the complaint should be dismissed with prejudice.

## I.   PLAINTIFFS' CLAIMS ARE TIME BARRED

Plaintiffs do not dispute that their claims are untimely absent application of a "discovery" rule, equitable tolling, or the continuing violations doctrine. But none of these doctrines applies.

**A.**   Plaintiffs ignore the critical statutory language that forecloses application of a **discovery rule** to their claims. In *TRW Inc. v. Andrews*, 534 U.S. 19, 32 (2001), the Supreme Court explained that a statute keying "the start of the limitations period to 'the date of the occurrence of the violation'" "plainly establish[es]" that a discovery rule does *not* apply. The FHA and ECOA contain materially identical language. *See* Mem. ISO Defs' MTD ("Mem.") 9-10. Indeed, the overwhelming weight of post-*TRW* authority concludes that neither the FHA nor ECOA has a discovery rule. *See* Mem. 9-10; *Auscape Int'l v. Nat'l Geographic Soc.*, 409 F. Supp. 2d 235, 245 (S.D.N.Y. 2004) (noting effect of *TRW*); *Garcia v. Brockway*, 526 F.3d 456, 465 (9th Cir. 2008) (en banc) (FHA); *Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 508 (5th Cir. 2008) (ECOA). Plaintiffs rely almost exclusively on cases that predate or fail to cite *TRW*.[1] They cite only one ECOA or FHA case addressing *TRW—Wise v. Union Acceptance*

---

[1] *See* Opp. 19-21 (citing *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) (predating *TRW*); *Thompson v. Metro Life Ins. Co.*, 149 F. Supp. 2d 38, 48 (S.D.N.Y. 2001) (predating *TRW* and applying period that did not run from date of "occurrence" of violation); *Clement v. United Homes, LLC*, 2012 WL 6720701, at *8 (E.D.N.Y. 2012) (no citation to *TRW*); *Estate of Henderson v. Meritage Mortg. Corp.*, 293 F. Supp. 2d 830, 834 (N.D. Ill. 2003) (same); *Jones v. Ford Motor Credit Co.*, 2002 WL 88431, at *5 (S.D.N.Y. 2002) (same)).

*Corp.*, 2002 WL 31730920 (S.D. Ind. 2002)—which cites *TRW* only in a footnote and fails to address the Supreme Court's key observation regarding statutes that define the limitations period with reference to "the date of the occurrence of the violation." *See id.* at *5 n.2.  Under *TRW*, it is that date, not the date of "discovery," that triggers the running of the limitations periods here.

      **B.**     Plaintiffs' invocation of **equitable tolling** is equally meritless.  Equitable tolling "is only appropriate in . . . rare and exceptional circumstance[s], in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (internal quotation marks and citations omitted); *see also Boykin v. KeyCorp*, 521 F.3d 202, 211 n.10 (2d Cir. 2008) (same); *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) ("drastic remedy").  The only equitable ground alleged in the complaint is fraudulent concealment, which Plaintiffs now relegate to a footnote in their opposition.  *Compare* Compl. ¶ 222 *with* Opp. 22.[2]  As that demotion suggests, the complaint's allegations fall far short of sufficiently pleading fraudulent concealment.  *See* Mem. 12-13.

      Plaintiffs now argue (at 22) for tolling by claiming they could not have discovered the alleged disparate impact "before consultation with their attorneys in 2012."  But tolling is not "a substitute for the discovery rule."  Plaintiffs may not "ask[] for the same relief as a matter of equity that Congress has withheld . . . as a matter of law." *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1344 (Fed. Cir. 2011) (en banc).  Equitable tolling applies only where "it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action." *Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002) (internal quotation marks omitted).  Plaintiffs do not and cannot plead facts demonstrating "impossibility."

---

[2]  Plaintiffs' conclusory assertion (at 22 n.21) that Morgan Stanley's interactions with New Century were somehow "self-concealing" was not pled in the complaint, fails to satisfy Rule 9(b) and, in any event, is belied by the wealth of public information on which Plaintiffs rely.

**C.**     In any event, neither a discovery rule nor equitable tolling could apply because the information on which Plaintiffs rely was **publicly available more than two years before they filed suit**.  Plaintiffs argue (at 23) that they could not have discovered the alleged disparate impact until they conducted an "analysis of aggregated data."  But Plaintiffs do not dispute that the data on which they rely has been available since 2008 at the latest.  *See* Mem. 11 n.6.[3]  Nor do Plaintiffs dispute that most of the sources they cite were publicly available more than two years before they filed suit.  Mem. 10-11.  Thus, Plaintiffs are wrong to argue (at 22-23) that they could not have discovered their claims before (1) the January 2011 Financial Crisis Inquiry Commission ("FCIC") report, (2) the September 2011 Federal Housing Finance Administration ("FHFA") lawsuit, or (3) the July 2011 *Allstate* lawsuit.  *See Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 544 (2d Cir. 1999) ("A plaintiff need not know each and every relevant fact of his injury" to be on notice.  (internal quotation marks omitted)).  Moreover, every allegation in the nine paragraphs of Plaintiffs' 273-paragraph complaint that Plaintiffs assert (at 23) they drew from those 2011 sources was publicly available at the latest by June 2010:

- Plaintiffs imply that three paragraphs of the complaint relied on the January 2011 FCIC report (¶¶ 65, 76, & 85), yet those paragraphs quote testimony given publicly before the Commission in April 2010.  *See* Mem. 11 n.5.

- Paragraph 53 of the complaint (based on the FHFA suit) alleges that Morgan Stanley purchased New Century loans with high LTV levels, but paragraph 52 makes essentially the same allegation based on the June 2010 Massachusetts Assurance of Discontinuance ("AOD").  *See* Mem. 11 n.8.

- The five paragraphs assertedly drawn from the *Allstate* complaint are similarly

---

[3] Plaintiffs assert (at 22) they did not consult with counsel until 2012.  But this is not a ground for tolling.  *See, e.g., Jenkins v. Greene*, 630 F.3d 298, 305 (2d Cir. 2010).  Plaintiffs' theory would effectively eliminate the FHA and ECOA statutes of limitations, leaving the timeliness of any claim a function of when a given plaintiff happened to meet with an attorney.

redundant of public information available by June 2010.[4]

**D.**     Nor does the **continuing violations** doctrine apply.  The complaint alleges that any disparate impact resulted from the terms of loans originated by New Century, as somehow enabled by Morgan Stanley.  But New Century ceased originating mortgages in April 2007 at the latest.  Any obligations to make payments on those loans are at most the *effect* of the alleged discriminatory practices, not new violations.  *See* Mem. 12.[5]  No case holds that the limitations period begins anew with each alleged effect of the discriminatory acts; such a rule would mean statutes of limitations could virtually never expire.  In the present context, given the typical 30-year terms of mortgage loans, Plaintiffs' theory implausibly would allow parties to commence cases for as many as *32 years* after the last alleged discriminatory act, which would frustrate the very purpose of a statute of limitations—"protect[ing] defendants against stale or unduly delayed claims."  *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008).

*Lewis v. City of Chicago*, 130 S. Ct. 2191 (2010), affords Plaintiffs no support.  In *Lewis*, the Supreme Court held that "a plaintiff who does not file a timely charge challenging the *adoption* of a practice . . . may assert a disparate-impact claim in a timely charge challenging the

---

[4] *Compare* Compl. ¶ 45 (high DTI levels) *with* Compl. ¶ 44 (allegation about high DTI levels drawn from ¶ 20 of the June 2010 AOD); Compl. ¶ 54 (inflated appraisals) *with* AOD ¶ 32 (same); Compl. ¶ 68 (warehouse lending by Morgan Stanley) *with* Compl ¶ 65 (April 2010 testimony about warehouse lending) and AOD ¶¶ 10-12 (warehouse lending); Compl. ¶ 72 (failure to allow Clayton Holdings to do due diligence) *with* AOD ¶¶ 28-30 (failure to follow Clayton Holding due diligence recommendations); Compl ¶ 75 (Morgan Stanley efforts to buy "stated income" loans) *with* Compl. ¶ 49 (2008 radio broadcast about Morgan Stanley purchases of stated income loans) & AOD ¶ 39 (large volume of stated income loans).  The Massachusetts AOD is available at http://www.mass.gov/ago/docs/press/2010/2010-06-24-ms-settlement-attachment3.pdf.

[5] The cases reaching the contrary conclusion cited by Plaintiffs have little reasoning and in any event are not binding on this Court.  *E.g.*, *Taylor v. Accredited Home Lenders, Inc.*, 580 F. Supp. 2d 1062, 1066 (S.D. Cal. 2008) (no citations to any other case addressing whether ongoing mortgage payments constitute a continuing violation); *Jackson v. Novastar Mortg., Inc.*, 645 F. Supp. 2d 636, 645 (W.D. Tenn. 2007) (same).

4

[defendant's] later *application* of that practice." *Id.* at 2195.  The Court stressed that determining whether a claim is timely "requires identify[ing] precisely the unlawful . . . practice" at issue, and that the disparate-impact plaintiff must "show a present violation within the limitations period." *Id.* at 2197, 2199 (internal quotation marks omitted).  Both the "adoption" and "application" of the alleged practice here—the making of loans with allegedly discriminatory terms—ended in early 2007 when New Century went out of business.  No act by New Century or Morgan Stanley claimed here to have been unlawful could have occurred after that date.  By contrast, the defendant in *Lewis* continued to engage in the alleged practice there each time it chose to use the results of the allegedly offending test to make a new hiring decision.  *See id.* at 2198.

E.    Plaintiffs do not dispute that **Michigan law** forbids application of the discovery rule and the continuing violations doctrine to their ELCRA claim, *see* Mem. at 10, 12; they defend that claim solely on the ground of "equitable tolling," *see* Opp. 21 n.20.  But even if Plaintiffs had not failed to plead a factual basis for equitable tolling (*see supra* pp. 2-4), Michigan's statutory scheme for tolling is "comprehensive and exclusive" and courts are not "free to cast aside a plain statute in the name of equity."  *Trentadue v. Buckler Lawn Sprinkler*, 738 N.W.2d 664, 671, 680  (Mich. 2007).[6]  No statutory basis for tolling exists here.

II.    **MORGAN STANLEY CANNOT BE HELD LIABLE FOR THE ALLEGED DISCRIMINATORY EFFECTS OF NEW CENTURY'S LENDING PRACTICES**

A.    **Plaintiffs' Fair Housing Act Allegations Are Plainly Defective**

Plaintiffs defend their FHA claim by attacking two straw men (at 8-9)—assertions never made by Morgan Stanley that (1) the FHA does not apply to securitizers, and (2) even if the FHA provides for disparate-impact liability, it does not allow disparate-impact claims against

---

[6] Fraudulent concealment is recognized in Michigan, *see* Mich. Comp. Laws § 600.5855, but as noted above, Plaintiffs fail to plead concealment with particularity as required by Rule 9(b).

securitizers.  Plaintiffs ignore the central point of Morgan Stanley's opening brief: the FHA is specific in its application to securitizers and does not permit liability on Plaintiffs' attenuated, but-for causation theory.  Mem. at 14-16.  The FHA prohibits a securitizer from discriminating in *its own transactions*.  It does not make a securitizer liable for another entity's acts that may have "discriminatory effect[s]" (Opp. 10), such as *separate transactions* between originating lenders and borrowers.[7]  The statute's unambiguous text, the implementing regulation, and the case law all foreclose Plaintiffs' unworkable theory.

As to the text, the FHA makes it unlawful for an entity "engaging in residential real estate-related *transactions*"—which are defined to include the "purchasing of loans … secured by residential real estate," 42 U.S.C. § 3605(b)(1)(B)—"to discriminate against any person in making available *such a transaction*, or in the terms or conditions of *such a transaction*, because of race."  *Id.* § 3605(a) (emphasis added).  Despite the centrality of the italicized language to Morgan Stanley's argument, Plaintiffs ignore it entirely.  That language makes plain that parties are barred from discriminating in the "residential real-estate related transactions" *in which they engage*.  A mortgage purchaser is responsible for discrimination in its purchase transactions, but not for discrimination by an originating lender in its separate transactions.  The implementing regulation makes this point even more explicitly.  *See* Mem. 15 (quoting 24 C.F.R. § 100.125). The case law does too.  *See* Mem. 15-16.  Tellingly, Plaintiffs cite no case that even suggests that a mortgage purchaser can be held liable under the FHA for another party's transactions.  Because Plaintiffs allege discrimination only in the terms of their transactions with New Century, and not in any Morgan Stanley purchase transaction, they fail to state a claim under the FHA.

---

[7] For example, a disparate-impact claim would be proper if the terms of a securitizer's purchase transactions were facially neutral but resulted in a disparate impact on minorities in the availability or terms of such purchase transactions.  That is not this case here, however, because Plaintiffs allege discrimination only in the terms of transactions with New Century.

### B.     Plaintiffs' ECOA Allegations Are Equally Meritless

The parties agree that ECOA applies only to a "creditor."  Mem. 17; Opp. 11.  They also agree that for an "assignee" to be a "creditor," it must actually "participate[] in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e); *see* Mem. 17; Opp. 11.  Yet the complaint is devoid of any allegation that Morgan Stanley participated in such decisions here.

Regulation B implements ECOA and clarifies that a "creditor" is a person or entity that "regularly participates in a credit decision, including setting the terms of credit."  12 C.F.R. § 202.2(*l*).  The Federal Reserve Board, in explaining the 2003 amendments that led to this regulation, clarified that an entity can be considered a "creditor" only if it (a) "make[s] the decision to deny or extend credit," or (b) "negotiate[s] and set[s] the terms of the credit with the consumer."  68 Fed. Reg. 13,144, 13,145 (Mar. 18, 2003).

Plaintiffs do not allege that Morgan Stanley did either.  Indeed, only one of the five Plaintiffs even alleges that Morgan Stanley purchased her loan.  Compl. ¶ 174.  Moreover, Plaintiffs now openly acknowledge (at 14 n.13) that they allege a disparate impact based on *all New Century loans*, including the substantial majority of New Century loans that *Morgan Stanley never purchased*.  Thus, for most of the mortgages at issue, Plaintiffs cannot show that Morgan Stanley was a purchaser, much less that it participated in the individual credit decision on each loan.  Plaintiffs cannot simultaneously advance the disparate-impact theory they plead (based on all New Century loans) and state a claim under ECOA.

In fact, Plaintiffs cannot show participation even as to the loans Morgan Stanley did buy.  Plaintiffs' theory is that Morgan Stanley indicated in advance the types of loans it would later buy, and that New Century reacted by originating loans on terms that it thought would be attractive to Morgan Stanley.  But stating the terms on which one is willing to purchase loans does not make one a "creditor" under ECOA.  Even the formal provision of advance

7

underwriting guidelines does not render one a creditor.  As the Board has made clear, "a *potential assignee* who establishes underwriting guidelines for its purchases but does not influence *individual credit decisions* is not a creditor."  68 Fed. Reg. at 13,145.[8]

Plaintiffs allege (based on an anonymous ex-employee's alleged unsworn statement, Compl. ¶ 75) that Morgan Stanley stationed employees at New Century, but the complaint does not claim that these employees were there to participate in credit decisions.  Instead, it asserts that they were there to review *existing* loans—specifically, to "conduct[] due diligence on loans [Morgan Stanley] would purchase."  Compl. ¶ 75.  Plaintiffs also claim (again based on an anonymous unsworn statement) that in some unidentified instances a Morgan Stanley employee supposedly intervened in the lending process to transform a full documentation loan to a "stated income" loan.  But none of the Plaintiffs alleges that she was subjected to such a process, and Plaintiffs do not allege that the huge population of loans they would sweep into the disparate-impact analysis was subjected to such a process either.  Finally, the fact that Morgan Stanley provided some (but less than half) of New Century's financing and purchased some (but fewer than half) of New Century's loans, *see* Opp. 11; *supra* p. 12, is also irrelevant to the separate question whether Morgan Stanley participated in Plaintiffs' individual credit decisions.[9]

Plaintiffs' automobile financing cases (Opp. 12) are of no help.  They require "regular[] participat[ion] in determining *binding policies* for extending credit to customers," and in each case the defendant did establish binding policies that set the actual credit terms (*e.g.*, interest

---

[8] Plaintiffs' claim (at 4) that Morgan Stanley was unconcerned about the risk of foreclosure faced by borrowers is flatly false.  In fact, Morgan Stanley held a residual interest in the mortgage securitizations and thus had a direct financial interest in the quality of the mortgages. *See, e.g.*, Morgan Stanley Annual Report (Form 10-k) 52 (Jan. 28, 2008) ("The Company typically retains … residual tranche securities.").

[9] Plaintiffs allege (at 4, 11) that Morgan Stanley "wet funded" loans for a short period in March 2007, but providing such funding still would not make Morgan Stanley a creditor and, in any event, that brief period affected only a tiny percentage of loans and predated Plaintiffs' loans.

rate).  *Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 76 n.9 (M.D. Tenn. 2004)

(emphasis added).[10]  Plaintiffs make no such allegations here.  Notably, Plaintiffs cite no case

holding a mortgage securitizer in Morgan Stanley's position to be a creditor under ECOA.

Finally, contrary to Plaintiffs' assertion (at 13), courts regularly grant motions to dismiss when a

complaint fails to plead the necessary facts to support "creditor" status.[11]

## III.   PLAINTIFFS' DISPARATE-IMPACT ALLEGATIONS ARE INSUFFICIENT

Plaintiffs argue (at 13) that under *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), they

need not plead a *prima facie* case.  But *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), makes clear

that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"[12]  "[T]he elements of a *prima facie* case 'provide an outline

of what is necessary to render [discrimination] claims for relief plausible.'"  *Shallow v. Scofield*,

2012 WL 4327388, at *3 (S.D.N.Y. 2012).   Therefore, "courts consider these elements in

determining" whether a plaintiff states a plausible claim.  *Id.*  Here, Plaintiffs' allegations are

---

[10] *See id.* at 76-77 (assignee was creditor where it set risk-related interest rates and maximum non-risk markup ranges; determined which applicants were subject to markup; and provided financing forms and training); *Wise*, 2002 WL 31730920, at *2-3 (assignee was creditor where it set the risk-related interest rates and maximum subjective non-risk markup ranges; provided loan documentation; induced retailer not to disclose subjective markup to consumer; and set minimum price for contracts it would purchase); *see also Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 980 (7th Cir. 2004) (dealership was creditor where it decided whether or not to send credit application to lender; set terms of credits by insisting on more money down, requesting that applicant find cosigner, or lowering price of the car to lower loan-to-value ratio; and regularly set interest rate associated with sale).

[11] *See, e.g., In re Simmerman*, 463 B.R. 47, 64 (Bankr. S.D. Ohio 2011); *Jones v. Countrywide Home Loans*, Inc., 2010 WL 551418, at *7 (N.D. Ill. 2010); *Chastain v. N.S.S. Acquisition Corp.*, 2009 WL 1971621, at *6 (S.D. Fla. 2009), *aff'd*, 378 F. App'x 983 (11th Cir. 2010); *Flowers v. S. W. Motor Sales, Inc.*, 2008 WL 4614307, at *3 (N.D. Ill. 2008); *Hunter v. Bev Smith Ford*, LLC, 2008 WL 1925265, at *6 (S.D. Fla. 2008), *aff'd*, 353 F. App'x 218 (11th Cir. 2009).

[12] To the extent anything in *Swierkiewicz* is thought to be to the contrary, it plainly would not survive *Iqbal*.  *See Hedges v. Town of Madison*, 456 F. App'x 22, 23 (2d Cir. 2012) (questioning whether *Swierkiewicz* remains valid in light of *Iqbal*); *Schwab v. Smalls*, 435 F. App'x 37, 40 (2d Cir. 2011) (same); *Fowler v. UPMC Shadyside*, 578 F.2d 203, 211 (3d Cir. 2009) (not valid).

insufficient in at least four respects.

A.    **Wrong Borrowers.**  The complaint fails to state a disparate-impact claim because its only allegations of any such impact are not related to the practices Plaintiffs challenge under the FHA, ECOA, and ELCRA.   *First*, although Plaintiffs purport to challenge nationwide Morgan Stanley "policies," they cherry-pick a single city (Detroit) to plead that those nationwide policies had a disparate impact.   Contrary to Plaintiffs' assertion (at 14), Morgan Stanley cited numerous cases holding that the proper inquiry is "whether the policy in question had a disproportionate impact on the minorities *in the total group to which the policy was applied*." *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 987 (4th Cir. 1984) (emphasis added); *see* Mem. 21-22 & n.16.   The Second Circuit follows this rule.   *See Smith v. Xerox Corp.*, 196 F.3d 358, 369 (2d Cir. 1999), *overruled on other grounds by Meacham v. Knolls Atomic Power Lab.*, 461 F.3d 134 (2d Cir. 2006).   Otherwise, a policy in fact having no disparate impact could be wrongly condemned based on a selective analysis.   Thus, to make out a claim, Plaintiffs must be able to allege a disparate impact among borrowers nationwide.

Plaintiffs offer no persuasive response.   They note (at 15) that Defendants' cases were decided at summary judgment or after trial, but that is irrelevant.   The cases state a legal rule, and Plaintiffs cannot survive a motion to dismiss without allegations that satisfy the controlling law.   Plaintiffs' allegations fail because they do not even purport to plead a disparate impact in the legally relevant population.   Plaintiffs rely (at 14-15) on *Hargraves v. Capital City Mortgage Corp.*, 140 F. Supp. 2d 7 (D.D.C. 2000).   But since the D.C. district court decided *Hargraves*, the D.C. Circuit has made clear that the proper question is whether the challenged policy "as a whole" has a disparate impact, and thus the allegations must be of a disparate impact in the entire population allegedly affected by the policy.   *Greater New Orleans Fair Hous. Action Ctr. v. U.S.*

10

*Dep't of Hous. & Urban Dev.*, 639 F.3d 1078, 1086 (D.C. Cir. 2011); Mem. 22-23.[13]  Plaintiffs' theory fails under *Greater New Orleans* and the weight of its own illogic.

*Second*, even as to Detroit, Plaintiffs candidly acknowledge that their only allegation of a disparate impact is one they say exists among *all New Century borrowers*.  *See* Opp. 14 n.13 (stating that their "allegation is that Morgan Stanley's policies shaped *all* of New Century's lending").  But loans made by New Century that were never purchased by Morgan Stanley are legally irrelevant under the laws Plaintiffs assert—the FHA and ELCRA (which could only be relevant as to mortgage *purchasers*) and ECOA (which could only be relevant as to *assignees*).  The complaint does not allege a disparate impact among borrowers whose loans were purchased by Morgan Stanley.  Yet if there is no disparate impact among that group, then the complaint cannot state a disparate-impact claim against Morgan Stanley.  Mem. 21-23.

    **B.**    **Wrong Loans.**  Plaintiffs allege that New Century's African-American borrowers received *"Combined-Risk"* loans, but their disparate-impact allegations are about *"high-cost"* loans.  The cases Plaintiffs cite (at 15-16) involving "high-cost" loan data have no such disconnection: the alleged disparate impact in those cases *was* higher interest rates paid by African-American borrowers,[14] which is not the alleged discrimination here.

    **C.**    **No Causation.**  Plaintiffs wrongly contend (at 16) that they need not even *allege* a plausible causal connection between the purported policies they challenge and the asserted disparate impact.  This remarkable claim speaks volumes about the deficiencies of their case.  Contrary to Plaintiffs' assertion, a "plaintiff's allegations, accepted as true, must be sufficient to

---

[13] In any event, in *Hargraves* the defendants had in fact argued that the plaintiffs included *too many* borrowers, not too few.  *See* Reply Mem. at 7, 2000 WL 35747893 (Apr. 3, 2000).

[14] *E.g., Miller v. Countrywide Bank, N.A.*, 571 F. Supp. 2d 251, 253 (D. Mass. 2008) ("high-APR home loan[s]"); *Taylor v. Accredited Home Lenders, Inc.*, 580 F. Supp. 2d 1062, 1064 (S.D. Cal. 2008) ("additional points in interest"); *Ramirez v. GreenPoint Mortg. Funding, Inc.*, 633 F. Supp. 2d 922, 925 (N.D. Cal. 2008) ("higher fees and interest rates").

establish liability." *Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 343-44 (2d Cir. 2006).   Thus, a complaint must "adequately allege a causal connection between any facially neutral policy" and the resultant disparate impact.   *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998).   Plaintiffs cite (at 16) *Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249 (E.D.N.Y. 2009), but that case addressed a retaliation claim, not a disparate-impact claim. Courts regularly dismiss disparate-impact claims, like this one, that fail to allege causation.[15]

Here, the complaint fails adequately to allege that any disparate impact was caused by Morgan Stanley, as opposed to New Century.   The only allegations even purporting to say that Morgan Stanley "required" New Century to do anything at all are in ¶¶ 56 and 57, which relate to a single 2005 transaction that suggests no preference (much less a requirement) for "high cost" loans (a prerequisite to being a "Combined-Risk Loan").   *See* Mem. 25.   Nor do the individual Plaintiffs claim they had any particular connection to this single 2005 transaction.   Perhaps for these reasons, Plaintiffs now relegate this allegation to a footnote (at 17 n. 15).   Plaintiffs also argue (at 17) that Morgan Stanley was New Century's "primary source of funds," but that is an allegation of mere enablement, not compulsion.   Even on its own terms, the allegation says nothing legally relevant; Plaintiffs do not allege that Morgan Stanley provided even half of New Century's warehouse lending,[16] and Plaintiffs acknowledge that Morgan Stanley purchased fewer than half of New Century's mortgages, *see* Compl. ¶ 38.   Plaintiffs' conclusory contention (at 17) that Morgan Stanley "intervened in the underwriting process to ensure the origination" of

---

[15] *See, e.g.*, *Hines v. Cal. Pub. Utilities Comm'n*, 467 F. App'x 639, 641 (9th Cir. 2012); *Williams v. N.Y. City Hous. Auth.*, 2009 WL 804137, at *6 n.6 (S.D.N.Y. 2009), *aff'd*, 408 F. App'x 389 (2d Cir. 2010); *Powell v. Am. Gen. Fin.*, 310 F. Supp. 2d 481, 488 (N.D.N.Y. 2004).

[16] In fact, the public documents cited in the complaint indicate that Morgan Stanley extended a $3 billion line of credit to New Century in 2006 and 2007, *see* Mass. AOD ¶ 12, but at the end of the third quarter of 2006, New Century "had outstanding approximately $8.5 billion in short-term borrowings," *see* Final Bankruptcy Report at 62.

Combined-Risk Loans is not supported by the specific allegations in paragraphs 72 through 75 of the complaint, which relate to post-loan due diligence.  The complaint thus fails adequately to allege that Morgan Stanley caused any discrimination by New Century.

Plaintiffs cite no authority for holding a defendant liable merely for allowing an independent third party like New Century to take actions that have a disparate impact.  Plaintiffs (at 17) rely on *McReynolds v. Merrill Lynch*, 672 F.3d 482 (7th Cir. 2012), but that case challenged Merrill Lynch's policy of permitting brokers to form their own teams, which was alleged to have a disparate impact on African-Americans excluded from higher performing teams.  Holding an employer responsible for policies affecting its own employees is a far cry from imposing liability for the acts of an independent third party.  *See City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 615 F.3d 496, 504-05 (6th Cir. 2010) (no causation in suit against securitizers because, *inter alia*, lenders "ultimately made the decisions regarding … which types of loans they would market and sell").

Moreover, Plaintiffs still fail to identify any *particular* Morgan Stanley policy as the purported cause of the alleged disparate impact.  Plaintiffs' repeated contention (*e.g.*, at 18) that Morgan Stanley had a "policy of orchestrating the sale of Combined-Risk loans" is purely conclusory.  More concretely, at most, Plaintiffs allege that five purported policies or practices together resulted in an amorphous interaction that, in turn, led to New Century originating loans that allegedly had a discriminatory effect.  That kind of speculative and attenuated claim is not permitted.  *See, e.g.*, *Byrnie v. Town of Cromwell*, 243 F.3d 93, 111 (2d Cir. 2001); Mem. 26.

**D.     Plaintiffs Were Not Qualified.**  Plaintiffs' disparate-impact allegations also fail because Plaintiffs never allege that they were qualified to receive lower cost non-Combined-Risk Loans.  Plaintiffs express surprise at this legal requirement, but courts routinely impose it in

13

reverse redlining cases. *See, e.g.*, *Barkley v. Olympia Mortg. Co.*, 2007 WL 2437810, at *15 (E.D.N.Y. 2007);[17] Mem. 20. Courts do so for the same reason as in other disparate-impact cases: courts properly assume that an unqualified plaintiff was denied a benefit "for the obvious reason—that he was unqualified." *Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 668 (7th Cir. 1996). Plaintiffs cannot allege that they were disadvantaged by a policy that "caused" African-Americans disproportionately to receive "Combined-Risk Loans" instead of more desirable loans unless they allege they were qualified for those more desirable loans.

## IV. PLAINTIFFS LACK STANDING

Plaintiffs have not alleged facts sufficient to satisfy the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

*First*, because the individual Plaintiffs do not allege that they would have qualified for and received loans on more favorable terms absent the alleged discrimination, they fail to allege an actual injury-in-fact. *See* Mem. 27. Plaintiffs argue (at 27) that Defendants' cases are "inapposite" because they did not involve a plaintiff who failed to "allege[] that her credit 'qualifications' meet the hypothetical underwriting standards for a 'better' loan." That those cases—which involved the FHA, ECOA, and other comparable claims—did not arise in circumstances identical to those here does not affect their applicability. The Seventh Circuit has explained in the Title VII context that to have standing, a plaintiff alleging disparate impact must "establish that he was qualified for the position sought" because if not qualified, "he could not claim that he was injured, much less affected, by the defendant's use of an employment practice

---

[17] *See also id.* at *14 (discussing applicability of same reverse-redlining elements to intentional targeting, disparate-treatment, *and disparate-impact* claims).

with an allegedly disparate impact." *Melendez*, 79 F.3d at 668.[18]

*Second*, none of the Plaintiffs has alleged injuries fairly traceable to Morgan Stanley. Plaintiffs fail to allege specific facts "to support a reasonable inference" that any action by Morgan Stanley "had a 'determinative or coercive effect upon the action[s]'" of New Century. *Nat'l Council of La Raza v. Mukasey*, 283 F. App'x 848, 851 (2d Cir. 2008) (quoting *Bennett v. Spear*, 520 U.S. 154, 169, (1997)); *see* Mem. 28.  Plaintiffs argue (at 28) that under *Carver v. City of New York*, 621 F.3d 221 (2d Cir. 2010), allegations of "constrain[t] or influence[]" are sufficient.  But *Carver* stated that causation "turns on *the degree* to which the defendant's actions constrained or influenced the decision of the final actor in the chain of causation," *id.* at 226 (emphasis added), and reiterated that the proper inquiry is whether the defendant's actions had a "'determinative or coercive'" effect on the final actor, *id.* (quoting *Bennett*, 520 U.S. at 169).

## V.      PLAINTIFFS ARE NOT ENTITLED TO PROSPECTIVE RELIEF

Plaintiffs argue (at 29) that "New Century's bankruptcy has no bearing" on their standing to seek prospective relief.   But all of their allegations concern Morgan Stanley's alleged "policies" with respect to purchasing mortgages *from New Century* from *2004 to 2007*.  They do not challenge any Morgan Stanley policies for purchasing mortgages from other lenders. Plaintiffs also do not plead that they are likely to "reenter the housing market" (Opp. 29) or that they are likely in the future to receive a Combined-Risk Loan due to Morgan Stanley's conduct.

## CONCLUSION

For the foregoing reasons, Plaintiffs' complaint should be dismissed with prejudice.

---

[18] *See also Wilson v. Glenwood Intermountain Props.*, 98 F.3d 590, 593-94 (10th Cir. 1996) (holding that non-students lacked standing to challenge an allegedly discriminatory student housing policy under the FHA and noting that "[d]iscrimination cannot be the cause of injury to an applicant who could not have obtained the benefit even in the absence of the discrimination").

Dated: February 20, 2013                    Respectfully submitted,

                                            /s/ Noah A. Levine
                                            _____
                                            Noah A. Levine
                                            Colin T. Reardon
                                            WILMER CUTLER PICKERING HALE AND DORR LLP
                                            7 World Trade Center
                                            250 Greenwich Street
                                            New York, NY 10007
                                            Tel.: (212) 230-8800
                                            Fax: (212) 230-8888
                                            noah.levine@wilmerhale.com,
                                            colin.reardon@wilmerhale.com

                                            David W. Ogden (*admitted pro hac vice*)
                                            Brian M. Boynton (*admitted pro hac vice*)
                                            Danielle Y. Conley (*admitted pro hac vice*)
                                            Jonathan Bressler (*admitted pro hac vice*)
                                            WILMER CUTLER PICKERING HALE AND DORR LLP
                                            1875 Pennsylvania Avenue, NW
                                            Washington, DC 20006
                                            Tel.: (202) 663-6000
                                            Fax: (202) 663-6363
                                            david.ogden@wilmerhale.com,
                                            brian.boynton@wilmerhale.com,
                                            danielle.conley@wilmerhale.com
                                            jonathan.bressler@wilmerhale.com

                                            *Counsel for Defendants*