**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BEVERLY ADKINS, CHARMAINE WILLIAMS, REBECCA PETTWAY, RUBBIE McCOY, WILLIAM YOUNG, on behalf of themselves and all others similarly situated, and MICHIGAN LEGAL SERVICES, <br><br>                       Plaintiffs, <br><br>      v. <br><br> MORGAN STANLEY, MORGAN STANLEY & CO. LLC, MORGAN STANLEY ABS CAPITAL I INC., MORGAN STANLEY MORTGAGE CAPITAL INC., and MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, <br><br>                     Defendants. | 1:12-cv-7667-HB |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING A DECISION BY THE SUPREME COURT IN *MOUNT HOLLY* OR, IN THE ALTERNATIVE, TO CERTIFY AN APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

i

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................2

ARGUMENT .............................................................................................................................4

I.     THIS ACTION SHOULD BE STAYED PENDING THE SUPREME COURT'S
DECISION IN MOUNT HOLLY .....................................................................................4

     A.     The Supreme Court's Decision in Mount Holly Will Determine Whether
Plaintiffs' Only Remaining Claim Can Survive ......................................................4

     B.     The Balance of Interests and Burdens Supports a Stay ............................................6

     C.     A Temporary Stay Will Not Prejudice Plaintiffs ....................................................8

II.    IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY AN APPEAL
PURSUANT TO 28 U.S.C. § 1292(b)................................................................................9

     A.     Issue 1:  Whether the FHA Excludes a Discovery Rule ........................................10

     B.     Issue 2:  Whether a Mortgage Loan Purchaser Can Be Liable Under the
FHA for Discrimination Measured Only In a Different Party's Book of
Transactions ..........................................................................................................14

     C.     Issue 3:  Whether a Mortgage Loan Purchaser Can Be Liable Under the
FHA for Discrimination in the Terms and Conditions of Loans That It Did
Not Purchase .........................................................................................................18

CONCLUSION.........................................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Archer v. Nissan Motor Acceptance Corp.*,
    550 F.3d 506 (5th Cir. 2008) ................................................13

*Carter v. United States*,
    No. 1:06-cv-225, 2007 WL 2439500 (D. Vt. Aug. 23, 2007) ...................................5

*Certain Underwriters at Lloyds of London v. Illinois Nat'l Ins. Co.*,
    No. 09 CIV. 4418 LAP, 2013 WL 310383 (S.D.N.Y. Jan. 25, 2013) ..............11, 15

*Clement v. United Homes, LLC*,
    914 F. Supp. 2d 362 (E.D.N.Y. Dec. 27, 2012)...................................................12

*Consub Del. LLC v. Schahin Engenharia Limitada*,
    476 F. Supp. 2d 305 (S.D.N.Y. 2007)...............................................11, 15

*Coulibaly v. J.P. Morgan Chase Bank, N.A.*,
    No. 10-cv-3517 (DKC), 2011 WL 3476994 (D. Md. Aug. 8, 2011)......................12

*Estate of Heiser v. Deutsche Bank Trust Co. Americas*,
    No. 11 CIV. 1608 AJN MHD, 2012 WL 5039065 (S.D.N.Y. Oct. 17, 2012).........8

*Estate of Re v. Kornstein, Veisz & Wexler*,
    958 F. Supp. 907 (S.D.N.Y. 1997) ....................................................10

*Estate of Ungar v. Palestinian Auth.*,
    344 F. App'x 631 (2d Cir. 2009) ......................................................4

*Fed. Hous. Fin. Agency v. UBS Americas, Inc.*,
    858 F. Supp. 2d 306 (S.D.N.Y. 2012)............................................10, 20

*Fernandez v. Artuz*,
    175 F. Supp. 2d 682 (S.D.N.Y. 2001)..............................................10

*Garcia v. Brockway*,
    526 F.3d 456 (9th Cir. 2008) (en banc) ..........................................2, 12

*German v. Fed. Home Loan Mortg. Corp.*,
    No. 93-cv-6941 (NRB), 2000 WL 1006521 (S.D.N.Y. July 19, 2000)..................20

*Huntington Branch, NAACP v. Town of Huntington*,
    844 F.2d 926 (2d Cir. 1988), *aff'd in part*, 488 U.S. 15 (1988) ................................6

*In re Dynex Capital, Inc. Sec. Litig.*,
 No. 05 Civ. 1897 (HB), 2006 WL 1517580 (S.D.N.Y. June 2, 2006)..............................10, 13

*In re Fosamax Prods. Liab. Litig.*,
 No. 06 MD 1789 (JFK), 2011 WL 2566074 (S.D.N.Y. June 29, 2011)................................11

*In re Literary Works in Elec. Databases Copyright Litig.*,
 No. M-21-90 GBD, 2001 WL 204212 (S.D.N.Y. Mar. 1, 2001).............................................8

*In re Worldcom, Inc.*,
 No. M-47 HB, 2003 WL 21498904 (S.D.N.Y. June 30, 2003) ............................................10

*Inclusive Cmtys. Project, Inc. v. Texas Dep't of Hous. and Cmty. Affairs*,
 860 F. Supp. 2d 312 (N.D. Tex. 2012) .......................................................................5

*Jugmohan v. Zola*,
 No. 98-cv-1509 (DAB), 2000 WL 222186 (S.D.N.Y. Feb. 25, 2000) ....................................5

*Klinghoffer v. S.N.C. Achille Lauro*,
 921 F.2d 21 (2d Cir. 1990)...............................................................................15, 18

*Kuchmas v. Towson Univ.*,
 No. 06-cv-3281 (RDB), 2007 WL 2694186 (D. Md. Sept. 10, 2007)....................................12

*Landis v. N. Am. Co.*,
 299 U.S. 248 (1936).........................................................................................4

*Langlois v. Abington Housing Authority*,
 207 F.3d 43 (1st Cir. 2000)..................................................................................6

*Laurent v. PriceWaterhouseCooper LLP*,
 No. 06 CV 2280 (GBD), 2007 WL 2363616 (S.D.N.Y. Aug. 17, 2007) ................................10

*Lewis v. City of Chicago*,
 560 U.S. 205 (2010).........................................................................................11

*LNC Invs., Inc. v. First Fid. Bank*,
 No. 92-cv-7584 (CSH), 2000 WL 461612 (S.D.N.Y. Apr. 18, 2000)...................11, 14, 19, 18

*Magner v. Gallagher*,
 132 S. Ct. 548 (2011)....................................................................................3, 5, 6

*Marshel v. AFW Fabric Corp.*,
 552 F.2d 471 (2d Cir.1977)..................................................................................4

*Moseke v. Miller & Smith, Inc.*,
 202 F. Supp. 2d 492 (E.D. Va. 2002) ......................................................................12

*Padilla ex rel. Newman v. Rumsfeld*,
    256 F. Supp. 2d 218 (S.D.N.Y. 2003)............................................................15

*Pearson Educ., Inc. v. Liu*,
    No. 1:08-cv-06152 (RJH), 2010 WL 623470 (S.D.N.Y. Feb. 22, 2010)..................10

*Primavera Familienstifung v. Askin*,
    139 F. Supp. 2d 567 (S.D.N.Y. 2001).........................................................13

*Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*,
    No. 5:12-CV-3864-EJD, 2012 WL 6020012 (N.D. Cal. Dec. 3, 2012) ...................9

*Rodriguez v. Banco Cent.*,
    917 F.2d 664 (1st Cir. 1990).............................................................10, 12

*Romea v. Heiberger & Assocs.*,
    988 F. Supp. 715 (S.D.N.Y. 1998) .........................................................10

*SEC v. Credit Bancorp, Ltd.*,
    103 F. Supp. 2d 223 (S.D.N.Y. 2000).......................................................18

*Sikhs for Justice v. Nath*,
    893 F. Supp. 2d 598 (S.D.N.Y. 2012)................................................4, 5, 8, 9

*Skylon Corp. v. Guilford Mills, Inc.*,
    901 F. Supp. 711 (S.D.N.Y. 1995) .........................................................14

*Thiel v. Veneman*,
    859 F. Supp. 2d 1182 (D. Mont. 2012)......................................................13

*Thompson v. Mt. Peak Assocs., LLC*,
    No. 05-cv-145 (BES), 2006 WL 1582126 (D. Nev. June 5, 2006) ...................12, 13

*Township of Mount Holly v. Mount Holly Gardens Citizens in Action, Inc.*,
    No. 11-1507, 2013 WL 2922132 (U.S. June 17, 2013) ......................................3

*Transport Workers Union of Am. v. N.Y.C. Transit Auth.*,
    358 F. Supp. 2d 347 (S.D.N.Y. 2005).......................................................18

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001)........................................................................13

*Walton v. Wells Fargo Bank*,
    No. 13-cv-428 (AW), 2013 WL 3177888 (D. Md. June 21, 2013) ........................12

*Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co.*,
    No. 01 Civ. 1044 (RJH) (HBP), 2005 WL 912184 (S.D.N.Y. Apr. 19, 2005).........4, 5, 8

*Xuedan Wang v. Hearst Corp.*,
    No. 12-cv-793 (HB), 2013 WL 3326650 (S.D.N.Y. June 27, 2013)................................15, 19

**STATUTES**

28 U.S.C. § 1292(b) .......................................................................................... passim

42 U.S.C. § 3605.............................................................................................. passim

42 U.S.C. § 3613(a)(1)(A) .................................................................................11, 12

24 C.F.R. § 100.125 .................................................................................14, 17, 18, 19

**OTHER AUTHORITIES**

Dennis Parker & Larry Schwartztol, *An important step towards holding Wall Street
    accountable* (July 25, 2013)....................................................................................16

Petition for Writ of Certiorari, *Magner v. Gallagher*,
    No. 10-1032, 2011 WL 549171 (U.S. Feb. 14, 2011) .............................................3

Petition for Writ of Certiorari, *Twp. of Mt. Holly v. Mt. Holly Gardens Citizens in Action,
    Inc.*, No. 11-1507, 2012 WL 2151511 (U.S. June 11, 2012)..................................3, 6

## PRELIMINARY STATEMENT

In *Township of Mount Holly v. Mount Holly Gardens Citizens in Action, Inc.*, No. 11-1507, the Supreme Court will consider whether disparate impact claims are cognizable under the Fair Housing Act ("FHA").  After this Court's Opinion and Order dated July 25, 2013 ("July 25 Order" or "Order"), Plaintiffs' only remaining cause of action is an FHA disparate impact claim.  Defendants respectfully submit that the litigation should be stayed pending the Supreme Court's decision in *Mount Holly* to ensure that the parties and Court do not waste substantial resources in discovery and other litigation activities in the coming months while the Supreme Court prepares to decide whether Plaintiffs' sole remaining claim is invalid.

If the Court determines that the parties should nonetheless litigate Plaintiffs' FHA claim before the resolution of *Mount Holly*, Defendants respectfully request that the Court certify its July 25 Order for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  That Order involves at least three controlling issues of law concerning Plaintiffs' FHA claim as to which there is a substantial ground for difference of opinion:

1. whether the FHA statute of limitations excludes a discovery rule;

2. whether a loan purchaser can be liable under the FHA for discrimination that is measured only in the terms and conditions of transactions in a different party's book of business; and

3. whether a loan purchaser can be liable under the FHA based upon discrimination in the terms and conditions of loans that it never even purchased.

An immediate appeal of the July 25 Order will materially advance the termination of this litigation because if the Second Circuit answers any of the three questions differently than this Court, the litigation would be terminated (Questions 1 and 2) or fundamentally changed (Question 3).  This Court's holding that the FHA includes a discovery rule is a quintessential issue warranting interlocutory appeal because it is a threshold legal issue on which other federal

1

courts, including the *en banc* Ninth Circuit, have reached the opposite conclusion. *See, e.g.,* *Garcia v. Brockway*, 526 F.3d 456, 465 (9th Cir. 2008) (en banc). This Court's holdings that a loan purchaser can be liable for a disparate impact in another party's book of transactions and that a loan purchaser can be held liable even for discrimination in loans it never purchased are also pure legal questions of statutory interpretation, and present novel issues on which there is substantial ground for difference of opinion with this Court's conclusions.

## BACKGROUND

Plaintiffs filed their complaint on October 15, 2012, alleging that from 2004 to 2007, New Century Mortgage Company made loans in the Detroit, Michigan metropolitan area with terms and conditions that reflect a disparate impact on African-American borrowers. Plaintiffs sought to hold Defendants liable for that alleged disparate impact in New Century's Detroit book of business under the FHA as a secondary-market purchaser of New Century loans. Plaintiffs also brought similar claims under the Equal Credit Opportunity Act ("ECOA") and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA").

On December 21, 2012, Defendants moved to dismiss the complaint on numerous grounds. Defendants specifically "dispute[d] that the FHA, ECOA or ELCRA provide for liability on a disparate impact theory," noting that "[t]he Supreme Court has not decided whether the FHA or ECOA permits recovery based on a disparate impact theory." Mem. in Supp. of Defs.' Mot. to Dismiss (ECF No. 37) at 19 & n.14 ("Mot. to Dismiss Br."). Defendants "acknowledge[d] that the Second Circuit has recognized disparate impact claims under the FHA, and that this Court is bound by Second Circuit precedent in this regard," *id.* (citing *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 934–35 (2d Cir. 1988), *aff'd in part*, 488 U.S. 15 (1988); *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995)), but noted "disagreement with that precedent ... in order to preserve the issue." *Id.*

On June 17, 2013, the Supreme Court granted certiorari in *Mount Holly* on the following question: "Are disparate impact claims cognizable under the Fair Housing Act?" *Mount Holly*, No. 11-1507, 2013 WL 2922132, at *1 (U.S. June 17, 2013); Petition for Writ of Certiorari, *Twp. of Mt. Holly v. Mt. Holly Gardens Citizens in Action, Inc.*, No. 11-1507, 2012 WL 2151511, at *i (U.S. June 11, 2012) (Question 1) ("*Mt. Holly* Petition for Certiorari"). The certiorari grant in *Mount Holly* followed a similar grant in November 2011 in *Magner v. Gallagher*, 132 S. Ct. 548 (2011), which also presented the question whether disparate impact claims are cognizable under the FHA.[1] The Supreme Court dismissed that case in February 2012 after the parties agreed to withdraw the petition as part of a settlement. *See id.*, 132 S. Ct. 1306 (2012).

On July 25, 2013, this Court granted Defendants' motion to dismiss in part and denied it in part. The Court dismissed Plaintiffs' ECOA and ELCRA claims on statute of limitations grounds, holding that those statutes did not admit a discovery rule and that Plaintiffs did not satisfy the continuing violations doctrine or equitable tolling doctrine. Order at 8-10. The Court held that Plaintiffs' FHA claims were timely under the discovery rule, however, rejecting Defendants' argument that the discovery rule does not apply under the FHA. Order at 6-8; Mot. to Dismiss Br. at 9-10. The Court also held that, pursuant to the FHA's application to secondary-market mortgage purchasers, Plaintiffs could seek to hold Defendants liable for "caus[ing] New Century to issue" loans with allegedly discriminatory terms and conditions, even in instances where Morgan Stanley did not "purchase[] … the loans that New Century issued." Order at 12; *see also id.* at 11-13. Following this Court's July 25 Order, Plaintiffs' only remaining claim in this action is for disparate impact under the FHA.

---

[1]   *See* Petition for Writ of Certiorari, *Magner v. Gallagher*, No. 10-1032, 2011 WL 549171, at *i (U.S. Feb. 14, 2011) (petitioning for certiorari on two questions, including whether "disparate impact claims [are] cognizable under the Fair Housing Act").

## ARGUMENT

**I. THIS ACTION SHOULD BE STAYED PENDING THE SUPREME COURT'S DECISION IN *MOUNT HOLLY***

Federal courts possess the inherent power to temporarily stay proceedings before them. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Estate of Ungar v. Palestinian Auth.*, 344 F. App'x 631, 634 (2d Cir. 2009). In deciding whether to issue a stay, this Court "typically consider[s] five factors: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 621–22 (S.D.N.Y. 2012) (internal quotation marks omitted). Taken together, these factors compel a stay here.

**A. The Supreme Court's Decision in *Mount Holly* Will Determine Whether Plaintiffs' Only Remaining Claim Can Survive**

Plaintiffs' only remaining claim is under the FHA, and their only theory under the FHA is that Defendants' policies allegedly caused a disparate impact among New Century's borrowers in the Detroit area. *See* Compl. ¶¶ 236–48. Plaintiffs do not allege intentional discrimination or disparate treatment. If the Supreme Court answers the question presented in *Mount Holly* in the negative, it will require dismissal of this case.

Courts in this circuit routinely grant stays "when 'a higher court is close to settling an important issue of law bearing on the action.'" *Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co.*, No. 01 Civ. 1044 (RJH) (HBP), 2005 WL 912184, at *2 (S.D.N.Y. Apr. 19, 2005) (quoting *In re Literary Works in Elec. Databases Copyright Litig.,* No. M-21-90 GBD, 2001 WL 204212, at *2 (S.D.N.Y. Mar. 1, 2001)); *see also Marshel v. AFW Fabric Corp.*, 552 F.2d 471, 472 (2d Cir.1977) (instructing the district court to stay the proceedings pending a

Supreme Court decision in a closely related case which was likely to determine the question of liability); *Nath*, 893 F. Supp. 2d at 622 (holding that "a court may … properly exercise its staying power when a higher court is close to settling an important issue of law bearing on the action"). Staying a case is, indeed, a common practice in this context. As one Southern District of New York decision put it, "[p]ostponing the final disposition of a case pending an upcoming decision by the United States Supreme Court is a practice exercised by the Second Circuit in the interest of judicial economy." *Jugmohan v. Zola*, No. 98-cv-1509 (DAB), 2000 WL 222186, at *5 (S.D.N.Y. Feb. 25, 2000); *see also Carter v. United States*, No. 1:06-cv-225, 2007 WL 2439500, at *3 (D. Vt. Aug. 23, 2007) (noting that "it is common practice in this Circuit to postpone the final disposition of a case pending an upcoming decision in the United States Supreme Court").

Exercising that practice is plainly warranted here, where Plaintiffs' FHA disparate impact claim is all that remains following the motion to dismiss. The question presented in *Mount Holly* is "an important issue of law bearing on th[is] action," *Wing Shing Prods.*, 2005 WL 912184, at *2, because the Supreme Court will decide whether disparate impact claims under the FHA are even cognizable. If the Court holds that they are not, then Plaintiffs' FHA claim must be dismissed and no discovery or other litigation would be appropriate. When another district court confronted similar circumstances after the Supreme Court granted certiorari in *Magner*, that court properly stayed the action pending the outcome of the Court's resolution of the FHA disparate impact question. *See Inclusive Cmtys. Project, Inc. v. Texas Dep't of Hous. and Cmty. Affairs,* 860 F. Supp. 2d 312, 322 n.17 (N.D. Tex. 2012).

It is not material that the plaintiffs in *Mount Holly* are proceeding under § 3604(a) of the FHA while Plaintiffs here sue under § 3605. The question presented in *Mount Holly* is framed

broadly, asking whether "disparate impact claims [are] cognizable under *the Fair Housing Act.*" *Mt. Holly* Petition for Certiorari, 2012 WL 2151511, at *i (emphasis added). The question presented thus is not limited to a particular provision of that statute. Moreover, petitioner's primary argument in *Mount Holly* applies with equal force to the provision at issue in this case. In *Mount Holly*, as in *Magner* before, the petitioner argues that the operative FHA provisions lack the "affects" language that the Supreme Court has previously held is critical to finding that a disparate impact theory is available under antidiscrimination statutes. *See id.* at *16 (citing *Smith v. City of Jackson*, 544 U.S. 228, 236 n.6 (2005) (plurality opinion), and arguing that because "FHA on its face does not discuss 'affect' or 'effect'" the "plain language of the FHA does not permit a disparate impact claim"). As the *Mount Holly* petitioners note, none of the operative sections of the FHA—including § 3604(a) and § 3605—contains "affects" language. *See id.* Finally, the courts of appeals, including the Second Circuit, have not generally drawn distinctions among the FHA's provisions in deciding the cognizability of disparate impact claims under the act. *See, e.g.*, *Langlois v. Abington Hous. Auth.*, 207 F.3d 43, 49 (1st Cir. 2000); *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 935–36 (2d Cir. 1988), *aff'd in part*, 488 U.S. 15 (1988). Thus, there is every reason to expect the Supreme Court's ruling in *Mount Holly* to shed potentially dispositive light on the FHA claim here.

### B.       The Balance of Interests and Burdens Supports a Stay

If the Court were to deny a stay, the burden on Defendants would be substantial. Under the present schedule, the parties must complete non-expert, class-certification discovery within months of the Court's July 25 decision on the motion to dismiss. This timing makes it likely that the lion's share (if not all) of the discovery would be undertaken during the Supreme Court's consideration of *Mount Holly*.

That discovery is likely to be substantial and expensive. Plaintiffs' discovery requests are not limited to either the time period or the narrow geographical scope of the claims asserted in the complaint. Rather, in 49 requests for production, Plaintiffs seek a vast amount of discovery dating back as far as January 1, 2002 (though the class they seek to represent extends only to 2004) up through the present date (though their claims concern only purchases of loans from New Century, which went bankrupt in 2007) concerning Defendants' purchases of all New Century loans nationwide (though their case concerns only Detroit). *See generally* Pls.' Second Set of Requests for Production of Documents (July 9, 2013), attached as Exhibit A. Plaintiffs' requests seek massive volumes of data and documents that effectively cover most of Morgan Stanley's subprime mortgage purchasing and securitization policies, practices, and acts over six and a half years—and in some cases extending up to the present date too. Responding to the requests—even if they are narrowed, as they should be—will be burdensome, costly, and difficult. Beyond this document discovery, the parties will also need to complete depositions during the time the Supreme Court considers *Mount Holly*. Based on the scope of Plaintiffs' document requests, Defendants expect that Plaintiffs will seek a substantial number of depositions. Finally, because this is a disparate impact case, it will require complex statistical analysis by experts and the preparation of multiple expert reports. Expenditures related to that analysis and to expert discovery are also likely to be significant. At a minimum, Defendants would incur hundreds of thousands of dollars in expenses just to litigate this suit during the pendency of the Supreme Court's consideration of *Mount Holly*, with the prospect that all of the expenditures will have been unnecessary.

In light of the substantial expenditures and burdens likely to be incurred absent a stay, and the fact that it would be wasted effort if the Supreme Court rules that Plaintiffs' only

remaining claim is not cognizable, a temporary stay of this case for the period it takes the Supreme Court to consider and decide *Mount Holly* is warranted.  *See, e.g.*, *Nath*, 893 F. Supp. at 622 (granting stay because "it would be an inefficient use of time and resources of the court and the parties to proceed in light of a pending U.S. Supreme Court decision" (internal quotation marks omitted)).

### C.    A Temporary Stay Will Not Prejudice Plaintiffs

None of the other factors that courts consider when evaluating stay requests counsels against a stay in the circumstances here or outweighs the factors favoring a stay.  *See Nath*, 893 F. Supp. 2d at 621-22 (listing factors).  In particular, staying the action for the time it takes the Supreme Court to decide *Mount Holly* will not prejudice Plaintiffs.

Plaintiffs did not bring this lawsuit until October 2012, six to eight years after Plaintiffs entered into the relevant loan transactions from 2004 to 2006 and more than five years after New Century went bankrupt in 2007.  *See* Mot. to Dismiss Br. at 7.  Indeed, because the practices that Plaintiffs challenge (New Century's lending and Defendants' purchases of New Century loans) ended in 2007 when New Century went bankrupt, this Court's July 25 Order held that Plaintiffs are not entitled to injunctive relief.  *See* Opinion & Order (ECF No. 47) at 5-6.  *Mount Holly* will be heard in the coming Supreme Court term and under the current briefing schedule could be argued as early as December.  A temporary stay of this action will accordingly not cause any undue prejudice to Plaintiffs, as courts in this circuit have frequently recognized.  *See Wing Shing*, 2005 WL 912184, at *2 (holding that "stay of several months will cause little prejudice or hardship to" plaintiffs because it would "be lifted upon resolution" of pertinent appeal); *In re Literary Works*, 2001 WL 204212, at *3 ("stay of several months will cause no prejudice or hardship" to the plaintiffs); *Estate of Heiser v. Deutsche Bank Trust Co. Americas*, No. 11 CIV. 1608 AJN MHD, 2012 WL 5039065, at *4 (S.D.N.Y. Oct. 17, 2012) (granting stay and rejecting

plaintiffs' prejudice argument "[b]ecause the instant stay is framed by discernible and reasonable

limits"); *see also Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No. 5:12-CV-3864-

EJD, 2012 WL 6020012, at *4 (N.D. Cal. Dec. 3, 2012) (rejecting argument that plaintiff would

be prejudiced by a stay in light of plaintiff's long delay in filing action); *Nath*, 893 F. Supp. 2d at

622 (similar).[2]

## II.   IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY AN APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

In the event the Court declines to stay these proceedings pending *Mount Holly*,

Defendants respectfully request that the Court certify the July 25 Order for interlocutory appeal,

pursuant to 28 U.S.C. § 1292(b), for resolution of three issues of law addressed in that Order:

(1) whether the FHA statute of limitations excludes a discovery rule; (2) whether a loan

purchaser can be liable under the FHA for discrimination that is measured only in the terms and

conditions of transactions in a different party's book of business; and (3) whether a loan

purchaser can be liable under the FHA based upon discrimination in the terms and conditions of

loans that it never even purchased.

Section 1292(b) authorizes a district court to certify an order for interlocutory appeal if it

meets the following requirements: (1) the order "involves a controlling question of law"; (2) "as

to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal

from the order may materially advance the ultimate termination of the litigation."  28 U.S.C.

§ 1292(b).  Courts in this District frequently certify denials of Rule 12(b)(6) motions for

interlocutory appeal when those motions raise threshold legal issues meeting section 1292(b)'s

criteria and where resolution of those issues at the outset of the case could avoid potentially

---

[2]      For similar reasons, a temporary stay will not harm the public interest or the interests of
any persons who are not parties to this litigation. *See Nath*, 893 F. Supp. 2d at 621-22.

unnecessary protracted litigation.  *See, e.g., In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897 (HB), 2006 WL 1517580 (S.D.N.Y. June 2, 2006) (Baer, J.).[3]  This is an exceptional case that fits squarely within section 1292(b).  *See In re Worldcom, Inc.*, No. M-47 HB, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003) (Baer, J.).  The Court's holdings on each of the three issues raised here involve controlling issues of law, and "[s]ubstantial resources may be expended in vain both by the parties and this Court if [this Court's] initial conclusion[s] prove[] incorrect."  *In re Dynex Capital*, 2006 WL 1517580, at *3 (Baer, J.).

### A.     Issue 1:  Whether the FHA Excludes a Discovery Rule

The pure legal question of whether the FHA's statute of limitations excludes a discovery rule warrants certification under section 1292(b).  "[T]imeliness determinations, which go directly to the plaintiff's ability to maintain some or all of its claims, are precisely the type of legal issue that Congress intended to be addressed through the Section 1292(b) procedure."  *Fed. Hous. Fin. Agency v. UBS Americas, Inc.*, 858 F. Supp. 2d 306, 337 (S.D.N.Y. 2012), *aff'd*, 712 F.3d 136 (2d Cir. 2013).  Accordingly, courts frequently certify orders for interlocutory appeal when they raise questions of whether particular claims are time-barred.  *See, e.g., Rodriguez v. Banco Cent.*, 917 F.2d 664, 665 (1st Cir. 1990) (Breyer, J.) (accepting certified question regarding whether a civil RICO claim is subject to discovery rule).[4]

---

[3]      *See also Pearson Educ., Inc. v. Liu*, No. 1:08-cv-06152 (RJH), 2010 WL 623470 (S.D.N.Y. Feb. 22, 2010); *Laurent v. PriceWaterhouseCooper LLP*, No. 06 CV 2280 (GBD), 2007 WL 2363616 (S.D.N.Y. Aug. 17, 2007); *Romea v. Heiberger & Assocs.*, 988 F. Supp. 715, 717 (S.D.N.Y. 1998).

[4]      *See also Estate of Re v. Kornstein, Veisz & Wexler*, 958 F. Supp. 907, 929 (S.D.N.Y. 1997) (Sotomayor, J.) (certifying question regarding statute of limitations provision that was "potentially dispositive as to all of plaintiffs' claims"); *Fernandez v. Artuz*, 175 F. Supp. 2d 682 (S.D.N.Y. 2001) (granting certification where district court held that statute of limitations provisions found in federal statute did not bar plaintiff's claim).

The Court's discovery rule holding satisfies each prong of section 1292(b):

*First*, whether the FHA excludes a discovery rule is a "controlling question of law." A question of law is "controlling" "where 'reversal of the district court's order would terminate the action.'" *Certain Underwriters at Lloyds of London v. Illinois Nat'l Ins. Co.*, No. 09 CIV. 4418 LAP, 2013 WL 310383, at *1 (S.D.N.Y. Jan. 25, 2013) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)); *see also Consub Del. LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007). Here, the Court rejected the other bases Plaintiffs proffered to come within the statute of limitations—continuing violations and equitable tolling. *See* Order at 9-10 (rejecting Plaintiffs' continuing violations argument as to ECOA under *Lewis v. City of Chicago*, 560 U.S. 205 (2010), and rejecting Plaintiffs' equitable tolling arguments as "entirely conclusory"). Only the Court's legal conclusion that the FHA, unlike ECOA and ELCRA, contains a discovery rule salvaged Plaintiffs' claim. Accordingly, a ruling by the Second Circuit in Defendants' favor on the FHA discovery rule issue would dispose of Plaintiffs' sole remaining claim and require dismissal of this action.

*Second*, there is a "substantial ground for difference of opinion" regarding this controlling question of law. Such grounds exist where, as here, "the authority on a point of law is in conflict." *In re Fosamax Prods. Liab. Litig.*, No. 06 MD 1789 (JFK), 2011 WL 2566074, at *5 (S.D.N.Y. June 29, 2011); *see also Consub Del.*, 476 F. Supp. 2d at 309 (substantial ground exists where "'there is conflicting authority on the issue'" (quoting *In re Lloyd's Am. Trust Funds Litig.*, No. 96 Civ. 1262 (RWS), 1997 WL 458739, at *5 (S.D.N.Y. Aug. 12, 1997)). The FHA's limitations period runs from "the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). Although this Court ruled that the

FHA "does not expressly preclude a discovery rule," Order at 6, the Ninth Circuit's en banc

decision in *Garcia* reached the opposite conclusion:

> Holding that each individual plaintiff has a claim until two years after he
> discovers [an FHA violation] would contradict the text of the FHA, as the statute
> of limitations for private civil actions begins to run when the discriminatory act
> occurs—not when it's encountered or discovered.

*Garcia*, 526 F.3d at 465.  *Garcia* involved precisely the same limitations provision—section

3613(a)(1)(A)—that is at issue here.  *See id.* at 461.

The Court's ruling also conflicts with a number of district court decisions concerning the

same statutory provision.  *See, e.g., Kuchmas v. Towson Univ.*, No. 06-cv-3281 (RDB), 2007 WL

2694186, at *4 n.4 (D. Md. Sept. 10, 2007) ("federal courts have not generally applied the

discovery rule to FHA cases").  Like the Ninth Circuit, district courts have generally held that the

FHA's text is inconsistent with a discovery rule.  *See Walton v. Wells Fargo Bank*, No. 13-cv-

428 (AW), 2013 WL 3177888, at *3 (D. Md. June 21, 2013) ("The discovery rule … does not

apply to the unambiguous language of the FHA's statute of limitations provision.").[5]  Although

some decisions are consistent with the Court's ruling here, *see, e.g.*, *Clement v. United Homes,

LLC*, 914 F. Supp. 2d 362, 371-72 (E.D.N.Y. Dec. 27, 2012), that fact only further demonstrates

the importance of resolution of this issue by the Second Circuit before the parties here undertake

substantial litigation.  *See Rodriguez*, 917 F.2d at 665 (accepting certified question regarding

---

[5]      *See also Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 509 (E.D. Va. 2002) ("The
FHA unambiguously states that the 'occurrence' of the discriminatory act will trigger the statute
of limitations.  Therefore, the discovery rule does not apply here." (citation omitted)); *Coulibaly
v. J.P. Morgan Chase Bank, N.A.*, No. 10-cv-3517 (DKC), 2011 WL 3476994, at *8 (D. Md.
Aug. 8, 2011) ("Given [the FHA's] language, which is triggered by an occurrence, courts have
been unwilling to apply the discovery rule in the FHA context."); *Thompson v. Mt. Peak Assocs.,
LLC*, No. 05-cv-145 (BES), 2006 WL 1582126, at *3 (D. Nev. June 5, 2006) (noting that
"[s]everal courts, including this one, have found that the application of the discovery rule would
be inconsistent with the language of 42 U.S.C. § 3613(a)(1)(A)").

availability of discovery rule because there was a split of authority on the issue and "the district court … followed the minority view").

There are also substantial grounds for disagreement regarding whether this Court correctly applied *TRW Inc. v. Andrews*, 534 U.S. 19 (2001).  In *TRW*, the Supreme Court made clear that a statute of limitations that runs from "the date of the occurrence of the violation"—as an earlier version of the statute there (the Fair Credit Reporting Act) did—"plainly" does not embody a discovery rule.  *See* 534 U.S. at 32.  It is true that the Supreme Court in *TRW* rested its holding on the inconsistency of a different provision (in the finally enacted FCRA) with a general discovery rule, as this Court noted (Order at 8).  But in the language quoted above, the *TRW* Court left no doubt that a statute like the FHA, in which the limitations period runs from the "occurrence" of an action, "plainly" excludes a discovery rule.  *See* 534 U.S. at 32.  At least one court has explicitly relied on *TRW* to hold that the FHA's text likewise excludes a discovery rule, *see Thompson*, 2006 WL 1582126, at *3, and the Fifth Circuit relied on *TRW* to hold that ECOA's text—which is materially similar to the FHA statute of limitations—precludes a discovery rule.  *See Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 508-09 (5th Cir. 2008); *see also Thiel v. Veneman*, 859 F. Supp. 2d 1182, 1187 (D. Mont. 2012).

*Third*, appellate review of the threshold statute-of-limitations issue here will "materially advance the ultimate termination of" both this litigation and other actions involving this question. 28 U.S.C. § 1292(b).  This prong is "closely connected" to "whether there is a controlling issue of law."  *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001).  A court may find material advancement if absent an appeal "[s]ubstantial resources may be expended in vain both by the parties and this Court."  *In re Dynex Capital*, 2006 WL 1517580, at *3 (Baer, J.).  This standard is plainly satisfied here, where a Second Circuit decision holding

that the FHA excludes a discovery rule would require dismissal of this action, and where, as noted above, the costs of discovery, further motion practice, and trial are likely to be substantial. *See supra* Argument Part I.B; *see also Skylon Corp. v. Guilford Mills, Inc.*, 901 F. Supp. 711, 718 (S.D.N.Y. 1995) (granting certification: "[i]f the Court of Appeals finds that I have misconstrued the applicable controlling question of law" then "the expense of discovery and a trial would be avoided").

### B.   Issue 2:  Whether a Mortgage Loan Purchaser Can Be Liable Under the FHA for Discrimination Measured Only In a Different Party's Book of Transactions

This Court's Order involves a second dispositive question of law for which there is a substantial ground for a difference of opinion:  whether, under the FHA and its implementing regulation, a purchaser of mortgage loans may be held liable for discrimination that is measured only in the terms and conditions of transactions in a third-party lender's book of business.  In the motion to dismiss, Defendants argued that the FHA extends liability beyond lenders to loan purchasers in a specific way:  the purchaser can be held liable only for discrimination in its *own* loan-purchase transactions, and *not* for discrimination that arises from the differentiation in the terms and conditions of a lender's transactions.  Here, the discrimination that Plaintiffs allege is only the latter.  Plaintiffs allege that the terms and conditions in *New Century's* loans reflect a disparate impact on African-American borrowers and that Defendants should be held liable for allegedly "causing" New Century to lend in that fashion.  Plaintiffs never allege any disparate impact on African-Americans in Morgan Stanley's own book of loan-purchase transactions.  *See* Mot. to Dismiss Br. at 14-17; Reply Br. (ECF No. 43) at 5-6.

This issue warrants interlocutory appellate review under section 1292(b).  *First*, the issue is a controlling question of law.  Like the discovery rule issue, this FHA liability issue involves a pure legal question of statutory interpretation that, if resolved against Plaintiffs, would be case-

determinative.  If the Second Circuit disagrees with this Court,  holding that the FHA's text does not extend loan-purchaser liability to discrimination measured solely in a distinct lender's book of transactions, that holding would completely dispose of Plaintiffs' FHA claim and terminate this action.  *See Klinghoffer*, 921 F.2d at 24 ("[A] question of law is 'controlling' if reversal of the district court's order would terminate the action."); *Certain Underwriters at Lloyds of London*, 2013 WL 310383, at *1.

Second, there is a substantial ground for a difference of opinion with this Court's holding on the FHA loan-purchaser liability issue.  The Second Circuit has recognized that section 1292(b) certification can be appropriate where the controlling issue is a difficult one of first impression.  *See Klinghoffer*, 921 F.2d at 25; *see also Xuedan Wang v. Hearst Corp.*, No. 12-cv-793 (HB), 2013 WL 3326650, at *2 (S.D.N.Y. June 27, 2013) (Baer, J.); *Certain Underwriters at Lloyds of London*, 2013 WL 310383, at *1; *Consub Del.*, 476 F. Supp. 2d at 309.  "Courts have certified orders for interlocutory appeal when the issues they raise are difficult and novel, in addition to being potentially dispositive."  *Padilla ex rel. Newman v. Rumsfeld*, 256 F. Supp. 2d 218, 221 (S.D.N.Y. 2003).  The FHA loan-purchaser liability issue here is just such a question of first impression:  Neither Plaintiffs nor this Court's order cited any cases construing the FHA to impose liability on a loan purchaser for "causing" discrimination measured in the terms and conditions of a third-party's book of loans.  *See* Pls.' Opp. to Mot. to Dismiss (ECF No. 42) at 7-10; Order at 11-13.  Defendants are not aware of any such authority.  This Court's Order breaks entirely new ground, expanding the statute dramatically to impact secondary market activity remote from the transactions for which liability would attach.

Indeed, Plaintiffs' own counsel has made this point emphatically since the Court ruled.  Counsel publicly hailed the Court's Order as "a historic ruling," distinct from all earlier FHA

precedent.   In counsel's words, this "groundbreaking" case "is the first to connect racial discrimination to the securitization of mortgages.   It is also the first case where a prospective class of homeowners who suffered discrimination is suing an investment bank rather than the subprime lender who issued their mortgages."[6]   The exceptional novelty and importance of the statutory-interpretation question—attaching potential liability to a party that neither engaged in the allegedly discriminatory transactions nor is a party to the transactions said to reflect a disparate impact—makes it precisely the type that should be certified.

Defendants respectfully submit that the FHA text is clear that a loan purchaser can be held liable only for discrimination in its own loan-purchase transactions.   The FHA reaches loan purchasers not by legislating a new liability rule, or imposing liability for disparate treatment in another party's book of business, but rather by expanding the definition of "residential real estate-related transactions" to include the "purchasing of loans … secured by residential real estate."   42 U.S.C. § 3605(b)(1)(B).   The FHA liability provision applies to all covered actors in exactly the same way, proscribing them from discriminating in their own transactions.   Section 3605(a) thus makes it unlawful for any entity "engaging in residential real estate-related *transactions* to discriminate against any person in making available *such a transaction*, or in the terms or conditions of *such a transaction*, because of race."   (Emphasis added.)   The lender engaged in the "making … of loans," § 3605(b)(1), is liable for discrimination in its loan transactions, while the entity engaged in the "purchasing of loans," *id.*, is liable for discrimination in its loan-purchase transactions.   The implementing regulation and its examples of unlawful conduct further confirm that a purchaser can be liable only for discrimination found

---

[6]   Dennis Parker & Larry Schwartztol, *An important step towards holding Wall Street accountable* (July 25, 2013), *available at* http://www.aclu.org/blog/racial-justice/important-step-towards-holding-wall-street-accountable (last visited August 3, 2013).

in its own book of purchase transactions.  *See* 24 C.F.R. § 100.125(a) (stating that it is unlawful for an "entity engaged in the purchasing of loans … secured by residential real estate[] *to refuse to purchase such loans* … or to impose different terms or conditions *for such purchases*, because of race") (emphasis added); *see also id.* at § 100.125(b)(1), (2) (stating that it is unlawful to "*[p]urchas[e] loans* … secured by dwellings in certain communities or neighborhoods but not in others because of" race, and *to* "*[p]ool[] or packag[e] loans* … differently because of race" (emphasis added)).[7]

Because the prohibited discrimination in the case of a loan purchaser is *in the purchase transactions*, any disparate impact discrimination must be measured and found in those transactions, *i.e.*, here in Defendants' book of business.  Plaintiffs' theory of discrimination, however, is not that there is any disparate impact in Defendants' own purchase transactions but rather that Defendants "caused" New Century to extend loans whose terms and conditions show a disparate impact in New Century's lending transactions.  Order at 12.  Whether the FHA condones such an expansive theory of disparate impact liability in the transactions of third parties is a significant and novel question that the Second Circuit should consider before the parties spend months or years litigating the theory.

---

[7]     Assuming for the sake of argument that the FHA provides for disparate impact liability (*but see* Argument Part I, *supra*), a disparate impact claim may be appropriate if the purchaser's facially neutral purchasing policy results in a disparate impact in the purchaser's own transactions.  For example, a purchaser that pays higher prices for mortgages in certain more affluent zip codes and lower prices for mortgages in other less affluent zip codes might be liable for disparate impact discrimination if that purchasing policy has no legitimate business reason and it results in the purchaser disproportionately paying more for loans to white borrowers than for loans to minority borrowers.  In contrast to Plaintiffs' allegations in this case, the disparate impact in this example is measured in the terms and conditions of *the purchaser's own transactions—i.e.*, in the "residential real estate-related transactions" that the purchaser "engag[ed] in" and that brought the purchaser within the scope of the FHA.  42 U.S.C. § 3605(a) & (b).

*Third*, for the same reasons discussed above, appellate review of this controlling issue will materially advance the termination of this action because a decision by the Second Circuit in Defendants' favor would dispose entirely of Plaintiffs' FHA claim, obviating the need for protracted and expensive litigation. *See supra* Argument Part II.A; *see also Transport Workers Union of Am. v. N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 353 (S.D.N.Y. 2005).

### C.     Issue 3:  Whether a Mortgage Loan Purchaser Can Be Liable Under the FHA for Discrimination in the Terms and Conditions of Loans That It Did Not Purchase

Finally, this Court's Order also involves a third question of law as to which there is a substantial ground for a difference of opinion:  whether, under the FHA and its implementing regulation, a purchaser of mortgage loans may be liable for discrimination in the terms and conditions of loans that it did not purchase.  Only one of the five Plaintiffs alleges that Defendants purchased her loan (*see* Compl. ¶ 174), and the class as to which Plaintiffs assert a disparate impact includes all New Century's borrowers in the Detroit area (*see id.* ¶ 229), the majority of whose loans Defendants never purchased.  In their motion to dismiss, Defendants argued that at the very least the FHA could not be read to extend a loan purchaser's liability to such loans.  *See* Mot. to Dismiss Br. at 15-16, 23.  This Court's Order, however, concluded that whether Defendants purchased the New Century loans that Plaintiffs claim were discriminatory is not relevant to whether Plaintiffs stated a discrimination claim.  *See* Order at 12.

This issue also warrants certification.  *First*, like the other two issues presented, this issue is a purely legal question of statutory interpretation.  It is also controlling for purposes of section 1292(b).  An issue is controlling if reversal of the district court's opinion, though not resulting in dismissal of the entire case, "could significantly affect the conduct of the action."  *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000); *see also Klinghoffer*, 921 F.2d at 24-

25; *Xuedan Wang*, 2013 WL 3326650, at *2 (Baer, J.).[8]   A Second Circuit determination in

Defendants' favor on this question would significantly affect this litigation.  Plaintiffs allege that

Defendants purchased fewer than half the loans that New Century issued (*see* Compl. ¶ 38), yet

allege a disparate impact in and seek to hold Defendants liable for all of them.   If the Second

Circuit holds that Defendants cannot be liable for loans that it did not purchase, Plaintiffs' novel

FHA claim, based only on allegations about all New Century loans, would either be dramatically

limited or unsupportable altogether.   And, because only one of the five Plaintiffs alleges that

Morgan Stanley even purchased her loan, the claims of the other four Plaintiffs would need to be

dismissed.

     *Second*, like Issue 2, this issue also involves a substantial ground for disagreement with

this Court's holding.   Neither Plaintiffs nor this Court's order cited any case holding a loan

purchaser liable for discrimination in the terms of loans it never purchased.   *See* Pls.' Opp. to

Mot. to Dismiss (ECF No. 42) at 7-10.   Defendants are not aware of any such authority.   As to

this issue too, then, the Court's Order breaks entirely new ground.

     As explained above, the FHA and its implementing regulation contemplate liability for a

loan purchaser, based on discrimination "in the terms and conditions of … a transaction," 42

U.S.C. § 3605(a), only for loans it actually purchased.   Thus, it is unlawful for an "entity

engaged in the purchasing of loans … secured by residential real estate[] … to impose different

terms or conditions *for such purchases*, because of race."   24 C.F.R § 100.125 (emphasis added).

This Court's Order, however, allows Plaintiffs to sue Defendants not only for loans that they

---

[8]     *Cf. LNC Invs., Inc. v. First Fid. Bank*, No. 92-cv-7584 (CSH), 2000 WL 461612, at *3 (S.D.N.Y. Apr. 18, 2000) ("'Controlling' does not mean dispositive. … 'Rather, all that must be shown in order for a question to be controlling is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court.'" (quoting *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982)).

purchased, but also for New Century's entire book of business—including the vast majority of New Century loans that Defendants did not purchase.   Plaintiffs' only basis for extending liability in this fashion is to say that Defendants "caused" New Century to discriminate in the terms and conditions of its loans—but neither the FHA nor any case holds that a purchaser can be liable for somehow "causing" a disparate impact among parties to loans it never purchased. There is substantial ground for a difference of opinion over Plaintiffs' theory.

*Third*, appellate review of this controlling issue will materially advance the ultimate termination of this action.   A ruling by the Second Circuit in Defendants' favor would terminate four Plaintiffs' claims and, as to the fifth, either terminate that litigation too (because Plaintiffs only allegations of disparate impact are based on data pertaining to the entire New Century Detroit loan pool) or, at a minimum, greatly simplify litigation of that Plaintiffs' case— substantially changing the scope of discovery, the complexity of issues to be litigated, the scope of the putative class that Plaintiff could seek to represent, and the cohort of transactions in which "disparate impact" would be assessed.   *See German v. Fed. Home Loan Mortg. Corp.*, No. 93-cv-6941 (NRB), 2000 WL 1006521, at *2 (S.D.N.Y. July 19, 2000).   A ruling by the Second Circuit thus has "the potential to end or at a minimum significantly restrict the scope of this litigation."   *Fed. Hous. Fin. Agency*, 858 F. Supp. 2d at 338.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court stay this action until the Supreme Court decides *Mount Holly*.   In the alternative, Defendants respectfully request that the Court certify an immediate appeal of the Court's July 25 Order pursuant to 28 U.S.C. § 1292(b).

Dated:  August 5, 2013                    Respectfully submitted,


                                          /s/ Noah A. Levine
                                          _____
                                          Noah A. Levine
                                          Colin T. Reardon
                                          WILMER CUTLER PICKERING HALE AND DORR LLP
                                          7 World Trade Center
                                          250 Greenwich Street
                                          New York, NY 10007
                                          Tel.: (212) 230-8800
                                          Fax: (212) 230-8888
                                          noah.levine@wilmerhale.com
                                          colin.reardon@wilmerhale.com


                                          David W. Ogden (*admitted pro hac vice*)
                                          Brian M. Boynton (*admitted pro hac vice*)
                                          Danielle Y. Conley (*admitted pro hac vice*)
                                          Jonathan Bressler (*admitted pro hac vice*)
                                          WILMER CUTLER PICKERING HALE AND DORR LLP
                                          1875 Pennsylvania Avenue, NW
                                          Washington, DC 20006
                                          Tel.: (202) 663-6000
                                          Fax: (202) 663-6363
                                          david.ogden@wilmerhale.com
                                          brian.boynton@wilmerhale.com
                                          danielle.conley@wilmerhale.com
                                          jonathan.bressler@wilmerhale.com


                                          *Counsel for Defendants*