# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEVERLY ADKINS, CHARMAINE WILLIAMS, REBECCA PETTWAY, RUBBIE McCOY, WILLIAM YOUNG and MICHIGAN LEGAL SERVICES, on behalf of themselves and all others similar situated,<br><br>Plaintiffs,<br><br>-against-<br><br>MORGAN STANLEY, MORGAN STANLEY & CO. LLC, MORGAN STANLEY ABS CAPITAL I INC., MORGAN STANLEY MORTGAGE CAPITAL INC., and MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC,<br><br>Defendants. | CASE NO. 12-cv-7667<br><br>Hon. Harold Baer<br><br>**PLAINTIFFS' SECOND SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS** |

PROPOUNDING PARTY:   Plaintiffs

RESPONDING PARTY:   Defendants

SET NUMBER:   Two (2)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs hereby request that defendants Morgan Stanley, Morgan Stanley & Co., LLC, Morgan Stanley ABS Capital I Inc., Morgan Stanley Mortgage Capital Inc., and Morgan Stanley Mortgage Capital Holdings, LLC ("Defendants" or "Morgan Stanley") produce for inspection and copying the documents and electronically stored information described herein, at the offices of Lieff,

Cabraser, Heimann & Bernstein, LLP, 250 Hudson Street, 8th Floor, New York, NY, 10013,

within 30 days of the service of these requests on Morgan Stanley.

**INSTRUCTIONS**

1. If any documents requested herein have been lost, discarded or destroyed, each such document shall be identified as completely as possible by stating the following information: the nature of the document, the author and addressee of the document, the date of the document, a brief description of the document, the date of disposal or destruction, the manner of disposal or destruction, the reason for disposal or destruction, the name of the person authorizing the disposal or destruction or having responsibility for the loss of the document, the name of the person disposing of or destroying the document, and the paragraph number(s) of the request(s) in response to which the document otherwise would have been produced.

2. With respect to any documents that Defendants decline to produce or communications that Defendants decline to disclose because of a claim of privilege, including work product, Defendants should state the nature of the privilege, the legal basis for the privilege and the names of any individuals who have or have had access to the documents for which you claim privilege.

3. You are required to produce documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators, or by your attorneys or their agents, employees, representatives or investigators.

4. Documents are to be produced in full; production of redacted documents will not constitute compliance with these requests. If any requested document or thing cannot be produced in full, produce it to the extent possible, indicating which document, or portion of the document, is being withheld, and the reason that the document or portion thereof is being withheld.

5. In producing documents, you are requested to produce the original of each document requested, together with all non-identical copies and drafts of that document. If the original of any document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

6. Documents shall be produced in such fashion as to identify the department, branch or office in whose possession they were located and, where applicable, the natural person in whose possession they were found.

7. Documents attached to each other should not be separated.

8. All requests are deemed continuing requests and you are under a duty to seasonably supplement your production of documents pursuant to the requirements of Federal Rule of Civil Procedure 26(e).

**FORM OF PRODUCTION**

All Documents, including Electronically Stored Information ("ESI"), produced hereunder shall be copied to a hard drive or other storage media for production to Plaintiffs' counsel in the disclosure formats specified in the Joint Proposed Order Regarding Protocol for Electronically Stored Information and Other Discovery. (Dkt. 35.)

**DEFINITIONS**

1. "Morgan Stanley," "you," and "your" refers to Morgan Stanley, Morgan Stanley & Co., LLC, Morgan Stanley ABS Capital, Inc., Morgan Stanley Mortgage Capital, Inc., and Morgan Stanley Mortgage Capital Holdings, LLC., Defendants in the above-referenced litigation.

2. "New Century" refers to New Century Mortgage Company, and any of its divisions, affiliates, officers, directors, managing partners, or agents.

3. "Clayton Holding" or "Clayton" refers to Clayton Holding LLC and any of its divisions, affiliates, officers, directors, managing partners, or agents.

4. "Detroit Region" means the following nine counties composing the Detroit metropolitan area: Genesee, Lapeer, Livingston, Macomb, Monroe, Oakland, St. Clair, Washtenaw, and Wayne.

5. "Loan" or "Loans" means mortgage loans, including purchase, equity, or refinance loans, purchased by Morgan Stanley either for purposes of securitization in a mortgage backed security or for inclusion as an asset in a mortgage-backed security for which Morgan Stanley acted as the sponsor.

6. "Loan Level Account Data" means the seller-provided loan-by-loan electronic data, as opposed to individual Loan files, reflecting at least the following information:

    a) borrowers' names and addresses;

    b) origination date;

    c) Loan originator;

    d) Loan file numbers;

    e) Loan terms including interest rates and pre-payment penalty provisions;

    f) Loan product information including but not limited to whether the Loan (i) was classified as "high-cost" under the Home Mortgage Disclosure Act, (ii) had an

      adjustable rate, (iii) was based on stated income or verified income, (iv) contained interest-only payment features, (v) contained negative loan amortization features, and/or (vi) contained balloon payment features;

    g) underwriting data including borrowers' FICO scores, loan-to-value ratios, and debt-to-income ratios;

    h) borrowers' race or ethnicity; and

    i) pool identification associated with the security for which the Loan served as collateral.

7. "Securitization" includes any mortgage-backed security for which you served as the purchaser, issuer, or underwriter.

8. "Pooling and Servicing Agreement" means the agreement or series of agreements that, among other things, creates the trust, provides for the sale of the Loans to the trust, provides for the priority of payment of certificates in the trust, and otherwise governs the rights and duties of, among other parties, the depositor, the sellers, the master servicer, the trustee, and the certificate holders of the trust.

9. "Loan Schedule" means the Schedule or Attachment to the Pooling and Servicing Agreement that lists the Loans transferred to the trustee of the Securitization, and that sets forth various information with respect to each Loan. The Mortgage Loan Schedule generally includes a subset of the data that is included in the Final Loan Tape.

10. "Final Loan Tape" means the spreadsheet, table, or other array of data providing information about each of the Loans that backs a Securitization and that was provided to the trustee of the Securitization at the time the Securitization closed and contains, among other things, identifying information about the borrowers of the mortgage Loans and the properties that secured those Loans. Final Loan Tapes frequently include, but are not limited to, the following information: (1) identifying information about the Loan, such as Loan numbers assigned by the trustee, the originator of the Loan, and the servicer of the Loan; (2) descriptive information about the Loan, such as the principal balance of the Loan, the interest rate of the Loan, the Loan-to-value ratio of the Loan, the purpose of the Loan (refinance or purchase), the documentation type of the Loan, and the term of the Loan; (3) information regarding the borrower of the Loan, such as the borrower's name, credit score, debt-to-income ratio; (4) information about the property that secures the Loan, such as the address, the sale price, the appraised value, and whether the property was to be a primary residence, secondary residence, or investment property.

11. "Minority Borrowers" means borrowers whose race or ethnicity is defined as Black or Hispanic by the terms of the Home Mortgage Disclosure Act.

12. "Employee" or "Employees" means any person(s) employed by or acting as an agent of Morgan Stanley, or, where so designated, New Century.

13. "Concerning" means relating to, referring to, describing, discussing, evidencing, explaining and/or constituting.

14. "Document" or "Documents" refers to any and all writings or recordings of any kind and shall include the original and each non-identical copy or draft thereof. The term document shall also include every other means by which information is recorded or transmitted including, but not limited to, electronic mail, Internet postings, tape recordings, video recordings, microfilms, punch cards, computer magnetic tape, computer disks, computer programs, computer databases, storage tapes, printouts, data processing records, and the written information necessary to understand and use such information. A draft or non-identical copy is a separate document within the meaning of this term.

15. "Communication" or "communications" shall be construed in the broadest possible sense and shall include, without limitation, any of the following: (a) any letter, memorandum, or other correspondence; (b) any telephone call; (c) any form of electronic correspondence, transmission, or communication, including but not limited to email, facsimile, voice mail, text message, instant message, or social media messages or postings; (d) any conversation, discussion, or meeting; (e) any other transmittal, transfer, or exchange of information by any means (in the form of facts, ideas, inquiries, or otherwise).

16. "Data" means any and all information electronically stored in a spreadsheet, table, database, or other array and the written information necessary to understand and use such information.

17. "Policies, practices, or procedures" includes formal policies and internal memoranda or other documents that reflect how the policies were created, implemented, amended, and how they were and are to be interpreted.

18. "Any" or "each" should be understood to include and encompass "all."

19. "And," "or" and "and/or" shall be construed as terms of inclusion and not of exclusion, and should be construed disjunctively or conjunctively as necessary to bring within the scope of these Requests any documents or responses that might be otherwise construed to be outside their scope.

20. Whenever necessary to bring within the scope of a particular document request documents that might otherwise be construed to be outside the scope of the request:

    a. the use of a verb in its singular form shall be construed as the use of that verb in all other tenses;
    b. the use of a word in its singular form shall be deemed to include within its use the plural form; and
    c. the use of a word in its plural form shall be deemed to include within its use the singular form.

**RELEVANT TIME PERIOD**

All areas of inquiry herein refer to the period between January 1, 2002 and April 2, 2008 ("Relevant Time Period") unless specifically indicated.

**REQUESTS FOR PRODUCTION**

1. Organizational charts in effect both during the Relevant Time Period and at present for the Morgan Stanley units responsible for:

    a. Acquiring Loans for securitization;

    b. Monitoring compliance with underwriting standards for Loans purchased for securitization;

    c. Securitizing Loans;

    d. Communicating and managing relationships with Loan originators;

    e. Ensuring the compliance of your securitization business with anti-discrimination and fair lending laws;

    f. Maintaining data concerning Loans;

    g. Maintaining data concerning securitizations; and

    h. Supervising at the executive level any of the above units.

2. All Loan Level Account Data for all Loans purchased by Morgan Stanley that were originated by New Century, and all documents explaining or defining this data, including, without limitation, data dictionaries.

3. All data reflecting Loan performance for all Loans purchased by Morgan Stanley that were originated by New Century, and all documents explaining or defining this data, including, without limitation, data dictionaries.

4. All data concerning each securitization containing any Loan that was originated by New Century, including, without limitation, the Final Loan Tape and all data reflecting the performance of those securities, and all documents explaining or defining this data, including, without limitation, data dictionaries.

5. All data provided to rating agencies at the time of securitization for all Loans that were originated by New Century, and all documents explaining or defining this data, including, without limitation, data dictionaries.

6. All documents concerning each Securitization containing any Loan that was originated by New Century, including without limitation:

      a.      the applicable Loan Schedule and Pooling and Servicing Agreement;

      b.      all prospectuses and filings; and

      c.      all documents concerning fees or other compensation you collected through sale and/or acting as trustee for such Securitization;

      d.      all communications, including but not limited to emails, with New Century.

7. Your policies, practices, or procedures for determining which Loans to purchase from New Century, both during the Relevant Time Period and in effect on the date of filing of this lawsuit or at any time thereafter.

8. Your pricing models for the purchase of Loans from New Century.

9. Your policies, practices, or procedures for calculating fees or other compensation derived from the securitization of mortgages, and through sale of, and acting as trustee for, mortgage-securities containing at least one Loan originated by New Century, both during the Relevant Time Period and at present.

10. Documents sufficient to show fees or other compensation you generated through securitization or sale of any security containing any Loans originated by New Century, or through acting as trustee for any such security.

11. Your policies, practices, and procedures relating to the retention of residual interests in Securitizations containing at least one loan originated by New Century.

12. Documents sufficient to show the process through which you decided whether to retain or resell (as a Collateralized Debt Obligation, for example) any performance-based interest in a mortgage-backed security containing at least one loan originated by New Century.

13. Your policies, practices, and procedures for the funding, purchase, or securitization of Loans in the below categories, both during the Relevant Time Period and at present:

      a.      Stated-income Loans, including those policies, practices, and procedures intended to prevent borrowers from falsely inflating their incomes;

      b.      Loans with specified Debt-to-Income ("DTI") ratios, including the level at which DTI was considered too high and whether DTI was calculated on a pre- or post-rate adjustment basis;

      c.      Loans with specified Loan-to-Value ("LTV") ratios and any preference for Loans within a particular LTV range;

      d.      Loans with adjustable interest rates, including those policies, practices, and procedures intended to address the increased risk associated with such Loans;

      e.      Loans with interest-only payment features, including those policies, practices, and procedures intended to address the increased risk associated with such Loans;

      f.      Negative amortization Loans, including those policies, practices, and procedures intended to address the increased risk associated with such Loans;

      g.      Loans with balloon payment features, including those policies, practices, and procedures intended to address the increased risk associated with such Loans; and

      h.      Loans bearing pre-payment penalties, including those policies, practices, and procedures intended to address the increased risk associated with such Loans.

14. Documents sufficient to show the number or dollar amount of Loans you purchased from New Century during each month, year, or other time period within the Relevant Time Period.

15. All documents sufficient to identify number or dollar amount of Loans you purchased during each month, year, or other time period between January 1, 2012 and the present, including those showing the number or dollar amount of Loans purchased from each loan originator.

16. All documents, including communications with New Century, concerning your goals, objectives, or benchmarks for the number or dollar amount of Loans available for you to purchase from New Century.

17. All documents, including communications with New Century, concerning the characteristics of Loans you sought to purchase from New Century or the number or dollar amount of Loans that New Century had originated or could originate in the future.

18. All documents, including communications with New Century, concerning any compensation or perquisite that you provided to New Century or any New Century employee.

19. All documents, including communications with New Century, relating to underwriting standards at New Century.

20. All documents concerning or reflecting warehouse lines of credit extended to New Century, including without limitation:

  a. all documents reflecting wet funding or early purchase arrangements;

  b. the master repurchase agreements governing each line of credit;

  c. all documents reflecting negotiations over the agreements governing these lines of credit;

  d. all communications with New Century regarding the lines of credit.

21. All documents reflecting which New Century Loans funded through Morgan Stanley warehouse facilities you subsequently purchased, and in what quantity.

22. Documents sufficient to identify Morgan Stanley employees responsible for setting the terms of warehouse lending agreements with New Century, reviewing and approving those agreements, and monitoring their performance over time.

23. All documents relating to the decision to end warehouse lending to New Century in 2007.

24. All documents concerning your purchase of pools of Loans from New Century, including without limitation:

  a. purchase agreements, including bid terms;

  b. all documents reflecting negotiations over the agreements; and

  c. documents sufficient to identify Morgan Stanley employees responsible for setting the terms of purchase agreements, reviewing and approving those agreements, and monitoring their performance over time.

25. All purchase agreements, including bid terms, governing your purchase of pools of Loans from January 1, 2012 until the present.

26. All documents, including communications with New Century, concerning any dispute about the scope, interpretation, or validity of any warehouse lending agreement, wet-funding agreement, early purchase agreement, or loan pool purchase agreement, including without limitation those discussing the negotiation or resolution of such disputes.

27. Any examination, assessment, analysis, verification, audit, or review, conducted by anyone, including but not limited to "due diligence" contractors, of:

  a. any Loans, either individually or as a group, in the collateral pool of any securitization that contained any Loan originated by New Century;

  b. the underwriting standards or guidelines used to underwrite those Loans; or

      c.      the compliance or non-compliance of underwriters with the underwriting standards used to underwrite those Loans.

28. With respect to any examination, assessment, analysis, verification, audit, or review identified in response to Request No. 27, all documents that identify or reflect the following:

    a.     the Loans reviewed;

    b.     the securitization reviewed;

    c.     the sample of Loans selected;

    d.     the rationale for the selection of the sample;

    e.     the process or procedure by which the report, investigation, or examination was conducted; or

    f.     the results of the examination (i.e., which Loans were to be removed or were removed from the securitization; which Loans should be replaced or were replaced; and which Loans were identified as not being in compliance with any one or more of the applicable underwriting standards or guidelines).

29. All communications concerning any examination, assessment, analysis, verification, audit, or review referenced in Request No. 27.

30. All documents concerning Clayton Holdings' due diligence audits of your Loans, including, without limitation, the audits themselves and communications involving the audits.

31. Any report, investigation, testimony, or material used in testimony or in preparation for testimony concerning:

    a.     any Loans, either individually or as a group, in the collateral pool of any securitization that contained any Loan originated by New Century;

    b.     the underwriting standards or guidelines used to underwrite those Loans; or

    c.     the compliance or non-compliance of underwriters with the underwriting standards used to underwrite those Loans.

32. All communications concerning any report, investigation, testimony, or material used in testimony or in preparation for testimony referenced in Request No. 31.

33. All documents, including communications, provided or made available to New Century employees concerning the post-origination sale of loans or the secondary mortgage market.

34. All documents, including communications with New Century or New Century employees, concerning New Century's business in the Detroit Region.

35. All documents, including communications with New Century, concerning the location of New Century's offices and the demographics of the areas in which those offices were located.

36. All documents, including communications with New Century, concerning New Century's advertising or outreach efforts applicable to the Detroit Region.

37. All documents, including communications with New Century, concerning the demographic characteristics of New Century borrowers.

38. Your policies, practices, or procedures for ensuring the compliance of your securitization business with anti-discrimination and fair lending laws, including the Fair Housing Act, the Equal Credit Opportunity Act, Home Mortgage Disclosures Act, Michigan's Civil Rights Act, and their implementing regulations, as well as any other applicable anti-discrimination or fair lending laws or regulations, both during the Relevant Time Period and at present.

39. All documents concerning compliance with anti-discrimination and fair lending laws on the part of loan originators that you provided with warehouse funding or from which you purchased Loans, including compliance with the Fair Housing Act, the Equal Credit Opportunity Act, the Home Mortgage Disclosures Act, Michigan's Civil Rights Act, and implementing regulations, as well as any other applicable anti-discrimination or fair lending laws or regulations, both during the Relevant Time Period and at present.

40. Your policies, practices, and procedures for placement of employees on-site with New Century, including without limitation the training provided those employees and their authority and the scope of their duties.

41. Documents sufficient to identify the number, title, job responsibilities, and names of employees placed on-site with New Century.

42. All documents, including communications, generated by employees placed on-site with New Century concerning their work with New Century.

43. All minutes of meetings of your Board of Directors between January 1, 2002 and the present mentioning New Century or your mortgage securitization business.

44. All documents concerning complaints about New Century's loan origination policies, practices and procedures or your loan acquisition and securitization policies, practices, and procedures.

45. All documents produced, from January 1, 2004 until the present, in response to any governmental investigation concerning Morgan Stanley's relationship with New Century, including but not limited to investigations conducted by any federal agency, Congressional committee, or state attorney general.

46. All documents identifying or cataloguing documents referenced in Request No. 45.

47. All protective orders or confidentiality agreements related to any investigation referenced in Request No. 45.

48. All indices of documents produced in *Allstate v. Morgan Stanley*, Index No. 651840/2011 (N.Y. Sup. Ct.), and *Federal Housing Finance Agency v. Morgan Stanley, et al.*, Civ. No. 11-06739 (S.D.N.Y.)

49. All protective orders or confidentiality agreements covering the production of documents in produced in *Allstate v. Morgan Stanley*, Index No. 651840/2011 (N.Y. Sup. Ct.), and *Federal Housing Finance Agency v. Morgan Stanley, et al.*, Civ. No. 11-06739 (S.D.N.Y.)

Dated: July 9, 2013

Respectfully submitted,

By: /s/ Rachel Goodman

Dennis D. Parker
Laurence M. Schwartztol
Rachel E. Goodman
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
Facsimile: (212) 549-2651

Stuart T. Rossman
Charles M. Delbaum
Arielle Cohen
The National Consumer Law Center
7 Winthrop Square, 4th Floor
Boston, MA 02210
Telephone: (617) 542-8010
Facsimile: (617) 542-8028

Michael J. Steinberg
Kary L. Moss
American Civil Liberties Union Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
Telephone: (313) 578-6814
Facsimile: (313) 578-6811

Elizabeth J. Cabraser
Michael W. Sobol
Lieff Cabraser Heimann and Bernstein LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Rachel J. Geman
Lieff Cabraser Heimann and Bernstein LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
Counsel for Plaintiffs