## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEVERLY ADKINS, CHARMAINE WILLIAMS, REBECCA PETTWAY, RUBBIE McCOY, WILLIAM YOUNG, on behalf of themselves and all others similar situated, and MICHIGAN LEGAL SERVICES,<br><br>        Plaintiffs,<br><br>        -against-<br><br>MORGAN STANLEY, MORGAN STANLEY & CO. LLC, MORGAN STANLEY ABS CAPITAL I INC., MORGAN STANLEY MORTGAGE CAPITAL INC., and MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC,<br><br>        Defendants. | CASE NO. 12-cv-7667-HB<br><br>Hon. Harold Baer |

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING A DECISION BY THE SUPREME COURT IN *MOUNT HOLLY*, OR, IN THE ALTERNATIVE, TO CERTIFY AN APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

ARGUMENT ................................................................................................................. 3

    I.     The "Rare Circumstances" in Which a Stay Is Warranted Are Not Present Here. ............................................................................................................................ 3

         A.     It Is Unlikely the Supreme Court Will Issue a Ruling That Disposes of Plaintiffs' Claims. ................................................................................. 5

         B.     A Stay Would Be Highly Prejudicial to Plaintiffs. ................................... 8

         C.     Morgan Stanley's Burden Argument Rests on the Mistaken Assumption That Simply Defending a Lawsuit Justifies a Stay. ................................ 10

         D.     Interests of Non-Parties and the Public Militate Against Granting a Stay. ....................................................................................................... 11

    II.    The Court Should Reject Defendants' Request to Certify an Interlocutory Appeal. ............................................................................................................... 12

         A.     Issue 1:  Whether the Discovery Rule Continues to Apply to the Fair Housing Act. ...................................................................................... 14

             1.     This Issue Does Not Present a Controlling Question of Law. ..... 15

             2.     There Is No Substantial Ground for Difference of Opinion on This Issue. ....................................................................................... 15

             3.     Resolution of This Issue Would Not Advance the Ultimate Conclusion of the Litigation. ....................................................... 18

         B.     Issue 2: Whether, As a Matter of Law, No FHA Liability Can Attach to a Defendant Whose Policies for Purchasing Loans Resulted in an Adverse Disparate Impact on African-American Borrowers. ............................... 18

             1.     This Issue Does Not Present a Controlling Question of Law. ..... 18

             2.     There Is No Substantial Ground for Difference of Opinion on This Issue. ....................................................................................... 20

             3.     Resolution of This Issue Would Not Advance the Ultimate Conclusion of the Litigation. ....................................................... 23

         C.     Issue 3: Whether a Mortgage Securitizer Is Liable Under the FHA for Policies and Practices That Caused a Lender to Issue Discriminatory Loans, Even if It Did Not Purchase Every Loan Originated by That Lender. ................................................................................................ 23

             1.     This Issue Does Not Present a Controlling Question of Law. ..... 23

2.   There Is No Substantial Ground for Difference of Opinion on This
     Issue. ........................................................................................ 24

3.   Resolution of This Issue Would Not Advance the Ultimate
     Conclusion of the Litigation. ...................................................... 25

CONCLUSION ............................................................................................................25

## TABLE OF AUTHORITIES

### Cases

*A.Q.C. ex rel. Castillo v. United States*,
    656 F.3d 135 (2d Cir. 2011) ................................................. 16

*Ahrenholz v. Bd. of Trustees*,
    219 F.3d 674 (7th Cir. 2000) ................................... 13, 14, 24

*Arden Way Assocs. v. Boesky*,
    660 F. Supp. 1494 (S.D.N.Y. 1987) ...................................... 12

*Arthur v. City of Toledo*,
    782 F.2d 565 (6th Cir. 1986) ................................................. 6

*Baseball Quick, LLC v. MLB Advanced Media, L.P.*,
    No. 11-1735, 2013 U.S. Dist. LEXIS 73713 (S.D.N.Y. May 23, 2013) ................................... 9

*Carter v. United States*,
    No. 1:06-CV-225, 2007 U.S. Dist. LEXIS 62735 (D. Vt. Aug. 23, 2007) ................................ 4

*City of Memphis v. Wells Fargo Bank, N.A.*,
    09-cv-2857-STA, 2011 U.S. Dist. LEXIS 48522 (W.D. Tenn. May 4, 2011) ........................ 11

*City of New York v. A-1 Jewelry & Pawn, Inc*.,
    247 F.R.D. 296 (E.D.N.Y. 2007) ..................................... 4, 10

*Clement v. United Homes, LLC*,
    No. 10-CV02122 (RRM) (RLM), 2012 U.S. Dist. LEXIS 182347
    (E.D.N.Y. Dec. 27, 2012) ...................................................... 16

*Coopers & Lybrand v. Livesay*,
    437 U.S. 463 (1978) ................................................................ 12

*Corcoran v. N. Y. Power Auth*.,
    202 F.3d 530 (2d Cir. 1999) ................................................. 16

*Cromer Fin. Ltd. v. Berger*,
    Nos. 00 Civ. 2284 (DLC), 00 Civ. 2498 (DLC), 2001 U.S. Dist. LEXIS 11951
    (S.D.N.Y. Aug. 16, 2001) ...................................................... 16

*Decora, Inc. v. DW Wallcovering, Inc.*,
    901 F. Supp. 161 (S.D.N.Y. 1995) ........................................ 19

*Fair Hous. in Huntington Comm. Inc. v. Town of Huntington*,
    316 F.3d 357 (2d Cir. 2003) ................................................. 20

*Ferreira v. Modell's Sporting Goods, Inc.*,
    No. 11 Civ. 2395 (DAB), 2013 U.S. Dist. LEXIS 48489
    (S.D.N.Y. Mar. 28, 2013) ...................................................... 12

*Garcia v. Brockway*,
    526 F.3d 456 (9th Cir. 2008) ................................................. 18

*Gravatt v. Gen. Star Indem. Co.*,
   No. 98 Civ. 6670 (RWS), 1999 U.S. Dist. LEXIS 4824
   (S.D.N.Y. Apr. 13, 1999) ......................................................................... 20

*Greater New Orleans Fair Hous. Action Ctr. v. United States*,
   639 F.3d 1078 (D.C. Cir. 2011) ................................................................. 8

*Greystone CDE, LLC v. Sante Fe Pointe L.P.*,
   No. 07 CV. 8377 (RPP), 2008 U.S. Dist. LEXIS 12844 (S.D.N.Y. 2008) .............. 5

*Hack v. President & Fellows of Yale Coll.*,
   237 F.3d 81 (2d Cir. 2000) ........................................................................ 20

*Halet v. Wend Inv. Co.*,
   672 F.2d 1305 (9th Cir. 1982) .................................................................... 6

*Hanson v. Veterans Admin.*,
   800 F.2d 1381 (5th Cir. 1986) .................................................................... 6

*Harriscom Svenska AB v. Harris Corp.*,
   947 F.2d 627 (2d Cir.1991) ........................................................................ 14

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982).................................................................................... 15

*Huntington Branch, NAACP v. Town of Huntington*,
   844 F.2d 926 (2d Cir. 1988) ................................................................. 6, 23

*In re 650 Fifth Ave. & Related Props.*,
   No. 1:08-cv-10934-RJH, 2011 U.S. Dist. LEXIS 91363
   (S.D.N.Y. Aug. 12, 2011) ........................................................................... 9

*In re Flor*,
   79 F.3d 281 (2d Cir. 1996) ............................................................. 13, 16, 21

*In re Fosamax Prods. Liab. Litig.*,
   Nos. 06 MD 1789 (JFK), 06 Civ. 9455, 2011 U.S. Dist. LEXIS 72123
   (S.D.N.Y. June 29, 2011).......................................................................... 15

*In re Literary Works in Elec. Databases Copyright Litig.*,
   MDL No. 1379, Civ. Nos. 00-6049, 00-7376, 00-9411, 2001 U.S. Dist. LEXIS 2047
   (S.D.N.Y. Mar. 1, 2001) ............................................................................ 4

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
   No. MDL 1358 (SAS), 2005 U.S. Dist. LEXIS 225
   (S.D.N.Y. Jan. 6, 2005)............................................................................. 13

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
   399 F. Supp. 2d 320 (S.D.N.Y. 2005) ................................................... 16, 17

*In re New Century TRS Holdings, Inc.*,
   Case No. 07-10416 (KJC), Order Authorizing Immediate Abandonment and
   Destruction of Certain Mortgage Loan Files, Dkt. 11102
   (Bankr. D. Del., Mar. 15, 2013).................................................................. 10

*In re Worldcom, Inc.*,
   No. M-47 HB, 2003 U.S. Dist. LEXIS 11160 (S.D.N.Y. June 30, 2003) ................... 12, 13, 24

*Jock v. Sterling Jewelers, Inc.*,
   677 F. Supp. 2d 661 (S.D.N.Y. 2009) ....................................................................... 3, 10, 12

*Jugmohan v. Zola*,
   No. 98 Civ. 1509 (DAB), 2000 U.S. Dist. LEXIS 1910 (S.D.N.Y. Feb. 25, 2000) .................. 4

*King Cnty. v. IKB Deutsche Industriebank AG*,
   863 F. Supp. 2d 317 (S.D.N.Y. 2012) ................................................................................. 13

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In
   Amministrazione Straordinaria*,
   921 F.2d 21 (2nd. Cir. 1990) ............................................................................................. 15

*Koehler v. Bank of Bermuda Ltd.*,
   101 F.3d 863 (2d Cir. 1996) ................................................................................... 12, 18, 24

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936).......................................................................................................... 4, 10

*Lasala v. Needham & Co.*,
   399 F. Supp. 2d 421 (S.D.N.Y. 2005) ....................................................................................... 4

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) ................................................................................................ 11

*Mangum v. Action Collection Servs., Inc.*,
   575 F.3d 935 (9th Cir. 2009) ................................................................................................. 18

*Marshel v. AFW Fabric Corp.*,
   552 F.2d 471 (2d Cir. 1977) ..................................................................................................... 4

*Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights*,
   558 F.2d 1283 (7th Cir. 1977) .................................................................................................. 6

*Miller v. Countrywide Bank*, N.A.,
   571 F. Supp. 2d 251 (D. Mass. 2008) ..................................................................................... 21

*Mills v. Everest Reinsurance Co.*,
   771 F. Supp. 2d 270 (S.D.N.Y. 2009) .................................................................................... 13

*Morris v. Flaig*,
   511 F. Supp. 2d 282 (E.D.N.Y. 2007) .................................................................................... 13

*Motorola, Inc. v. Abeckaser*,
   No. 07-CV-3963 (CPS), 2009 U.S. Dist. LEXIS 24855
   (E.D.N.Y. Mar. 26, 2009) ....................................................................................................... 11

*Munford v. Apfel*,
   No. 97 Civ. 5270 (HB), 1998 U.S. Dist. LEXIS 6271 (S.D.N.Y. Apr. 30, 1998)..................... 9

*N.Y. Jets LLC v. Cablevision Sys. Corp.*,
   No. 05 Civ. 2875 (HB), 2005 U.S. Dist. LEXIS 33362
   (S.D.N.Y. Dec. 19, 2005) ................................................................................................. 13, 14

*Resident Advisory Bd. v. Rizzo*,
  564 F.2d 126 (3d Cir. 1977) .................................................................. 6

*Rotella v. Wood*,
  528 U.S. 549 (2000)........................................................................ 17

*Ryan, Beck & Co., LLC v. Fakih*,
  275 F. Supp. 2d 393 (E.D.N.Y. 2003) ..................................... 12

*S.E.C. v. Credit Bancorp, Ltd.*,
  103 F. Supp. 2d 223 (S.D.N.Y. 2000) ..................................... 16

*Sikhs for Justice v. Nath*,
  893 F. Supp. 2d 598 (S.D.N.Y. 2012) ..................................... 4

*Singleton v. New York*,
  632 F.2d 185 (2d Cir. 1980) ..................................................... 16

*Smith v. City of Jackson*,
  544 U.S. 228 (2005)........................................................... 6, 8

*Smith v. Town of Clarkton*,
  682 F.2d 1055 (4th Cir. 1982) ................................................. 6

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002).......................................................... 20

*The Youngbloods v. BMG Music*,
  No. 07 Civ. 2394 (GBD) (KNF), 2011 U.S. Dist. LEXIS 1585
  (S.D.N.Y. Jan. 6, 2011) ......................................................... 11

*Thompson v. Metro. Life Ins. Co.*,
  149 F. Supp. 2d 38 (S.D.N.Y. 2001) ..................................... 16

*Township of Mount Holly v. Mount Holly Gardens Citizens in Action, Inc.*,
  133 S. Ct. 2824 (2013)................................................. passim

*TradeWinds Airlines, Inc. v. Soros*,
  Nos. 08 Civ. 5901 (JFK), 10 Civ. 8175 (JFK), 2011 U.S. Dist. LEXIS 25543
  (S.D.N.Y. Mar. 14, 2011) ..................................................... 10

*Tranello v. Frey*,
  962 F.2d 244 (2d Cir. 1992) ................................................... 14

*TRW Inc. v. Andrews*,
  534 U.S. 19 (2001)....................................................... 17, 18

*Ungar v. N. Y. City Hous. Auth.*,
  No. 06 Civ. 19687, 2009 U.S. Dist. LEXIS 3578 (S.D.N.Y. Jan. 14, 2009)............ 16

*United States v. City of Black Jack*,
  508 F.2d 1179 (8th Cir. 1974) ................................................. 6

*United States v. Mann*,
  291 F. Supp. 268 (S.D.N.Y. 1968) ........................................... 9

*United States v. Marengo County Comm'n*,
  731 F.2d 1546 (11th Cir.) ................................................................................ 6

*United States v. Morrison*,
  529 U.S. 598 (2000) ..................................................................................... 4

*Volmar Distribs., Inc. v. N.Y. Post Co.*,
  152 F.R.D. 36 (S.D.N.Y. 1993) .................................................................. 5

*Wausau Bus. Ins. Co. v. Turner Constr. Co.*,
  151 F. Supp. 2d 488 (S.D.N.Y. 2001) ...................................................... 14

*Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.*,
  964 F.2d 85 (2d Cir. 1992) ....................................................................... 12

*Williston v. Eggleston*,
  410 F. Supp. 2d 274 (S.D.N.Y. 2006) ...................................................... 21

*Wise v. Union Acceptance Corp.*,
  No. IP 02-0104-C-M/S, 2002 U.S. Dist. LEXIS 23335
  (S.D. Ind. Nov. 19, 2002) ......................................................................... 18

*Xuedan Wang v. Hearst Corp.*,
  No. 12 CV 793 (HB), 2013 U.S. Dist. LEXIS 92091
  (S.D.N.Y. June 27, 2013) .................................................................... 14, 21

*Yamaha Motor Corp. v. Calhoun*,
  516 U.S. 199 (1996) ................................................................................. 14

**Statutes**
28 U.S.C. § 1292(b) ..................................................................................... 3, 12

29 U.S.C. § 623(a) ........................................................................................... 6

42 U.S.C. § 3604(a) ................................................................................ 5, 6, 20

42 U.S.C. § 3605(a) ...................................................................................... 5, 20

42 U.S.C. § 3605(b) ............................................................................................ 5

42 U.S.C. § 3605(c) ............................................................................................ 7

42 U.S.C. § 3613(a) .......................................................................................... 15

**Regulatory Authorities**
24 C.F.R. § 100.125(c) ...................................................................................... 7

24 C.F.R. § 100.500 ........................................................................................... 8

59 Fed. Reg. 18,266 (Apr. 15, 1994) ............................................................... 8

78 Fed. Reg. 11,460 (Feb. 15, 2013) ............................................................... 8

**Other Authorities**

*A.G. Schneiderman Sues Credit Suisse for Fraudulent Residential Mortgage-Backed Securities*,
Attorney General Eric T. Schneiderman (Nov. 20, 2012), *available at*
http://www.ag.ny.gov/press-release/ag-schneiderman-sues-credit-suisse-fraudulent-residential-
mortgage-backed-securities ..................................................................................... 21

Fair Housing Act, Pub. L. No. 100-430, 102 Stat. 163342 (1988) ................................................. 15

H.R. Rep. No. 100-711 (1988),
*reprinted in* 1988 U.S.C.C.A.N. 2173 ...................................................................... 5

Jessica Silver-Greenberg & Ben Protess,
*JPMorgan Reveals It Faces Criminal and Civil Inquiries*, N.Y. Times (Aug. 7, 2013, 8:38
P.M.),  *available at* http://dealbook.nytimes.com/2013/08/07/jpmorgan-reveals-it-faces-civil-
and-criminal-inquiries/?hp&_r=0 ........................................................................... 21

Letter from M. James Maley, Counsel for Petitioners,
to William K. Suter, Clerk of the Supreme Court (June 26, 2013), *available at*
http://www.cfpbmonitor.com/files/2013/07/Twp-of-Mt-Holly-v-Mt-Holly-Citizens-Letter-to-
Clerk-6-26-13.pdf ............................................................................................. 7

Petition for Certiorari, *Smith v. City of Jackson*, 2004 WL 304286 (No. 03-1160) ....................... 6

Petition for Certiorari, *Township of Mt. Holly v. Mt. Holly Gardens Citizens, Inc.*, 2011 U.S.
Briefs 1507 (2012) (No. 11-1507) 2012 U.S. S. Ct. Briefs LEXIS 2623 .................................. 3

## INTRODUCTION

Morgan Stanley asks the Court to stay this litigation for nearly a year while the Supreme Court considers a case in which it has recently granted certiorari. Morgan Stanley seeks this relief even though that case, *Township of Mount Holly v. Mount Holly Gardens Citizens in Action, Inc.*, 133 S. Ct. 2824 (2013) ("*Mt. Holly*"), concerns a different provision of the Fair Housing Act than the one at issue here and even though the parties in *Mt. Holly* are engaging in active, publicly-acknowledged settlement talks. In addition to postponing for another year the just resolution of Plaintiffs' claims, the delay jeopardizes Plaintiffs' access to crucial discovery from Morgan Stanley and the New Century Bankruptcy Trust. Plaintiffs respectfully submit that the Court should not exercise its discretion to prejudice them in this fashion.

In the alternative, Morgan Stanley asks this Court to certify for interlocutory appeal its July 25 Order, arguing that the Order raises three questions worthy of immediate review. But Morgan Stanley's proposed questions all involve the application of settled legal principles to the allegations in the Complaint. And none of the proposed questions involve issues on which courts within the Second Circuit have expressed divergent views. Further, regardless of how the Second Circuit were to resolve the three questions, remand to this Court would be necessary. In such a posture, § 1292(b) certification is singularly inappropriate.

## BACKGROUND

Between 2004 and 2007, as Morgan Stanley[1] ramped up its mortgage securitization business, it turned to New Century Mortgage Company ("New Century") to satisfy its appetite for increasingly large quantities of high-risk mortgages to purchase. Compl. ¶¶ 2, 3, 41. During

---

[1] Several affiliated Morgan Stanley entities are named as Defendants in this case. Compl. ¶¶ 19-23. Defendants are referred to collectively as "Morgan Stanley."

this period, Morgan Stanley provided crucial funding for New Century's lending operations and purchased more of New Century's loans than did any other purchaser. *Id.* ¶¶ 37-42, 61-69. Using this leverage, Morgan Stanley implemented policies that led New Century to specialize in Combined-Risk Loans, *id.* at ¶¶ 43-75, which placed borrowers at elevated risk of delinquency or foreclosure, *id.* at ¶¶ 76-96.  As a result of these policies, New Century targeted African-American communities in the Detroit region for Combined-Risk Loans.  *Id.* at ¶¶ 105-122. These practices caused an adverse and severe disparate impact upon Plaintiffs and putative class members, African-American borrowers in Detroit.  *Id*. at ¶¶ 123-203, 241, 245, 255, 259, 270.

Plaintiffs filed this lawsuit on October 15, 2012, seeking relief under the Fair Housing Act ("FHA"), the Equal Credit Opportunity Act ("ECOA"), and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA").  Morgan Stanley moved to dismiss, challenging the timeliness of Plaintiffs' claims and arguing that Plaintiffs had failed to state a claim under any of the three statutes.  *See* Defs.' Mem. Supp. Mot. to Dismiss (ECF No. 37) at 2-4 ("Mot. to Dismiss"). Plaintiffs opposed the motion, arguing that all three statutes prohibit discrimination by loan purchasers and that Plaintiffs had stated a disparate impact claim against Morgan Stanley.  *See* Pls.' Mem. Opp. Mot. to Dismiss (ECF No. 42) at 2 ("Pls.' Opp. to MTD").  Plaintiffs also maintained that their claims were timely under the federal discovery rule and the doctrines of continuing violations and equitable tolling.  *Id.* at 19-26.  While the motion to dismiss was pending, Plaintiffs worked diligently to obtain necessary data from Morgan Stanley and from the New Century Bankruptcy Trust, but the parties were subject to a stay of other discovery.  Joint Initial Report & Proposed Pretrial Scheduling Order (ECF No. 30) at 2.

On July 25, 2013, this Court denied Morgan Stanley's motion to dismiss Plaintiffs' FHA claim.  Op. & Order (ECF No. 47) at 1 ("Order").  The Court found the FHA claim timely under

the discovery rule, Order at 7-8, but did not discuss whether the continuing violations or equitable tolling doctrines applied to that claim. The Court then held that Plaintiffs had "successfully alleged a disparate impact claim under the FHA." *Id.* at 11. The ECOA and ELCRA claims were dismissed as time-barred. *Id.* at 8-10.

Following the Court's Order, Morgan Stanley filed this motion to stay the proceedings pending a decision by the Supreme Court in *Mt. Holly*. Defs.' Mem. Supp. Mot. to Stay Proceedings (ECF No. 49) at 1 ("Defs.' Br."). In *Mt. Holly*, the Court has granted certiorari on the question of whether disparate impact claims are cognizable under § 3604(a) of the FHA. 133 S. Ct. 2824 (2013); Petition for Certiorari at i, *Township of Mt. Holly v. Mt. Holly Gardens Citizens, Inc.*, 2011 U.S. Briefs 1507 (2012) (No. 11-1507) 2012 U.S. S. Ct. Briefs LEXIS 2623, at *1. In the alternative, Morgan Stanley moves to certify the Court's Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Defs.' Br. at 1.

## ARGUMENT

### I.  The "Rare Circumstances" in Which a Stay Is Warranted Are Not Present Here.

Morgan Stanley asks the Court to stay this entire lawsuit based on conjecture that in *Mt. Holly* the Supreme Court *may* rule against parties bringing a claim under a different provision of the FHA than the one at issue here and that the ruling *may* have a dispositive impact on Plaintiffs' FHA claim. Briefs in *Mt. Holly* have not yet been submitted, and a date for oral argument not yet set; the Supreme Court could issue its ruling as late as June 2014. In effect, then, Morgan Stanley asks that this case sit dormant for what may be nearly a year based on the highly speculative prospect that *Mt. Holly* will resolve Plaintiffs' claims. *See Jock v. Sterling Jewelers, Inc.*, 677 F. Supp. 2d 661, 667-68 (S.D.N.Y. 2009) ("[T]here is no way to predict when the Supreme Court will decide [a case before it], other than that it is likely to be no later than the

end of the term in June. Given all of this, it makes better sense to 'get on with the show.' Delay

is the bane of the American legal system, and this Court is loath to contribute to further delay.").[2]

"Only in rare circumstances" should a litigant in one action "be compelled to stand aside

while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N.*

*Am. Co.*, 299 U.S. 248, 255 (1936).  The party seeking a stay "must make out a *clear case* of

hardship or inequity in being required to go forward" where, as here, there is a "fair possibility

that the stay" would damage Plaintiffs.  *City of New York v. A-1 Jewelry & Pawn, Inc.*, 247

F.R.D. 296, 355 (E.D.N.Y. 2007) (quoting *Landis*, 299 U.S. at 254-55) (emphasis added).

"Courts are generally reluctant to stay proceedings because they are concerned with vindicating

the *plaintiff's* right to proceed with its case." *Lasala v. Needham & Co.*, 399 F. Supp. 2d 421,

428 (S.D.N.Y. 2005) (emphasis in original).

Courts in this District consider the following five factors in determining whether to grant

the extraordinary remedy of a stay: (1) the interests of the plaintiffs in proceeding expeditiously

with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the

interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of

persons not parties to the civil litigation; and (5) the public interest.  *Greystone CDE, LLC v.*

---

[2] The duration of Morgan Stanley's requested stay sets this case apart from the cases Morgan Stanley
cites to show that courts in the Second Circuit grant stays based on pending Supreme Court litigation. *See
Marshel v. AFW Fabric Corp.*, 552 F.2d 471, 472 (2d Cir. 1977) (granting stay on March 17, where "[t]he
Supreme Court of the United States has heard argument in the closely related case"); *Sikhs for Justice v.
Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) (granting stay on Sept. 19, 2012, where "Supreme Court
has already heard oral argument in the case, and the reargument is scheduled for October 1, 2012"); *In re
Literary Works in Elec. Databases Copyright Litig.*, MDL No. 1379, Civ. Nos. 00-6049, 00-7376, 00-
9411, 2001 U.S. Dist. LEXIS 2047 (S.D.N.Y. Mar. 1, 2001) (granting stay four weeks before scheduled
Supreme Court oral argument); *Jugmohan v. Zola*, No. 98 Civ. 1509 (DAB), 2000 U.S. Dist. LEXIS 1910
(S.D.N.Y. Feb. 25, 2000) (granting stay where Supreme Court case had been argued six weeks earlier (*see
United States v. Morrison*, 529 U.S. 598 (2000)).  The sole case it cites in which the timing of the relevant
Supreme Court case bears any resemblance to that here is *Carter v. United States*, No. 1:06-CV-225, 2007
U.S. Dist. LEXIS 62735 (D. Vt. Aug. 23, 2007), but in that case, the parties had agreed that the pending
motion to dismiss should be held in abeyance.

*Sante Fe Pointe L.P.*, No. 07 CV. 8377 (RPP), 2008 U.S. Dist. LEXIS 12844, at *3 (S.D.N.Y. 2008). The "basic goal" in balancing these factors is to avoid prejudice to the non-moving party. *Id.* (quoting *Volmar Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)).

> ### A.      It Is Unlikely the Supreme Court Will Issue a Ruling That Disposes of Plaintiffs' Claims.

As a threshold matter, this Court should view with skepticism Morgan Stanley's basic premise that *Mt. Holly* is likely to dispose of the claims in this litigation. The precise legal question in *Mt. Holly*, as well as its litigation posture, casts serious doubt on that premise. Accordingly, any conceivable benefits of the proposed stay are extremely speculative.

On June 17, 2013, the Supreme Court granted certiorari on the question of whether disparate impact discrimination is cognizable under "the Fair Housing Act." *See Mt. Holly,* 133 S. Ct. 2824 (2013). The plaintiffs in *Mt. Holly* bring claims under § 3604(a) of the FHA, which makes it unlawful to "refuse to sell or rent . . . or otherwise make unavailable or deny, a dwelling to any person because of race." 42 U.S.C. § 3604(a). Morgan Stanley argues that if the Supreme Court rules in favor of the *Mt. Holly* petitioners, Plaintiffs' claims must automatically be dismissed. These arguments are incorrect for a number of reasons.

First, even if the Supreme Court rules that disparate impact claims are not cognizable under § 3604 of the FHA, which involves renting and selling real property, such a ruling may be explicitly or implicitly limited to that section alone. By contrast, Plaintiffs' claims here arise under § 3605 of the FHA. This section was added in 1988, and it prohibits, *inter alia*, discrimination in the "purchasing of loans . . . secured by residential real estate." 42 U.S.C. § 3605(a) & (b); H.R. Rep. No. 100-711, at 30 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2191. This timing is critically important: when § 3605 was amended to include liability for "purchasing" loans, all nine Courts of Appeals to have considered the issue had concluded that

the FHA authorized suits based on disparate impact claims.[3]  Congress added the language at issue here against the backdrop of a common understanding that the FHA encompasses disparate impact claims, and it included nothing in § 3605 to contradict that understanding.  *Cf. Smith v. City of Jackson*, 544 U.S. 228, 239 n.11 (2005) ("We note that if Congress intended to prohibit all disparate-impact claims, it certainly could have done so.").

Morgan Stanley asserts that the Supreme Court will not distinguish between the various sections of the FHA, emphasizing that the question presented in *Mt. Holly* is whether "disparate impact claims [are] cognizable under *the Fair Housing Act*."  Defs.' Br. at 6 (alteration and emphasis in Defs.' Br.) (quoting Pet. for Cert., *Mt. Holly*, 2011 U.S. Briefs 1507 at i).  But the mere presence of the statute's title in the text of the question presented proves nothing; in the paragraph introducing the question presented, the petition for certiorari defines "the Fair Housing Act" solely with a reference to 42 U.S.C. § 3604(a).  Pet. for Cert., 2011 U.S. Briefs 1507 at i. Indeed, the question presented in *Smith v. City of Jackson* was "whether disparate impact claims were cognizable under the Age Discrimination in Employment Act," but the Supreme Court issued a nuanced ruling that distinguished between different provisions of the ADEA.  *Compare* Petition for Certiorari, *Smith v. City of Jackson*, 2004 WL 304286, *i (No. 03-1160), *with City of Jackson,* 544 U.S. at 236 n.6 (distinguishing 29 U.S.C. § 623(a)(1) (not authorizing disparate impact) from § 623(a)(2) (authorizing disparate impact)).

---

[3] *See Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 935-936 (2d Cir. 1988), *aff'd*, 488 U.S. 15 (1988); *Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 146 (3d Cir. 1977), *cert. denied*, 435 U.S. 908 (1978); *Smith v. Town of Clarkton*, 682 F.2d 1055, 1065 (4th Cir. 1982); *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1386 (5th Cir. 1986); *Arthur v. City of Toledo*, 782 F.2d 565, 574-575 (6th Cir. 1986); *Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977), *cert. denied*, 434 U.S. 1025 (1978); *United States v. City of Black Jack*, 508 F.2d 1179, 1184-1185 (8th Cir. 1974), *cert. denied*, 422 U.S. 1042 (1975); *Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1311 (9th Cir. 1982); *United States v. Marengo County Comm'n*, 731 F.2d 1546, 1559 n.20 (11th Cir.), *cert. denied*, 469 U.S. 976 (1984).

The statutory text and regulatory landscape also undermine Morgan Stanley's assumption that a negative ruling on § 3604 will automatically apply to Plaintiffs' claims under § 3605.  The plain text of § 3605 contains a targeted exemption that only makes sense in the context of disparate impact claims: "Nothing in this title prohibits a person engaged in the business of furnishing appraisals of real property to take into consideration factors other than race, color, religion, national origin, sex, handicap, or familial status."  42 U.S.C. § 3605(c).  If § 3605 only prohibited intentional discrimination, this exemption would be entirely superfluous, since no entity would be prohibited from considering factors other than the protected categories themselves.  Similarly, § 3605's implementing regulations only make sense in the context of disparate impact.  They state that loan purchasers may consider "factors justified by business necessity . . . relating to a transaction's financial security or to protection against default or reduction of the value of the security."  24 C.F.R. § 100.125(c).  Since "business necessity" is a defense specific to disparate impact claims, its inclusion would also be superfluous if only intentional discrimination claims were cognizable under § 3605.  Thus, the argument that a Supreme Court reversal in *Mt. Holly* would *automatically* eradicate Plaintiffs' claims here is belied by § 3605's plain language and implementing regulations.

Second, the *Mt. Holly* litigants have disclosed that they may settle.  On July 3, 2013, the Supreme Court granted an extension of time to file the parties' briefs on the merits, based on the parties' representation that they were engaging in settlement talks in "an attempt to resolve the matter."  Letter from M. James Maley, Counsel for Petitioners, to William K. Suter, Clerk of the Supreme Court (June 26, 2013), *available at* http://www.cfpbmonitor.com/files/2013/07/Twp-of-Mt-Holly-v-Mt-Holly-Citizens-Letter-to-Clerk-6-26-13.pdf.  A settlement would mean that the Supreme Court would neither hear the case nor issue any decision.

Third, Plaintiffs submit that the Supreme Court is unlikely to find that disparate impact claims are not cognizable under the FHA. Each of the eleven Courts of Appeals to have considered the question, including the Second Circuit, have "found the disparate impact theory applicable under the Fair Housing Act." *Greater New Orleans Fair Hous. Action Ctr. v. United States*, 639 F.3d 1078, 1085 (D.C. Cir. 2011). In addition, the Department of Housing and Urban Development ("HUD"), which enforces the FHA, has long recognized the availability of disparate impact claims under the FHA, *see, e.g.*, Policy Statement on Discrimination in Lending, 59 Fed. Reg. 18,266, 18,269 (Apr. 15, 1994), and HUD recently codified this view in a regulation, 24 C.F.R. § 100.500; *see also* Implementation of the Fair Housing Act's Discriminatory Effects Standard, 78 Fed. Reg. 11,460, 11,463 (Feb. 15, 2013) (regulation "formalize[s] the longstanding position held by HUD and the federal courts that the [FHA] may be violated by a housing practice that has a discriminatory effect, regardless of whether the practice was adopted for a discriminatory purpose"). The Supreme Court has previously relied on agency interpretation of anti-discrimination laws in finding that the disparate impact standard applies to them. *See, e.g.*, *City of Jackson*, 544 U.S. at 240. Plaintiffs therefore believe that disparate impact discrimination will remain cognizable under the FHA, so that the only effect of a stay would be to cause Plaintiffs the prejudice described below.

## B.    A Stay Would Be Highly Prejudicial to Plaintiffs.

This lawsuit involves critically important civil rights issues and seeks to redress the disproportionate harm suffered by Plaintiffs and other African-Americans as a result of Morgan Stanley's orchestration of the sale of Combined-Risk Loans. Plaintiffs have lost or are at risk of losing their homes and are continuing to suffer the consequences of being burdened with their Combined-Risk Loans. Compl. ¶¶ 139-203. Yet Morgan Stanley argues, in effect, that because Plaintiffs have been harmed for many years, one more year should not matter. Defs.' Br. at 8-9.

Staying this action while waiting for the outcome of *Mt. Holly* will prejudice Plaintiffs and others similarly situated.  A stay would deny them prompt access to justice and redress for their harms, and thus risks "breath[ing] life into the phrase justice delayed is justice denied." *Munford v. Apfel*, No. 97 Civ. 5270 (HB), 1998 U.S. Dist. LEXIS 6271, at *21 (S.D.N.Y. Apr. 30, 1998) (Baer, J.).  As such, Plaintiffs' interest "in the expeditious resolution of their case." weighs against a stay.  *See In re 650 Fifth Ave. & Related Props*., No. 1:08-cv-10934-RJH, 2011 U.S. Dist. LEXIS 91363, at *50 (S.D.N.Y. Aug. 12, 2011) (citation omitted).  Concerns about the deleterious effect of the passage of time are strongly heightened here, given the status of relevant discovery and in light of the fact that the conduct at issue occurred a number of years ago.  *See, e.g.*, *Baseball Quick, LLC v. MLB Advanced Media, L.P.*, No. 11-1735, 2013 U.S. Dist. LEXIS 73713, at *7 (S.D.N.Y. May 23, 2013) (declining to grant stay where there was a "legitimate concern[]" that "the memories of witnesses will fade, greatly hampering any post-stay proceedings"); *United States v. Mann*, 291 F. Supp. 268, 271 (S.D.N.Y. 1968) (where delay between injury and trial stretches on unreasonably, "prejudice may fairly be presumed simply because everyone knows that memories fade [and] evidence is lost").

Already, Plaintiffs' ongoing efforts to obtain basic loan data from Morgan Stanley have been hindered by Morgan Stanley's invocation of the passage of time as a justification for not producing crucial information.  Morgan Stanley acknowledges that New Century provided it with data about the race of the borrowers of the loans that Morgan Stanley purchased from New Century, but it now asserts it cannot decipher the racial coding in its own files, suggesting that the parties need information from New Century simply to decipher Morgan Stanley's own data. Letter from Danielle Conley to Larry Schwartztol, July 19, 2013, Ex. A (stating that "Morgan Stanley presently does not have a key for the coding that was used by New Century related to the

race, ethnicity, and gender fields . . . [T]hese codes may reflect the codes used by New Century to report applicant information pursuant to HMDA, but we cannot presently confirm whether that is the case.").

Additionally, the New Century Bankruptcy Trust, which holds much of the key relevant information, is in the process of winding down, having recently obtained authorization "to immediately abandon and destroy" many of its loan files. *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (KJC), Order Authorizing Immediate Abandonment and Destruction of Certain Mortgage Loan Files, Dkt. 11102, at 1 (Bankr. D. Del., Mar. 15, 2013). Thus, New Century documents and information are "likely to become unavailable." *TradeWinds Airlines, Inc. v. Soros*, Nos. 08 Civ. 5901 (JFK), 10 Civ. 8175 (JFK), 2011 U.S. Dist. LEXIS 25543, at *7 (S.D.N.Y. Mar. 14, 2011). While Plaintiffs have worked diligently to obtain discovery from the Trust via subpoena, the discovery process is necessarily iterative, and both parties need ongoing access to the files. If the case were stayed for a year, Plaintiffs' ability to obtain necessary discovery would be frustrated.

### C.     Morgan Stanley's Burden Argument Rests on the Mistaken Assumption That Simply Defending a Lawsuit Justifies a Stay.

Further, a stay is not warranted because Morgan Stanley has not shown "substantial harm" that would justify the resulting delay. *See Jock*, 677 F. Supp. 2d at 667.

In contrast to the real and immediate prejudice Plaintiffs will face if a stay is imposed, Morgan Stanley has not shown anything approaching the "clear case of hardship or inequity" necessary to support a stay. *City of New York*, 247 F.R.D. at 355 (quoting *Landis*, 299 U.S. at 254-55). Instead, Morgan Stanley quibbles with the scope of Plaintiffs' discovery requests, though it noticeably stops short of asserting any specific burden. Incurring the regular costs of defending a lawsuit "does not constitute a 'clear case of hardship or inequity' within the meaning

of *Landis*." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005); *see also Motorola, Inc. v. Abeckaser*, No. 07-CV-3963 (CPS), 2009 U.S. Dist. LEXIS 24855, at *7 (E.D.N.Y. Mar. 26, 2009) (finding civil defendants' "interest in preserving their financial resources" insufficient to establish undue prejudice required for stay).

        **D.**     **<u>Interests of Non-Parties and the Public Militate Against Granting a Stay.</u>**

      The Court must also consider the interests of persons not parties to the litigation and the public interest.  Morgan Stanley does not even purport to explain how freezing the progress of this litigation would serve those interests, and indeed, it would not.

      First, the interests of non-parties will be severely prejudiced by granting the stay. Thousands of members of the putative class have an interest in the unimpeded progress of this litigation—they have an interest in the Court's decision on class certification, as well as the resolution of the merits and the crafting of any class-wide relief.  *See The Youngbloods v. BMG Music*, No. 07 Civ. 2394 (GBD) (KNF), 2011 U.S. Dist. LEXIS 1585, at *23 (S.D.N.Y. Jan. 6, 2011) (recognizing "harm resulting from the plaintiff's certain interest, as well as the putative class members' interest, in the expeditious resolution of this litigation").

      Second, allowing this case to lie dormant for nearly a year would disserve the public interest.  As this Court has noted, "Detroit's recent bankruptcy filing only emphasizes the broader consequences of predatory lending and the foreclosures that inevitably result."  Order at 3.  Morgan Stanley's proposed stay is inimical to the weighty public interest associated with Detroit's ongoing bankruptcy proceedings, as the resolution of this litigation may shed light on the causes of the city's current plight.  *Cf. City of Memphis v. Wells Fargo Bank, N.A.*, 09-cv-2857-STA, 2011 U.S. Dist. LEXIS 48522 (W.D. Tenn. May 4, 2011) (municipal claim against subprime lender based on harm to city wrought by discriminatory lending).  More generally, the harm caused by the mortgage-backed securities industry is a matter of intense and ongoing

public concern.  In this critical area of legal and policy interest, "it makes better sense to 'get on

with the show'" than to tether this litigation to speculation about what the Supreme Court might

do in *Mt. Holly*.  *Jock*, 677 F. Supp. 2d at 667.  *Cf. Arden Way Assocs. v. Boesky*, 660 F. Supp.

1494, 1500 (S.D.N.Y. 1987) ("[T]he public interest in the integrity of securities markets militates

in favor of the efficient and expeditious prosecution of these civil litigations.").

    For all of these reasons, the Court should deny Morgan Stanley's request for a stay.

## II.    <u>The Court Should Reject Defendants' Request to Certify an Interlocutory Appeal.</u>

    "It is a basic tenet of federal law to delay appellate review until a final judgment has been

entered."  *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996) (citing *Coopers &*

*Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).  This final judgment rule "promotes a variety of

institutional values underlying our federal judicial system," among them the "prevent[ion] of

unnecessary delay."  *Ryan, Beck & Co., LLC v. Fakih*, 275 F. Supp. 2d 393, 395 (E.D.N.Y.

2003).  "The Second Circuit 'urge[s] the district courts to exercise great care in making a

§ 1292(b) certification.'"  *Ferreira v. Modell's Sporting Goods, Inc.*, No. 11 Civ. 2395 (DAB),

2013 U.S. Dist. LEXIS 48489, at *5 (S.D.N.Y. Mar. 28, 2013) (quoting *Westwood Pharm., Inc.*

*v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992)).

    A district court may certify a non-final order for interlocutory appeal if the order

(1) "involves a controlling question of law," (2) as to "which there is substantial ground for

difference of opinion," and (3) "an immediate appeal from the order may materially advance the

ultimate termination of the litigation."  28 U.S.C. § 1292(b).  The party seeking appeal has the

burden of showing "exceptional circumstances" to overcome the "general aversion to piecemeal

litigation" and to show that the circumstances warrant "a departure from the basic policy of

postponing appellate review until after entry of a final judgment."  *In re Worldcom, Inc.*, No. M-

47 HB, 2003 U.S. Dist. LEXIS 11160, at *29 (S.D.N.Y. June 30, 2003) (Baer, J.) (internal cites

omitted).  The § 1292(b) factors are necessary, but not sufficient: "district court judges have broad discretion to deny certification even where the statutory criteria are met."  *N.Y. Jets LLC v. Cablevision Sys. Corp.*, No. 05 Civ. 2875 (HB), 2005 U.S. Dist. LEXIS 33362, *3 (S.D.N.Y. Dec. 19, 2005) (Baer, J.).

Courts in this circuit have put a "strictly limited" construction on each of the three § 1292(b) factors.  *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996).  First, a "controlling question of law" must be a "'*pure*' question of law," one "that the reviewing court 'could decide quickly and cleanly without having to study the record.'"  *Worldcom*, 2003 U.S. Dist. LEXIS 11160, at *29-30 (Baer, J.) (quoting *Ahrenholz v. Bd. of Trustees*, 219 F.3d 674, 676-77 (7th Cir. 2000) (Posner, J.)).  A "[c]ourt's application of the law to the facts . . . do[es] not present issues of 'pure law' and therefore [is] not appropriate for interlocutory review."  *Morris v. Flaig*, 511 F. Supp. 2d 282, 315 (E.D.N.Y. 2007).

Second, establishing a "substantial ground for difference of opinion" requires more than simply asserting "that the court's ruling was wrong" or that "a question is particularly difficult."  *Mills v. Everest Reinsurance Co.*, 771 F. Supp. 2d 270, 273 (S.D.N.Y. 2009).  Certification under § 1292(b) "is not intended as a vehicle to provide early review of difficult rulings in hard cases."  *King Cnty. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 317, 320 (S.D.N.Y. 2012).  "[N]either disagreement outside this Circuit, nor the presence of disputed matters of first impression demonstrate a substantial ground for a difference of opinion."  *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, No. MDL 1358 (SAS), 2005 U.S. Dist. LEXIS 225, at *8 & at *2 (S.D.N.Y. Jan. 6, 2005) (citing cases).  To the contrary, a substantial ground "must arise out of a genuine doubt as to the correct applicable legal standard that was relied on in the order."  *WorldCom*, 2003 U.S. Dist. LEXIS 11160, at *31 (Baer, J.), as where opinions by

district courts *within* the relevant circuit diverge sharply.  *See Xuedan Wang v. Hearst Corp*., No. 12 CV 793 (HB), 2013 U.S. Dist. LEXIS 92091, *6 (S.D.N.Y. June 27, 2013) (substantial ground demonstrated where "[d]espite careful analysis provided in each opinion, the [S.D.N.Y.'s] District Courts reached very different results") (Baer, J.).

Third, § 1292(b) "does not provide for an immediate appeal solely on the ground that such an appeal may advance the proceedings in the district court." *Ahrenholz*, 219 F.3d at 676 (quoting *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991)).  In analyzing the appropriateness of certification, "[t]he benefit to the district court in avoiding an unnecessary trial must be weighed against the inefficiency of having the Court of Appeals hear multiple appeals in the same case." *Wausau Bus. Ins. Co. v. Turner Constr. Co.*, 151 F. Supp. 2d 488, 492 (S.D.N.Y. 2001) (citing *Harriscom,* 947 F.2d at 631).  As this Court has noted, "an interlocutory appeal, and its accompanying delay, will inevitably prejudice the party seeking relief." *N. Y. Jets*, 2005 U.S. Dist. LEXIS 33362, at *11-12 (Baer, J.).[4]

A.      **Issue 1:  Whether the Discovery Rule Continues to Apply to the Fair Housing Act.**

Morgan Stanley seeks immediate review of this Court's holding that the discovery rule applies to claims brought under the FHA.  Morgan Stanley rehashes the same arguments—and relies on the same out-of-circuit cases—already considered and rejected by this Court.  These arguments are ineffective in justifying the request for interlocutory review.

---

[4] Plaintiffs believe that the presumption against reviewing non-final orders should apply here.  However, if the Court certifies the Order for interlocutory review, Plaintiffs expect to cross-appeal for immediate review of the following questions: whether the ECOA claim is timely pursuant to any of the three theories advanced in opposition to the motion to dismiss, and whether Plaintiffs have standing to seek prospective injunctive relief.  As the Supreme Court has noted, "appellate jurisdiction [under § 1292(b)] applies to the *order* certified to the court of appeals, and is not tied to the particular question formulated by the district court." *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996).  The Second Circuit has recognized that interlocutory cross-appeals are appropriate, so long as the cross-petition to the appellate court is timely.  *See Tranello v. Frey*, 962 F.2d 244, 248 (2d Cir. 1992).

1.      **This Issue Does Not Present a Controlling Question of Law.**

First, the Court's application of the discovery rule to Plaintiffs' FHA claim is not a

controlling question of law.  "A pure question of law is deemed 'controlling' where 'reversal of

the district court's order would terminate the action.'"  *In re Fosamax Prods. Liab. Litig.*, Nos.

06 MD 1789 (JFK), 06 Civ. 9455, 2011 U.S. Dist. LEXIS 72123, at *10-11 (S.D.N.Y. June 29,

2011) (quoting *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In*

*Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d. Cir. 1990)).  A reversal here, however,

would not terminate the action, because it would result in a remand to determine whether the

FHA claims are timely under the continuing violations or equitable tolling theories advanced by

Plaintiffs.  *See* Pls.' Opp. to MTD, at 21-26.  Although the Court found those theories

inapplicable to the ECOA and ELCRA claims, that does not resolve the question of whether they

apply to the FHA.  Indeed, the Supreme Court's express adoption of a continuing violations

theory in the FHA context, *see Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982),

and Congress' reaffirmation of that ruling through the "occurrence or [] termination" language

added in the 1988 amendments to the FHA, Pub. L. No. 100-430, 102 Stat. 163342 (1988)

(codified as amended at 42 U.S.C. § 3613(a)(1)(A)), places the FHA claim on very different

footing for purposes of the continuing violations argument.[5]

2.      **There Is No Substantial Ground for Difference of Opinion on This**
        **Issue.**

Second, Morgan Stanley fails to demonstrate the existence of "substantial ground for

difference of opinion" as to whether the discovery rule should continue to apply to FHA claims.

---

[5] Plaintiffs continue to maintain that the ECOA claim is timely under a continuing violations theory, and
we preserve that issue for any possible appeal.  But for purposes of determining whether Morgan Stanley
is seeking review of a controlling question, we emphasize that a negative ruling on the continuing
violations theory under the ECOA does not foreclose a contrary ruling with respect to the FHA claim.

-15-

Morgan Stanley's argument boils down to the observation that this Court has "reached a different conclusion than the cases upon which the defendant relied." *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 399 F. Supp. 2d 320, 323 n.9 (S.D.N.Y. 2005) (citation omitted) . But Morgan Stanley points to no diversity of opinion *within* the Second Circuit. To the contrary, it acknowledges that authority in this jurisdiction is squarely against it. Defs.' Br. at 11-12.

Within the Second Circuit "it is well-established that express adoption of the discovery rule is not required for such a rule to apply," *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 140 (2d Cir. 2011), and that a federal civil rights claim's "accrual may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause," *Thompson v. Metro. Life Ins. Co.*, 149 F. Supp. 2d 38, 48 (S.D.N.Y. 2001) (Baer, J.) (quoting *Corcoran v. N. Y. Power Auth.*, 202 F.3d 530, 544 (2d Cir. 1999)). District courts within the Second Circuit have specifically found such a rule applicable to claims under the FHA. *See, e.g.*, *Clement v. United Homes, LLC*, No. 10-CV02122 (RRM) (RLM), 2012 U.S. Dist. LEXIS 182347, at *22 (E.D.N.Y. Dec. 27, 2012); *Ungar v. N. Y. City Hous. Auth.*, No. 06 Civ. 19687, 2009 U.S. Dist. LEXIS 3578, at *35 (S.D.N.Y. Jan. 14, 2009) *aff'd*, 363 F. App'x 53 (2d Cir. 2010) (FHA claim "accrues once the 'plaintiff knows or has reason to know of the injury which is the basis of his action'" (quoting *Singleton v. New York*, 632 F.2d 185, 191 (2d Cir. 1980))).

"[T]he fact that there may be disagreements among courts outside the Second Circuit . . . is insufficient" to satisfy § 1292(b). *Cromer Fin. Ltd. v. Berger*, Nos. 00 Civ. 2284 (DLC), 00 Civ. 2498 (DLC), 2001 U.S. Dist. LEXIS 11951, at *6-7 (S.D.N.Y. Aug. 16, 2001) (citing *In re Flor*, 79 F.3d at 284); *S.E.C. v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000) ("[S]ome level of disagreement among the courts does not mean, however, that the standards of

1292(b) are necessarily satisfied."). Morgan Stanley's concession that no Second Circuit authority supports its argument thus hardly shows "the importance of resolution of this issue" through interlocutory appeal. Defs.' Br. at 12.

Morgan Stanley's core strategy is to re-litigate the substance of this Court's holding, recycling its strained interpretation of *TRW Inc. v. Andrews*, 534 U.S. 19 (2001), in hopes of inspiring "'substantial doubt' that the district court's order was correct." *In re MTBE Prods. Liab. Litig.*, 399 F. Supp. 2d at 322-23. Far from demonstrating "substantial doubt," Morgan Stanley's rehashed arguments about *TRW* illustrate why no court in this Circuit has adopted the view it champions. In *TRW*, the Supreme Court held that, in the context of the express discovery rule codified in the Fair Credit Reporting Act ("FCRA"), "Congress implicitly excluded a general discovery rule by explicitly including a more limited one." 534 U.S. at 28, 31. In the FCRA, Congress specifically provided for a statutory discovery rule in cases of "material[] and willful[] misrepresentat[ion]," and the *TRW* Court reasoned that this explicit command would be "render[ed] . . . entirely superfluous" by the broader discovery rule "that lower federal courts 'generally apply.'" *TRW*, 534 U.S. at 27-29 (quoting *Rotella v. Wood*, 528 U.S. 549, 555 (2000)). *TRW* simply does not apply to a statute like the FHA, which lacks any explicit, limited discovery rule that would be "render[ed] . . . entirely superfluous" by a general discovery rule. Morgan Stanley effectively concedes as much. *See* Defs.' Br. at 13 ("It is true that the Supreme Court in *TRW* rested its holding on the inconsistency of a different provision [in FCRA] with a general discovery rule, as this Court noted.").

Nonetheless, Morgan Stanley insists that *TRW* also stands for the proposition that the word "occurrence" in a statute of limitations operates talismanically to prohibit a discovery rule in all instances. *See* Defs.' Br. at 12-13. But Morgan Stanley's argument rests entirely on a

passage in which the Court recited an argument pressed by a party—an argument the Court goes

on to *reject*. *TRW*, 534 U.S. at 32-34.  Other courts have recognized that *TRW* does nothing to

unsettle longstanding case law applying the discovery rule under statutes other than the FCRA.

*See Mangum v. Action Collection Servs., Inc.*, 575 F.3d 935, 941 (9th Cir. 2009); *Wise v. Union*

*Acceptance Corp.*, No. IP 02-0104-C-M/S, 2002 U.S. Dist. LEXIS 23335, at *18 n. 2 (S.D. Ind.

Nov. 19, 2002).[6]

### 3.   Resolution of This Issue Would Not Advance the Ultimate Conclusion of the Litigation.

Finally, interlocutory appeal on this question would not materially advance the ultimate

termination of the litigation, since even a ruling in Morgan Stanley's favor would necessitate a

remand for this Court to determine whether Plaintiffs' FHA claims are timely under the

continuing violation or equitable tolling doctrines.  *See Koehler*, 101 F.3d at 866 (declining to

exercise interlocutory jurisdiction where "either way we rule, a remand will be required").

### B.   Issue 2: Whether, As a Matter of Law, No FHA Liability Can Attach to a Defendant Whose Policies for Purchasing Loans Resulted in an Adverse Disparate Impact on African-American Borrowers.

Morgan Stanley's second proposed question—whether it can be held liable under the

FHA for engaging in loan-purchase transactions that had discriminatory effects on New

Century's borrowers—is similarly inappropriate for interlocutory appeal.  This is, once again,

chiefly an effort to re-litigate issues decided by this Court in its July 25 Order.

### 1.   This Issue Does Not Present a Controlling Question of Law.

First, Morgan Stanley is not seeking review of a controlling question of law, because

there is no real dispute that § 3605 of the FHA applies to the conduct at issue here.  Morgan

---

[6] Morgan Stanley relies primarily on *Garcia v. Brockway*, 526 F.3d 456 (9th Cir. 2008) (en banc), the sole Court of Appeals case they cite.  But *Garcia* provides them with little support.  The discovery-rule holding in *Garcia* includes scant analysis, *id*. at 465-66, and the opinion never cites *TRW*.

Stanley concedes that § 3605 applies to discriminatory loan purchase transactions.  Defs.' Br. at

16; Mot. to Dismiss at 14.  It also concedes that controlling Second Circuit law recognizes

disparate impact liability for FHA claims.  Defs.' Br. at 2; Mot. to Dismiss at 19-20 n.14.  All

that remains at issue is whether Plaintiffs have adequately pled a disparate impact claim under §

3605, a question litigated at length, and resolved, in connection with the motion to dismiss.  *See*

July 25 Order at 11–12; Mot. to Dismiss at 19–26; Pls.' Opp. to MTD at 13–19.  Morgan

Stanley's disagreement with the Court's application of the relevant legal rules to the allegations

in the Complaint does not create a controlling question of law.  *See Decora, Inc. v. DW*

*Wallcovering, Inc.*, 901 F. Supp. 161, 165 (S.D.N.Y. 1995) (questions not appropriate for

§ 1292(b) certification where they "involve the application of well-settled principles of law to the

facts of this case") (footnote omitted).

      Morgan Stanley fails to identify a controlling question of law for a second reason: it

relies on an erroneous characterization of the Complaint.  Morgan Stanley formulates the

relevant question as whether Plaintiffs may proceed with a disparate impact claim alleging

"discrimination that is measured *only* in the terms and conditions of transactions in a third-party

lender's book of business." Defs.' Br. at 14 (emphasis added).  But that is not this case.  While

the Complaint alleges discrimination principally—and appropriately—by pointing to

discriminatory effects on New Century's borrowers, it also alleges that, in a sample pool of loans

securitized by Morgan Stanley, "the rate of foreclosure among African-Americans was 28.57%

greater than the rate of foreclosure among white borrowers."[7]  Compl. ¶ 96.  Thus, even a ruling

on this issue would not alter this Court's decision that Plaintiffs' FHA claim may proceed.

----

[7] In light of this allegation—which was cited in Plaintiffs' earlier motion papers, Pls.' Opp. to MTD at 14
n. 12, as well as the Court's Order, Order at 3—it is simply untrue to assert, as Morgan Stanley does, that

### 2.     There Is No Substantial Ground for Difference of Opinion on This Issue.

Morgan Stanley also does not present a question as to which there is a substantial ground for difference of opinion.  Morgan Stanley simply cannot meet that standard in seeking review of a ruling that (1) relies on the plain text of the relevant statute, (2) applies longstanding doctrinal principles to the facts in the Complaint, and (3) runs against no contrary decisional law.  First, the Court cited the statute's plain text to find that the FHA applied to Morgan Stanley's conduct. Order at 10-11 (citing 42 U.S.C. § 3605(a)-(b) (applying anti-discrimination rule to "[t]he making or purchasing of loans or providing other financial assistance . . . secured by residential real estate")).  Second, it invoked well-established law in this Circuit recognizing disparate impact claims under the FHA, Order at 11 (citing *Fair Hous. in Huntington Comm. Inc. v. Town of Huntington*, 316 F.3d 357, 366 (2d Cir. 2003)), and applied the undisputed principle that a complaint alleging disparate impact under the FHA need only identify a facially neutral practice that causes an adverse impact on a protected group, Order at 11; *see also Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 88 (2d Cir. 2000), *abrogated on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  Third, Morgan Stanley cites no authority calling into question the Court's application of these familiar strands of anti-discrimination law.

That this long-established legal theory is being applied to a contemporary set of *factual* circumstances—namely, to securitizers' exertion of influence and control over mortgage lenders who specialized in toxic subprime loans—does not create a "ground for substantial difference of opinion" over the Court's Order.  *See Gravatt v. Gen. Star Indem. Co.*, No. 98 Civ. 6670 (RWS), 1999 U.S. Dist. LEXIS 4824, at *19 (S.D.N.Y. Apr. 13, 1999) ("The existence of little or no case

---

"Plaintiffs never allege any disparate impact on African-Americans in Morgan Stanley's own book of loan-purchase business," Defs.' Br. at 14.

law on an issue does not amount to a substantial difference of opinion.") (citing *In re Flor*, 79

F.3d. at 284).[8]  Indeed, "the mere presence of a disputed issue that is a question of first

impression, standing alone, is insufficient to demonstrate a substantial ground for difference of

opinion." *In re Flor*, 79 F.3d at 284; *see also Williston v. Eggleston*, 410 F. Supp. 2d 274, 277

(S.D.N.Y. 2006) ("Simply because a question of law has not been authoritatively addressed . . .

does not make the question grounds for a substantial difference of opinion.").[9]

Morgan Stanley further fails to demonstrate ground for substantial difference of opinion

because the interpretation of the FHA it suggests as an alternative to the July 25 Order is simply

implausible.  In its motion to dismiss and in the instant motion, Morgan Stanley advances a

reading of the FHA that would immunize loan-purchasers from liability for discriminatory

transactions.  The discriminatory effect of such transactions is most readily measured by its

impact on *borrowers*, but Morgan Stanley argues that New Century's role in originating the

loans insulates it from liability.  Mot. to Dismiss 14-17; Defs.' Br. at 16-17.  This stance is

inconsistent with the case law.  *See, e.g.*, *Miller v. Countrywide Bank*, N.A., 571 F. Supp. 2d 251,

254, 260 (D. Mass. 2008) (FHA plaintiffs stated claim where Countrywide "obtain[ed] business

through a network of correspondent lenders" that originated loans and then sold them to

Countrywide because "Countrywide [was] embroiled in the decisions of these lenders").

---

[8] If application of familiar legal principles to the excesses of the mortgage-securitization industry justified
interlocutory appeal, the Courts of Appeals would soon find their dockets very crowded indeed.  *See, e.g.*,
*A.G. Schneiderman Sues Credit Suisse for Fraudulent Residential Mortgage-Backed Securities*, Attorney
General Eric T. Schneiderman (Nov. 20, 2012), *available at* http://www.ag.ny.gov/press-release/ag-
schneiderman-sues-credit-suisse-fraudulent-residential-mortgage-backed-securities; Jessica Silver-
Greenberg & Ben Protess, *JPMorgan Reveals It Faces Criminal and Civil Inquiries*, N.Y. Times (Aug. 7,
2013, 8:38 P.M.), *available at* http://dealbook.nytimes.com/2013/08/07/jpmorgan-reveals-it-faces-civil-
and-criminal-inquiries/?hp&_r=0 (reporting prosecutors are "increasingly tak[ing] action against Wall
Street firms that bundled mortgages into complex investments in the heady days of the housing boom").

[9] Morgan Stanley's reliance here on *Xuedan Wang*, 2013 U.S. Dist. LEXIS 92091 (S.D.N.Y. June 27,
2013) (Baer, J.) is misplaced.  *See* Defs.' Br. at 15.  In that case, unlike here, the court noted that the
proposed questions for certification had actually produced conflicting district court decisions.  *Id.*

More fundamentally, Morgan Stanley's position would nullify § 3605's provision of loan-purchaser liability, and it effectively concedes this error in its motion.  To illustrate a "proper" disparate impact claim based on loan-purchaser liability, Morgan Stanley states that an institution whose loan-purchase prices vary by zip code "might be liable for disparate impact discrimination if that purchasing policy has no legitimate business reason and it results in the purchaser disproportionately paying more for loans to white borrowers than for loans to minority borrowers."  Defs.' Br. at 17 n.7.  But that is exactly the structure of this case.  Morgan Stanley's hypothetical loan securitizer has a policy of purchasing loans with certain features (affluent zip codes) over loans lacking those features; similarly, Morgan Stanley had a policy of preferring loans with certain features (the features that compose Combined-Risk Loans, Compl. ¶ 34) over loans that lack those features, Compl. ¶¶ 36-75.

Most revealingly, the alleged disparity in Morgan Stanley's hypothetical disparate impact case would have to be measured according to the lending outcomes of borrowers affected by the challenged policy, even though *other entities* originated those loans (after all, the hypothetical defendant could not "purchase" the loans if it originated them in the first instance).  Morgan Stanley describes a disparate impact where a purchaser pays more for loans to white borrowers than for loans to minority borrowers.  Defs.' Br. at 17 n.7.  But if the affluent-zip-code policy had no effect on lending outcomes for borrowers—if similarly situated white and minority borrowers received loans with equivalent features—there would be no disparate impact.  Thus, Morgan Stanley's own efforts to identify "substantial grounds for difference of opinion" reveal that even it cannot create a plausible construction of the statute that is inconsistent with the July 25 Order.

### 3.      Resolution of This Issue Would Not Advance the Ultimate Conclusion of the Litigation.

Finally, certification of Morgan Stanley's second question would not materially advance the termination of this case, since, as noted earlier, the Complaint alleges disparities that are not measured in terms of New Century's lending outcomes.  *See* Compl. ¶ 96.

### C.      Issue 3: Whether a Mortgage Securitizer Is Liable Under the FHA for Policies and Practices That Caused a Lender to Issue Discriminatory Loans, Even if It Did Not Purchase Every Loan Originated by That Lender.

Morgan Stanley proposes a third question for interlocutory appeal: whether it may be held liable for discrimination caused by its policies, even if it did not purchase every loan originated by New Century.

### 1.      This Issue Does Not Present a Controlling Question of Law.

Rather than presenting a controlling and pure question of law, this issue is inextricably bound up with Plaintiffs' factual allegations, which have not had the benefit of full development through discovery.  The Complaint alleges that Morgan Stanley exercised extensive leverage over New Century's practices, detailing Morgan Stanley's primary role in purchasing and financing New Century loans, Compl. ¶¶ 43–69; describing the overwhelming influence of secondary market sales in New Century's lending practices, *id.* at ¶¶ 41–42, 76–85; and alleging that the end of Morgan Stanley's credit lines meant the termination of New Century's harmful business, *id.* at ¶¶ 64–66.  Accordingly, the Court will need to engage in significant fact-finding in order to answer the legal question of whether those policies and practices caused a disparate impact on all African-American New Century borrowers in Detroit.

A disparate impact claim turns at trial on the causal connection between the challenged policy and the ultimate racial disparity.  *See, e.g.*, *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 934 (2d Cir. 1988).  Morgan Stanley points to no authority suggesting

that, no matter what facts Plaintiffs proffer about its influence over New Century's lending

practices, it is immune as a matter of law if it purchased less than 100% of New Century's loans.

It is therefore impossible to decide whether Morgan Stanley is liable under the FHA "without

having to study the record," *Ahrenholz*, 219 F.3d at 677—and that record has not yet even been

developed. *See Koehler*, 101 F.3d at 866 (declining to exercise interlocutory review where a

question "turns on a thorough examination of the facts"); *Worldcom*, 2003 U.S. Dist. LEXIS

11160, at *31 (Baer, J.) (denying leave to appeal the bankruptcy court's order because it

involved "a fact-specific inquiry, which must be made on a case by case basis, and can hardly be

characterized as a pure question of law").

### 2.   There Is No Substantial Ground for Difference of Opinion on This Issue.

Morgan Stanley's third question also does not give rise to a substantial ground for

difference of opinion.  Most fundamentally, its argument evinces a basic illogic: it ties liability to

an action taken by a defendant *after* a borrower receives a discriminatory loan.  A lender

targeting a borrower for a toxic loan will make decisions based on its anticipated secondary

market sales, considering a purchaser's overall policies for acquiring loans.  The factual question

in assessing liability is whether a causal link exists between the challenged policy and the toxic

loan.  Morgan Stanley asserts that, as a matter of law, liability must be tied to whether a

secondary market sale is actually consummated, an event that would occur after the origination

of the loan.  Its insistence on such a convoluted and counterintuitive legal principle does not give

rise to substantial difference of opinion as to the Court's July 25 Order.

Indeed, Morgan Stanley's hypothetical example of a policy giving rise to purchaser-

liability—the affluent-zip-code policy—once again helpfully illustrates the incoherence of its

position.  The way that policy would actually harm individuals would be to create perverse

incentives for lenders: if loans in white zip codes are more profitable on the secondary market, those are the loans that will be originated in the first instance.  In Morgan Stanley's own example, then, the people suffering discrimination are those who never receive loans at all— parties who, by definition, cannot allege that the hypothetical defendant purchased their loans. Morgan Stanley's assertion that it can only be sued by New Century borrowers whose loans it purchased cannot give rise to substantial ground for difference of opinion, because that premise conflicts with Morgan Stanley's own characterization of how FHA purchaser-liability works.

> **3.    Resolution of This Issue Would Not Advance the Ultimate Conclusion of the Litigation.**

Finally, an appellate ruling on Morgan Stanley's third question would not materially advance the termination of this litigation.  As Morgan Stanley concedes, one of the Named Plaintiffs has alleged that Morgan Stanley purchased her loan.  Defs.' Br. at 19.  Plaintiffs also allege that during the relevant period Morgan Stanley bought between 34% and 48% of New Century's loans, Compl. ¶ 38, and that during that time New Century made at least 5,000 Combined-Risk Loans in the Detroit Region, *id.* at ¶ 230.  Thus, even if the Second Circuit found in Morgan Stanley's favor on this issue, the core liability and class claims would remain intact. Discovery into Morgan Stanley's practices and their impact on New Century borrowers would proceed, and this Court would still need to determine whether the challenged securitization policies caused a disparate impact.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Morgan Stanley's Motion to Stay Proceedings and decline to certify an interlocutory appeal.

Dated this 22nd day of August, 2013
Respectfully submitted by,


/s/Rachel E. Goodman
DENNIS D. PARKER, ESQ.
LAURENCE M. SCHWARTZTOL, ESQ.
RACHEL E. GOODMAN, ESQ.*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
Telephone: (212) 519-7832
Facsimile: (212) 549-2651

ELIZABETH J. CABRASER, ESQ.
MICHAEL W. SOBOL, ESQ.
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery St., 29th Floor
San Francisco CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008


STUART T. ROSSMAN, ESQ.
CHARLES M. DELBAUM, ESQ.*
ARIELLE COHEN, ESQ.*
The National Consumer Law Center
7 Winthrop Square, 4th Floor
Boston, MA  02110
Telephone: (617) 542-8010
Facsimile: (617) 542-8028

RACHEL GEMAN, ESQ.
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592


*Counsel for Plaintiffs*


MICHAEL J. STEINBERG, ESQ.
KARY L. MOSS, ESQ.
AMERICAN CIVIL LIBERTIES UNION
FUND OF MICHIGAN
2966 Woodward Ave
Detroit, MI  48201
Telephone: (313) 578-6814
Facsimile: (313) 578-6811


*Not admitted in the Southern
District of New York*