UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEVERLY ADKINS, CHARMAINE WILLIAMS, REBECCA PETTWAY, RUBBIE McCOY, WILLIAM YOUNG, on behalf of themselves and all others similarly situated, and MICHIGAN LEGAL SERVICES,<br><br>       Plaintiffs,<br><br>  v.<br><br>MORGAN STANLEY, MORGAN STANLEY & CO. LLC, MORGAN STANLEY ABS CAPITAL I INC., MORGAN STANLEY MORTGAGE CAPITAL INC., and MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC,<br><br>       Defendants. | 1:12-cv-7667-HB |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING A DECISION BY THE SUPREME COURT IN *MOUNT HOLLY* OR, IN THE ALTERNATIVE, TO CERTIFY AN APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

**TABLE OF CONTENTS**

I.   THIS ACTION SHOULD BE STAYED PENDING *MOUNT HOLLY* ..............................1

II.  IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY AN APPEAL
     PURSUANT TO 28 U.S.C. § 1292(b)..................................................................................5

     A.   Issue 1: Whether FHA's Statute of Limitations Excludes a Discovery
          Rule ...........................................................................................................................5

     B.   Issue 2: Whether a Mortgage Loan Purchaser Can Be Liable Under the
          FHA for Discrimination Measured Only In a Different Party's Book of
          Transactions. ............................................................................................................6

     C.   Issue 3: Whether a Mortgage Loan Purchaser Can Be Liable Under the
          FHA for Discrimination in the Terms and Conditions of Loans That It Did
          Not Purchase. ...........................................................................................................9

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Carter v. United States*,
   2007 WL 2439500 (D. Vt. Aug. 23, 2007) ................................................................................1

*Consub Del. LLC v. Schahin Engenharia Limitada*,
   476 F. Supp. 2d 305 (S.D.N.Y. 2007) ....................................................................................10

*Estate of Heiser v. Deutsche Bank Trust Co. Americas*,
   2012 WL 5039065 (S.D.N.Y. Oct. 17, 2012) ..........................................................................4

*Fed. Hous. Fin. Agency v. UBS Americas, Inc.*,
   858 F. Supp. 2d 306 (S.D.N.Y. 2012) .....................................................................................5

*Garcia v. Brockway*,
   526 F.3d 456 (9th Cir. 2008) ...................................................................................................6

*In re Dynex Capital, Inc. Sec. Litig.*,
   2006 WL 1517580 (S.D.N.Y. 2006) ........................................................................................6

*In re Literary Works in Elec. Databases Copyright Litig.*,
   2001 WL 204212 (S.D.N.Y. Mar. 1, 2001) .........................................................................2, 4

*In re New Century TRS Holdings, Inc.*,
   No. 07-10416 (Bankr. D. Del. Mar. 15, 2013) ........................................................................5

*Jock v. Sterling Jewelers, Inc.*,
   677 F. Supp. 2d 661 (S.D.N.Y. 2009) .....................................................................................4

*Miller v. Countrywide Bank, N.A.*,
   571 F. Supp. 2d 251 (D. Mass. 2008) .....................................................................................8

*Motorola, Inc. v. Abeckaser*,
   2009 WL 816343 (E.D.N.Y. Mar. 26, 2009) ..........................................................................4

*Rodriguez v. Banco Cent.*,
   917 F.2d 664 (1st Cir. 1990) ...................................................................................................6

*Sikhs for Justice v. Nath*,
   893 F. Supp. 2d 598 (S.D.N.Y. 2012) .....................................................................................4

*Smith v. City of Jackson*,
   544 U.S. 228 (2005) ............................................................................................................2, 3

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ................................................................................................................4

*Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co.*,
    2005 WL 912184 (S.D.N.Y. Apr. 19, 2005) .............................................................................1

**FEDERAL STATUTES**

28 U.S.C. § 1292(b) ..........................................................................................................5, 6, 7, 10

42 U.S.C. § 3605 ..................................................................................................................passim

42 U.S.C. § 3613(a)(1)(A) ..............................................................................................................6

Pub. L. No. 90–284, Title VIII, Apr. 11, 1968, 82 Stat. 81 ............................................................2

**REGULATIONS**

24 C.F.R. § 100.125(b)(1) ...............................................................................................................8

Plaintiffs offer no good reason why this Court and Defendants should undergo the significant burdens of litigating this putative class action in the coming months—including extensive discovery, class certification, and summary judgment—when the Supreme Court has agreed to settle an important issue of law during the same time frame that could resolve Plaintiffs' claims. If the Supreme Court decides in *Township of Mount Holly v. Mount Holly Gardens Citizens in Action, Inc.* that disparate impact claims are not cognizable under the Fair Housing Act, there will be no further litigation here. In the circumstances, a stay is common practice. Alternatively, this Court should certify for appeal three dispositive issues of law decided on Defendants' motion to dismiss. This Court's decision that the FHA includes a discovery rule conflicts with decisions by the *en banc* Ninth Circuit and the majority of district courts, which have held that the statute's plain language controls. In addition, this Court's decisions that a loan purchaser can be liable under the FHA for discrimination measured only in a different party's book of transactions, and even for discrimination in the terms of loans that the purchaser never bought, are unprecedented, as shown by Plaintiffs' failure to cite a single case on point. This Court's rulings have far-reaching consequences and present controlling questions of law on which there are plain grounds for a difference of opinion.

I.   **THIS ACTION SHOULD BE STAYED PENDING *MOUNT HOLLY***

   A.   This case falls squarely within the "common practice" of staying litigation "pending an upcoming decision in the United States Supreme Court." *Carter v. United States*, 2007 WL 2439500, at *3 (D. Vt. Aug. 23, 2007); *see also* Defs.' Mem. [ECF No. 49], at 4-5. This sensible approach is *not* "rare." Pl. Br. 4. Courts in this circuit routinely grant stays when "a higher court is close to settling an important issue of law bearing on the action," *Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co.*, 2005 WL 912184, at *2 (S.D.N.Y. Apr. 19, 2005), including where the appeal "may not settle every question of fact and law" before the

lower court, but "in all likelihood ... will settle many and simplify them all." *In re Literary Works in Elec. Databases Copyright Litig.*, 2001 WL 204212, at *3 (S.D.N.Y. Mar. 1, 2001) (internal quotation marks omitted).  This is a textbook case for a stay: A decision in *Mt. Holly* will control, and certainly materially bear upon, the question whether disparate impact claims are cognizable under 42 U.S.C. § 3605.  None of Plaintiffs' arguments shows otherwise.

*First*, Plaintiffs are wrong that § 3604 and § 3605 differ in any way that renders *Mt. Holly* irrelevant here.  Plaintiffs argue that the date of § 3605's enactment shows Congress's intent to prohibit disparate impact in § 3605—*but Plaintiffs have their facts wrong*.  Section 3605 was *not* "added in 1988," separately from § 3604.  Pl. Br. 5.  *Congress enacted both § 3604 and § 3605 in the same law, at the same time, in 1968*.  *See* Pub. L. 90–284, tit. VIII, §§ 804, 805, Apr. 11, 1968, 82 Stat. 81, 83-84.  There is every reason to believe the two provisions had the same scope when enacted.  And Congress amended *both* § 3604 and § 3605 in 1988, so the fact of amendment at that time does not distinguish this case from *Mt. Holly*.[1]

Moreover, neither Plaintiffs' brief nor their letter of August 30, 2013 (*see* ECF No. 57), addresses a critical issue in *Mt. Holly* and the applicable Supreme Court precedent.  Sections 3604 and 3605 *both* lack the "affects" language that the Supreme Court found critical for a disparate-impact construction of an Age Discrimination in Employment Act provision in *Smith v. City of Jackson*, 544 U.S. 228 (2005).  *See Mt. Holly* Pet. Br. 15, 17, 20-23, 27 (attached as Ex. A).  Indeed, the "nuanced ruling" in *Smith* to which Plaintiffs refer (Pl. Br. 6) strongly *supports* a stay here.  In *Smith*, the Court distinguished between two ADEA sections because one lacked the

---

[1]    Plaintiffs' reference to a "targeted exemption" (Pl. Br. 7) in § 3605(c) also fails to distinguish this case from *Mt. Holly*.  Plaintiffs draw the point from the government's brief in *Mt. Holly* itself, which argues that three FHA exemptions support a disparate-impact construction of the FHA.  *See* U.S. Br. 12-13 (May 2013).  As the petitioner in *Mt. Holly* demonstrates, in fact, none of the exemptions supports that conclusion.  *See* Pet. Br. 32-34 (attached as Ex. A).

critical "affects" language supporting disparate impact. *See* 544 U.S. at 235-36 & n. 6 (plurality opinion). Neither § 3604 nor § 3605 contains this "affects" language. Plaintiffs' 8/30 letter seeks to distinguish *Mt. Holly* based on the petitioner's arguments about § 3604's text, but nearly every such argument—including the key "affects" point—applies to § 3605 too. *See, e.g.*, Pet. Br. 19 (regarding "make unavailable"), 22 (regarding "discriminate"). *Mt. Holly*'s likely impact here is most clearly evident in the *Mt. Holly* petitioner's chart (*see* Pet. Br. 21) comparing Title VII and the ADEA's disparate-treatment and disparate-impact provisions with the FHA. *See id.* at 21. Sections 3604 and 3605 both fall plainly on the disparate treatment side.[2]

*Second*, Plaintiffs' speculation that the parties in *Mt. Holly* might settle the case (Pl. Br. 7) is irrelevant. The case has not been settled. The Supreme Court granted certiorari and the case is being briefed. If *Mt. Holly* were to settle, this Court could of course dissolve any stay.

*Third*, Plaintiffs' speculation that "the Supreme Court is unlikely to find that disparate impact claims are not cognizable under the FHA" (Pl. Br. 8) is presumptuous and unwarranted. Notwithstanding the decisions of eleven courts of appeals that Plaintiffs cite, the Supreme Court has now *twice* granted certiorari to decide itself whether disparate impact claims are cognizable under the FHA. And the *Smith* decision—featured in the *Mt. Holly* petitioner's brief—strongly suggests that the absence of "affects" language in the FHA could prove determinative. It is unreasonable to impose substantial burdens on this Court and the litigants based on the implausible notion that the Supreme Court's grant of certiorari in *Mt. Holly* was a gratuitous act.

**B.** The balance of interests and burdens also supports a stay. Absent a stay, Defendants will need to expend several hundreds of thousands of dollars (if not more) on

---

[2]   Plaintiffs' 8/30 letter notes that the *Mt. Holly* petitioner also makes a constitutional avoidance argument, but that is only a secondary, alternative point. As petitioner makes clear, its statutory-text argument is primary and "is sufficient to resolve th[e] case" alone. Pet. Br. 17.

3

potentially unnecessary discovery, expert reports, and other litigation activities while the Court considers *Mt. Holly*. Plaintiffs' only answer—that litigation-related burdens cannot justify a stay (Pl. Br. 10-11)—is meritless. The avoidance of potentially unnecessary litigation is a well-established ground for a stay. *See, e.g.*, *Estate of Heiser v. Deutsche Bank Trust Co. Americas*, 2012 WL 5039065, at *4 (S.D.N.Y. Oct. 17, 2012) (granting stay where pending appeal could "absolve [the defendant] of the need to litigate a variety of issues ... and thus avoid the need for unnecessary litigation" (internal quotation marks omitted)). This benefit is precisely the reason why courts routinely grant stays pending higher court decisions. *See Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) ("it would be an inefficient use of time and resources of the court and the parties to proceed in light of a pending U.S. Supreme Court decision" (internal quotation marks omitted)); *In re Literary Works*, 2001 WL 204212, at *3 ("Proceeding with this litigation several months before the Supreme Court more precisely defines the claims at issue would be unnecessarily wasteful of both the Court's and the litigants' resources.").[3]

Nor will a stay prejudice Plaintiffs or putative class members. Courts in this circuit have repeatedly held that potential delays of the order here, pending a higher court decision, do not warrant denial of a stay. *See* Defs.' Mem. 8-9 (collecting cases). Plaintiffs argue that they may be prejudiced by "losing their homes and … being burdened with their Combined-Risk Loans" (Pl. Br. 8), but they do not explain how this litigation can alleviate either harm, given that Defendants do not own Plaintiffs' loans. For that reason, among others, this Court denied

---

[3] Plaintiffs' cases (Pl. Br. 9-10) are inapposite. *Jock v. Sterling Jewelers, Inc.*, 677 F. Supp. 2d 661, 667 (S.D.N.Y. 2009), declined to stay class arbitration pending the Supreme Court's decision in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010), largely because the defendant would still face individual claims. That is not true here because *Mt. Holly* would dispose of all claims. *Motorola, Inc. v. Abeckaser*, 2009 WL 816343, at *3 (E.D.N.Y. Mar. 26, 2009), held that a stay pending a related criminal proceeding would only delay matters because the civil case would have to be decided regardless of the criminal trial's result. Again, that is not true here, because *Mt. Holly* could end this litigation.

Plaintiffs' claims for injunctive relief.  *See* Opinion & Order 6 (July 25, 2013), ECF No. 47.

Finally, neither of the discovery concerns that Plaintiffs raise has merit.  Defendants have a comprehensive litigation hold in place.  If any information had been lost before the hold was implemented (there is no such showing), that would be the result solely of the passage of time *before* Plaintiffs sued.  Given the hold, there is no appreciable risk of any loss *during* a stay.  As to New Century documents, the very order Plaintiffs cite confirms that the New Century Trust must indefinitely maintain business files and post-2003 loan files and servicing files.  *See* Order at 4-5, *In re New Century TRS Holdings, Inc.*, No. 07-10416 (Bankr. D. Del. Mar. 15, 2013). Defendants would not, in any event, oppose a limited exception to a stay that permits Plaintiffs to continue document discovery on the New Century Trust at their own expense.

## II.  IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY AN APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

### A.  Issue 1:  Whether FHA's Statute of Limitations Excludes a Discovery Rule

Purely legal statute-of-limitations questions like Issue 1 are "precisely the type of legal issue that Congress intended to be addressed through the Section 1292(b) procedure." *Fed. Hous. Fin. Agency v. UBS Americas, Inc.*, 858 F. Supp. 2d 306, 337 (S.D.N.Y. 2012) (certifying statute-of-limitations question in mortgage-backed securities case).

1.   Plaintiffs' argument that Issue 1 is not a controlling question of law is meritless.  If the Second Circuit were to agree with the *en banc* Ninth Circuit and the majority of other district courts to have addressed the issue (Defs.' Mem. 12-13), this case would be over.  There would be no need to address any continuing violation or equitable tolling issues because this Court already rejected both arguments in terms that apply equally to the FHA claim.  *See* Order 9-10.  The FHA claim is not on "different footing" (Pl. Br. 15) from the ECOA claim for purposes of the continuing violation doctrine.  This Court rejected Plaintiffs' argument because

5

the complaint fails to plead any violation within the limitations period, *not* on the ground that the doctrine was unavailable under ECOA. *See* Order 9. The reasoning applies equally to Plaintiffs' FHA claim. *See* 42 U.S.C. § 3613(a)(1)(A) (action must be commenced "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice").

**2.** Though Plaintiffs assert that there is no substantial ground for difference of opinion, they acknowledge (Pl. Br. 18 n.6) that this Court's decision conflicts with the *en banc* Ninth Circuit decision in *Garcia v. Brockway*, 526 F.3d 456 (9th Cir. 2008). The ruling also conflicts with the majority of district court decisions on the issue. Plaintiffs' only answer is to invent a new rule—that for § 1292(b) there must be conflict "*within*" a circuit. Pl. Br. 16. But *none* of Plaintiffs' cases (Pl. Br. 16) even suggests such a limitation.[4] Rather, as this Court has explained, certification is warranted if, among other reasons, "other courts have reached an opposite conclusion." *In re Dynex Capital, Inc. Sec. Litig.*, 2006 WL 1517580, at *2 (S.D.N.Y. 2006) (Baer, J.); *see also Rodriguez v. Banco Cent.*, 917 F.2d 664, 665 (1st Cir. 1990) (Breyer, J.) (accepting appeal on discovery rule because of split of authority among circuits and "the district court … followed the minority view"). The conflict here is real, pronounced, and merits review before the parties and Court incur potentially unnecessary burdens and expense.

**B.   Issue 2: Whether a Mortgage Loan Purchaser Can Be Liable Under the FHA for Discrimination Measured Only In a Different Party's Book of Transactions.**

**1.** Plaintiffs dispute the "controlling question of law" prong only by inaccurately recharacterizing Issue 2 and the theory plainly set forth in their own complaint. Defendants do not seek review of whether "§ 3605 applies to discriminatory loan purchase transactions" or

---

[4] *See Cromer Fin. Ltd. v. Berger*, 2001 WL 935475, at *2 (S.D.N.Y. Aug. 16, 2001) (no suggestion that there must be diversity of opinion *within* Second Circuit to warrant certification); *S.E.C. v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000) (same); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 399 F. Supp. 2d 320, 323 n.9 (S.D.N.Y. 2005) (same).

whether "Second Circuit law recognizes disparate impact liability for FHA claims." Pl. Br. 19. To the contrary, the question for review is whether a loan purchaser can be liable under § 3605 for discrimination (*e.g.*, disparate impact) that is present *not* in the terms of its own loan purchase transactions, but instead only in the terms of a different party's transactions. That question is purely legal and is answered by § 3605's text, which as even Plaintiffs say, "applies to discriminatory *loan purchase transactions*." Pl. Br. 19 (emphasis added).

Issue 2 is controlling because the entire theory of Plaintiffs' complaint, as they describe it themselves, is that Defendants' "policies and practices caused a disparate impact *on all African-American New Century borrowers in Detroit*." Pl. Br. 23. It is thus plain and indisputable that the disparate impact Plaintiffs allege is in *New Century's* loans. To avoid § 1292(b) review, Plaintiffs now focus narrowly on a single paragraph of their 273-paragraph complaint and try to recast their theory as one about discrimination in the terms of Morgan Stanley's book of business. *See* Pl. Br. 19 (citing Compl. ¶ 96). But the assertion is disingenuous, as the rest of Plaintiffs' brief and complaint unambiguously show. *See, e.g.,* Pl. Br. 2 ("As a result of [Defendants'] policies, *New Century* targeted African-American communities in the Detroit region for Combined-Risk Loans."); Compl. ¶¶ 115-122 (setting forth "racial disparities," all based on *New Century's* book of loans). Indeed, the premise of Plaintiffs' argument under Issue 3 is that they do seek to hold Defendants liable for "caus[ing]" New Century to discriminate in its own loans, as measured by the terms of those loans. *See* Pl. Br. 23-25.[5] If that premise cannot be sustained as a matter of law, as Defendants argue, this suit must be dismissed.

---

[5] Paragraph 96 of the complaint does not, in any event, allege any discrimination "in the terms or conditions" of any loans. 42 U.S.C. § 3605(a). It thus does not allege that African-American borrowers in "the sample" received Combined-Risk Loans disproportionally compared to white borrowers. Rather, ¶ 96 alleges a racial disparity in foreclosure rates. Thus, the *only* racial disparities that the complaint alleges in the *terms or conditions* of any loans is one measured in New Century's book of transactions. *See* Compl. ¶¶ 115-122.

2. There is a substantial ground for difference of opinion on Issue 2. Plaintiffs' theory that Defendants can be liable for a disparate impact measured only in New Century's loan transactions is highly suspect. The statutory text—with which Plaintiffs have never come to grips—prohibits a person engaging in a loan purchase transaction from discriminating "in the terms or conditions *of such a transaction*." § 3605(a) (emphasis added). After multiple rounds of briefing, Plaintiffs still have not identified a single case that adopts their expansive theory of § 3605 loan purchaser liability. They cite *Miller v. Countrywide Bank, N.A.*, 571 F. Supp. 2d 251 (D. Mass. 2008), but the alleged disparate impact there was measured in *the defendant's* book of loans—not in the books of loans of the correspondent lenders.[6]

Finally, Plaintiffs are wrong that adherence to § 3605's text is "implausible." Pl. Br. 21. Contrary to Plaintiffs' argument, Defendants' example of a claim against a loan purchaser—in which the purchaser's neutral zip-code-based buying policies lead it to pay more for white borrowers' loans than for minority borrowers' loans—involves alleged discrimination (*i.e.*, disparate impact) *in the terms of the loan purchase transaction*, just as the statute requires. In the example, the disparate impact of the loan purchaser's policies is the racial difference in the purchases themselves. Borrowers or applicants adversely affected by the differences would have standing to sue. This example—tethered to § 3605's "such a transaction" language—can hardly be criticized; it is drawn from the implementing regulation. *See* 24 C.F.R. § 100.125(b)(1). Plaintiffs cannot say the same for their construction. Plaintiffs' notion that § 3605 holds actors liable when their neutral policies somehow "cause" differences in the terms that *a third party*

---

[6] The disparate impact claim against Countrywide was measured by reference to "African-Americans *who borrow from Countrywide*," *id.* at 253 (emphasis added); the plaintiffs alleged that "for *all of the transactions at issue here*, *Countrywide* advances the funds to make the loans and bears some or all of the risk of default", *id.* at 254 n.5 (same); and the disparate impact was alleged in "*Countrywide's* pricing of *its* loans," *id.* at 259 (same). *See* Ltr. from D. Ogden to Hon. H. Baer (Mar. 18, 2012) (attached as Ex. B).

offers in *its* book of loans cannot be found anywhere in the implementing regulation, which purports to set forth principal examples of unlawful "[d]iscrimination in the purchasing of loans." *See id.* § 100.125(b)(1)-(3).

     **C.**     **Issue 3: Whether a Mortgage Loan Purchaser Can Be Liable Under the FHA for Discrimination in the Terms and Conditions of Loans That It Did Not Purchase.**

     **1.**     Issue 3 is not "bound up with Plaintiffs' factual allegations" (Pl. Br. 23), as Plaintiffs contend. Issue 3 is a pure question of law: Does § 3605 make a loan purchaser liable for alleged discrimination in the terms and conditions of loans that it never purchased? Plaintiffs seek to obfuscate this straightforward issue by describing the question as one of "caus[ation]." Pl. Br. 23 (Heading C). But Defendants' issue is not a factual question of what Defendants did or did not "cause." Rather, the question is whether, *as a matter of law*, § 3605 or its implementing regulation can ever render a loan purchaser liable for somehow "causing" another party to discriminate in loans that the purchaser never bought. To be sure, Plaintiffs disagree and contend that § 3605 should be read to accommodate their theory, but the viability of that theory is a pure question of law. The statute and regulation either do or do not support it. If the Second Circuit were to agree with Plaintiffs, *then* Plaintiffs would need to prove that Defendants' "policies and practices *caused* a disparate impact on all African-American New Century borrowers in Detroit." Pl. Br. 23 (emphasis added). Defendants would vigorously dispute that proposition. But the issue here is the prior question of law.

     If the Second Circuit were to agree with Defendants, and to hold that a loan purchaser cannot be liable for discriminatory terms of loans it did not purchase, then Plaintiffs' causation allegations will be legally irrelevant. Four of the five Plaintiffs' claims will need to be dismissed because Defendants did not purchase their loans, and the remaining Plaintiff's claim also will fail because it is not based on disparate impact in the terms of loans that Defendants purchased. *See*

*supra*, p.7.  Nor will that single Plaintiff be able to sue on behalf of the putative class of all New Century borrowers in Detroit.  *See* Compl. ¶ 229.  Issue 3 is thus controlling because its resolution would govern the disposition of all Plaintiffs' claims, and at minimum make clear that four Plaintiffs have no possible claim.  *See Consub Del. LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104 (2d Cir. 2008).

**2.** Although Plaintiffs assert there is no substantial ground for difference of opinion, tellingly they cite no authority whatsoever supporting their position on Issue 3.  They cite no language in § 3605 or its implementing regulation or even a single case.  *See* Pl. Br. 24-25.  Plaintiffs' inability to muster any authority for their theory shows why there is a substantial ground for difference of opinion.  No court has ever suggested that a party drawn within § 3605 based on its status as a *purchaser* of loans can somehow be held liable for discrimination in the terms of loans *it did not purchase*—including loans *purchased by others*.

Defendants' understanding of § 3605 would not, as Plaintiffs suggest, tie a purchaser's liability to "an action taken by a defendant *after* a borrower received a discriminatory loan."  Pl. Br. 24.  The statute does not focus a loan purchaser's liability on the circumstances surrounding the originating lender's issuance of a loan at all; it focuses a loan purchaser's potential liability instead on the only transaction in § 3605 in which the loan purchaser "engag[es]"—*i.e.*, the "purchasing of loans … secured by residential real estate."  §§ 3605(a), (b)(1).  The loan purchaser's liability can be based only on discriminatory terms *in that purchase transaction*, and thus (if disparate impact liability can be imposed at all under the FHA) on a disparate impact among those borrowers whose loans the purchaser bought.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court stay this action, or, in the alternative, certify an immediate appeal pursuant to 28 U.S.C. § 1292(b).

Dated: September 3, 2013                    Respectfully submitted,

/s/ Noah A. Levine
_____

Noah A. Levine
Colin T. Reardon
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888
noah.levine@wilmerhale.com
colin.reardon@wilmerhale.com

David W. Ogden (*admitted pro hac vice*)
Brian M. Boynton (*admitted pro hac vice*)
Danielle Y. Conley (*admitted pro hac vice*)
Jonathan Bressler (*admitted pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
david.ogden@wilmerhale.com
brian.boynton@wilmerhale.com
danielle.conley@wilmerhale.com
jonathan.bressler@wilmerhale.com

*Counsel for Defendants*