WILMERHALE

April 3, 2014

David W. Ogden

+1 202 663 6440 (t)
+1 202 663 6363 (f)
david.ogden@wilmerhale.com

Hon. Harold Baer, Jr
U.S. District Court for the Southern District of New York
500 Pearl Street, Chambers 2230
New York, NY 10007

Re:    *Adkins et al. v. Morgan Stanley et al.*, No. 1:12-cv-7667 (HB)

Your Honor:

   We represent Defendants in the above-referenced action. We write in opposition to Plaintiffs' letter seeking a judicial order compelling Morgan Stanley to consent to the release of certain deposition transcripts from a Massachusetts Attorney General ("MAAG") investigation of Morgan Stanley. *See* Dkt. 81. Plaintiffs' request should be denied for at least three reasons.

   <u>First</u>, although the parties negotiated the document request at issue, there was no agreement that Morgan Stanley or its employees would waive their confidentiality rights under Massachusetts law and seek to have the MAAG release transcripts that its office maintains in its sole possession. The parties have engaged in more than eight months of discovery, during which Morgan Stanley has produced more than 250,000 documents from 18 custodians. The parties negotiated extensively over the scope of this discovery. As to Plaintiffs' request for prior testimony by Morgan Stanley's custodians, Morgan Stanley agreed to produce deposition transcripts from *FHFA v. Morgan Stanley*, No. 1:11-cv-6739 (S.D.N.Y.), and, as depositions occur in the case, from *Allstate v. Morgan Stanley*, No. 651840-2011 (N.Y. Sup. Ct.). To the extent it has them, Morgan Stanley also agreed to produce transcripts from any government investigation that has been made public.[1] Morgan Stanley never agreed to produce transcripts that it did not have, or to seek release by government agencies of transcripts those agencies alone possess. Morgan Stanley has fully complied with its agreement, producing its custodians' transcripts from *FHFA*[2] and from an SEC investigation, the only government investigation that has been made public for which Morgan Stanley possesses deposition transcripts. The transcripts are expansive: 44 days of deposition testimony from 18 custodians. Armed with these transcripts and the vast number of documents produced by Morgan Stanley, Plaintiffs will have soon deposed 11 current and former Morgan Stanley employees, with ample opportunity to ask questions they deemed relevant to their case. Plaintiffs do not explain why this is not sufficient. Nor have they even attempted to establish good cause under Massachusetts law.

   <u>Second</u>, Plaintiffs provide no authority for the proposition that Morgan Stanley or its former employees can be compelled to waive their right to confidentiality under Massachusetts law. The statute provides: "Any documentary material or other information produced by any

---

[1] Morgan Stanley reached this agreement to avoid protracted motion practice, but nevertheless maintains its objections, including its objections on the basis of relevance.

[2] At this time, there are no responsive transcripts from the *Allstate* litigation.

Wilmer Cutler Pickering Hale and Dorr LLP, 1875 Pennsylvania Avenue NW, Washington, DC 20006

Beijing    Berlin    Boston    Brussels    Denver    Frankfurt    London    Los Angeles    New York    Oxford    Palo Alto    Waltham    Washington

WilmerHale

Hon. Harold Baer, Jr.
Page 2

person pursuant to this section shall not, unless otherwise ordered by a court of the commonwealth for good cause shown, be disclosed to any person other than the authorized agent or representative of the attorney general, *unless with the consent of the person producing the same* ….". Mass. Gen. L. ch. 93A, § 6(6) (emphasis added). Through the italicized language, Massachusetts affords persons—both corporations and individuals (*see id.* ch. 4, § 7, cl. 23)—providing information a right of confidentiality, forbidding disclosure by the MAAG absent consent from the person or an order of a commonwealth court. *Cf. Attorney General v. Bodimetric Profiles*, 533 N.E.2d 1364, 1367 n.6 (Mass. 1989) (statute "helps protect the rights" of companies and individuals whose information was provided). Plaintiffs' argument turns the statute on its head. Rather than affording persons a right to protect themselves against disclosure, in Plaintiffs' view the statute should be construed to confer "control" on such persons of information maintained solely in the MAAG's possession and thus to provide the basis for ordering production. The statute provides for disclosure only if (a) a commonwealth court orders it or (b) the person providing the information consents, yet Plaintiffs would bypass both conditions by simply having this Court order "consent." "Consent" produced by court order is a contradiction in terms, plainly inconsistent with the statutory language. Also inconsistent with the statute is the judicial role contemplated by Plaintiffs. The statute prescribes just one path for obtaining release without consent—"unless ordered by a court of the commonwealth for good cause shown." Plaintiffs' proposed role for this Court, through the fiction of mandated "consent," circumvents the Massachusetts legislature's direction that Massachusetts' courts would be the judge of "good cause." Plaintiffs' request for *Morgan Stanley* to provide this compelled consent also tramples the important statutory rights of *the former employees*—individuals who provided testimony with the expectation of confidentiality afforded by the statute. To the extent they "produced" the information at issue, the statute confers on those individuals a right to consent—and implicitly a right *not* to consent. Compelling "consent" from Morgan Stanley would ignore those statutory rights. Finally, Plaintiffs fail to demonstrate "good cause." If Plaintiffs' unsupported position were condoned, Morgan Stanley and the employees at issue would lose their statutory confidentiality right, as the transcripts would be released from the MAAG's office, where they are now secured from release by ch. 93A §6(6).[3]

*Third*, contrary to Plaintiffs' assertion, Morgan Stanley cannot be deemed to have "possession, custody, or control" over the transcripts. Fed. R. Civ. P. 34(a)(1). Plaintiffs bear the burden of establishing "control." *See Alexander Interactive, Inc. v. Adorama, Inc.*, 2014 WL 61472, at *3 (S.D.N.Y. Jan. 6, 2014). Whether a party not in actual possession of material may nevertheless have "control" over it turns on whether the party has the "legal right" or "practical ability" to obtain the material. *See SEC v. Strauss*, 2009 WL 3459204, at *7 (S.D.N.Y. Oct. 28, 2009); *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007). Here, Morgan Stanley does not have the "legal right" to obtain the transcripts: Massachusetts law does

---

[3] For that reason and others, Plaintiffs' suggestion that production pursuant to protective order would somehow safeguard the rights of Morgan Stanley and the witnesses is incorrect. First, mandating "consent" in this case alone violates the statutory design. Second, if "consent" may be obtained in the manner Plaintiffs suggest in this case, presumably it may be so obtained in other cases and thus the statute's protection would be entirely vitiated.

WilmerHale

Hon. Harold Baer, Jr.
Page 3

not give Morgan Stanley or its employees a legal entitlement to demand or even to request the transcripts from the MAAG.  *See* Mass. Gen. L. ch. 93A, § 6(6).[4]

As for Morgan Stanley's "practical ability" to obtain the transcripts, "the courts that have invoked that standard have generally done so in the context of requiring corporate litigants to seek documents from parents, subsidiaries or affiliates *with which they maintain an ongoing relationship and practice of sharing documents*." *SEC v. Tourre*, 2011 WL 350286, at *3 (S.D.N.Y. Jan. 31, 2011) (emphasis added).  Courts have focused on the "practical ability to obtain by virtue of [a party's] relationship with the party in possession of the evidence." *RFMAS, Inc. v. So*, 271 F.R.D. 13, 24 (S.D.N.Y. 2010).[5]  Where there is "no sufficiently strong connection between [the party and the non-party in actual possession] to support a finding of control," courts do not find that the party has the "practical ability" to obtain the non-party's materials.  *Alexander Interactive*, 2014 WL 61472, at *3-4.  This requirement of a "sufficiently strong connection" is necessary in light of Rule 34's language and purpose; many non-parties might be willing to turn over materials if asked, but a party does not "control" the non-party's materials absent such a relationship.  Here, Morgan Stanley does not have a "sufficiently strong connection" with the MAAG such that it has the "practical ability" to "control" the MAAG's materials.  Indeed, when the transcripts were made, the MAAG was adverse to Morgan Stanley.

Morgan Stanley is not aware of any cases in which a court deemed a party to have the "practical ability" to "control" materials in an unrelated governmental entity's possession.  Where courts have ordered parties to produce transcripts, they have done so on the ground that a statute or regulation provided the party with the legal right to obtain or request the transcripts from the government.[6]  As noted above, the Massachusetts statute provides no such entitlement.

Accordingly, we respectfully request that the Court decline to compel Morgan Stanley to give up its statutory rights and to consent to any disclosure of the MAAG transcripts.

---

[4] *Cf.* 15 U.S.C. § 1312(i)(6) (federal government "shall furnish a copy of the transcript to the witness" on payment in antitrust investigations); 17 C.F.R. § 203.6 (witness shall be "entitled, upon written request, to … a transcript of his testimony on payment" in SEC investigations).

[5] *See, e.g.*, *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 196 (S.D.N.Y. 2007) (party had "control" over predecessor corporation's documents possessed by entity from which it had been artificially separated); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 181-82 (S.D.N.Y. 2006) (former executive had "control" over documents possessed by corporation); *Exp.-Imp. Bank of the United States v. Asia Pulp & Paper Co.*, 233 F.R.D. 338, 341-42 (S.D.N.Y. 2005) (corporation had "control" over documents possessed by former employee).

[6] *See, e.g.*, *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 531 (S.D.N.Y. 1996) (under 15 U.S.C. § 1312(i)(6), witnesses "entitled by law to copies of their CID deposition transcripts"); *In re Woolworth Corp. Sec. Class Action Litig.*, 166 F.R.D. 311, 313 (S.D.N.Y. 1996) (under 17 C.F.R. § 203.6, witness had "a legal right to endeavor to obtain the [SEC] transcript"); *Herbst v. Able*, 63 F.R.D. 135, 137 (S.D.N.Y. 1972) (under 17 C.F.R. § 203.6, "witness is entitled to a transcript of his own [SEC] testimony").  In *In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*, 2009 WL 805812 (S.D.N.Y. Mar. 23, 2009), the court ordered production of SEC and MAAG investigative transcripts based only on *NASDAQ*, *Woolworth*, and the SEC transcript regulation.  *Id.* at *1.  The court never considered the arguments that, unlike the SEC regulation, Massachusetts law does not provide a right to request the transcripts and yet does provide a right to non-disclosure that a federal court cannot override.

WilmerHale

Hon. Harold Baer, Jr.
Page 4

                                              Respectfully submitted,

                                              */s/ David W. Ogden*

                                              David W. Ogden