**WILMERHALE**

May 20, 2014

**David W. Ogden**

+1 202 663 6440 (t)
+1 202 663 6363 (f)
david.ogden@wilmerhale.com

Hon. Gabriel W. Gorenstein
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  *Adkins et al. v. Morgan Stanley et al.*, No. 1:12-cv-7667 (HB)

Your Honor:

      Defendants respectfully respond to the Court's requests at the May 12, 2014 hearing. For reasons we have previously explained and further explain below, Plaintiffs' motion to compel Defendants to consent to the release of certain transcripts held by the Massachusetts Attorney General ("MAAG") should be denied.

      Plaintiffs' letter of May 15, 2014 contains new legal arguments, many of which they could have raised in filing their initial letter request or in response to Defendants' first filing, when Defendants invoked the right of confidentiality in the Massachusetts statute and its good cause requirement. Defendants have substantial responses to each of Plaintiffs' new arguments, and would of course provide them promptly if the Court wishes. At the Court's direction, however, Defendants confine this letter to (1) the declaration requested by the Court establishing that the MAAG had previously denied Morgan Stanley's requests for copies of the transcripts (*infra*, Part I), and (2) Plaintiffs' insubstantial claims that they need the MAAG transcripts (*infra*, Part II).

**I.    Prior to Its Recent Change of Position, the MAAG Had Refused To Provide Copies of The Transcripts At Morgan Stanley's Request**

      At the May 12, 2014 hearing, the Court asked Defendants to submit a declaration establishing that the MAAG had previously refused to produce transcripts from its investigation despite Morgan Stanley's request for them. That declaration is attached to this letter. *See* Defs.' Ex. A.[1] It establishes that the MAAG does not view the statute or any other provision of law as conferring a right to obtain or expectation of obtaining such transcripts.

**II.    Plaintiffs Fail To Demonstrate Any Need For MAAG Transcripts**

      At the hearing, the Court also invited the Plaintiffs to make an additional submission attempting to demonstrate a need for the MAAG transcripts and permitted Defendants to respond to any such submission. For the reasons explained below, Plaintiffs' May 15 letter does not

---

[1] All documents cited herein as "Defs.' Ex. X" are attached to this letter.

WILMERHALE

May 20, 2014
Page 2

establish any need for the transcripts at issue, much less a need sufficient to overcome the confidentiality right that Morgan Stanley and its former employees hold under Massachusetts law.[2]

Plaintiffs advance two arguments in support of their claimed need for the MAAG transcripts. First, they argue that they need the transcripts due to "substantial failures of memory" during depositions of Morgan Stanley's current and former employees. Pls.' Ltr. 6-12. Second, they argue that they need the transcripts to "test the consistency" of witnesses' testimony provided in this case. *Id.* at 6. Both arguments lack merit.

### A. Plaintiffs Have Not Demonstrated Any Need Arising From "Substantial Failures of Memory"

When Plaintiffs' counsel asserted at the May 12 hearing that Plaintiffs need the MAAG transcripts due to alleged memory loss by witnesses, the Court noted three factors that would be relevant to analyzing any such assertion of need: (1) a description of the issues affected by such memory loss, (2) the reason why Plaintiffs' counsel could not develop the evidence on those issues through other means, and (3) the reason why each issue is important to Plaintiffs' case. Plaintiffs' letter addresses only the first factor. Plaintiffs say nothing about the second factor—*i.e.*, they do not even attempt to show why they cannot develop any relevant facts in other ways, including through documents, other witnesses, or the many volumes of prior testimony by the same witnesses in other matters, testimony that Morgan Stanley has already produced to Plaintiffs' counsel in this case. Nor do Plaintiffs address the third factor, and thus fail entirely to demonstrate the importance of any alleged memory lapses to their case. It is Plaintiffs' burden to establish a need for the MAAG transcripts that is sufficiently important to overcome the right of confidentiality held by Morgan Stanley and its former employees respecting those transcripts. The mere citation of deposition testimony that Plaintiffs allege shows failures of recollection with respect to isolated facts cannot on its own establish the requisite need. Plaintiffs' motion should be denied for this reason alone.

Moreover, at the most fundamental level, Plaintiffs' claims regarding memory loss are largely untrue or misleading, belied by the very testimony Plaintiffs rely on. For example, Plaintiffs cite instances where a witness testified that that he or she did not recall a fact *hypothesized* by the examiner. That is not an instance of memory loss; it is a witness testifying that the fact never existed or the event never occurred. Plaintiffs accuse one witness of failing to "recall" events that occurred during a time when, as he explained during his deposition, he was not working at Morgan Stanley, and advance other, similarly baseless claims. Many other

---

[2] Defendants note that they continue to believe that the appropriate course here is to deny the Plaintiffs' motion because the Plaintiffs are required, at least as an initial matter, to attempt to make a showing of good cause to a Massachusetts court as provided in the statute.

WILMERHALE

May 20, 2014
Page 3

examples of memory loss offered by Plaintiffs involve instances when a witness provided direct and substantive testimony on the issue raised by the question, and thus the isolated memory loss did not in any meaningful way impair the Plaintiffs ability to obtain testimony from that witness on the topic.  Finally, in some cases, Plaintiffs fault a witness for not recalling circumstances or events when, in fact, the questioner posed no question about such facts or events.  The exceedingly few instances in which a witness expressed actual lack of memory or recollection generally involved requests for highly particularized facts (*e.g.*, a statement in an email from many years before, or a fact that one would normally need data to answer) or subject matters on which Plaintiffs have obtained other, more direct discovery, and about which there is little reason to suppose a similar question posed in the Massachusetts proceeding could have elicited a better response.  In sum, as demonstrated in more detail below, Plaintiffs fail to establish any significant failures by the witnesses at issue to recall relevant events.[3]

**Steven Shapiro**

REDACTED

WilmerHale

May 20, 2014
Page 4

REDACTED

**Frank Telesca**

REDACTED

WILMERHALE

May 20, 2014
Page 5

REDACTED

**Vanessa Vanacker**

REDACTED

WilmerHale

May 20, 2014
Page 6

REDACTED

**Bradley Davis**

REDACTED

WilmerHale

May 20, 2014
Page 7

REDACTED

**Tony Peterson**

REDACTED

WILMERHALE

May 20, 2014
Page 8

REDACTED

**Andrew Neuberger**

REDACTED

WilmerHale

May 20, 2014
Page 9

REDACTED

WilmerHale

May 20, 2014
Page 10

REDACTED

**Deborah Goodman**

REDACTED

**Eric Kaplan**

WilmerHale

REDACTED

WilmerHale

May 20, 2014
Page 12

\* \* \*

Thus, Plaintiffs' effort to rely on so-called memory lapses to justify their demand for the MAAG transcripts is a rationalization for a fishing trip. The witnesses in question provided extensive and useful testimony on all issues of significance to this case and there is no reason to suppose the MAAG transcripts will provide meaningful supplementation of the existing record.

### B. Plaintiffs Have Not Demonstrated a Particularized Need for the Transcripts for Impeachment

At the May 12 hearing, the primary "need" discussed by Plaintiffs' counsel was the asserted memory lapse need addressed above. Now, by post-argument letter, Plaintiffs assert that they also should be entitled to the MAAG transcripts to test the consistency of witnesses' statements. Plaintiffs fail, however, to make the requisite particularized showing that courts require. For example, Plaintiffs do not identify any testimony by any witness that they believe would likely be contradicted by testimony before MAAG. Indeed, Plaintiffs do not discuss any specific witnesses at all, never identifying which witnesses they think provided testimony in the current matter that would be impeached by the MAAG transcripts. And, having identified no specific testimony to be impeached, nor the specific witnesses providing any such testimony, Plaintiffs make no attempt whatsoever to show why any alleged potential inconsistency would be germane to their claims. As a result, Plaintiffs plainly have not made the requisite particularized showing that the transcripts are needed for impeachment.

Plaintiffs' argument appears to be premised on the notion that merely stating a desire for potential impeachment testimony is sufficient to overcome a state-law confidentiality right. If correct, that notion would render every such confidentiality right irrelevant. There would be no balancing at all because every party can always proffer a mere desire for generalized, potential impeachment testimony. None of the cases that Plaintiffs cite stands for the broad proposition they advance. None involves any general "right" to obtain deposition transcripts for impeachment purposes and, indeed, none even involves deposition transcripts sought in the face of a state-law right of confidentiality.[12]

---

of the breaches so they could process them." *Id*. at 97:8-14. Also, Mr. Kaplan repeatedly asked Plaintiffs' counsel to point him to a representation or warranty that required New Century to repurchase a loan under the circumstances in the questions and Plaintiffs' counsel ignored the requests. Mr. Kaplan may have been able to better answer the questions had Plaintiffs' counsel provided him with a document to review.

[12] *MacNamara v. City of New York*, 2006 WL 3298911 (S.D.N.Y. Nov. 13, 2006), did not involve depositions or materials sought for impeachment at all. *See id.* at \*2-4 (court ordered limited disclosure of arrest records in third party's control sought by plaintiffs under Rule 45 subpoena so that they could build a timeline of events). *Gavenda v. Orleans County*, 174 F.R.D. 265 (W.D.N.Y. 1996), did not involve any dispute over whether deposition transcripts should be produced or any assertion of a right of confidentiality. *See id.* at 268 (court denied

**WilmerHale**

May 20, 2014
Page 13

The governing case law in fact makes clear that an "asserted desire to cross-examine effectively … should *not* give a [requesting party] license to page through" privileged transcripts; "a much more particularized, more discrete showing of need is necessary to establish 'good cause.'" *Matter of Fed. Grand Jury Proceedings*, 760 F.2d 436, 439 (2d Cir. 1985) (emphasis added). Courts emphasize that "the requesting party must demonstrate some specific respect in which the [prior] testimony likely contradicts trial evidence or supplies material information that is otherwise lacking." *Rechtschaffer v. City of New York*, 2009 WL 773351, at *4 (S.D.N.Y. Mar. 18, 2009).

Courts thus routinely refuse to order the production of privileged transcripts where the requesting party fails to make a particularized, discrete showing that it needs the transcripts for impeachment. *See, e.g.*, *id.* at *5 (denying production of transcripts sought for impeachment because "plaintiffs have failed to specify precisely why they need the prior testimony for impeachment or for refreshing recollection"); *Maldonado v. City of New York*, 2012 WL 2359836, at *4 (S.D.N.Y. June 21, 2012) (denying production of transcripts sought for impeachment purposes because, *inter alia*, "the arresting officers remain available for deposition and no showing has been made that they have lost their memories of the events leading up to plaintiff's arrest"). Conversely, this Court ordered production in *Palmer v. Estate of Stuart*, 2004 WL 2429806 (S.D.N.Y. Nov. 1, 2004) (Gorenstein, J.), because the requesting party was "not seeking the grand jury material merely in the unsupported hope that it will impeach witnesses at trial." *Id.* at *4. Rather, the requesting party was seeking testimony (a) that was otherwise unavailable to it because a key witness had died, (b) where it had shown that the prior testimony possibly, or even likely, contradicted subsequent testimony, and (c) where it had shown that the inconsistency would be "highly germane" to its claims. *Id.* at *1, 3-4. The Court concluded that the requesting party had shown the privileged testimony was needed for reasons "far beyond the mere impeachment of potential trial testimony." *Id.* at *4.

Plaintiffs have not even attempted to make a particularized showing of need for asserted impeachment testimony. Their impeachment-based need argument accordingly fails.

\*\*\*

---

consolidation of depositions but noted that relevant deposition transcripts—which were in the party's control and not protected by any confidentiality right—could be used for impeachment purposes in a subsequent case). The remaining two cases Plaintiffs cite did not involve production of prior deposition transcripts or a confidentiality right. Rather, they involved the question whether a deponent was required to answer questions about unprivileged material during a deposition in the case at hand, where those questions were relevant to potential impeachment. *See United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y. 1974) (deponent ordered to answer deposition questions from defendant that could show his bias and therefore go toward impeachment); *Davidson Pipe Co. v. Laventhol & Horwath*, 120 F.R.D. 455, 461-64 (S.D.N.Y. 1988) (deponent ordered to answer deposition questions from defendants about prior bad acts that could reasonably lead to proper impeachment evidence).

WilmerHale

May 20, 2014
Page 14

      For the foregoing reasons, Plaintiffs fail to show a need for any of the transcripts they seek. The Court should deny Plaintiffs' motion.

Respectfully submitted,

/s/ _____

David W. Ogden

WILMERHALE

May 20, 2014
Page 15

### CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of May, 2014, true copies of the attached letter and its accompanying exhibits were served upon all counsel of record, via email.

Dated: May 20, 2014        /s/ Skye Perryman /by CR