UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEVERLY ADKINS, CHARMAINE WILLIAMS, REBECCA PETTWAY, RUBBIE McCOY, WILLIAM YOUNG, on behalf of themselves and all others similarly situated, and MICHIGAN LEGAL SERVICES,<br><br>       Plaintiffs,<br><br>  v.<br><br>MORGAN STANLEY, MORGAN STANLEY & CO. LLC, MORGAN STANLEY ABS CAPITAL I INC., MORGAN STANLEY MORTGAGE CAPITAL INC., and MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC,<br><br>       Defendants. | No. 1:12-cv-7667 |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR OBJECTIONS
TO MAGISTRATE JUDGE GORENSTEIN'S MAY 27, 2014 ORDER**

## **TABLE OF CONTENTS**

I. The Magistrate Judge's Legal Conclusions Are Subject To *De Novo* Review ................... 1

II. The Transcripts Are Protected By A State Privilege As A Matter Of Law ......................... 2

    A. The Massachusetts Statute Provides A Confidentiality Privilege ............................ 2

    B. Plaintiffs Failed To Establish Any Particularized Need For The Transcripts ......... 5

    C. Defendants Have Not Waived Their Confidentiality Privilege ............................... 7

III. The Transcripts Are Not Within Morgan Stanley's Control As A Matter of Law .............. 7

CONCLUSION ............................................................................................................................. 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Alexander Interactive, Inc. v. Adorama, Inc.*,
 2014 WL 61472 (S.D.N.Y. Jan. 6, 2014) ..................................................................................8

*Cahaly v. LaRosa*,
 2014 WL 259255 (D.S.C. June 10, 2014)..................................................................................6

*Chaveriat v. Williams Pipe Line Co.*,
 11 F.3d 1420 (7th Cir. 1993) .....................................................................................................9

*Cherry v. Rodenburg*,
 2008 WL 4610302 (E.D.N.Y. Oct. 15, 2008)............................................................................5

*Com-Tech Assoc. v. Computer Assoc. Int'l, Inc.*,
 753 F. Supp. 1078 (E.D.N.Y. 1990) ..........................................................................................1

*Cooper Indus. v. British Aerospace*,
 102 F.R.D. 918 (S.D.N.Y. 1984) .............................................................................................10

*EEOC v. Burlington N. & Santa Fe Ry.*,
 621 F. Supp. 2d 603 (W.D. Tenn. 2009)....................................................................................1

*Engel v. Town of Roseland*,
 2007 WL 2903196 (N.D. Ind. Oct. 1, 2007)............................................................................10

*Export-Import Bank of the U.S. v. Asia Pulp & Paper Co.*,
 233 F.R.D. 338 (S.D.N.Y. 2005) ...............................................................................................9

*FDIC v. Healey*,
 991 F. Supp. 53 (D. Conn. 1998) ...............................................................................................1

*Feist v. RCN*,
 2012 WL 4835038 (N.D. Cal. Oct. 4, 2012).............................................................................1

*Florentia Contracting v. Resolution Trust*,
 1993 WL 127187 (S.D.N.Y. Apr. 22, 1993).............................................................................9

*Haines v. Liggett Group, Inc.*,
 975 F.2d 81 (3d Cir. 1992).........................................................................................................1

*HSBC Bank v. Resh*,
 2014 WL 317820 (S.D.W. Va. Jan. 28, 2014) ..........................................................................1

*Illinois v. Abbott & Assocs.*,
 460 U.S. 557 (1983).........................................................................................................3, 4, 6, 7

*In re Air Passenger Computer Reservation Sys. Antitrust Litig.*,
   116 F.R.D. 390 (C.D. Cal. 1986) .................................................................................... 4, 5

*In re Folding Carton Antitrust Litigation*,
   76 F.R.D. 420 (N.D. Ill. 1977) ............................................................................................ 9

*In re Grand Jury Inv. of Cuisinarts*,
   665 F.2d 24 (2d Cir. 1981) ........................................................................................ 3, 6, 7

*In re Winstar Commc'ns, Sec. Litig.*,
   2007 WL 4115812 (S.D.N.Y. Nov. 15, 2007) ..................................................................... 2

*Komlosi v. N.Y. State OMRDD*,
   1992 WL 77544 (S.D.N.Y. Apr. 3, 1992) ........................................................................ 3, 5

*Maniscalco v. Brother Int'l Corp.*,
   2010 WL 762194 (D.N.J. Mar. 5, 2010) ......................................................................... 2, 8

*New York v. AMTRAK*,
   233 F.R.D. 259 (N.D.N.Y 2006) ......................................................................................... 9

*Payne v. D.C.*,
   859 F. Supp. 2d 125 (D.D.C. 2012) .................................................................................... 1

*PowerShare, Inc. v. Syntel Inc.*,
   597 F.3d 10 (1st Cir. 2010) ................................................................................................. 1

*Rechtschaffer v. City of N.Y.*,
   2009 WL 773351 (S.D.N.Y. Mar. 18, 2009) ....................................................................... 5

*RFMAS, Inc. v. So*,
   271 F.R.D. 13 (S.D.N.Y. 2010) .......................................................................................... 8

*Rodriguez v. Pataki*,
   293 F. Supp. 2d 302 (S.D.N.Y. 2003) ................................................................................. 1

*SEC v. Credit Bancorp*,
   194 F.R.D. 469 (S.D.N.Y. 2000) ........................................................................................ 8

*SEC v. Tourre*,
   2011 WL 350286 (S.D.N.Y. Jan. 31, 2011) ........................................................................ 9

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
   490 F.3d 130 (2d Cir. 2007) .............................................................................................. 10

*Sprint Commc'ns v. Vonage Holdings*,
   500 F. Supp. 2d 1290 (D. Kan. 2007) ................................................................................. 1

*U.S. Int'l Trade Comm'n v. ASAT, Inc.*,
    411 F.3d 245 (D.C. Cir. 2005) ................................................................................. 2, 8

*United States v. Hasan*,
    586 F.3d 161 (2d Cir. 2009) ........................................................................................ 1

*United States v. Weissman*,
    195 F.3d 96 (2d Cir. 1999) .......................................................................................... 2

*Wakefern Food Corp. v. Prospect Plaza Improvements*,
    2010 WL 4514287 (D. Conn. Nov. 2, 2010) ............................................................... 1

**STATE CASES**

*Attorney General v. Bodimetric Profiles*,
    533 N.E.2d 1364 (Mass. 1989) ............................................................................ 3, 4, 6

*Attorney General v. Colleton*,
    444 N.E.2d 915 (Mass. 1982) ...................................................................................... 6

*Elec. Data Sys. v. Attorney General*,
    907 N.E.2d 635 (Mass. 2009) ...................................................................................... 6

*Gateley's Case*,
    613 N.E.2d 918 (Mass. 1993) ...................................................................................... 6

**FEDERAL STATUTES, RULES, REGULATIONS, AND LEGISLATIVE HISTORY**

Fed. R. Civ. P. 26 ................................................................................................................ 10

Fed. R. Civ. P. 34 ......................................................................................................... passim

Fed. R. Civ. P. 72 ............................................................................................................. 1, 8

H.R. Rep. No. 94-1343 (1976) ............................................................................................. 7

122 Cong. Rec. 29,341 (1976) ............................................................................................. 7

**STATE STATUTES AND LEGISLATIVE HISTORY**

Legis. Package for 1988 Mass. Acts ch. 289 ....................................................................... 3

Mass. Gen. L. ch. 93A, § 6(6) ..................................................................................... passim

N.Y. Educ. L. § 6527 ........................................................................................................... 3

1967 Mass. Acts 784 ............................................................................................................ 3

1988 Mass. Acts 1024 .......................................................................................................... 3

- v -

**OTHER AUTHORITIES**

12 Wright et al., Fed. Prac. & Proc. Civ. § 3069 ..............................................................................1

Plaintiffs' request that this Court affirm the Magistrate Judge's May 27, 2014 Order and thereby *compel* Morgan Stanley *to consent* to the Massachusetts Attorney General (MAAG) disclosing *MAAG* transcripts protected by a statutory confidentiality privilege should be rejected.

## I. The Magistrate Judge's Legal Conclusions Are Subject To *De Novo* Review

Plaintiffs acknowledge that under Fed. R. Civ. P. 72(a) a district judge must set aside any part of a magistrate judge's order that is "contrary to law." Dkt. 138, at 4. But they deny that this standard entails *de novo* review of legal conclusions. *Id.* at 5 & n.2. The weight of authority is against them. It is well established that Rule 72(a) invites plenary review of legal questions.[1] The Courts of Appeals that have addressed the issue have thus recognized that "for questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under Rule 72(b)'s *de novo* standard." *PowerShare, Inc. v. Syntel Inc.*, 597 F.3d 10, 15 (1st Cir. 2010); *see also Haines*, 975 F.2d at 91. District courts, including in the Second Circuit, routinely review legal conclusions under Rule 72(a) *de novo*.[2] After all, even when a lower court is afforded discretion, "review for abuse of discretion incorporates … *de novo* review of … rulings of law." *United States v. Hasan*, 586 F.3d 161, 168 (2d Cir. 2009).[3]

Contrary to Plaintiffs' assertion (at 5 n.2), Defendants are objecting to legal, not factual,

---

[1] *See* 12 Wright et al., *Fed. Prac. & Proc. Civ.* § 3069 ("Much as the district judge should defer to the magistrate judge's decision, therefore, he or she should not be hamstrung by the clearly erroneous standard. At its broadest, it is limited to factual findings; even the Third Circuit recognized that 'the phrase "contrary to law" indicates plenary review as to matters of law.'" (quoting *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir. 1992))); *see also id.* n.28 (citing cases applying plenary review).

[2] *See, e.g.*, *Rodriguez v. Pataki*, 293 F. Supp. 2d 302, 304 (S.D.N.Y. 2003); *Wakefern Food Corp. v. Prospect Plaza Improvements*, 2010 WL 4514287, at *2 n.2 (D. Conn. Nov. 2, 2010); *FDIC v. Healey*, 991 F. Supp. 53, 54-55 (D. Conn. 1998); *HSBC Bank v. Resh*, 2014 WL 317820, at *7 (S.D.W. Va. Jan. 28, 2014); *Payne v. D.C.*, 859 F. Supp. 2d 125, 131 (D.D.C. 2012); *Feist v. RCN*, 2012 WL 4835038, at *2 (N.D. Cal. Oct. 4, 2012); *EEOC v. Burlington N. & Santa Fe Ry.*, 621 F. Supp. 2d 603, 605-06 (W.D. Tenn. 2009); *Sprint Commc'ns v. Vonage Holdings*, 500 F. Supp. 2d 1290, 1346-47 (D. Kan. 2007).

[3] The cases Plaintiffs cite (at 4-5) do not address review of questions of law or state that *de novo* review is inapplicable to such review. *See, e.g.*, *Com-Tech Assoc. v. Computer Assoc. Int'l, Inc.*, 753 F. Supp. 1078, 1099 (E.D.N.Y. 1990) (applying "lesser standard of review" to magistrate judge's factual determination that documents were not material or relevant to statute of limitations defense).

conclusions.  Defendants challenge the Magistrate Judge's conclusion that the Massachusetts statute provides no privilege against disclosure.  This is a classic issue of law.  *See United States v. Weissman*, 195 F.3d 96, 99 (2d Cir. 1999) ("[A] determination as to the scope of a privilege is a matter of law subject to *de novo* review.").[4]  Defendants also challenge the Magistrate Judge's conclusion that the transcripts are within Morgan Stanley's "control."  This issue presents a mixed question of fact and law, with factual determinations reviewed for clear error and legal conclusions reviewed *de novo*.  *See Maniscalco v. Brother Int'l Corp.*, 2010 WL 762194, at \*7 (D.N.J. Mar. 5, 2010).  But here, the facts are uncontested:

- It is undisputed that Morgan Stanley has never possessed the transcripts and the MAAG previously refused to produce copies to Morgan Stanley upon request.

- It is undisputed that the MAAG has represented to Plaintiffs' counsel that it would produce the transcripts if Morgan Stanley were now to provide its consent.

The only dispute is whether these uncontested facts support the Magistrate Judge's determination "as a matter of law" that Morgan Stanley has "control" over the transcripts under Rule 34.  *See, e.g.*, *U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 256 (D.C. Cir. 2005); *Maniscalco*, 2010 WL 762194, at \*12.  That legal conclusion must be reviewed *de novo*.

## II.    The Transcripts Are Protected By A State Privilege As A Matter Of Law

### A.    The Massachusetts Statute Provides A Confidentiality Privilege

Contrary to Plaintiffs' contention (at 8-9), Massachusetts' highest court has indicated that Mass. Gen. L. ch. 93A, § 6(6) creates a confidentiality privilege.  In the only case discussing the provision, the Massachusetts Supreme Judicial Court recognized that it "helps protect the rights" of individuals and corporations whose information is provided in MAAG investigations.

---

[4] Moreover, at the least, the Magistrate Judge's conclusion that Plaintiffs' need for the transcripts outweighs any state-law privilege presents a mixed question of fact and law.  *Cf. In re Winstar Commc'ns Sec. Litig.*, 2007 WL 4115812, at \*2 (S.D.N.Y. Nov. 15, 2007).  And as discussed below (*see infra*, at 5-7), Plaintiffs have failed to establish need with sufficient particularity as a matter of law.

*Attorney General v. Bodimetric Profiles*, 533 N.E.2d 1364, 1368 n.6 (Mass. 1989). The statute's text confirms that interpretation. It is framed as a prohibition on disclosure by the MAAG and guarantees that information "shall not … be disclosed to any person" absent a state court order or consent, except in the MAAG's own filings. Mass. Gen. L. ch. 93A, § 6(6).

Like the Magistrate Judge, Plaintiffs' only response is the non sequitur that the text does not *guarantee* confidentiality because it permits the MAAG to disclose materials if it chooses to do so in its own court filings. *See* Dkt. 138, at 8. But as Defendants have explained (Dkt. 117, at 10-11), that limited exception is irrelevant here, because the MAAG has *not* disclosed these materials in a court filing and its authority to do so is not at issue. Plaintiffs fail to distinguish *Komlosi v. N.Y. State OMRDD*, 1992 WL 77544 (S.D.N.Y. Apr. 3, 1992). In holding that a state-law privilege against disclosure applied, the court in *Komlosi* found that a statutory exception permitting disclosure had "no application in this case" where the disclosure sought did not fit under the exception. *Id.* at *1-2. Contrary to Plaintiffs' suggestion (at 8 n.6), the New York statute, like the Massachusetts statute here, provided both a privilege against disclosure and an exception that did not apply in the case. *See id.* at *1-2 (citing N.Y. Educ. L. § 6527(3)[5]).[6]

Plaintiffs also cannot reconcile their position with the Supreme Court and Second Circuit cases interpreting the Antitrust Civil Process Act. *See* Dkt. 117, at 11-13 (discussing *Illinois v. Abbott & Assocs.*, 460 U.S. 557 (1983); *In re Grand Jury Inv. of Cuisinarts*, 665 F.2d 24 (2d Cir. 1981)). Plaintiffs recognize (at 9) that the federal statute, like the Massachusetts one, prohibits disclosure of materials provided in response to Civil Investigative Demands ("CIDs") absent

---

[5] The statutory exception in N.Y. Educ. L. § 6527(3) states that the "prohibition relating to discovery of testimony shall not apply to statements made by" a party in a malpractice action.

[6] Moreover, as originally enacted in 1967, the Massachusetts statute contained no exception for disclosure by the MAAG in court filings. 1967 Mass. Acts 784. In 1988, the MAAG sought "legislation to allow appropriate use of investigatory materials in court," Legis. Package for 1988 Mass. Acts ch. 289, at 2-4, and the statute was amended to allow for it, 1988 Mass. Acts 1024. There is no indication that the amendment sought to eliminate the confidentiality privilege or to allow disclosure beyond MAAG filings.

consent but provides limited exceptions such as for the agency's own filings. Plaintiffs also concede (at 9) that the Supreme Court and Second Circuit concluded that the consent provision is intended to "safeguard the rights" of individuals under investigation. Plaintiffs' only basis for distinguishing the cases (at 10) is that those courts relied on legislative history to interpret the federal statute's purpose.[7] But the Massachusetts Supreme Judicial Court has declared that the state statute's purpose is the same—to "protect the rights" of individuals in investigations. *Bodimetric Profiles*, 533 N.E.2d at 1368 n.6. Moreover, Plaintiffs miss the broader point: *Abbott* and *Cuisinarts* establish that—contrary to the Magistrate Judge's conclusion—a statute with confidentiality and consent requirements provides confidentiality "rights" analogous to grand jury protections even if it allows an agency to make limited disclosures in court filings.

The handful of district court cases relating to CIDs that Plaintiffs cite (at 10-11) cannot be reconciled with *Abbott*. The Supreme Court in *Abbott* noted that the plaintiffs seeking disclosure had brought civil actions against the defendants, *see* 460 U.S. at 562, but nonetheless explained that the CID statute's consent provision safeguarded the defendants' rights and placed "stringent limits" on disclosure of CID materials, *see id.* at 571. If the plaintiffs could obtain CID materials simply by serving discovery requests, then the defendants' rights would be eviscerated and there would be no "stringent limits" on disclosure. Only one of the district court cases—*In re Air Passenger Computer Reservation Sys. Antitrust Litig.*, 116 F.R.D. 390 (C.D. Cal. 1986)—even addresses *Abbott*, and it confirms that the CID statute *cannot* be used as an offensive sword. Although that court declined to recognize a privilege against disclosure of CID transcripts in the defendants' possession, it emphasized that its "ruling that the transcripts in this case are discoverable does not mean that every CID witness' testimony can be obtained easily….

---

[7] Plaintiffs' assertion (at 10) that Morgan Stanley's opening brief improperly quoted these cases is incorrect. No internal citation was omitted from any of the quoted texts.

If witnesses do not want transcripts of their testimony reviewed by plaintiffs in subsequent civil litigation, they have the option of not requesting transcripts or not retaining them." *Id.* at 393.[8]

### B. Plaintiffs Failed To Establish Any Particularized Need For The Transcripts

Plaintiffs are also unable to defend the Magistrate Judge's failure to find a particularized need for the transcripts. Plaintiffs assert (at 12) that witnesses' memories have faded since the MAAG depositions. But they provide no analysis of what those instances were, why they are relevant, whether the information is available from other sources, or even which witnesses present any concern. Such blanket assertions are insufficient to show particularized need for materials sufficient to overcome a state-law privilege, particularly where the witnesses were all available to be deposed in this action. *See* Dkt. 117, at 15-17.[9]

Plaintiffs also argue that the privilege need not be respected because the MAAG has represented to Plaintiffs' counsel that it would disclose the transcripts upon Morgan Stanley's consent. *See* Dkt. 138, at 12-13. In fact, Plaintiffs go so far as to claim that the MAAG has set forth an "interpretation" of Mass. Gen. L. ch. 93A, § 6(6) that is entitled to "substantial deference." *Id.* at 13 (internal quotation marks omitted). These arguments misconstrue the MAAG's representation, misunderstand the privilege, and misstate the proper comity analysis.

Plaintiffs' filings indicate only that the MAAG has represented that it would produce the transcripts *if Morgan Stanley consents*. *See* Dkt. 81, at 2; Dkt. 92, at 2; Dkt. 102, at 1-2; Dkt. 107, at 4; Dkt. 138, at 1, 2, 6. Obviously, *if* a party consents to disclosure, then the privilege

---

[8] Where courts have ordered witnesses to obtain transcripts, they have done so on the basis that the witnesses had a legal right to obtain them, a circumstance not present here. *See* Dkt. 117, at 19-20.

[9] *See also, e.g.*, *Rechtschaffer v. City of N.Y.*, 2009 WL 773351, at *4 (S.D.N.Y. Mar. 18, 2009) (no showing of particularized need where "plaintiffs have not demonstrated that they were unable to interview the [witness] or take his deposition"); *Cherry v. Rodenburg*, 2008 WL 4610302, at *4 (E.D.N.Y. Oct. 15, 2008) (no showing of particularized need where plaintiff failed to show why "deposition testimony is insufficient"); *Komlosi*, 1992 WL 77544, at *2 (recognizing state-law privilege where contents of privileged interviews were available from persons "who are available for deposition").

does not apply.  But Morgan Stanley does *not* consent.  Plaintiffs' counsel have never said that the MAAG takes the position that consent may be *compelled*, a position that on its face conflicts with the path for compelled disclosure established in the Massachusetts statute itself—an application to a Massachusetts court demonstrating "good cause."  In any event, an *ex parte* oral representation by a member of the MAAG's Office to counsel in this case is plainly not the type of formalized agency interpretation of a statute to which this Court may or should defer.[10]

Indeed, the MAAG's willingness now to disclose upon consent—after previously having refused to provide the transcripts to Morgan Stanley—should have no effect on this Court's analysis of the need to respect the privilege.  The legislature created the privilege to "protect the rights" of persons whose information is provided to the MAAG, *as a restriction on the MAAG's authority and discretion to disclose.  See Bodimetric Profiles*, 533 N.E.2d at 1368 n.6.[11]  Accordingly, the legislature charged that apart from use in the MAAG's own filings, only a "court of the commonwealth"—not the MAAG—can determine whether "good cause" exists to overcome the privilege.  As the investigating agency, the MAAG is the body *least* able to evaluate the importance of safeguarding investigated persons' privileges against disclosure.[12]

In *Abbott* and *Cuisinarts*, the agency possessing the grand jury material at issue supported disclosure without a showing of particularized need.  *See Abbott*, 460 U.S. at 563; *Cuisinarts*, 665 F.2d at 28 n.2.  The Supreme Court and Second Circuit, however, rejected the agency's position, noting "important policy considerations" that underlie grand jury confidentiality

---

[10] The cases Plaintiffs cite (at 13) involve formal, written agency interpretations.  *See Elec. Data Sys. v. Attorney General*, 907 N.E.2d 635, 640 (Mass. 2009) (MAAG Advisory); *Gateley's Case*, 613 N.E.2d 918, 918-19 (Mass. 1993) (Department of Industrial Accidents board decision); *Cahaly v. LaRosa*, 2014 WL 259255, at *3 (D.S.C. June 10, 2014) (official opinion of the State Attorney General).

[11] Plaintiffs offer no authority supporting their argument (at 7 n.4) that Morgan Stanley was the party "producing" testimony given by its former employees, who testified in their individual capacities.

[12] *Cf. Attorney General v. Colleton*, 444 N.E.2d 915 (Mass. 1982) (MAAG's interpretation of Mass. Gen. L. ch. 93A, § 6(7) inconsistent with state-law privilege against self-incriminating disclosures).

protections. *E.g.*, *id.* at 32. With respect to the analogous CID confidentiality-and-consent provision, the courts noted that "similar policies support secrecy in both instances" and that the provisions impose similarly stringent restrictions on disclosure. *Id.* at 34 n.22; *see also Abbott*, 460 U.S. at 571. As the legislative history of the CID provision reflects, those confidentiality policies include encouraging witnesses to cooperate voluntarily and protecting legitimate business interests in the confidentiality of trade secrets, business practices and relationships, and proprietary financial data.[13] These same types of confidentiality policies would be frustrated if the Massachusetts privilege were not recognized and respected here.

### C. Defendants Have Not Waived Their Confidentiality Privilege

There is also no merit to Plaintiffs' argument (at 14)—disregarded by the Magistrate Judge—that Defendants waived their confidentiality privilege by agreeing in a November 1, 2013 letter to produce transcripts from "any public governmental investigation." Defendants never agreed to produce transcripts they did not possess and Plaintiffs never made such a request. Defendants accordingly never understood the MAAG transcripts to be covered by the agreement. Indeed, even under Plaintiffs' interpretation of Rule 34, Morgan Stanley did not have "possession, custody, or control" of the transcripts at the time of the discovery agreement because prior to November 1, 2013, the MAAG had always refused to provide the transcripts even upon Morgan Stanley's request. *See* Dkt. 109-1, at 2.

### III. The Transcripts Are Not Within Morgan Stanley's Control As A Matter of Law

Plaintiffs' motion should be denied for a second, independent reason: Plaintiffs cannot

---

[13] *See* 122 Cong. Rec. 29,341 (1976) ("It is intended that assurances of privacy will encourage recipients of CIDs to cooperate voluntarily, by not fearing needless disclosure of confidential trade secrets or legal business practices or relationships."); H.R. Rep. No. 94-1343, at 8 (1976) ("The Committee … determined to include … appropriate safeguards to protect the legitimate rights and interests of every person subjected to investigation. These protections include … strict confidentiality of all CID investigative files in order to protect witnesses' reputations, trade secrets and proprietary financial data.").

show that the transcripts are within Morgan Stanley's "control" under Rule 34 based on an asserted "practical ability" to obtain them.[14]  Plaintiffs do not dispute that they bear the burden of establishing control under Rule 34, *see Alexander Interactive, Inc. v. Adorama, Inc.*, 2014 WL 61472, at *3 (S.D.N.Y. Jan. 6, 2014), and the Magistrate Judge's ruling must be reversed if Plaintiffs fail to meet their burden, *see, e.g.*, *Maniscalco*, 2010 WL 762194, at *8, 11-12.

Plaintiffs recognize (at 6-7) that there is no case law supporting the Magistrate Judge's conclusion that a party may be deemed to have the "practical ability" to control material in an unrelated governmental agency's possession.[15]  To the contrary, courts have found the "practical ability" standard applicable only where there is an ability to control by virtue of a party's "relationship with the party in possession of the evidence." *RFMAS, Inc. v. So*, 271 F.R.D. 13, 24 (S.D.N.Y. 2010) (citing cases); *see* Dkt. 117, at 20-22.  For example, in the affiliated corporate entities context, the "applicable grounds for finding control of documents" based on an ability to obtain them include whether there is an alter ego or agency relationship, whether the "relationship is such that the [party] can secure documents of the [non-party] to meet its own business needs and documents helpful for use in litigation," and whether there is "access to documents when the need arises in the ordinary course of business." *U.S. Int'l Trade Comm'n*, 411 F.3d at 254.[16]  In other contexts where the practical ability standard has been applied, courts

---

[14] Plaintiffs assert (at 6 n.3) that Morgan Stanley has a "legal right" to obtain the transcripts.  But as Defendants have explained (Dkt. 117, at 19-20), the statute provides no basis for that conclusion, which is confirmed by the MAAG's prior refusal to produce them upon Morgan Stanley's request (Dkt. 112, at 4 n.3).  The Magistrate Judge recognized the statute does not obligate the MAAG to disclose them and did not dispute that Morgan Stanley lacks the legal right to obtain them.  Dkt. 112, at 3.

[15] Plaintiffs' suggestion (at 7) that the Magistrate Judge's ruling cannot be "contrary to law" unless it directly contradicts case law encompassing the same factual situation is incorrect.  The Magistrate Judge's legal conclusion of "control" is reviewed *de novo* under Rule 72(a).  *See supra*, at 1-2.

[16] Thus, courts in this District have refused to find a practical ability to control when "there is no sufficiently strong connection between [the party] and [the non-party] to support a finding of control," *Alexander Interactive*, 2014 WL 61472, at *3-4; there is no access by the party to the non-party's documents "in the ordinary course of business," *SEC v. Credit Bancorp*, 194 F.R.D. 469, 473 (S.D.N.Y.

have likewise relied on the special relationship between the party and the non-party. Plaintiffs cite (at 7) *Export-Import Bank of the U.S. v. Asia Pulp & Paper Co.*, 233 F.R.D. 338 (S.D.N.Y. 2005), but that court looked generally to the "practical ability of corporations to obtain work-related documents from former employees," *id.* at 341, rather than to any case-specific representation that the particular former employee at issue would produce the requested document. Moreover, *Export-Import Bank* relied on *In re Folding Carton Antitrust Litigation*, 76 F.R.D. 420 (N.D. Ill. 1977), which was based on a finding that the employers generally had sufficient "indicia of control" over their former employees, *id.* at 423.

     Here, in contrast, there are no indicia of Morgan Stanley's control over the MAAG, and Morgan Stanley has no ability to obtain documents based on a preexisting relationship with the MAAG. If the MAAG produces upon Morgan Stanley's request, it is only because the MAAG, in its sole discretion and for its own reasons, chooses to do so in this instance. As a general matter, Morgan Stanley has no ability to obtain any documents the MAAG wishes *not* to provide. The MAAG's willingness in this instance is insufficient as a matter of law to establish control under Rule 34. When a party lacks "access to [a third-party agency's] documents without [the third party's] permission," it lacks the ability to control the third party's documents. *New York v. AMTRAK*, 233 F.R.D. 259, 268 n.11 (N.D.N.Y 2006) (party lacked ability to control third-party agency's documents it could not access "without [the agency's] permission or the employment of a subpoena"). Rule 34 does not require a party to seek documents in an unrelated third party's hands even if circumstances indicate that the third party would provide the documents if asked. *See Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1426-27 (7th Cir. 1993) (Posner, J.) ("The plaintiffs could no doubt have asked NET to give it the chromatograms;

---

2000); there is no "ongoing relationship and practice of sharing documents," *SEC v. Tourre*, 2011 WL 350286, at *3 (S.D.N.Y. Jan. 31, 2011); or there is "no direct relationship" between the party and non-party, *Florentia Contracting v. Resolution Trust*, 1993 WL 127187, at *4 (S.D.N.Y. Apr. 22, 1993).

judging from what happened later, NET would have complied …. But the fact that a party could obtain a document if it tried hard enough and maybe if it didn't try hard at all does not mean that the document is in its possession, custody, or control; in fact it means the opposite.").[17]

By finding that Morgan Stanley has "control" over the transcripts at issue based only on the MAAG's representation that it would choose to produce them in this particular instance, the Magistrate Judge misapplied the "practical ability" case law and improperly expanded the meaning of "control" under Rule 34  The Magistrate Judge applied a more expansive standard for control in this context—involving an unrelated, adversarial governmental entity—than courts require to show control among closely affiliated corporate entities.[18]  The Magistrate Judge's order would turn the discovery process on its head, *see* Dkt. 117, at 23-24, by transforming Rule 34 into a test of whether a third party would choose in a particular case for its own reasons to produce documents if requested.[19]  Rule 34 "control" is not so unlimited.

## CONCLUSION

For the reasons set forth above and in their Objections (Dkt. 117), Defendants respectfully request that the Court sustain their objections and reverse the May 27, 2014 Order.

---

[17] *See also, e.g.*, *Engel v. Town of Roseland*, 2007 WL 2903196, at *2 (N.D. Ind. Oct. 1, 2007) ("Rule 34 did not require the plaintiffs to produce chromatograms showing soil contamination which were in the hands of an *unrelated* third party, even though the circumstances indicated that the third party would have given the plaintiffs the chromatograms if it had simply been asked." (emphasis added)); *cf. Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138-39 (2d Cir. 2007) (inquiry was whether party, by virtue of shareholder relationship with corporation, had sufficient control of corporation's board to demand documents, not whether board might agree to produce documents if requested).

[18] Plaintiffs offer no justification for the departure from case law.  As Defendants noted (*see* Dkt. 117, at 22-23), courts expanded Rule 34's definition of control to include the "practical ability" standard because of concern about discovery from affiliated entities, particularly if parties could evade discovery by claiming they did not control documents available to them "in the normal course of business."  *Cooper Indus. v. British Aerospace*, 102 F.R.D. 918, 920 n.2 (S.D.N.Y. 1984).  That concern is not present here.

[19] Plaintiffs assert (at 7) that the Magistrate Judge's ruling would not radically expand Rule 34 because Rule 26 imposes some limitations on discovery.  Rule 34, however, is a requirement independent of Rule 26, and Rule 26 provides no basis to eviscerate the meaning of Rule 34.

By: /s/ David W. Ogden
Noah A. Levine
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
noah.levine@wilmerhale.com

David W. Ogden (*admitted pro hac vice*)
Brian M. Boynton (*admitted pro hac vice*)
Danielle Y. Conley (*admitted pro hac vice*)
Skye Perryman (*admitted pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
david.ogden@wilmerhale.com
brian.boynton@wilmerhale.com
danielle.conley@wilmerhale.com
skye.perryman@wilmerhale.com

*Counsel for Defendants*