# Exhibit 58:

# Previously filed under seal as Ex. 57 to

# N. Sugnet Declaration (Docket No. 129)

**Interoffice Memorandum**                                **12 February 2004**

**To**   Steven Shapiro, Jon Groesbeck
**cc**   Terry Smith, Pamela Barrow, Kevin Chavers, Stephen Rudner, Eric Kaplan, Gabe Riopel, Andy Neuberger, Paul Najarian
**From**   Adrianne Dicker, Cindy Golser
**Department**   RPFG

\*\*\* FOR INTERNAL DISTRIBUTION ONLY \*\*\*

## New Century Kickout Ratio Trends

In light of Robin Cook's concerns regarding the January 2004 kickout ratio (91.7% for $1.2bn) and Morgan Stanley's observations regarding trends in our kickouts, I asked Cindy Golser to prepare from her records a summary of what she has observed since July 2003, when she began running field due diligence at New Century. This memo should provide talking points in our discussions with NCEN.

On a macro-level NCEN has made some changes over the past year or so to its programs, but there appear to be discrepancies between their underwriting matrices and their written policy guidelines. Cindy has brought these discrepancies to the attention of the secondary market transaction (Komarith Touk and Bob Lent) and investor reporting (Lynette Nagy and her team) managers at NCEN. Additionally, we have observed evidence of more exceptions based on missing documentation; in turn, this requires Investor Relations to cure those exceptions, a trend that became noticeable in November and has continued or increased since. Today, Komarith and Bob reported to Cindy that they are taking steps to correct many of these issues.

The more difficult issue to address is related to BPOs, and it is not addressed in this memo. Briefly, however, Terry's team has seen a deterioration in appraisal quality (across all our sellers), which they attribute to attempts to meet year-end production expectations.

==Since we agreed to a reduced due diligence sample (to 25%)== starting with the next two trades in March and April 2004 ($1.5 bn and $2.0 bn, respectively), we need to ensure that Robin Cook and Kevin Cloyd understand the issues that have made the credit review process more onerous for Robin's staff and that contributed to the high kickout ratio in January.

### Clayton System Credit Kicks

Clayton's model screens the credit due diligence sample we select ==(which has ranged from 35% to 30%== from July 2003 through February 2004) and generates automatic kicks for loans that fall outside of New Century's program guidelines or matrices. The following table summarizes:

| Purchase Month | Sample Size # Loans | Clayton Program Kicks # Loans | Clayton Program Kicks % of Sample Size | MS Field DD Manager Review # Loans Approved | MS Field DD Manager Review # Loans Kicked | MS Field DD Manager Review % Clayton Kicks Cleared |
|---|---|---|---|---|---|---|
| Jul-03 | 2,637 | 863 | 32.7% | 671 | 192 | 77.8% |
| Aug-03 | 2,846 | 973 | 34.2% | 645 | 328 | 66.3% |
| Sep-03 | n/a | n/a | n/a | n/a | n/a | n/a |
| Oct-03 | 2,680 | 954 | 35.6% | 801 | 153 | 84.0% |
| Nov-03 | 3,076 | 1,470 | 47.8% | 1,144 | 326 | 77.8% |
| Dec-03 | 2,200 | 1,135 | 51.6% | 954 | 181 | 84.1% |
| Jan-04 | 2,328 | 1,276 | 54.8% | 1,118 | 258 | 79.8% |

Page 1 of 2
[AUTOPATH]

Morgan Stanley

DEPOSITION EXHIBIT
BARROW 7
DATE: 6/2/14   CLS

CONFIDENTIAL                                                                                              MS00738705

C:\PROGRAM FILES\MORGAN STANLEY\AUTHOR\TEMPLATES\MEMO.DOT\[AUTODATE]\[AUTOTI

**Interoffice Memorandum (cont'd)**                                 **12 February 2004**

**Subject**   New Century Kickout Ratio Trends

**Observations from our current (February 2004) due diligence sample of 30%**

If we assume that the numbers Cindy is observing in her sample reflect the dynamic of the larger pool, then the numbers quoted below need to be tripled.

*Increases since July in cashout amounts greater than $100,000*

- In our current sample, Cindy has identified 39 loans (approximately $10mm) with cashout amounts at or greater than $100,000

*Loan amounts greater than $500,000 with 100% CLTVs*

- Our current sample has 9 loans with 100% CLTVs

- NCEN guidelines require two full appraisals. In some instances we have only one appraisal and perhaps a 2055 (with interior inspections). It is unclear if NCEN considers the 2055s to satisfy their guideline requirement. Although we did agree to accept 2055s with interiors in place of appraisals as a general value data point, when Cindy notified NCEN managers (K Touk and Kelly Robson) that in many cases we had only one appraisal and one 2055, NCEN managers indicated that they were supposed to have two full appraisals. We need to clarify.

*Stated Wage-Earners in Special Program loans*

- Our current sample indicates 29 loans / approx. $20.8mm

- NCEN guidelines do not permit Stated Income Wage-Earners to obtain Special Program loans (i.e., 100% CLTV or 80/20 LTV loans). Cindy researched subprime lending postures on stated wage earners, and it appears that the subprime market is moving to greater acceptance. If NCEN approves this type of borrower in its Special Programs, it needs to update its guidelines and matrices.

- We are taking these loans in general, however, NCEN guidelines require that borrowers in Special Programs (including Stated Wage Earners) provide 12 months of mortgage or rental history. This history has been missing from some files.

*Seller Concessions in Special Program Loans*

- NCEN policy on 100% CLTV allows a 3% seller concession and on 80/20 loans a 6% seller concession. Further, the guidelines require that the seller concession must be no more than 3%/6% or the net reoccurring closing costs. We are seeing loans where the NRCC is driving CLTVs greater than 100%.

*Condo Max LTV Policy Issue Discrepancy*

- Our current sample indicates 10-12 loans

- NCEN policy restricts maximum LTV on condominiums to 85% LTV. NCEN is doing 100% LTV condo loans in its Special Program. The matrix and guidelines contradict each other.

*Loans with Modifications Affecting Loan Terms*

- We are seeing an increase in the number of loans where modifications affect loan terms – we typically kick these loans.

*Discrepancies from Tape to File Review*

- We are seeing credit grade bumps of as much as 2 to 3 credit grades from tape to file review (i.e., AA to B or A+ to C).

**Morgan Stanley**

[AUTOPATH]
Page 2 of 2

CONFIDENTIAL                                                                                                       MS00738706