UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEVERLY ADKINS, CHARMAINE WILLIAMS, REBECCA PETTWAY, RUBBIE McCOY, WILLIAM YOUNG, on behalf of themselves and all others similar situated, and MICHIGAN LEGAL SERVICES,<br><br>Plaintiffs,<br><br>-vs-<br><br>MORGAN STANLEY, MORGAN STANLEY & CO. LLC, MORGAN STANLEY ABS CAPITAL I INC., MORGAN STANLEY MORTGAGE CAPITAL INC., and MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC,<br><br>Defendants. | CASE NO. 12-cv-7667-VEC<br><br>Hon. Valerie E. Caproni |

## SECOND DECLARATION OF ROBERT W. HUNTER

I, Robert Hunter, declare and state as follows:

1. I am currently employed as a paralegal in the American Civil Liberties Union Foundation ("ACLU") Racial Justice Program. In 2012, I received a Bachelor of Arts degree from Brown University. I began working as a legal assistant at the ACLU in September 2012, and I was promoted into the paralegal position in June 2014. For the duration of my employment at the ACLU I have worked with attorneys on the above-captioned case.

1

2. I submit this second declaration in support of Plaintiffs' Motion for Class Certification. I have personal knowledge of the facts set forth herein and could competently testify to them if called as a witness.

3. I was tasked with calculating certain figures using Morgan Stanley and New Century loan data. For all of these calculations, I relied on MS02702046, a database with loan information pertaining to every New Century loan originated nationwide during the class period in the above-captioned case (hereinafter "the database"). This is the same data that Defendants' expert Prof. Timothy W. Riddiough utilized in his analysis. *See* Expert Report of Timothy Riddiough, ECF No. 171 (hereinafter "Riddiough Report"), at App. C, p. 15; Exhibit 1, Ltr. from John DeGenova to Nicole D. Sugnet (Sept. 30, 2014).[1]

### New Century Loan Purchaser Shares

4. I was tasked with calculating the total dollar value of New Century loans purchased by each of New Century's major loan purchasers during each year of the class period. New Century appears in this list because it securitized some of its own loan production. I excluded correspondent loans from these calculations. *See* Exhibit 2, Nationwide New Century Loan Purchaser Shares.

5. I calculated the total dollar amount purchased by each of the loan purchasers represented in Figures 6 and 7 of Prof. Riddiough's Expert Report. I included in my table a row titled "Missing," which did not appear in Prof. Riddiough's figures. This row contains the total dollar amount of loans for which the investor field was blank. Finally, I included a row titled "All Other Investors." This row contains the total dollar amount of loans purchased by entities not broken out in Figures 6 and 7 of Prof. Riddiough's report.

---

[1] Prof. Riddiough's report refers to the data set as "Loan-Level Investor and Risk Attribute Data, with Data Dictionary, Prepared By Marsha Courchane." The dataset was not labelled with a Bates number until it was subsequently produced to Plaintiffs.

6. I included in the table a column tallying the total dollar amount for each loan origination year. I also included a column tallying the total dollar amounts for the 2004-2006 period and a column expressing the total dollar amounts for the 2004-2007 period.

7. I included another table expressing these values as percentages of the total loans sold. I calculated these percentages by dividing the total dollar amount contained in each cell by the total dollar amount of loans originated during the time period represented by the relevant column.

### Purchases of Combined-Risk Loans vs. Other Loans

8. I was tasked with determining, for each of the major loan purchasers that appeared in Prof. Riddiough's Figures 6 and 7, the percentage of loans which that entity purchased that were Combined-Risk Loans. The rightmost column of this table corresponds to the values represented in Prof. Riddiough's Figure 11. However, I also disaggregated this number by each year of the class period, and included a column taking together the loans purchased during the 2004-2006 period. *See* Exhibit 3, Percentages of Combined-Risk Loans Purchased vs. Other Loans Purchased by Investor.

9. I performed these calculations by first filtering out correspondent loans in the database. I then filtered for a given investor and filtered for a given year. What remained was the total number of loans purchased by that investor in that year. I then tallied the number of these loans with a positive indicator in the "cra_combo_risk" field, which yielded the total number of these loans that were Combined-Risk Loans. I then took the total number of Combined-Risk Loans purchased by each loan purchaser in each year and divided it by the total number of loans purchased by each loan purchaser in each year, yielding the percentages represented in the table.

10. In his Figure 11, I noticed that Professor Riddiough also includes HSBC. When I performed the analysis necessary to create Exhibit 2, I found that HSBC was only the 13th largest outside purchaser of New Century loans, buying only 1.6% of New Century's total loans during the class period. Because the amount of loans purchased by HSBC is significantly less than the amount purchased by other investors represented in Exhibit 3, I excluded it.

**Morgan Stanley's Share of New Century Combined-Risk Loans by Loan Feature**

11. I was tasked with calculating the market share of New Century Combined-Risk Loans purchased by Morgan Stanley during the class period, disaggregated by certain combinations of loan features. Specifically, I analyzed the combinations used by Prof. Riddiough in Figures 13 and 14 of his report. These were combinations of the Combined-Risk Loan features defined in Plaintiffs' Complaint, except that Prof. Riddiough analyzed Option ARM as a separate loan feature, and Plaintiffs' Complaint does not mention that feature. Compl., ECF No. 1 at ¶ 30-35.

12. I then further disaggregated each of these combinations by yield above the HMDA high-cost threshold, as Professor Riddiough did in those figures.[2] I then added an additional column on the right representing the total Morgan Stanley market share for each of the combinations of loan features. In this column, the loans are no longer disaggregated by the yield above the HMDA high-cost threshold. For all of these calculations, I filtered the database to exclude correspondent loans and loans that were not Combined-Risk loans.

13. I performed these calculations using both the total loan value in dollars and the total number of loans originated. I also performed these calculations looking first at the entire universe of nationwide data, and then again looking only at Detroit region loans. To do this, I used the definition of "Detroit region" introduced in Plaintiffs' Complaint, filtering out loans whose homes were not located in these nine counties. Complaint at ¶116. For nationwide

---

[2] For a definition of HMDA's high-cost threshold, see Complaint at ¶ 31.

4

calculations, *see* Exhibit 4, Morgan Stanley Market Share of Combined-Risk Loans Nationwide by Loan Feature-Amount in Dollars; Exhibit 5, Morgan Stanley Market Share of Combined-Risk Loans Nationwide by Loan Feature- Total Number of Loans. For Detroit region calculations, *see* Exhibit 6, Morgan Stanley Market Share of Combined-Risk Loans in Detroit Region by Loan Feature- Amount in Dollars; Exhibit 7, Morgan Stanley Market Share of Combined-Risk Loans in Detroit Region by Loan Feature- Total Number of Loans.

14. The database already included columns corresponding to each of the constituent loan features represented in the "loan type" column. For example, to identify Stated-Income loans with a Prepayment Penalty, I filtered the database based on the content of the Stated-Income and Prepayment Penalty columns.

15. However, to disaggregate by "Yield Above High Cost Threshold," I had to create a new variable corresponding to a loan's yield above the HMDA high-cost threshold. I did this by first creating, through Microsoft Excel's IF function, a new column that subtracted three (that is, the high-cost threshold for first-lien loans) from a loan's APR if it was a first-lien loan and yielded zero for all other loans. I then created a second new column that yielded the number zero for first-lien loans and subtracted five (that is, the high-cost threshold for all other loans) from a loan's APR for all other loans. I then created a third new column which, for each loan, the total contained the sum of the numbers in the first two new columns, thus providing the loan's yield above the high-cost threshold. I then filtered the database by the ranges represented in the tables to disaggregate my calculations.

16. For each of these exhibits, I included three tables, and the following is true of each exhibit: The first table represents Morgan Stanley's total market share of the loans in question; the second table, labeled "numerator," represents the total amount of these loans that were

purchased by Morgan Stanley; the third table, labeled "denominator," represents the total amount of the loans in question originated by New Century (regardless of investor).

17. To calculate these figures, I first filtered out correspondent loans and non-Combined-Risk loans from the database. I then filtered for each percentage point above the high cost threshold.

18. Next, I filtered for the appropriate loan type. The amount of loans remaining after applying these filters was the denominator figure for a given loan type. I then added an additional filter for loans purchased by Morgan Stanley. The amount of loans remaining after applying this filter was the numerator figure for that loan type. Morgan Stanley's market share of each loan type was calculated by dividing the numerator figure by the denominator figure for each loan type.

19. I then repeated the process described in ¶18 for each yield interval above the high cost threshold.

20. I then repeated the process described in ¶¶17-18 after first filtering the database to include only loans in the Detroit region.

I declare under the penalty of perjury that the foregoing is true and correct and that this declaration was executed on November 26, 2014 in New York, NY.

_____
Robert W. Hunter