UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEVERLY ADKINS, CHARMAINE WILLIAMS, REBECCA PETTWAY, RUBBIE McCOY, WILLIAM YOUNG, on behalf of themselves and all others similarly situated, and MICHIGAN LEGAL SERVICES, <br><br> Plaintiffs, <br><br> v. <br><br> MORGAN STANLEY, MORGAN STANLEY & CO. LLC, MORGAN STANLEY ABS CAPITAL I INC., MORGAN STANLEY MORTGAGE CAPITAL INC., and MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, <br><br> Defendants. | 1:12-cv-7667-VEC |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE ALL OPINIONS CONTAINED IN THE REPORT OF PATRICIA A. MCCOY AND ONE OPINION CONTAINED IN THE REPORT OF IAN AYRES**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

    I.     PROFESSOR MCCOY'S CAUSATION OPINION IS INADMISSIBLE............ 1

    II.    PROFESSOR MCCOY'S OPINION RELATED TO INTERNAL CONTROLS AND DUE DILIGENCE SHOULD ALSO BE EXCLUDED. ........ 7

    III.   PROFESSOR MCCOY'S OPINION THAT COMBINED RISK LOANS INCREASE RISK OF DEFAULT AND FORECLOSURE IS INADMISSIBLE. ...................................................................................................... 8

    IV.   PROFESSOR MCCOY'S PURPORTED OPINION THAT MORGAN STANLEY TOOK NO STEPS TO AVOID ADVERSE RACIAL IMPACT IS INADMISSIBLE. ....................................................................................... 9

    V.    DR. AYRES'S OPINION THAT MORGAN STANLEY CAUSED A DISPARATE IMPACT IS INADMISSIBLE. .......................................................... 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334 (S.D.N.Y. 2005) ............................ 2

*Davis v. Carroll*, 937 F. Supp. 2d 390 (S.D.N.Y. 2013) ................................................................ 2

*DeRienzo v. Metro. Transp. Auth.*, 694 F. Supp. 2d 229 (S.D.N.Y. 2010) ..................................... 3

*Donnelly v. Ford Motor Co.*, 80 F. Supp. 2d 45 (E.D.N.Y. 1999) ................................................. 2

*EEOC v. Morgan Stanley & Co.*, 324 F. Supp. 2d 451 (S.D.N.Y. 2004) .................................. 2, 3

*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116
   (S.D.N.Y. 2014) .......................................................................................................................... 2

*Gill v. N.Y.C. Transit Auth.*, 216 F. App'x 50 (2d Cir. 2007) ........................................................ 2

*In re Rezulin Products Liab. Litig.*, 369 F. Supp. 2d 398 (S.D.N.Y. 2005) ................................... 3

*In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 285 (E.D.N.Y. 2007).. ............................ 4

*Katt v. City of New York*, 151 F. Supp. 2d 313 (S.D.N.Y. 2001) ................................................... 2

*Miller v. Countrywide Bank, N.A.*, 571 F. Supp. 2d 251 (D. Mass. 2008) ..................................... 9

*R.F.M.A.S., Inc. v. Mimi So*, 748 F. Supp. 2d 244 (S.D.N.Y. 2010) ......................................... 6, 7

*Ramirez v. Greenpoint Mortgage Funding, Inc.*, 268 F.R.D. 627 (N.D. Cal. 2010) ..................... 2

**INTRODUCTION**

Proof of causation is critical in this case, given Plaintiffs' assertion that Morgan Stanley is somehow responsible for the origination and terms of every New Century "combined risk" loan from 2004 to 2007. *See* ECF No. 189 ("Mem.") at 1-2. For that reason, as Plaintiffs recognize, at the class certification stage they must prove that *common evidence* can establish that Morgan Stanley caused every New Century loan at issue here, with its specific "risk" terms. *See* ECF No. 194 ("Opp'n") at 5-6. As we demonstrate in response to the class-certification motion, Plaintiffs cannot do so. Central to their failed effort are the opinions of two experts—Professor McCoy and Dr. Ayres. Neither provides a reliable expert opinion supporting Plaintiffs' novel causation theory; their causation opinions (and all of Professor McCoy's other opinions) should be excluded under *Daubert*.

**ARGUMENT**

**I.  PROFESSOR MCCOY'S CAUSATION OPINION IS INADMISSIBLE.**

Professor McCoy's purported opinion that Morgan Stanley exerted a "singular influence" (now recast as a "very large dominating influence," Opp'n 8-9) over New Century's lending is pure *ipse dixit*: it lacks any methodology whatsoever, and fails to consider obvious alternative causes and the central record evidence. Moreover, contrary to Plaintiffs' claim that Professor McCoy's report "raises issues common to the class," Opp'n 12, she instead admits that she cannot even say, under her theory, what *percentage* of New Century's loans Morgan Stanley caused, much less which loans, Mem. 6 & n.8.

Professor McCoy's causation opinion is inadmissible for at least three reasons.

***First***, Professor McCoy failed to apply *any* methodology whatsoever. Plaintiffs appear to believe that Professor McCoy can simply rely on her extensive "experience" as a regulator and academic (Opp'n 8) and then discuss the evidence in any manner she deems fit. But having

"experience … does not by itself equate to a methodology, let alone one generally accepted by the relevant professional community." *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 354 (S.D.N.Y. 2005).  Tellingly, neither Plaintiffs nor Professor McCoy are able to explain what methodology she actually applied in her report.  Plaintiffs cite no scholarly articles or expert reports in other litigation purporting to test whether one company exerted "singular influence" over another.[1]  The most Plaintiffs assert is that Professor McCoy employed a "methodology [that] was based, *at least in part*, on 'a long-standing scholarly tradition of examining internal corporate guidelines and their enforcement by corporations as to what a corporation ends up buying.'"  Opp'n 8 (quoting McCoy Dep. 33) (emphasis added).  But Professor McCoy has never explained what this vague "methodology" or "tradition" is.  Neither she nor Plaintiffs explain how it applies to this case.  Indeed, this "methodology" on its face applies only to "what a corporation ends up *buying*," and cannot support Professor McCoy's opinion that Morgan Stanley somehow determined the terms of New Century loans Morgan Stanley did *not* "end[] up buying."  Courts routinely exclude the testimony of experts like Professor McCoy who fail to explain their methodology.[2]  The Court should do the same here.

---

[1] Professor McCoy did not offer "similar" testimony (Opp'n 9) in *Ramirez v. Greenpoint Mortgage Funding, Inc.*, 268 F.R.D. 627, 634 (N.D. Cal. 2010), but instead testified about whether a mortgage originator's own policies allowed its own mortgage brokers to overcharge customers.  Professor McCoy's previous testimony on mortgage issues does not give her a free pass to offer an opinion with no methodological support here.  *See Davis v. Carroll*, 937 F. Supp. 2d 390, 416-17 (S.D.N.Y. 2013).  Plaintiffs' reliance on *Ramirez* only underscores Professor McCoy's failure here to assess the influence of independent brokers on the terms of the loans that New Century borrowers received.  Mem. 8-9.  The experts in the cases Plaintiffs cite (Opp'n 7-8) likewise did not opine on one company's "influence" over another.  *See Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 129 (S.D.N.Y. 2014) (economist testifying regarding economic effect of false statements in securities offerings); *Katt v. City of New York*, 151 F. Supp. 2d 313, 356-58 (S.D.N.Y. 2001) (criminologist testified on NYPD's organizational culture).

[2] *See, e.g.*, *Gill v. N.Y.C. Transit Auth.*, 216 F. App'x 50, 52 (2d Cir. 2007) (affirming exclusion of expert report where "the report does not explain the methodology used to reach its various conclusions"); *Donnelly v. Ford Motor Co.*, 80 F. Supp. 2d 45, 49 (E.D.N.Y. 1999).  Plaintiffs' reliance on *EEOC v. Morgan Stanley & Co.*, 324 F. Supp. 2d 451 (S.D.N.Y. 2004) is unavailing.  There, the plaintiffs' expert

***Second*,** Professor McCoy admittedly fails to consider *any* alternative causes, yet somehow nevertheless opines that Morgan Stanley's role was "singular" or "dominant." Plaintiffs respond by attacking a straw man, arguing that Professor McCoy need not consider "every theoretical 'cause' . . . that Morgan Stanley can dream up," Opp'n 9. That is not the issue. To be admissible, her opinion must "at least address *obvious* alternative causes" of New Century's lending. *DeRienzo v. Metro. Transp. Auth.*, 694 F. Supp. 2d 229, 236 (S.D.N.Y. 2010) (emphasis added); *see also In re Rezulin Products Liab. Litig.*, 369 F. Supp. 2d 398, 425 (S.D.N.Y. 2005) ("[A]ny theory that fails to explain information that otherwise would tend to cast doubt on that theory is inherently suspect."). That is all the more necessary here: an opinion that an influence is "singular" or "dominant" necessarily requires consideration of alternatives, in order to conclude that the influence is different and much more substantial. Among the factors Professor McCoy failed to consider are New Century's other loan purchasers and warehouse lenders (McCoy Dep. 67, 100, 241), New Century's competitors (*id.* 47), and its independent brokers (*id.* at 82-83). These were not only obvious alternative influences, they were causes Professor McCoy herself admitted likely help to explain New Century's lending. Mem. 8-9.

Rather than confront these shortcomings, Plaintiffs repeatedly mischaracterize Morgan Stanley as arguing that Professor McCoy can prove causation "only" through a "quantitative economic analysis." Opp'n 9. Because New Century dealt with many other entities—loan purchasers, warehouse lenders, brokers, and borrowers, all with their own preferences—it is certainly true that regression modeling is a tool an expert would typically employ to analyze causation in this case. *See* Mem. 6-7; Riddiough Rpt. § 5.A-C. But Professor McCoy's failure is

---

at least purported to apply a "sound, judicially-accepted social science methodology" known as "social framework analysis" to his review of record evidence. *Id.* at 462. Here, Professor McCoy's regurgitation of record evidence is guided by no discernable methodology whatsoever. Moreover, the court precluded the expert from testifying that the defendant's policies were "evidence of discrimination." *Id.* at 462.

more basic: she failed to employ (or even identify) *any* reliable method—quantitative *or qualitative*—that would allow a court to assess whether Morgan Stanley's policies, rather than the actions of any of numerous third parties (or of New Century itself), "caused" the origination and terms of every putative class member's New Century loan. *See* Mem. 6-7; Riddiough Rpt. ¶ 78. Plaintiffs also complain that conducting the analysis outlined by Dr. Riddiough would be "difficult," requiring an investigation of individual loan decisions that would preclude class certification. Opp'n 9-10.[3] But the fact that proving Plaintiffs' speculative theory of causation is "difficult" is not Dr. Riddiough's fault; it is a consequence of Plaintiffs' unprecedented—and frankly implausible—theory that one secondary market purchaser among many could somehow cause and dictate the terms of every loan decision made by an independent loan originator.[4]

---

[3] As the named Plaintiffs' deposition testimony demonstrates, such individual factors played a key role in causing the terms of their loans. *See* ECF No. 168 at 21 (discussing Plaintiff Williams' choice of an ARM loan rather than a fixed rate loan). Plaintiffs mischaracterize Dr. Riddiough's rebuttal testimony (Opp'n 10-11), which provided a detailed overview of how a statistical model would operate and the kinds of evidence it would incorporate. *See generally* Riddiough Dep. 72-107 (Perryman Decl. Ex. A); *see also id.* at 90, 93 (regression model would need to be a "multiple equation, structural model" such as a "Vector Auto-Regressive" model, rather than the simpler model Plaintiffs' counsel was familiar with); *id.* at 94-96 (model would analyze "the kind of data that I analyzed in my report," including New Century and Morgan Stanley's "loan level databases" and also data regarding "other banks that are… purchasing loans from New Century"); *id.* at 97 (model would control for "demand for [mortgage-backed] securities" through "macroeconomic variables, monetary variables, [and] capital flow variables"); *id.* at 97-98 (model would consider local and national "[h]ousing policies" and "how brokerage worked in the Detroit area"). Moreover, contrary to Plaintiffs' assertion that Dr. Riddiough "could not identify any model comparable to the one he advances" (Opp'n 10), he testified that his model would resemble economic studies that analyze "loan rates." Riddiough Dep. 99. Finally, as a rebuttal expert, Dr. Riddiough was not required to actually construct the model he described. *See In re Zyprexa Prods. Liab. Litig.*, 489 F. sup. 2d 230, 285 (E.D.N.Y. 2007).

[4] Plaintiffs try to distract from the shortcomings in Professor McCoy's report by focusing on ones they fabricate in Dr. Riddiough's report. *See* Opp'n 10 n.5. Plaintiffs complain that a chart indicating that Morgan Stanley purchased 2% of New Century's loans in 2007 did not note that New Century's data contained missing investor information. However, Dr. Riddiough noted in the same section that the available "data for 2007 is limited," Riddiough Rpt. 14 n.43, and Dr. Ayres's report also indicates, without any explanation, that Morgan Stanley bought 2% of New Century's loans in 2007, *see* Ayres Rpt. 30 tbl. 5. Dr. Riddiough's analysis focused primarily on 2004 to 2006, and Plaintiffs do not dispute his showing that Morgan Stanley's purchasing varied dramatically over those years. Riddiough Dep. 203:13-22; *see also, e.g.*, Riddiough Rpt. ¶¶ 47, 82, 134. Plaintiffs also quibble with Dr. Riddiough's chart showing that many other banks purchased significantly higher percentages of "combined risk" loans than

Ultimately, even Professor McCoy effectively concedes that her opinion cannot provide common proof that Morgan Stanley was the cause of *every* New Century "combined risk" loan. She claims instead that Morgan Stanley caused some unspecified "large percentage" of those loans. Mem. 6 (quoting McCoy Dep. 50). Her opinion thus provides literally no support for the assertion that "common evidence" can be used to assess causation in this action.

***Third***, Plaintiffs still offer no explanation for Professor McCoy's failure to review the testimony of former New Century executives or other evidence central to her causation opinions. Mem. 9-12; Opp'n 16-17.

New Century witnesses in this case have without exception rejected Plaintiffs' theory regarding Morgan Stanley's purported "dominating" influence—yet Professor McCoy did not consider their testimony at all. *See* Mem. 10-11. Plaintiffs' explanation for not providing Patricia Lindsay's testimony to Professor McCoy is simply not credible. After relying heavily on her public testimony regarding "Wall Street" in the Complaint, *see* Compl. ¶¶ 65, 76, Plaintiffs now claim that Ms. Lindsay has no "personal knowledge as to the issues on which [Professor McCoy] opines," Opp'n 16. That is wrong: Ms. Lindsay was a New Century Vice President and member of its Credit Committee, which approved its underwriting guidelines, and she regularly interacted with its secondary marketing department and with several Wall Street banks. Lindsay Dep. 37-43, 98, 150-51 (Perryman Decl. Ex. B). Plaintiffs are also notably silent regarding Warren Licata, who was a Senior Vice President in New Century's secondary marketing department and interacted directly with Morgan Stanley and other investment banks.

---

Morgan Stanley. *See* Riddiough Rpt. ¶ 83 & fig. 11. Plaintiffs ignore Dr. Courchane's similar analysis, which relied on the same dataset, *see* Courchane Rpt. 48-49 & tbl. 8 (showing that 14 investors purchased higher percentages of "combined risk" loans than Morgan Stanley), and even the analysis of Plaintiffs' paralegal confirms that Carrington, Barclays and UBS all bought significantly higher percentages of "combined risk" loans than Morgan Stanley. *See* Second Hunter Decl. Ex. 3.

Licata Dep. 20-23, 46 (Perryman Decl. Ex. C).  He testified that no "one bank" had "any specific control over New Century."  Licata Dep. 82.[5]

Plaintiffs suggest that Professor McCoy was excused from reviewing New Century witness testimony because she looked at other sources regarding New Century.  Opp'n 15.  But even if in theory other supportive evidence could obviate the need to look at directly pertinent testimony, *none* of the sources Plaintiffs identify even remotely suggests that Morgan Stanley "controlled" New Century[6]—which is of course why Plaintiffs tried to obtain such testimony from the New Century witnesses.  When that effort failed, with each of the New Century witnesses rejecting Plaintiffs' theory regarding Morgan Stanley's alleged "control," *see* Mem. 10-11, Plaintiffs' counsel kept Professor McCoy in the dark, and asked her instead to "deduce" (Opp'n 15) the very proposition that New Century's own executives had all rejected.

Making matters worse, Professor McCoy's "thorough" review (Opp'n 15) also ignored an array of other material indisputably relevant to her "singular influence" opinion, including (1) the bid terms used by purchasers of New Century loans other than Morgan Stanley, (2) documents or data regarding New Century's other warehouse lenders, and even (3) the actual New Century underwriting guidelines, which confirm the role discretion played in New Century's lending.  *See* Mem. 11-13 & n.10.  Plaintiffs' opposition never even tries to justify these omissions.  *See* Opp'n 15-16.  Professor McCoy's failure to even *consider* this evidence, along with the critical testimony of the New Century witnesses, renders her opinion wholly unreliable.  *See R.F.M.A.S.,*

---

[5] Far from "bolster[ing]" Professor McCoy's report, Opp'n 16, Bill McKay likewise testified that no "particular bank" controlled New Century's decisions or "'dictat[ed]' the terms of [its] loans."  Mem. 10 (quoting McKay Dep. 96-97, 154).  He also testified that competition drove New Century's underwriting guidelines.  McKay Dep. 29, 94-95, 146 (Perryman Decl. Ex. D).

[6] To take one example:  There is no suggestion in the New Century bankruptcy examiner's exhaustive account of New Century's business that Morgan Stanley "controlled" New Century.  Indeed, that report's 68-page discussion of "loan quality" does not once mention Morgan Stanley.  (Perryman Decl. Ex. F.)

*Inc. v. Mimi So*, 748 F. Supp. 2d 244 (S.D.N.Y. 2010).[7]

## II. PROFESSOR MCCOY'S OPINION RELATED TO INTERNAL CONTROLS AND DUE DILIGENCE SHOULD ALSO BE EXCLUDED.

Plaintiffs offer no meaningful defense (Opp'n 13-14) of Professor McCoy's opinion on due diligence. Plaintiffs assert in conclusory fashion that Professor McCoy's opinion was based on her "expertise regarding financial regulations and internal lending controls" (Opp'n 13). But they and she fail to identify any objective standards that governed her analysis. *See* Mem. 17-18. Expertise cannot substitute for a reliable methodology. Moreover, Plaintiffs' invocation of Professor McCoy's general knowledge regarding diligence "breakdowns in the investment banking industry" (Opp'n 13 (quoting McCoy Dep. 309)) only highlights her admitted failure to consider *at all* the possible causal influence of due diligence practices by New Century's other loan purchasers. McCoy Dep. 305, 307-309.

Plaintiffs also do not dispute that Professor McCoy failed to perform any reliable analysis regarding Morgan Stanley's rejections of New Century loans. *See* Mem. 17; Opp'n 12-13. Under Plaintiffs and Professor McCoy's own theories, Morgan Stanley's rejection of sizable numbers of loans in due diligence—including the loans of named Plaintiffs Adkins, McCoy, and Young—should have deterred New Century from originating such loans. Yet because she failed to analyze the diligence of putative class members' loans, Professor McCoy was unable to say at her deposition whether Morgan Stanley's rejections of loans had any effect on the potential class or its individual members. *See* McCoy Dep. 304, 310-12. Again, Professor McCoy ignored

---

[7] Contrary to Plaintiffs' claim that the experts in *R.F.M.A.S.* failed to consider "any of the evidence in the record," (Opp'n 16) the court noted that one expert reviewed raw data, invoices, and documents concerning company revenues, 748 F. Supp. 2d at 257, and the other reviewed various documents, including "substantial testimony from witnesses in this case," *id.* at 264. The court nevertheless excluded their causation opinions as unreliable because, like Professor McCoy, their opinions "simply reflect[ed] the fact that plaintiff did not provide them with any evidence pointing to alternative causes" and because one expert "did not even bother to read" deposition testimony by a critical fact witness. *Id.* at 272-73.

alternative causes, performed no reliable analysis, and thereby offered only an *ipse dixit* opinion. That opinion should be excluded.

### III. PROFESSOR MCCOY'S OPINION THAT COMBINED RISK LOANS INCREASE RISK OF DEFAULT AND FORECLOSURE IS INADMISSIBLE.

Plaintiffs likewise fail to meaningfully defend Professor McCoy's opinion that the "combined risk" loans received by putative class members "placed [them] at heightened risk of default and foreclosure." McCoy Rpt. 17. Plaintiffs defend Professor McCoy's failure even to study the proposed class members' "specific loans" on the ground that the secondary literature she cites "focuses on the particular *features* that make up the Combined-Risk loans in the class." Opp'n 18. But there is a fundamental difference between conducting a general literature review about loan "features" and showing that the *actual* "combined risk" loans received by the *actual* putative class members in Detroit *actually* exposed them to heightened risk.

For example, Plaintiffs ignore Professor McCoy's admission that the "combined risk" features may only be *correlated with* heightened risk, McCoy Dep. 129-30, 147-48, as well as Professor McCoy's practice of citing to literature regardless of the time period and geographic location of the loans being studied, Mem. 21. They also ignore her striking admissions that certain "combined risk" factors actually may be *beneficial* or *cheaper* for borrowers depending on their particular individualized circumstances (*see* Mem. 19-20; McCoy Dep. 152, 170-71),[8] and that it is possible for two risk factors to "offset" each other (McCoy Dep. 181).[9] Further, while Plaintiffs suggest that "macroeconomic conditions" (Opp'n 20) are irrelevant to risk,

---

[8] Dr. Courchane's analysis showed that four of the "combined risk" features "tend to lower the price paid by the borrower, on average." Courchane Rpt. 37-38 & tbl. 4; *see also* Courchane Dep. 166-67, 173-76 (Perryman Decl. Ex. E).

[9] Plaintiffs also claim that Professor McCoy need not have studied "all the loan combinations at issue in this case," (Opp'n 18), but such an analysis is essential to the supposedly uniform opinion she claims to offer. The sources Professor McCoy herself cites indicate that at least one combination had "no significant impact" on the "probability of foreclosure" if the loan was a purchase rather than refinance. *See* Reardon Decl. Ex. 5 at 24.

Professor McCoy admitted that whether features such as prepayment penalties and ARMs would present heightened risk can depend on movements in interest rates and home values, *see* Mem. 19-20.  Finally, Plaintiffs do not deny that Professor McCoy's entire analysis of the risks of prepayment penalties—one of the most common "risk" features in the putative class—failed to consider Michigan's law limiting those penalties, and therefore wrongly assumed that borrowers faced dramatically larger penalties than they in fact received.  Mem. 18-19.

Professor McCoy's errors and admissions underscore the fact that whether or not a loan presents a "heightened risk" will necessarily vary depending on the actual "risk" features of the loan and the actual circumstances of the individual borrower.  Professor McCoy's failure to undertake any analysis of the actual facts renders her opinion unreliable.

### IV. PROFESSOR MCCOY'S PURPORTED OPINION THAT MORGAN STANLEY TOOK NO STEPS TO AVOID ADVERSE RACIAL IMPACT IS INADMISSIBLE.

Professor McCoy's fair-lending compliance opinion presents wholly improper testimony about the law, as in when she purports to state what "fair lending compliance obligations" supposedly required Morgan Stanley to do.  *See* Mem. 21-23.[10]  And if not merely an improper opinion about the law, her opinion becomes nothing more than improper summary fact testimony that cannot come in through an expert witness.

### V. DR. AYRES'S OPINION THAT MORGAN STANLEY CAUSED A DISPARATE IMPACT IS INADMISSIBLE.

Finally, the reason that Dr. Ayres' disparate impact opinion as to Morgan Stanley should

---

[10] Plaintiffs have still failed to cite *any case* extending FHA liability to a secondary actor like Morgan Stanley for the lending practices of another company unaffiliated with the secondary market participant. Contrary to Plaintiffs' representation (Opp'n 22 n.11), *Miller v. Countrywide Bank, N.A.*, 571 F. Supp. 2d 251 (D. Mass. 2008), did not hold that Countrywide could be liable for a disparate impact found in the lending practices of another company.  Rather, the disparate impact alleged was among "African-Americans who borrow from Countrywide," *id.* at 253—*i.e.*, the disparate impact was alleged in Countrywide's own book of business, not in the books of business of its correspondent lenders or independent mortgage brokers.  Further, the court noted that Countrywide could be liable only because it participated extensively in every relevant credit decision.  *Id.* at 260-61.

be excluded has nothing to do with whether he is a "soup-to-nuts expert on all aspects of the case." Opp'n 22. The problem is that Dr. Ayres offers no basis to conclude that *Morgan Stanley's policies* caused the statistical trends he purports to find *in New Century's loans*. Dr. Ayres admitted that he could not link any disparity to any specific Morgan Stanley policy. Mem. 24-25. Indeed, Dr. Ayres could not even explain what Morgan Stanley's "lending policies" were (Ayres Dep. 63-67). Because—as Plaintiffs concede (Opp'n 23)—Dr. Ayres did not look at the relationship between Morgan Stanley and New Century, he cannot opine that *Morgan Stanley caused* any disparity in *New Century loans*.[11]

Plaintiffs also suggest (*id.* at 3) that Dr. Ayres's opinion can be read "in tandem" with Professor McCoy's report. But Dr. Ayres did not consider Professor McCoy's report, so it cannot lay any foundation for his opinion.[12] Moreover, Professor McCoy acknowledged that numerous factors are relevant to whether Morgan Stanley's policies (and not those other factors) caused New Century to issue "combined risk" loans. *See* Mem. 8-9. Dr. Ayres did not control for or analyze any of those factors, including the conduct of "other lenders" or the impact of "broker discretion." Ayres Dep. 235-37, 244-45. His conclusion that Morgan Stanley caused a disparate impact should be excluded.

## CONCLUSION

For the reasons set forth above and in the Opening Memorandum (ECF No. 189), Defendants respectfully request that the Court grant Defendants' motion to exclude.

---

[11] Indeed, as Dr. Courchane has shown, application of Dr. Ayres' own model undermines his causation conclusion, as it shows that for the full 2005-2007 period, among *Morgan Stanley's* purchases, African Americans were *less likely* to receive "combined risk" loans than whites. Courchane Rpt. 57.

[12] Dr. Ayres does not cite Professor McCoy's report in his list of "Materials Relied Upon" and he testified that this was a complete list of the materials he relied on or considered (Ayres Dep. 11-12 (Perryman Decl. Ex. G)).

Dated: December 10, 2014     By:     /s/ David W. Ogden
Noah A. Levine
Colin T. Reardon
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel:  (212) 230-8800
Fax:  (212) 230-8888
noah.levine@wilmerhale.com

David W. Ogden (*admitted pro hac vice*)
Danielle Y. Conley (*admitted pro hac vice*)
Skye Perryman (*admitted pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
david.odgen@wilmerhale.com
danielle.conley@wilmerhale.com
skye.perryman@wilmerhale.com

*Counsel for Defendants*