## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

BEVERLY ADKINS, CHARMAINE WILLIAMS, REBECCA PETTWAY, RUBBIE McCOY, WILLIAM YOUNG, on behalf of themselves and all others similarly situated, and MICHIGAN LEGAL SERVICES,

Plaintiffs,

v.

MORGAN STANLEY, MORGAN STANLEY & CO. LLC, MORGAN STANLEY ABS CAPITAL 1 INC., MORGAN STANLEY MORTGAGE CAPITAL INC., and MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC,

Defendants.

1:12-cv-7667-VEC-GWG

## DECLARATION OF KRISTINE GILLY IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

I, KRISTINE GILLY, pursuant to 28 U.S.C. § 1746, hereby declare the following under penalty of perjury:

1.      I have personal knowledge of the facts set forth in this declaration. The facts set forth are true to the best of my knowledge and recollection. If called as a witness, I could and would testify as set forth below.

2.      I am over 18 years of age and am competent to make this declaration. I am an Executive Director in the Strats and Modeling Division of Morgan Stanley & Co. LLC, 1585 Broadway, New York, NY 10036 ("Morgan Stanley"). I am also co-head of Collateral Analysis, a group within the Strats and Modeling Division. My job duties entail compiling, consolidating, and analyzing large volumes of loan data. I have worked at Morgan Stanley since June 2000.

1

3.      As an Executive Director, I have access to and am familiar with Morgan Stanley's records and record-keeping system concerning loan purchase data. Because of my position and my experience, I am authorized to make this declaration.

*Loan Data Concerning The Named Plaintiffs*

4.      Attached hereto as Exhibits A (MS02695282), B (excerpted from MS00699611), C (MS02695280), D (MS02695281), and E (MS02695279) are documents capturing data concerning Morgan Stanley's due diligence on loans presented to it for purchase pursuant to previously agreed upon loan purchase agreements. The data in these documents are derived from information captured at or near the time of the deal in question, and are maintained and used by my group, Collateral Analysis, as part of Morgan Stanley's regularly conducted business.

5.      I understand that this lawsuit involves mortgage loans issued by New Century to Beverly Adkins, Charmaine Williams, Rebecca Pettway, Rubbie McCoy, and William Young. As explained below, Morgan Stanley's records indicate that Morgan Stanley purchased Ms. Pettway's loan, but declined to purchase the loans of Ms. McCoy, Mr. Young, and Ms. Adkins as a result of Morgan Stanley's valuation due diligence. I have located no Morgan Stanley records concerning any New Century loan issued to Charmaine Williams.

6.      Attached hereto as Exhibit A is Morgan Stanley diligence data maintained by Collateral Analysis concerning Loan Number 1557094. This data indicates that the loan was issued by New Century to Rebecca Pettway on May 18, 2004, for a property located at 15400 Lindsey St., Detroit MI 48227.

2

7.      Attached hereto as Exhibit B is Morgan Stanley loan-level performance data concerning Loan Number 1557094—i.e., Rebecca Pettway's New Century loan.  This data indicates that Morgan Stanley purchased Ms. Pettway's loan on June 28, 2004.

8.      Attached hereto as Exhibit C is Morgan Stanley diligence data maintained by Collateral Analysis concerning Loan Number 1009117966.  This data indicates that the loan was issued by New Century to Rubbie McCoy on July 31, 2006, for a property located at 2688 Columbus St., Detroit MI 48206.  Under the "KICKOUT" column, Exhibit C lists "OUT," and under the "KICKOUT_DETAIL" column, it lists "VALUATION."  This means that Morgan Stanley declined to purchase, or "kicked out," the loan as a result of Morgan Stanley's valuation due diligence.

9.      Attached hereto as Exhibit D is Morgan Stanley diligence data maintained by Collateral Analysis concerning Loan Number 1004213229.  This data indicates that the loan was issued by New Century to William Young on November 3, 2005, for a property located at 9215 Whitcomb St., Detroit MI 48228.  Under the "KICKOUT" column, Exhibit D lists "OUT," and under the "KICKOUT_DETAIL" column, it lists "APPRAISAL-VALUE."  This means that Morgan Stanley declined to purchase, or "kicked out," the loan as a result of Morgan Stanley's valuation due diligence.

10.      Attached hereto as Exhibit E is Morgan Stanley diligence data maintained by Collateral Analysis concerning Loan Number 1528902.  This data indicates that the loan was issued by New Century to Leroy Adkins on May 3, 2004, for a property located at 9625 McKinney St., Detroit MI 48224.  Under the "KICKOUT" column, Exhibit E lists "OUT," and under the "KICKOUT_DETAIL" column, it lists "VALUE."  This means that Morgan Stanley

declined to purchase, or "kicked out," the loan as a result of Morgan Stanley's valuation due diligence.

11.     After an extensive search, I have located no Morgan Stanley loan data concerning any New Century loan issued to Charmaine Williams. Nor have I located any data to suggest that New Century ever offered such a loan to Morgan Stanley for purchase.

12.     Further, my review of Morgan Stanley's loan-level purchase data indicates that Morgan Stanley did not purchase any bulk pools of subprime whole loans from New Century during the period January 29-July 29, 2005. I understand from the Complaint in this litigation that Ms. Williams's loan was originated on April 22, 2005.

***Loan Kickout Summaries***

13.     Attached hereto as Exhibits F (MS01716306), G (MS01731253), H (MS01549002) and I (MS00787898) are "kickout summaries" for trades with New Century. The data in these documents are derived from information captured at or near the time of the trade in question, and are maintained and used by Morgan Stanley in the course of its regularly conducted business.

14.     The kickout summaries attached hereto as Exhibits F, G, H, and I reflect the percentage of loans that Morgan Stanley removed from purchase pools for reasons including, but not limited to, the results of Morgan Stanley's due diligence review. Percentages in the kickout summaries were typically framed in terms of the "pull-through rate," which is the percentage of loans in a bulk pool of subprime whole loans presented for sale by New Century that Morgan Stanley purchased. The pull-through rate is calculated based on the unpaid principal balance of the loans available for purchase.

15.     Attached hereto as Exhibit F is a Morgan Stanley kickout summary for New Century loans from April 2004. This shows a pull-through rate of 95.5% (and, thus, a kickout rate of 4.5%).

16.     Attached hereto as Exhibit G is a Morgan Stanley kickout summary for New Century loans from October 2005. This shows a pull-through rate of 91.5% (and, thus, a kickout rate of 8.5%).

17.     Attached hereto as Exhibit H is a Morgan Stanley kickout summary for New Century loans from July 2006. This shows a pull-through rate of 90.1% (and, thus, a kickout rate of 9.9%).

18.     Attached hereto as Exhibit I is a Morgan Stanley kickout summary for New Century loans from January 2007. This shows a pull-through rate of 81.1% (and, thus, a kickout rate of 18.9%).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September /O , 2014.

Kristine Gilly

5