**Lieff Cabraser Heimann & Bernstein**
Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
t 212.355.9500
f 212.355.9592

April 16, 2015

Rachel Geman
Partner
rgeman@lchb.com

***Via Electronic Court Filing***

The Honorable Valerie E. Caproni
Thurgood Marshall
United States Courthouse
Courtroom 443
40 Foley Square
New York, NY 10007

      RE:   *Adkins, et al. v. Morgan Stanley, et al.*
              Case No. 1:12-CV-7667-VEC-GWG

Dear Judge Caproni:

      We represent Plaintiffs and the proposed class in the above-referenced matter, and we write in response to the Court's directive that the parties address the effect of the class certification decision. The impact of the decision depends on the scope of the class, if any, that is certified. In particular, as discussed at the hearing, Your Honor may wish to certify a narrower class consisting only of African-American borrowers in the Detroit region who received Combined-Risk or High Cost loans that Morgan Stanley purchased from New Century, which would be supported by ample evidence in the certification record, or Your Honor may certify the originally proposed class of all African-American borrowers in the Detroit region who received Combined-Risk Loans that New Century originated.[1] The Court may also determine that an issues class (*e.g.*, as to liability only) would "materially advance the litigation." *Houser v. Pritzker*, 28 F. Supp. 3d 222, 254 (S.D.N.Y. 2014).

      As an initial matter, however, the impact of the class certification decision as it pertains to absent class members is quite clear: without a class action, these African-American borrowers, whom record evidence shows received more costly and risky loans than white borrowers without justification, will be unable to vindicate their rights. Plaintiffs are not aware of any individual plaintiffs who have challenged Morgan Stanley's discriminatory practices. This is unsurprising, in light of the extensive pre-litigation investigation necessary to link the policies of a mortgage securitizer, like Morgan Stanley, to the discriminatory impact on individual

---

[1] As the Court is aware, there is one proposed Class Representative with standing to represent a purchaser-only class, Ms. Rebecca Pettway, whose loan was High Cost and had two additional Combined-Risk features—an adjustable rate and a prepayment penalty. *See* Dkt No. 187-71. A class of African-American borrowers in the Detroit region who received Combined Risk Loans from New Century that were purchased by Morgan Stanley would include 1,221 individuals. *See* Report of Dr. Ian Ayres, Dkt. No. 131 at Table 9. A class of African-American borrowers in Detroit who received High-Cost loans from New Century that were purchased by Morgan Stanley would include 1,361 individuals. *Id.*

The Honorable Valerie E. Caproni
April 16, 2015
Page 2

borrowers, as well as the complex fact discovery needed to adequately litigate the claims in this case.  For those absent class members in the Detroit area, denial of class certification almost certainly forecloses any chance at vindicating their claims. *See, e.g., Maziarz v. Hous. Auth. of the Town of Vernon*, 281 F.R.D. 71, 84-85 (D. Conn. 2012)(noting that a class action was particularly necessary for low-income tenants alleging discrimination in violation of the Fair Housing Act because they were "unlikely to pursue their claims individually.").

With respect to the Named Plaintiffs themselves, a denial of class certification would leave intact the individual damages claims of the proposed class representatives. The other plaintiff, Organizational Plaintiff Michigan Legal Services ("MLS"), has asserted a claim for disgorgement in connection with the fact that it was required to divert the vast majority of its resources to foreclosure-related work at the expense of its ability to engage in activities that were previously central to its mission, such as access to medical care and public benefits. *See, e.g.*, Compl. at ¶ 210.

By contrast, if the class is certified, notice would go out commensurate with the scope of that class,[2] and targeted limited discovery would occur as preparation for a class trial would begin.  For example, Plaintiffs continue to seek transcripts of depositions concerning the Morgan Stanley-New Century relationship taken of key witnesses in this case by the Massachusetts Attorney General (which was challenging Morgan Stanley's financing, purchase, and securitization of New Century sub-prime loans), and there remain outstanding discovery issues relating to Morgan Stanley's gains from the challenged practices. (As the Court is aware, the class remedy in this case has always been tied to and circumscribed by the economic benefits to *Morgan Stanley* of its relationship with New Century; this is consistent with the narrower class, by definition, and with the broader class for reasons discussed in the class certification papers.)

Finally, Plaintiffs observe that honing the class definition to include only New Century borrowers whose loans were purchased by Morgan Stanley (either under the Combined-Risk or High Cost formulation) – a narrowing closely tied to the Fair Housing Act's prohibition on discrimination in the "purchasing of loans" (42 U.S.C. § 3605) –  would not require the opening of new discovery on class certification.  The discovery that has already occurred is relevant to,

---

[2] If the Court finds that the class definition is overbroad or otherwise inappropriate, it has authority to amend the class definition or certify a subclass "at any time before a decision on the merits."  *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (citing Fed. R. Civ. P 23(c)(1) and (4); upholding certification of a class defined as all children "who are or will be in the custody of the New York City Administration for Children's Services ('ACS')" as well as those who "are or will be at risk of neglect or abuse and whose status is or should be known to ACS").  To the extent a class action can be maintained for a narrower set of plaintiffs than originally contemplated, the Second Circuit has made clear that a court should certify the smaller class rather than deny certification entirely.  *See Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993).  Notably, courts can and do alter class definitions much farther into litigation than here.  For example, in *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 302 F.R.D. 448 (N.D. Ohio 2014), the court amended the class definition after the class was certified and after the certification decision had been affirmed on appeal.  302 F.R.D. at 458.  Although defendant argued that the determination of lack of defect as to some of the products at issue showed lack of commonality for the entire class, and claimed it had wasted resources on a defense of a larger class (or any class), the court noted that modifying the class definition would "increase[] the precision with which trial of all class members' claims together will generate common answers that are likely to drive resolution of the lawsuit."  *Id.* at 469.

The Honorable Valerie E. Caproni
April 16, 2015
Page 3

*and was necessary for*, a purchaser-only class. The loan-level data has already been produced and analyzed; and document discovery and deposition testimony have already been completed regarding Morgan Stanley's policies and practices for soliciting loans with particular terms and ensuring their supply, and related enabling practices of giving primacy to the trading desk over diligence, and failing to monitor for racial impact against the backdrop of internal acknowledgment of the costs and risks of the loans.[3]  Under a modified class definition, these areas would continue to represent the overwhelming share of the issues in the case, and Morgan Stanley preserves its defenses to liability on the merits.

Plaintiffs remain available to formally brief any of these issues in more detail, or provide any further information the Court may require.

Respectfully,

| Laurence M. Schwartztol<br>Rachel E. Goodman<br>**AMERICAN CIVIL LIBERTIES**<br>**UNION FOUNDATION**<br>125 Broad Street, 18th Floor<br>New York, NY 10004 | Rachel Geman<br>**LIEFF CABRASER HEIMANN &**<br>**BERNSTEIN, LLP**<br>250 Hudson Street, 8th Floor<br>New York, NY 10013-1413 | Stuart T. Rossman<br>**THE NATIONAL CONSUMER LAW**<br>**CENTER**<br>7 Winthrop Square, 4th Floor<br>Boston, MA 02210 |
|---|---|---|

-and-

275 Battery Street, 29th Floor
San Francisco, CA 94111

cc:  All counsel of record via Electronic Court Filing
1238928.1

---

[3] *See, e.g.*, Ayres Report, Dkt. No. 131 at Tables 1, 4, 5, 7, 9-14; ¶¶ 14, 16, 36, 54-57; 64-82 (Dr. Ayres's statistical analysis of the adverse impact of New Century loans that Morgan Stanley purchased under Combined-Risk and High Cost formulations); Deposition of Eric Kaplan, Dkt. No. 187-46 at 5-8; Report of Professor Patricia McCoy ("McCoy Report"), Dkt. No. 130 at 30-34; Dkt. No. 187-44 (Vanacker Depo. 122-24, 173); 187-49 (Vanacker Depo. Exh. 14) (bid terms for Combined-Risk features and high coupon rate loan pools, as relates to the defining feature of High Cost Loans); McCoy Report at 32 (citing Davis Depo. 311; Davis Depo. 28, at MS01252691) (continued seeking of costly loans and risky loans); Dkt. No. 128 at 21-22, 14-19 (absence of monitoring and primacy of trading desk).