**MEMO ENDORSED**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/22/2015

WilmerHale

April 21, 2015

David W. Ogden

+1 202 663 6440 (t)
+1 202 663 6363 (f)
david.ogden@wilmerhale.com

ECF

The Honorable Valerie E. Caproni
U.S. District Court for the
  Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, NY 10007

Re:   *Adkins et al. v. Morgan Stanley et al.*, No. 1:12-CV-7667 (VEC)

Dear Judge Caproni:

At the conclusion of the evidentiary hearing on April 9, 2015, this Court asked Defendants to address the effect that a *grant* of class certification would have on Defendants' case—which we did in my letter of April 16, 2015—and asked Plaintiffs to address the effect that *denial* of class certification would have on their case.  Last week, while ostensibly answering the Court's question, Plaintiffs filed a mostly nonresponsive letter, arguing that the Court "may wish to certify" a class consisting of African-American borrowers in Detroit who obtained from New Century either "combined risk" loans or "high cost" loans that were later purchased by Morgan Stanley.  Pls.' Ltr. 1.  Because Plaintiffs never proposed either of these "purchaser-only" classes in their Complaint or class certification papers, these belated suggestions have never been briefed.  And because Plaintiffs' letter raises these new issues, Defendants are constrained to file this response.  Defendants respectfully submit that the suggestion should be rejected out of hand because it comes too late and is entirely inconsistent with Plaintiffs' own claims and the basis on which this case has been litigated for more than two years.  But if the Court were inclined nevertheless to consider certification of either class, Defendants respectfully request an opportunity to fully brief the relevant issues on an appropriate schedule.

Nothing in Plaintiffs' April 16 letter addresses the many points Defendants made during the April 9 hearing why alternate classes would be improper at this juncture and would in any event fail to eliminate the vast number of centrally important issues that would vary across any putative class and predominate over any common issues:

*First*, the "purchaser-only" classes Plaintiffs now suggest would not eliminate the many individualized causation issues briefed and discussed at the hearing.  To state a claim of disparate impact liability, it is not enough for Plaintiffs simply to identify a pool of loans originated by New Century that has an alleged discriminatory distribution of loan terms, and then name Morgan Stanley as the allegedly responsible defendant solely because it later purchased them.  To the contrary, Plaintiffs must identify a particular facially neutral Morgan Stanley policy and then prove a "causal connection between the facially neutral policy and the alleged discriminatory effect." *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 574-75 (2d Cir.

WILMERHALE

Hon. Valerie Caproni
April 21, 2015
Page 2

2003). Yet Plaintiffs' letter neither identifies any particular Morgan Stanley policy to be examined under their suggested alternative class definitions, nor explains what the common, class-wide theory of causation would be.

The reason for these omissions is apparent: Plaintiffs have sought from the outset of this case to hold Morgan Stanley responsible for New Century loans that Morgan Stanley did *not* purchase, and so the central tenet of their case has always been that purchase and causation are distinct. According to Plaintiffs, one secondary market actor can be the legal "cause" of a New Century loan that another secondary market actor later purchased. Perhaps Plaintiffs want to abandon that central tenet for purposes of their class claim—they do not say—but their letter makes perfectly clear that they *still* will rely on just such a theory in this litigation. They say that they will continue to litigate *against Morgan Stanley* the individual damages claims of the four Plaintiffs whose loans were purchased by other banks, despite the fact that they would be excluded from the suggested alternate classes. In those four individual suits, Plaintiffs will have to argue that factors *other* than purchase make Morgan Stanley (and not Credit Suisse, Lehman Brothers, and Carrington Capital) the cause of New Century's origination of those loans. *See* Defs.' Class Certification Opp. 10 (ECF No. 203; "Opp.").

But obviously this also demonstrates that under Plaintiffs' belated "purchaser-only" classes, the central causation inquiry for trial will remain the same as it has from the outset: *why* did New Century originate the loan in question on the terms it did? Was some *Morgan Stanley* policy the cause? Or was there a *different* cause? The answer with respect to any loan will depend in turn on the same multitude of factors discussed in Morgan Stanley's brief opposing class certification and discussed at the April 9 hearing. These factors would include other banks' contemporaneous bid terms and the influence of New Century's other warehouse lenders, who financed many of the loans that Morgan Stanley purchased; the effect of competition from other loan originators; brokers and borrowers' own preferences, both of which are important in this case, given the testimony of New Century's former employees and of the named Plaintiffs themselves; and, of course, New Century's own policies and decisions.

Thus, the problem, at least for purposes of class certification, would remain exactly the same: because Plaintiffs still want to blame the race-neutral policies of a third party (Morgan Stanley) for discriminatory outcomes of New Century's lending, there are too many actors and potential influences operating on each of New Century's decisions in question to allow adjudication of the causation issue to occur based on generalized evidence common to the class.

*Second*, wholly apart from these persistent causation problems, individual issues would also still predominate based on Plaintiffs' "Chinese menu" "combined risk" loan definition. As Morgan Stanley has demonstrated, Plaintiffs do not and cannot contend that any "risk" factor *causes* a heightened risk of default and foreclosure, and determining whether any so-called "combined risk" term is even *correlated*, as a general matter, with an increased risk of default and

WILMERHALE

Hon. Valerie Caproni
April 21, 2015
Page 3

foreclosure would vary based on the particular "risk" term at issue, and vary further when different terms were combined, yielding many permutations.

One illuminating example, which neither Plaintiffs nor their expert have ever addressed, is that Michigan law provided effective protection to borrowers from the risks of prepayment penalties by limiting the size of those penalties. *See* Opp. 24-25. This is particularly important given that prepayment penalties were, along with adjustable rates, one of only two loan features for which Morgan Stanley's bid stipulations established a minimum percentage that New Century was contractually obligated to meet. *Id.* at 17.[1] This is also important because two risk features are required for inclusion in Plaintiffs' class, and the only named Plaintiff whose loan was purchased by Morgan Stanley, Ms. Pettway, had only two so-called "combined risk" features—one of which was a prepayment penalty that complied with Michigan law. *See* Report of Dr. Marsha Courchane 35 (ECF No. 205).

Further, even if it were somehow possible for Plaintiffs to prove with common, class-wide evidence that every loan combination uniformly posed heightened default and foreclosure risk, the factfinder would still need to undertake individualized inquiries into whether the "risk" terms were adverse for each absent class member given his or her particular circumstances. For example, an adjustable rate should present no additional risk if the rate does not reset upwards given macroeconomic conditions, and a prepayment penalty should present no risk if the borrower neither intends to prepay nor ever considers prepayment. Moreover, as demonstrated by named Plaintiff Ms. Williams' perfectly appropriate preference for an adjustable rate loan over a fixed rate loan (because the adjustable rate loan permitted her to pay off pre-existing debts, *see* Opp. 21), the factfinder may not simply assume that a borrower who received a "risk" term was adversely affected compared to a non-minority borrower who received a comparable non-"combined risk" loan. These questions are contingent on each borrower's specific circumstances.

*Third*, there are even further reasons why Plaintiffs' suggested alternative class consisting of New Century "high cost" loans subsequently purchased by Morgan Stanley should not be considered. Initially, Plaintiffs' proposal would improperly *expand* the class beyond the scope of their Complaint and class certification motion to include entirely new class members—*i.e.*, class members who received "high cost" but not "combined risk" loans. *See Vincent v. Money Store*, No. 03-cv-2876 JGK, 2015 WL 411281, at *4 (S.D.N.Y. Feb. 2, 2015) ("[T]he plaintiffs cite no case demonstrating the appropriateness of considerably expanding a class on a certification motion from what was originally proposed in the Complaint…. Expanding the class now on this motion would be unfair to the defendants." (citation omitted)). At this late date, to propose

---

[1] Regardless, as Morgan Stanley demonstrated in its papers and at the April 9 hearing, bid stipulations did not cause New Century to originate loans. Rather, the bid stipulations reflected New Century's own view and determination of its projected originations, based on its view of its pipeline. *See* Opp. 6.

WILMERHALE

Hon. Valerie Caproni
April 21, 2015
Page 4

jettisoning many proposed class members while suddenly encompassing new groups of people within the class is as unfair as it is without legal rationale.

Plaintiffs' new "high cost" proposal is particularly inappropriate because it would abandon their theory about "layered" risk, and instead transform this case into one about loan *pricing*—apparently without even alleging that New Century's loans actually contained discriminatory price terms. There is no precedent for conducting a disparate impact pricing case, as Plaintiffs now apparently would try to do, based solely on whether African-Americans were more likely to receive loans that crossed an arbitrary "high cost" threshold established for other purposes in HMDA. To the contrary, traditional disparate-impact loan-rate cases involve, instead, allegations that the *actual* interest rates of loans received by a minority population are higher than the *actual* interest rates of loans received by the non-minority population, after controlling for a number of potential non-discriminatory reasons. *See, e.g.*, *Ramirez v. Greenpoint Mortg. Funding, Inc.*, 268 F.R.D. 627, 633 (N.D. Cal. 2010) (discussing expert testimony regarding the "annual percentage rate or 'APR' … amount paid by white and minority borrowers"). Neither Plaintiffs nor their experts have undertaken any such analysis. Indeed, their expert Dr. Ian Ayres declined to testify that a disparity in the incidence of "high cost" loans necessarily translated into an actual pricing disparity. *See* Ayres Dep. 184 (attached as Exhibit A) (stating only that there was a "substantial chance that African Americans pay higher APRs … but I haven't done that analysis").

Plaintiffs bear the burden at this stage of proving that the class they would certify satisfies the requirements of Rule 23, but they cannot provide any basis to say, consistent with *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), that a "high cost" class is viable. Indeed, because it is an entirely different theory of liability, even before reaching class certification, if the Court were to consider allowing this new class definition, Defendants should be given the opportunity to file a motion to dismiss the claims—a motion that Defendants believe would be meritorious—and if unsuccessful, to conduct new discovery. But even if the claim could survive a motion to dismiss, there is at least one obvious additional reason why individualized issues would predominate in such a case. As the record demonstrates, and as Plaintiffs' expert Professor McCoy has acknowledged in this and other cases, brokers have a material impact on the cost of a loan, both by helping the borrower select the lender and the loan, and by incorporating into the APR the brokers' own fees, which may vary from borrower to borrower and among protected classes. *See* Opp. 4, 20; Defs.' *Daubert* Reply 2 n.1 (ECF No. 200). Yet here, there is no basis whatsoever in the record or even in Plaintiffs' allegations for holding *Morgan Stanley* responsible for the actions of individual brokers or for any New Century policies that allowed such discretion to independent brokers.

*Fourth*, Plaintiffs' suggested alternate classes, which they offer up only after an evidentiary hearing on their motion to certify a different class, come too late and are utterly inconsistent with the Complaint and Plaintiffs' arguments to date. As noted, only one named Plaintiff could even

WILMERHALE

Hon. Valerie Caproni
April 21, 2015
Page 5

conceivably represent the suggested classes, because it is undisputed that Morgan Stanley *never purchased the loans of four Plaintiffs*. From the outset, Plaintiffs therefore have treated the question whether Morgan Stanley purchased an individual loan as an irrelevant detail. Plaintiffs' belated suggested classes are thus fundamentally inconsistent with the theory they have litigated to date, a theory that (as reflected in the Complaint) points to many factors beyond secondary market purchase as potential "causes" of New Century's alleged discrimination. Plaintiffs should not be permitted at this late date to seek certification of a class inconsistent with the theory of their Complaint.

Moreover, the sole Plaintiff whose claims would survive this important shift in theory—Ms. Pettway—has two problems that would render her a highly problematic class representative: (a) there are serious statute of limitations objections unique to her that may well bar her claim (*see* Opp. 30-31); and (b) as discussed at the hearing and above, her loan can be considered "combined risk" only if a prepayment penalty consistent with Michigan law and far below the level deemed "risky" by Plaintiffs' own expert were accepted as a risk factor.

These are just some of the many reasons why Plaintiffs' belated, half-hearted proposals are improper and would still fail to present any class that could satisfy Rule 23(b)(3)'s predominance requirement. As noted, if the Court were inclined to grant certification of any proposed alternative class, Defendants respectfully request a chance to submit briefing to more fully address why no such alternative class should be certified either.

Finally, one last point in Plaintiffs' letter deserves a response. Plaintiffs assert that denial of class certification would leave borrowers who allegedly have been discriminated against by Morgan Stanley without any remedy. *See* Pls.' Ltr. 1-2. That is false because it simply presupposes both that Morgan Stanley played a role in causing every putative class member's New Century loan and that the receipt of every one of those "combined risk" New Century loans was necessarily adverse. Yet as discussed above those are precisely the inquiries that have yet to be conducted and that, regardless, do *not* yield common answers across the class, precluding class certification. Plaintiffs' assertion assumes away these centrally important issues, and does so absent any of the proof that would be required for anyone to be able to conclude that there is in fact any class of New Century borrowers who were discriminated against, much less discriminated against by Morgan Stanley.

Thank you for your consideration of this letter.

Case 1:12-cv-07667-VEC-GWG   Document 227   Filed 04/22/15   Page 6 of 6

WILMERHALE

Hon. Valerie Caproni
April 21, 2015
Page 6

Respectfully submitted,

*[signature: David Ogden / CTR]*

David W. Ogden

If the Court determines that it should consider an alternative class structure, the parties will be given ample opportunity to brief that issue. No additional letters should be submitted regarding that issue at this time.

SO ORDERED.

*[signature: Valerie Caproni]*

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE

Date: April 22, 2015